

*11709419*

David C. Parisi (162248)
Suzanne Havens Beckman (188814)
PARISI & HAVENS LLP
15233 Valleyheart Drive
Sherman Oaks, California 91403
(818) 990-1299

Ethan Preston (263295)
PRESTON LAW OFFICES
8245 North 85th Way
Scottsdale, Arizona 85258
(480) 269-9540

*Attorneys for Plaintiff John Lofton, on his own
behalf, and behalf of all others similarly situated*

Charles R. Messer (101094)
CARLSON & MESSER LLP
5959 W. Century Boulevard, Suite 1214
Los Angeles, CA 90045
(310) 242-2200

*Attorneys for Defendant Verizon Wireless (VAW) LLC*

**FILED**
ALAMEDA COUNTY

OCT 1 5 2013

By _____ Exec. Off/Clerk

### SUPERIOR COURT FOR THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

| | |
|---|---|
| JOHN LOFTON, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VERIZON WIRELESS (VAW) LLC, a Delaware limited liability company, and DOES 1-100, inclusive,<br><br>Defendants. | No. RG12634618<br><br>**OCTOBER 15, 2013 JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: October 22, 2013<br>Time: 3:00 p.m.<br>Location: Department 17<br>Administration Building<br>1221 Oak Street<br>Oakland, California 94612<br><br>Complaint filed: June 14, 2012 |

## I.     Introduction

### A.     Factual Background

In June 2012, a debt collector (called Collecto, Inc.) recorded several calls it made to Plaintiff John Lofton ("Lofton") without his consent. Lofton sued Defendant Verizon Wireless (VAW) LLC ("Verizon") because Collecto was attempting to collect a Verizon accounts when it called Lofton, and Collecto's representatives identified themselves as "with Verizon" during these calls. (Pl.'s Second Am. Compl. ¶45.)

## B.     Legal Background

Lofton asserts that Collect's undisclosed recordings violate the Invasion of Privacy Act ("IPA") (Pen. Code, §§ 630-638), which prohibit recording a telephone call to a cellular telephone without the consent of all the parties to the communication, and the unfair competition law (Bus. & Prof Code, § 17200, "UCL"):

> Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between [e.g.] a cellular radio telephone and a landline telephone. . . shall be punished . . .

(Pen. Code, § 632.7(a).) Lofton alleged a class action on behalf of California residents who received calls on their cellular telephone from "Collecto or any other of third-party vendors which Verizon engaged to collect debts," where the calls were recorded "without or prior to" disclosure of that fact. (Pl.'s Second Am. Compl. ¶22.) Lofton contends that Verizon is vicariously liable for the conduct of Collecto and Verizon's other debt collectors. On December 3, 2012, the Court held Lofton's first amended complaint did not allege facts sufficient to hold Verizon vicariously liable for Collecto's actions.

Verizon requires its debt collectors to comply with its monitoring policy. (VER000090-91, attached as Exhibit B to Pl.'s Second Am. Compl.) On September 3, 2010, Verizon altered its monitoring policy to eliminate disclosure of the fact that a call was being recorded for certain calls:

> The Monitoring Disclosure Is: "This call may be monitored or recorded for quality purposes."
> The following requests may be made without disclosure. Request to:
> • speak with the accountholder
> . . .
> • confirm or remove invalid CBR (Can Be Reached) Number

(VER000093-94 [same].) On March 11, 2013, Verizon altered its policy to eliminate the foregoing exclusions to the monitoring disclosure. On February 19, 2013, the Court denied Verizon's demurrer to the current complaint based (in part) on Verizon's policy above:

> Plaintiff has provided a copy of the agreement between Verizon and Collecto, as well as a policy governing disclosure of call recording, and pleaded various theories supporting Verizon's liability, including aiding and abetting under Penal Code 31, conspiracy, actual agency and ostensible agency. The pleadings allege

sufficient facts to support liability under several of these theories. For example, under section 31, one who "aids and abets" or "advises and encourages" another to commit a crime becomes liable as a principal. The agreement between Verizon and Collecto and the related disclosure of recording policy show that Verizon was aware of and encouraged Collecto's monitoring, recording and disclosure practices and encouraged/assisted Collecto in recording some conversations without first obtaining consent because Verizon dictated the very policy which permitted undisclosed recording of "wrong number" phone calls. . . . In light of the specific and pervasive control that Verizon exercised over Collecto's collection efforts through the subject agreement, and its provision of its detailed policy governing requirements for disclosure of call monitoring, the Court cannot find, as a matter of law, that Collecto was not the agent of Verizon.

(*Lofton v. Verizon (VAW) Wireless LLC* (Super. Ct. Alameda County, Feb. 19, 2013, No. RG12634618) at p. 2.) Thereafter, Verizon filed a motion for judgment on the pleadings on March 7, 2013, which the Court denied on April 4, 2013.

## II.     The Parties' Positions on Case Management Deadlines

Lofton intends to file a third amended complaint shortly, to allege additional claims against Verizon and to eliminate any allegations of calls prior to June 2012. The only case management deadline that has been set in this case is for class certification. At present, the parties are not aware of any other significant case management deadlines besides motions to compel discovery.

The Court's February 19 case management order contemplated a staggered briefing schedule for class certification, whereby Verizon would have five weeks prior to filing its opposition brief (sufficient time to take necessary discovery), and another case management conference would be set to determine the dates for Lofton's reply brief and the ultimate hearing for class certification. The Court's May 23 case management order continued the deadline for Lofton to file a class certification motion until <u>January 3, 2014.</u>

### A.     Lofton's Position

Lofton calls the Court's attention to its May 23 case management order, which states: "*[i]f there is a reason why* [the January 4, 2013] *deadline should be further extended counsel shall address that issue at a case management conference to be set later this year.*" (*Lofton v. Verizon (VAW) Wireless LLC* (Super. Ct. Alameda County, May 23, 2013, No. RG12634618) at p. 2.) In this case management statement, Lofton makes the argument contemplated by the July

23 order: Lofton asks that the Court to take the class certification deadline off calendar, and have the parties submit a joint certification on the status of class discovery prior to the next case management conference. This will ensure that (1) the parties are making progress towards class certification while (2) curbing any incentive Verizon has to delay discovery. Lofton is concerned that Verizon is dragging its feet on class discovery to "run down the clock" on class certification.

Below, Lofton explains what evidence he requires to certify the class, summarizes the past delays Lofton has encountered in obtaining class discovery, and explains what remaining discovery is needed to complete class discovery. While Lofton has made substantial progress, discovery in this case has been extremely hard fought and Lofton needs additional time to deal with inherently difficult issues and to overcome the latest obstacles thrown up by Verizon.

### 1. To Certify the Class, Lofton Needs the Recordings of Calls to "Wrong Numbers" and the Telephone Numbers for those Recordings

The first step to identifying the class members is identifying those telephone numbers which Verizon's debt collectors have recorded as "wrong numbers." These telephone numbers help identify the class in several ways. A variety of commercial services can determine which telephone numbers are assigned to cellular telephones, as well as identify the name and addresses of telephone users from their telephone numbers.[1] (Cf., e.g., *Hypertouch Inc. v. Superior Court* (2005) 128 Cal.App.4th 1527, 1535 [class action administrator testified that he could identify "names and addresses of 40 to 60 percent" of class members from telephone numbers alone].)

The next step is obtaining the recordings of the calls in question. (As set forth below in sections II.A.4, this involves some intermediate steps.) The relevant recordings are *prima facie* proof of an IPA violation. Evidence of Verizon's monitoring policy supports class certification because it creates an inference that its debt collectors' did not disclose they were recording calls

---

[1] Lofton adds (in response to frequently cavils by Verizon) that it is not necessary that he identify each class member to certify a class. *Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695 held that a class of overcharged taxi cab passengers who paid in cash could be certified:
> Defendant apparently fails to distinguish between the necessity of establishing the existence of an ascertainable class and the necessity of identifying the individual members of such class as a prerequisite to a class suit. If the existence of an ascertainable class has been shown, there is no need to identify its individual members in order to bind all members by the judgment.

(*Id.* at p. 706. See also *Cartt v. Superior Court* (1975) 50 Cal.App.3d 960, 972.)

1  to "wrong numbers." Nonetheless, to the extent that Verizon wants an individualized review of

2  relevant recordings (e.g., to ensure that no recording disclosure was provided), it can use voice

3  recognition software to efficiently complete that review in an automated manner.

4        **2.**     **Lofton Has Diligently Pursued Class Discovery**

5       Lofton sought to obtain the relevant recordings early on. On September 12, 2013, Lofton

6  served document demands for recordings of calls made by Collecto (RPD No. 6) and Verizon's

7  other debt collectors (RPD No. 8) to individuals who are not current or past Verizon subscribers.

8  The Court's April 3, 2012 email recognized that Lofton narrowed these RPDs during the meet

9  and confer process to recordings of calls made while collecting Verizon accounts.

10       Subsequently, Verizon asserted that it was impossible to identify the relevant recordings

11  from the records available to it. Specifically, Verizon claimed it was impossible to identify the

12  "wrong numbers" called by its debt collectors. Verizon's October 30, 2012 case management

13  statement stated that "Collecto knows of no way to identify all the records" which indicated calls

14  to wrong numbers. Also, Verizon asserted that its debt collectors worked for many different

15  clients, and it was impossible to segregate documents relating only to calls made for Verizon.[2] In

16  the Court's May 8 email, it found "[n]o party has provided any information concerning

17  Collecto's ability to segregate out Verizon-related recordings, and at what cost," and indicate

18  that Lofton could file a motion to compel unless Collecto produced a declaration on the subject

19  or produced a competent witness for deposition by May 28. While Verizon forestalled such a

20  motion to compel by producing a declaration by a Collecto employee (Richard Gilbertson), the

21  Court should revisit this issue soon.

22       Responding to this ostensible defense to class certification, Lofton served discovery to

23  gather the evidence necessary to identify recordings of calls made to wrong numbers. This

24  discovery (together with its specific relevance to class certification) is outlined below:

25

26

---

27  [2] "Verizon asserts that it cannot segregate the calls which Collecto made on its behalf, but
28  provides no evidence to support that position." (Lofton's March 29 letter to the Court, at p. 2.)

Joint Complex Case Management Statement       5       No. RG12634618

| Discovery | Date(s) of Service |
|---|---|
| Subpoenas to Global Crossing: Records of Collecto's outgoing calls<br><br>(Identifies telephone numbers called by Collecto) | November 11, 2012, December 14, 2012, and January 15, 2013 |
| RPD No. 15: Records showing outgoing calls for Verizon's debt collectors<br><br>(Identifies telephone numbers called by all Verizon's debt collectors) | January 17, 2013 |
| Interrogatory No. 14: Names of the debt collector's employees who exclusively collected on Verizon accounts<br><br>(Assists identification of relevant records) | April 9, 2013 |
| Interrogatory No. 15: Telephone numbers called by those debt collector employees who exclusively collected Verizon accounts while they were collecting on Verizon accounts<br><br>(Identifies relevant set of telephone numbers called by debt collectors) | April 9, 2013 |
| RPD No. 19: Account notes created by those debt collector employees who exclusively collected Verizon accounts while collecting on Verizon accounts<br><br>(Identifies which telephone numbers the debt collectors have determined are "wrong numbers") | April 9, 2013 |
| RPD No. 20: Skip-trace files used by the debt collectors to locate Verizon subscribers with past-due accounts<br><br>(Identifies universe of possible "wrong numbers") | April 9, 2013 |
| RPD No. 20: Documentation used to interpret account notes<br><br>(Necessary to review account notes sought in RPD No. 24 efficiently, i.e., parsed by computer) | May 20, 2013 |

After gathering the facts about the relevant changes to Verizon's monitoring policy, Lofton also served supplemental class discovery specifically to ensure that the class discovery covered September 3, 2010 and March 11, 2013: when Verizon's monitoring policy did not provide for monitoring disclosures in calls invalid to Can Be Reached numbers. Lofton served the discovery requests below on July 8, 2013:

RPD No. 30:    All Verizon's contracts with its debt collectors

RPD No. 31:    Records showing the outgoing calls by Verizon's debt collectors

RPD No. 32:    Every account note created Verizon's debt collectors in the course of collecting Verizon accounts

RPD No. 33:    All skip-trace files obtained by Verizon's debt collectors which relate to a Verizon subscriber

Lastly, Lofton also served RPD No. 36 (which seeks all telephone numbers in Verizon's CACS system) on July 8. As discussed in section II.A.4 below, Lofton can use these records to eliminate false positives from the class.

### 3. Lofton Has Faced Significant Delays in Class Discovery

Verizon has given considerable resistance to Lofton's class discovery. At the outset, *discovery in this case did not begin in earnest until late March 2013*. During an October 10, 2012 conference, the Court stated that it did not intend to hear any discovery disputes until it ruled on Verizon's then-pending demurrer to the first amended complaint. Verizon took this as an invitation to refuse to provide any substantive answers in discovery until the Court's February 19, 2013 case management order.[3] After resolving a number of discovery disputes via the standing order, the Court stated in a May 8 email that

> the number and nature of disputes – both in this letter exchange and in prior exchanges – suggests that Defendant has not accorded discovery in this case the appropriate level of urgency or devoted sufficient resources to providing prompt and fulsome responses. Plaintiff's frustration is understandable.

In short, discovery has only been open for seven months and the Court has recognized that Verizon has resisted discovery during that time. It is only reasonable to adjust the class certification deadline under these circumstances.

Below, Lofton identifies discovery delays which the Court should consider when it assess whether the current deadline for class certification is appropriate. "Each party . . . must have an opportunity to conduct discovery on class action issues before filing documents to support . . . a class action certification motion[.]" (*Stern v. Superior Court* (2003) 105 Cal.App.4th 223, 232-

---

[3] The February 19, 2013 case management order stated:
> The Court understands that plaintiff has been anxious to pursue discovery over the past several months while the pleadings were being finalized and that *defendant has resisted such discovery until now*. However, the Court will expect defendant and those acting in concert with it to cooperate in reasonable discovery efforts from this day forward.

(*Lofton v. Verizon (VAW) Wireless LLC* (Super. Ct. Alameda County, Feb. 19, 2013, No. RG12634618) at p. 2 [emphasis added].)

33 [citing *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 836 [parties are

"entitled to [discovery necessary to support class certification] before the class is certified"];

*Carabini v. Superior Court* (1994) 26 Cal.App.4th 239, 244 [due process requires decision on

class certification cannot be made "without a full opportunity to brief the issues and present

evidence"]].)

  *"Wrong Number" Designations in Collecto's Account Notes:* As noted, Verizon has

asserted that Collecto has no way to locate account notes with "wrong number" notations. After

an enormous amount of investigative effort by Lofton, ***Verizon conceded that this assertion was***

***false***. On page seven of its October 30 case management statement, Verizon stated:

> Collecto's Notes pertaining to calls to the plaintiff, and the recordings of those
> calls, show the following information about the plaintiffs' class representative:

| | |
|---|---|
| Name: | Not stated. |
| Address: | Not stated. |
| SSN or other identifying information: | Not stated. |
| Telephone number: | Stated, but with a Note "Wrong number, do not call me again." |

> . . . Collecto knows of no way to identify all the records similar to the records it
> produced in this case, that pertain to the class representative [i.e., calls to wrong
> numbers.]

However, *none* of the notes Collecto produced to Lofton contained these statements. Lofton

spent seven months trying to resolve the discrepancy.[4] After continued prompting, Verizon

provided the statutorily-required declaration from Collecto indicating its response to Lofton's

subpoena was complete on April 26. When Verizon ignored Lofton's continued requests for an

explanation of the discrepancy between Collecto's declaration and its October 30 statement,

Lofton filed a dispute letter with the Court. In its May 13 response letter, Verizon *finally*

explained the discrepancy:

> There are no missing account notes. . . . The point that I intended to convey was
> that Collecto's Account Notes and recordings fail to state Mr. Lofton's name . . .
> The portion of the Case Management Statement that says, "but with a Note,
> 'Wrong number, do not call me again,'" was based on the "B" entry on page

---

[4] See Lofton's May 9 Letter to the Court.

EOS000001 of Collecto's September 2012 document production. *"B" means wrong number. The "B" code in general not only represents a "bad number" as ascertained by a live collector, but in some circumstances represents a "bad number" . . . when a call does not connect.*

After Verizon admitted Collecto recorded "wrong numbers" in its account notes, Lofton redoubled his efforts to have Verizon to produce such account notes. Nearly a year after the complaint was filed, Verizon could no longer deny that it could identify "wrong numbers" in Collecto's account notes.

On April 10, Lofton also asked Verizon whether Collecto could produce its account notes in plain text or ASCII. The benefits of the plain text format are that (a) it can be adapted to an automated, computer-aided search and (b) essentially all applications and databases can output data to plain text. If Collecto could output its notes to plain text, any limitations on Collecto's database to search for "wrong numbers" were irrelevant—Lofton can simply search the plain text output. Verizon first ignored, then misinterpreted Lofton's repeated queries for plain text production. In its May 13 letter to the Court, Verizon finally conceded that Collecto would produce the relevant account notes in plain text format. Only on ***August 31, 2013*** (after extensive prodding and negotiations) did Collecto finally produce plain text account notes for roughly 219,000 Verizon customers in California, which contain telephone numbers marked with the "B"/wrong number notation (*cf.* EOS000491-95). Lofton describes the additional discovery needed to efficiently review these account notes in section II.A.4 below.

Further, Verizon has resisted Lofton's discovery for its call records. To this day, Collecto asserts that it does not have any records of its outgoing calls, besides its account notes and the telephone bills from its telecommunications provider, Global Crossing. Verizon prompted Global Crossing to initially resist Lofton's subpoenas for these records. After Global Crossing ultimately agreed to comply with Lofton's subpoenas (absent of a motion to quash by Verizon), Verizon finally lodged a dispute letter with the Court on February 13, 2013. The Court overruled Verizon's letter in it February 19 case management order. Lofton discusses the remaining discovery needed for a complete set of Collecto's call records in section II.A.4 below.

*Verizon's Other Debt Collectors:* Lofton also experienced significant delays trying to

obtain discovery from Verizon's debt collectors other than Collecto. At the outset, Verizon resisted discovery on debt collectors other than Collecto, and the parties lodged dispute letters over discovery on Verizon's contracts with its debt collectors. The Court's April 3 email stated that "Defendant should produce responsive contracts for collectors who [were] subject to [Verizon's monitoring] policy." Verizon then promised to provide a declaration that explained that certain (post-write off) debt collectors were not subject to the policy, while other debt collectors (pre-write off) were by April 19, but did not do so until May 2. Verizon did not complete producing all these contracts until May 15.

In an April 15 email, Verizon represented it was conferring with the other debt collectors about substantively responding to Lofton's class discovery. In fact, Verizon did not even begin conferring with these other debt collectors until May 7 and it did not finish until May 17.[5] On May 23, Verizon first indicated Lofton that some of the pre-write off debt collectors did not, in fact, follow Verizon's monitoring policy (GC Services LP did not record its outbound calls, while Sunrise Credit Group, Inc. and The CBE Group, Inc. disclosed they were recording in every call). Verizon provided declarations from these debt collectors to substantiate these assertions on June 6 (CBE) and June 12 (GC Services and Sunrise). On June 10, Verizon indicated for the first time that Convergent Outsourcing, Inc. (as known as ER Solutions) also disclosed recording in every call. However, Verizon did not provide Convergent's declaration until August 12.

Verizon ultimately did produce class discovery for the remaining debt collectors, Vantage Sourcing, LLC ("Vantage") and Valentine & Kebartas, Inc. ("VKI"). On *July 12, 2013*, Verizon produced logs of the date, time and number called for roughly 6.4 million calls made by VKI between January 2012 and March 2013 (VKI00002-16). Verizon has indicated that VKI does not keep its own account notes, but rather saved such information in Verizon's own CACS database. On *August 31, 2013*, Verizon produced all account notes in its CACS database created between September 3, 2010 and March 11, 2013, for all of its debt collectors (including VKI), which total

---

[5] In the Court's June 4 email, it stated "Defendant has not provided any explanation for the month-long delay in initiating communications with its vendors to obtain their cooperation."

roughly 26 million lines (VER002976-89). Lofton describes the shortcomings of the VKI call

logs and the CACS account notes in section II.A.4 below.

On *July 12, 2013*, Verizon produced document which supposedly includes all Vantage's

responsive account notes and call logs (VAN00001 and VAN00003, respectively)—but the

account notes only have 6,000 lines and call log only contain 544 calls.[6] Lofton describes the

apparent problems with the Vantage documents in section II.A.4 below.

*RPD No. 36*: RPD No. 36 seeks all telephone numbers in Verizon's CACS system.

Verizon's debt collectors confirm that subscribers' telephone numbers are correct before they are

uploaded to the CACS system: these telephone numbers are Verizon's most current contact

information for its past subscribers. In short, the telephone numbers in the CACS system are

presumptively "right" numbers. By comparing "wrong" numbers collected from Verizon's debt

collectors against the CACS numbers, Lofton can effectively eliminate false positives from the

class. Verizon served boilerplate objections to RPD No. 36. Lofton repeatedly asked Verizon to

indicate whether or not it would amend that response, so Lofton could at least terminate the meet

and confer process. Only after Lofton lodged his September 18 letter with the Court did Verizon

finally indicate in a September 20 letter that it did not plan to supplement its response to RPD

No. 36 "at this time."

*Verizon's Monitoring Policy:* Verizon's monitoring policy is a key issue in this case.[7]

On April 9, 2013, Lofton served discovery seeking documents related to the September 3, 2010

change to the policy which allowed calls to invalid Can Be Reached numbers to be recorded

without disclosure (RPD No. 16). Verizon objected, the parties lodged dispute letters with the

Court, and the Court ultimately stated in a June 4 email:

> It is impossible to tell from the parties' letter whether Plaintiff is correct that
> Defendant's invocation of the privilege is too broad; that is why the timely
> provision of a privilege log is important. Defendant should promptly produce one.

---

[6] However, Lofton was unable to open the VAN00001 until *September 20, 2013*, because the account notes had been password protected and were produced without a password.

[7] The policy is highly relevant to class certification, because it supports an inference that the debt collectors operating under the policy disclosed that they were recording any of the calls to invalid Can Be Reached numbers. The policy's relevance to Verizon's vicarious liability is plain.

If that has not done so by June 20, 2013, Plaintiff may immediately file a motion to compel production of such a log, and for sanctions, and may seek an order shortening time on that motion.

On June 6, Verizon indicated it was working on a privilege log. On June 20, Lofton indicated that "June 20 was not necessarily a firm deadline for Plaintiff as long as there was adequate evidence that Verizon was working towards a complete privilege log/production in good faith." Verizon subsequently suggested that responsive documents had been destroyed. On June 24, Verizon emailed that "*there are no responsive documents that were able to be located*" and, on June 28, Verizon emailed "[w]e *cannot prepare a privilege log for documents we cannot locate.*"

In short, the Court told Verizon to compile a privilege log by June 20—or Lofton could file a motion to compel. Verizon unilaterally obtained an extension on that deadline by representing that all responsive documents had been deleted. However, when Verizon responded to discovery about the circumstances under which these documents had been destroyed, it claimed **no responsive documents had ever been deleted**.

**4.      Lofton Needs Additional Time to Complete Class Discovery**

Below, Lofton explains the additional information needed to locate the relevant recordings and identify the relevant "wrong telephone numbers."

*Collecto:* In its response to Interrogatory No. 16, Verizon indicates that Collecto needs the time of the call as well as the telephone number called to locate the relevant recordings. It appears it will be relatively straightforward to parse wrong numbers. However, it seems it will be more difficult to parse the date and time of Collecto's calls and, in particular, to distinguish between, e.g., calls to live persons and calls to disconnected numbers.

These problems could be alleviated if Verizon provided evidence needed to interpret Collecto's account notes. Lofton requested documents "concerning all designations used in [Collecto's] account notes," specifically including training manuals (RPD No. 24). Verizon has produced three installation and operation manuals for Collecto's dialer and account note software (EOS000011-475), but has not produced the training materials that are distributed to and used by the Collecto employees who enter the data. Further, on April 24, 2013, Lofton asked Verizon's counsel (who represents Collecto) whether Collecto would produce witnesses for deposition, but

they never responded to that request. Verizon has previously argued that California law does not

authorize a subpoena that would require any of Collecto's non-resident employees to attend a

deposition in California. Obtaining the necessary discovery (including possibly a commission for

a deposition out of state, where Collect is headquartered) will take some time.

Finally, Lofton could use a complete set of call logs to weed out calls to disconnected

numbers by using on the duration of the calls. Lofton obtained call logs from Global Crossing for

calls between January 2012 and January 2013. The problem is that Collecto ceased calling to

California numbers for Verizon in June 2012, so Lofton only has call logs for six months for the

period while the relevant monitoring policy was in effect. Again, Verizon previously resisted

Lofton's subpoenas to Global Crossing. Securing more telephone bills from Global Crossing

(and converting them into a usable format) will take some time.

*VKI and the CACS database notes:* Verizon's answer to Interrogatory No. 16 did not

indicate what information VKI needs to locate relevant recordings. As the CACS files are the

only record of VKI's account notes, Lofton addresses them here. Again, there are roughly 26

million account notes in the CACS files. In the parties' September 20 meet and confer, Verizon's

counsel indicated that the CACS files reflect account notes for *all* of Verizon's debt collectors

(not just VKI). However, the CACS files only contain some of the account history from

particular debt collectors (e.g., Collecto's account notes contain more information about

Collecto's collection efforts than the CACS files).

Lofton's problem with the CACS notes is that they do not contain the telephone number

referenced in the notes themselves. Thus, the relevant fields from a representative CACS account

note for a VKI call to a "wrong number" looks like this:

| USERID: | VENDOR ACT: | DATE: | TIME: | HISTORY TEXT: |
|---------|-------------|-------|-------|---------------|
| v0tels2 | VKIINC | 121005 | 1029 | wrong # / (Tellado, Sheila) |

The utility of these CACS notes (at least, the notes that Verizon produced to Lofton) is severely

undermined by the fact that they do not indicate what was the "wrong number" identified by

Verizon's debt collectors. It is entirely implausible that Verizon's systems contains notes that

indicate that a debt collector has reached a "wrong number," but does not contain information

identifying what the "wrong number" was. Put another way, *if Verizon's system did not capture what was the "wrong number" in any way, an account note indicating that a debt collector reached a wrong number would be pointless.* Again, given Verizon's persistent resistance to discovery, Lofton will need some time to pry the relevant telephone numbers from Verizon.

It remains to be seen whether VKI's call logs (VKI00002-16) will help. Again, Verizon provided logs for roughly 6,430,000 calls made by VKI between January 2012 and March 2013. While these call logs contain the telephone number called, they do not contain any other information besides the date and time of the call. It is unclear Lofton has enough information to correlate telephone numbers dialed by VKI with "wrong number" notes from the CACS files.

*Vantage:* On September 13, Lofton asked Verizon what calls were contained in the call logs labeled VAN00003 (and specifically whether they were *all* numbers called by Vantage or only the "wrong numbers" called by Vantage). During the parties' September 20 conference, Verizon's counsel indicated his belief that VAN00003 were only Vantage's "wrong number" calls. On October 2, Lofton asked Verizon to produce the recordings for the 544 calls listed in VAN00003. Verizon refused and indicated it would only produce a sample of 25 recordings. Lofton declined, indicating that it was problematic to have Vantage/Verizon unilaterally limit production to a small sample of the recordings when Verizon had ignored prior inquiries as to what calls exactly were contained in VAN00003. On October 4, Verizon indicated that

> Vantage advises that the 544 calls are ALL of its collectors' conversations with California consumers between 2012 and March 2013, that code 1040 means Bad CBR, and that 117 of the 544 calls are designated 1040.

Verizon has not agreed to produce the 114 recordings identified by Vantage. Lofton needs additional time to chase down Verizon and ensure it produces these recordings as requested in the September 23 email and RPD No. 8.

Again, Vantage's call logs (VAN00003) contains only 544 calls—and apparently only 117 were made to "wrong numbers." These numbers are far too low: they are not consistent with the other evidence Lofton has collected. In its discovery responses, Verizon indicated that it assigned some 1,000,000 accounts between Collecto and VKI between June 2010 and June 2012,

1   efforts to use section 99 to obstruct Lofton from proving the extent of Verizon's IPA violations

2   in a public court of law withstand First Amendment scrutiny. (See *Jean v. Massachusetts State*

3   *Police* (1st Cir. 2007) 492 F.3d 24.) Second, the objection is grossly untimely because Verizon

4   did not make this objection in its initial response to RPD Nos. 6 and 8.[8]

5         Finally, Verizon's use of section 99 is disingenuous—Verizon has no other motivation

6   than obstructing class certification. Verizon's March 26, 2013 reply brief in support of its motion

7   for judgment on the pleadings cited *Dillon v. Massachusetts Bay Transportation Authority*,

8   *supra*, on page two to support an argument that Verizon did not violate the IPA.[9] ***This new***

9   ***objection exemplifies Verizon's disingenuous attitude towards class discovery. The letter***

10   ***Verizon's counsel lodged with the Court on September 25 contains a word-for-word transcript***

11   ***of Collecto's surreptitious recording of June 7 call to Lofton. If the concern about violating***

12   ***section 99 were at all genuine, its counsel would not have lodged that letter.***

13       *RPD No. 36*: In its September 20 letter, Verizon stated that it did not plan to supplement

14   its response to RPD No. 36 "at this time," that the parties "should explore more efficient ways to

15   accomplish your goal than this extremely burdensome request." Of course, Verizon has made no

16   effort to advance the meet and confer process or to provide the information needed to eliminate

17   false positives from the class. Lofton will need time to pry this discovery from Verizon as well.

18       **5.    Lofton Needs Time to Resolve Other Discovery Disputes**

19         Verizon's September 20 letter also indicated that, after Lofton's repeated efforts to meet

20   and confer, Verizon would not entertain any amendments to RPDs Nos. 6, 8, 9, 10, 15, 23, 25,

21   26, 27, 29, or 31, RTA Nos. 23, 27, 28, or 36, Interrogatories Nos. 2, 9 or 10, or Form

22

23   [8] (Cf. *Deary v. Superior Court* (2001) 87 Cal.App.4th 1072, 1079 [objection "must be included
     in the initial response to a production request or [other discovery], or may be deemed
24      waived"; citing, e.g., *Scottsdale Ins. Co. v. Superior Court* (1997) 59 Cal.App.4th 263, 273
     ["Courts have concluded that the Legislature requires objections in the initial response to
25      [discovery requests] to avoid waiver"]].)
  [9] Again, the Court's April 4 order directly rejected that argument, holding that *Ribas v. Clark*
26      (1985) 38 Cal.3d 355 "refused to interpret [the IPA's tariff exception] to permit undisclosed
     monitoring of a communication that would otherwise be covered by the IPA . . . [*Ribas*]
27      plainly held that the tariff exemption cannot apply when the conduct of the [equipment]
     provider is not subject to a PUC tariff." (*Lofton v. Verizon (VAW) Wireless LLC* (Super. Ct.
28      Alameda County, Apr. 4, 2013, No. RG12634618) at p. 4, 5.)

Interrogatory No. 17.1 with respect to RTA Nos. 29 and 30. Lofton has also identified defects in a number of response Verizon served on September 27 (including Verizon's responses to Interrogatory Nos. 16 and 18, RTAs Nos. 50 to 52, and the Form Interrogatories (eighth set), as well as its supplemental response to Form Interrogatory No. 15.1 (fourth set)) but has not had the opportunity to meet and confer with Verizon on these matters yet.

Verizon has extended Lofton's deadline to move to compel to December 2. Lofton has endeavored to as be measured as possible when lodging dispute letters with the Court, despite Verizon's resistance to discovery. However, unless the December 2 deadline for motions to compel is continued (as well as the January 4 class certification deadline), Lofton foresees he will be forced to flood the Court with discovery letters simply to preserve his rights to relevant discovery. Lofton would welcome any resolution the Court might offer to this situation that is not tantamount to forfeiting his motions to compel.

## B.   Verizon's Position

Verizon Wireless ("Verizon") does not oppose the plaintiff's request, "to take the (January 4, 2014) class certification deadline off calendar, and have the parties submit a joint certification on the status of class discovery prior to the next case management conference."

### 1.   Response to, "To certify the class, Lofton needs the recordings of calls to wrong numbers and the telephone numbers for those recordings."

Most of the "wrong number" Verizon accounts in this case were reported by Collecto, a collection agency which produced records for about 219,000 Verizon "wrong number" accounts in California.  Through Verizon's discovery responses, Collecto reports that it analyzed 25 randomly-selected "wrong number" accounts to find telephone numbers, and that the date, time, and telephone number of those calls were used to find recordings.  All of that work took thirteen (13) hours, and yielded only one (1) recording.  If those rates hold true, it will take nearly 114,000 hours of work to analyze 219,000 accounts, to locate about 8,800 recordings where someone said, "You called the wrong number."

Next, the recordings that the plaintiff wants from Collecto are not segregated from

1 recordings on medical accounts, credit card accounts, or other accounts.

2 Verizon contends that this class is not ascertainable. An ascertainable class exists if its

3 members can be ascertained by reference to objective criteria. James Wm Moore, Moore's

4 Federal Practice section 23.21[1], pp. 23-57 (2001 ("The identity of class members must be

5 ascertainable by reference to objective criteria.") "[W]here nothing in company databases shows

6 or could show whether individuals should be included in the proposed class, the class definition

7 fails." *Marcus v. BMW of North America* (3d Cir. 2012) 687 F.3d 583, 593; see also *Lukovsky v.*

8 *City and County of San Francisco* (N.C. Cal. 2006) 2006 WL 140574 at 2.

9 Plaintiff may "need" the recordings and the related telephone numbers, but extracting

10 those recordings from Collecto's digital database appears to be a daunting task that is replete

11 with hundreds of thousands of individual inquiries.

12 **2. Response to, "Lofton has diligently pursued class discovery."**

13 Plaintiff has served thirty (30) sets of written discovery, and Verizon (and Collecto) have

14 produced millions of requested records. Plaintiff's contention that different records are needed

15 (recordings and related telephone numbers) shows that the plaintiff's discovery has been a dead-

16 end that was not reasonably calculated to lead to the discovery of admissible or relevant evidence

17 **3. Response to, "Lofton has faced significant delays in class discovery."**

18 Verizon agrees that discovery did not really begin until the court denied its demurrer in

19 late March 2013. Since then, Verizon supplemented its responses to the back-log of written

20 discovery, has responded to numerous sets of new written discovery, and has produced millions

21 of requested records.

22 Plaintiff's brief discusses discovery generally, but identifies only one (1) specific request,

23 Request for Production no. 36. Plaintiff errs when he tells the court that "Request no. 36 seeks

24 all telephone numbers in Verizon's CACS system." In reality, Request no. 36 asks for

25 something that is very different, "Documents sufficient to identify all telephone numbers in

26 Verizon's Automated Customer Support System for each Verizon Debtor." Verizon's

27 Automated Customer Support System contains information about more than 105,000,000

28

Joint Complex Case Management Statement        18                    No. RG12634618

1  Verizon customers, which is very different from the collection system pertaining to customers
2  who don't pay their bills (CACS).  Nothing about this litigation justifies discovery of the name,
3  address, and telephone number of every Verizon customer, which is contained in the Automated
4  Customer Support System.

5      *Verizon's Disclosure Policies.*  All of Verizon's policies required a Disclosure to all
6  customers that, "Calls may be monitored or recorded for quality purposes."  During calls,
7  customers sometimes convey confidential financial information (payment card details, for
8  example).  Recordings of those calls are stored in digital databases.  In their law review article,
9  plaintiff John Lofton and his lawyer Ethan Preston wrote:

10          Society increasingly depends upon technological means of controlling
11          access to digital files and systems, whether they are military computers, bank
12          records, academic records, copyrighted works or something else entirely.  There
13          are far too many who, given any opportunity, will bypass those security measures,
14          some for the sheer joy of doing it, some for innocuous reasons, and others for
15          more malevolent purposes.

16  Malevolent indeed.  Under the plaintiff's theory, California's Invasion of Privacy Act should be
17  interpreted to compel Verizon to disclose, to non-customers, the existence of digital databases
18  where its customers' confidential financial information can be found.  Plaintiff alleges that his
19  privacy was invaded by calls, but the calls are the topic of the plaintiff's related case under the
20  Telephone Consumer Protection Act (TCPA), *John Lofton v. Collecto, Inc.*, not this case.

21      The privacy of the plaintiff (and the privacy of the class, who are all non-customers who
22  never conveyed confidential information) was not plausibly invaded by the recordings.

23      Plaintiff errs when he interprets the Invasion of Privacy Act in a way that would threaten,
24  not protect, the privacy of Verizon's customers.

25      **4.  <u>Response to, "Lofton needs additional time to complete class discovery."</u>**
26      Verizon has been telling the plaintiff to conduct discovery directly against its vendors,
27  such as Collecto, for months.  As to depositions, Verizon identified several of its vendors'
28

Joint Complex Case Management Statement        19        No. RG12634618

1  employees in discovery responses, but the plaintiff has never served a Notice of Deposition.

2  Topics on which testimony is needed would be helpful.  Plaintiff never requested a commission,

3  and now that he has filed his federal TCPA case *Lofton v. Collecto*, commissions are

4  unnecessary.

5      Plaintiff's comments about the 26 million records that Verizon produced from its CACS

6  system, his comments about "roughly 6,430,000 calls made by VKI," and his questions about

7  Vantage's document production, fail to identify any pending discovery requests.

8      Last, Massachusetts General Laws Chapter 272 Chapter 99 provides that disclosing a

9  recording that was unlawfully made is a misdemeanor.  Verizon's vendors Collecto and VKI are

10  both located in Massachusetts.  Plaintiff contends that recordings with non-customers about non-

11  confidential matters were unlawfully made.  If the plaintiff's contention is correct, then a

12  California court should consider the choice-of-law conflict between California's civil discovery

13  laws and Massachusetts' criminal laws.  None of the cases cited by the plaintiff discuss this

14  issue.

15      **5.  Response to, "Lofton needs time to resolve other discovery disputes."**

16      Verizon served supplemental responses to much of the identified discovery, which should

17  have resolved disputes.

18      As to the identified discovery, the only deficiencies that have been identified by the

19  plaintiff pertain to Request for Production no. 25 and Request for Admission no. 36.  Verizon

20  agreed to serve supplemental responses to that discovery.

21  **III.    The Parties' Preparation of this Joint Case Management Statement**

22      In an effort to facilitate the orderly and efficient preparation of the case management

23  statement, Lofton submitted the first draft of this statement to Verizon on October 11 around

24  2:45 pm and requested that Verizon provide its response by the close of business on October 14,

25  so that Lofton could revise and file the statement in a timely fashion on October 15. The parties

26  aver that (1) all of Verizon's revisions to the Joint Statement were submitted to Lofton on

27  October 14; and (2) (aside from this Section III) Lofton made no further revisions to the Joint

28

1     Statement after he received Verizon's revisions.

2       Verizon has provided its section of the Joint Case Management Statement by 5:11 pm on

3   October 14, 2013. Verizon avers that it sent its signature page after reviewing the final draft of

4   the Joint Statement by noon on October 15. Lofton then took responsibility for filing the Joint

5   Statement in a timely fashion.

6

7   Dated: October 15, 2013       By: _____

8                                 David C. Parisi (162248)
Suzanne Havens Beckman (188814)

9                                 PARISI & HAVENS LLP
15233 Valleyheart Drive

10                                 Sherman Oaks, California 91403
(818) 990-1299

11                                 Ethan Preston (263295)
PRESTON LAW OFFICES

12                                 8245 North 85th Way
Scottsdale, Arizona 85258

13                                 (480) 269-9540

14                                 *Attorneys for Lofton John Lofton, on
his own behalf, and behalf of all others*

15                                 *similarly situated*

16

17   Dated: October 15, 2013       By: _____

18                                 Charles R. Messer (101094)
David J. Kaminski (128509)

19                                 CARLSON & MESSER LLP
5959 West Century Boulevard, Suite 1214

20                                 Los Angeles, California 90045
(310) 242-2200 (telephone)

21                                 (310) 242-2222 (facsimile)
messerc@cmtlaw.com
kaminskd@cmtlaw.com

22                                 *Attorneys for Defendant
Verizon Wireless (VAW) LLC*

23

24

25

26

27

28

## PROOF OF SERVICE

1      I am employed in the County of Maricopa, State of Arizona.  I am over the age of 18 and
2  not a party to the within action; my business address is: 8245 North 85th Way, Scottsdale,
   Arizona 85258.
3

4      On October 15, 2013, I served the foregoing document described as:

**PARTIES' JOINT COMPLEX CASE MANAGEMENT CONFERENCE**
5

6  On interested parties in this action by placing ( ) the original (x) a true copy thereof enclosed in a
   sealed envelope addressed as follows:

7  Charles R. Messer                     Counsel for Verizon Wireless (VAW) LLC
   Carlson & Messer LLP
8  5959 West Century Boulevard, Suite 1214
   Los Angeles, California 90045
9

10 **VIA U.S. MAIL**

                               Counsel for John Lofton
11 David C. Parisi
   Parisi & Havens LLP
12 15233 Valleyheart Drive
   Sherman Oaks, California 91403
13

14 **VIA EMAIL ONLY**

15 [x]   **(BY MAIL)**  I am "readily familiar" with the firm's practice of collection and processing
        correspondences for mailing.  Under that practice it would be deposited with the U.S.
16        Postal Service on that same day with postage thereon fully prepaid at Scottsdale, Arizona
        in the ordinary course of business.  I am aware that on motion of the party served, service
17        is presumed invalid if postal cancellation date or postage meter date is more than one day
        after date of deposit for mailing in affidavit.
18

  [ ]   **(BY EMAIL)**  By causing this document to be delivered in pdf format to the email
19        addresses of the persons identified above.

20

21     Executed on October 15, 2013, at Scottsdale, Arizona.

22     I declare under penalty of perjury under the laws of the State of California that the above
   is true and correct.

23

24                       Ethan Preston

25

26

27

28