Charles R. Messer (SBN 101094)
Messerc@cmtlaw.com
David J. Kaminski (SBN 128509)
Kaminskid@cmtlaw.com
Stephen A. Watkins (SBN 205175)
Watkinss@cmtlaw.com
CARLSON & MESSER LLP
5959 W. Century Blvd., Suite 1214
Los Angeles, CA  90045
(310) 242-2200 Telephone
(310) 242-2222 Facsimile

Attorneys for Defendant,
COLLECTO, INC.

## UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: COLLECTO, INC. TELEPHONE CONSUMER PROTECTION ACT (TCPA) LITIGATION<br><br>This document relates to all Member Actions | ) ) ) ) ) ) ) ) ) ) |

MDL No. 14-md-2513-RGS

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

DATED: August 31, 2015                    CARLSON & MESSER LLP

By:  /s/  Charles R. Messer
   Calif. Bar No. 101094
   David J. Kaminski, Esq.
   Calif. Bar No. 128509
   Stephen Watkins, Esq.
   Calif. Bar No. 205175
   CARLSON & MESSER LLP
   5959 W. Century Boulevard, Suite 1214

{00036824;1}

Los Angeles, CA 90045
Telephone: (310) 242-2200
Facsimile: (310) 242-2222
Email: kaminskid@cmtlaw.com
Email: MesserC@cmtlaw.com
Email: WatkinsS@cmtlaw.com
Lead Counsel for Defendant Collecto, Inc.

Defendant Collecto, Inc. ("Collecto") submits this Memorandum of Law in support of its Motion for Summary Judgment. Reference is made throughout to Collecto's Statement of Undisputed Material Facts ("SOF"), which is submitted simultaneously herewith.

## I.   INTRODUCTION.

Plaintiff's John Lofton ("Lofton") claims in this case are based on defendant Collecto, Inc. ("Collecto") calls to a Verizon Wireless debtor (who Lofton does not know) by dialing Lofton's 415-cell-phone-number. He alleges that Collecto used an Automatic Telephone Dialing System ("ATDS") to dial those calls, and that Collecto is liable under the Telephone Consumer Protection Act, 47 U.S.C. sections 227 *et seq.* ("TCPA") because it used an ATDS to call his cell-phone-number without his consent. Similarly, Plaintiff Robert Pegg ("Pegg"), alleges that Collecto's calls to his phone number in an attempt to reach a debtor J.E. violated the TCPA because Collecto used an ATDS.

Collecto is entitled to summary judgment as to Lofton and Pegg's Complaints because the equipment that it used to dial their alleged phone numbers does not constitute an ATDS under the TCPA. Collecto is also entitled to summary judgment as to Plaintiffs Richard and Ralph Davenport's (collectively "Davenports") TCPA claims based on calls made by Collecto prior to July 23, 2009 based on the four-year statute of limitations for TCPA claims

## II.   STANDARD OF REVIEW ON A MOTION FOR SUMMARY JUDGMENT.

A court may grant a motion for summary judgment "if the pleadings, depositions, and answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Lipsett v. University of Puerto Rico*, 864 F.2d 881, 894 (1st Cir. 1988). When considering motions for summary judgment, the court must

draw all reasonable inferences from the admissible evidence in the light most favorable to the non-moving party. *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 743 (1st Cir. 1995). Such "inferences, to qualify, must flow rationally from the underlying facts; that is, a suggested inference must ascend to what common sense and human experience indicates is an acceptable level of probability." *Id.*

The moving party must initially show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A fact is 'material' if a dispute over it might affect the outcome of a suit under the governing law; factual disputes that are 'irrelevant or unnecessary' do not affect the summary judgment determination." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

For factual issues on which the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden of production in two ways: present affirmative evidence that negates an essential element of the nonmoving party's claim or demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 331, 106 S.Ct. at 2557.

Once a defendant satisfies its threshold burden, the plaintiff must come forward with admissible evidence demonstrating issues of material fact, that, if resolved in plaintiff's favor, would support a judgment of liability. *See Matsushita Elect. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) and *Collins by Shepler v. Nw. Airlines, Inc.*, 875 F. Supp. 64, 66 (D. Mass. 1995) (citing *Celotex*, 477 U.S. at 332, 106 S.Ct. at 2552). The non-moving party's opposition must consist of more than mere unsupported allegations or denials and must be supported by affidavits, declarations or other competent evidence, setting forth specific facts

showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  If the non-movant's

evidence is 'merely colorable' or not 'significantly probative,' summary judgment may be

granted.  *Anderson v. Liberty Lobby, supra,* at 249-250.

**III.   THE TCPA**

The TCPA's legislative history illustrates that the statute was enacted to address

Congress' concern regarding "the increasing number of telemarketing firms in the business of

placing telephone calls, and the advance of technology which makes automated phone calls more

cost-effective."  S. Rep. 102-178 at 2 (1991), *reprinted* in U.S.C.C.A.N. 1968, 1969; *see also*

Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 (recognizing the intrusive

nature of unrestricted telemarketing).  Congress' focus on bulk, automated telemarketing and

advertising campaigns is clearly articulated in the House report, which describes the proliferation

of unsolicited, automated calls and prerecorded messages filling answering machines and

voicemail services, placing bulk calls for mass advertising campaigns, and endlessly tying up

telephone lines, including emergency lines and unlisted telephone numbers, by "seizing" the line

and not releasing it until the prerecorded message is played, even if the recipient hangs up.  *See*

*S. Rep.* 102-178 at 1, 10-11 (1991); *Ibey v. Taco Bell Corp.*, No. 12-CV-0583-H WVG, 2012

WL 2401972, at *3 (S.D. Cal. June 18, 2012) ("The TCPA's statutory and legislative history

emphasize that the statute's purpose is to prevent unsolicited automated telemarketing and bulk

communications.") (citing S. Rep. 102–178, at 4–5.)

In this regard, Ninth Circuit has emphasized that courts should look to the circumstances

surrounding calls to determine whether such calls "run afoul of the TCPA," and in so doing,

should "approach the problem with a measure of common sense."  *Chesbro v. Best Buy Stores,*

*L.P.*, 697 F.3d 1230  (9th Cir. 2012).  As shown below, the calls made by Collecto to Lofton and

Pegg were not telemarketing calls and were not made with telephone equipment that constitutes an ATDS under the plain language of statute. Summary judgment should be granted in favor of Collecto.

## IV.   COLLECTO DID NOT USE AN ATDS TO MAKE THE ALLEGED TELEPHONE CALLS

The elements of a TCPA claim are thus: (1) the defendant called a cellular telephone; (2) using an ATDS; (3) without the recipient's prior express consent. *Jones v. FMA Alliance Ltd.*, 978 F. Supp. 2d 84, 86 (D. Mass. 2013). Therefore it is Lofton and Peggs's burden to establish that Collecto used an ATDS to call them. As shown below, they cannot meet that burden at trial, and summary judgment should be granted.

### A.   The TCPA Defines An Automatic Telephone Dialing System (ATDS).

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), prohibits the use of Automatic Telephone Dialing Systems to make certain telephone calls to cell phones. As it applies here, the TCPA makes it unlawful,

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A).

The TCPA defines an automatic telephone dialing system ("ATDS") as follows:

(a) Definitions: As used in this section—

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
>
>> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and

(B) to dial such numbers.

47 U.S.C. § 227(a)(1).

The Federal Communications Commission ("FCC") has adopted this definition in its regulations. *See* 47 C.F.R. 64.1200(f)(2).

The FCC has also asserted that the definition of an ATDS includes telephone equipment with the capacity to dial phone numbers without "human intervention." *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd 14014, 14092 (July 3, 2003) ("2003 Ruling"); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd 559, 566 (Jan. 4, 2008) ("2008 Ruling"); *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 F.C.C. Rcd. 7961 (July 10, 2015) ("2015 Ruling").

As discussed below, under the standard rules of statutory interpretation, the definition of an ATDS has been held to be clear and unambiguous, and therefore there is no need to refer to the more expansive FCC definition. *Satterfield v. Simon & Schuster,* 569 F.3d 946, 951 (9th Cir. 2012).

Lofton's Complaint alleges that that Collecto violated the TCPA by using an ATDS to call his, and class members' cell phones. Lofton alleges that Collecto's equipment is, "capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. The predictive dialers otherwise constitute an 'automatic dialing system' under the meaning of 47 U.S.C. § 227(a)(1)." (Lofton Complaint, ¶ 33.) Pegg also alleges that Collecto called him with an ATDS in violation of the TCPA. (Pegg Complaint, ¶¶ 17-20.)

As shown below, under the unambiguous language of the statute or FCC commentary, the telephone equipment used by Collecto to dial Lofton and Pegg's alleged phone numbers does

not constitute an ATDS.  Summary judgment should be granted as to the Lofton and Pegg complaints.

**B.**    <u>**There is no Evidence that the Telephone Equipment Used by Collecto Was**</u>
<u>**an ATDS Under the Statutory Definition**</u>

The First Circuit has not addressed whether the definition of an ATDS is unambiguous. The Ninth Circuit Court of Appeals is the only Circuit to have addressed this issue, it ruled that the statute is unambiguous.  *Satterfield v. Simon & Schuster*, 569 F.3d 946, 951 (9th Cir. 2009). The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers." 47 U.S.C. § 227(a)(1).  The Ninth Circuit has held that the focus must be on the equipment's capacity to do these things, not whether the equipment actually stored, produced, or called randomly or sequentially generated telephone numbers.  *Satterfield*, 569 F.3d at 951.

Following *Satterfield*, the Southern District of California in *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) *reconsideration denied*, No. 14-CV-348 BAS BLM, 2014 WL 6632810 (S.D. Cal. Nov. 20, 2014) held that the phrase "random sequential number generator" was an essential part of the definition of an ATDS.  The Court in *Marks* also specifically defined "random or sequential number generator" as to refer to the creation of the numbers called, not the order in which the numbers are called.

> **"Random or sequential number generator" cannot reasonably refer broadly to any
> list of numbers dialed in random or sequential order, as this would effectively
> nullify the entire clause**.  This phrase's inclusion requires it to have some limiting effect.
> When a court construes a statute it should, if possible, do so as to prevent any clause,
> sentence, or word, from being superfluous or insignificant. Id. citing Alaska Dep't of
> Envtl. Conservation v. Envtl. Prot. Agency, 540 U.S. 461, 468 n. 13, 124 S.Ct. 983, 157
> L.Ed.2d 967 (2004); Cooper Indus., Inc. v. Aviall Services Inc., 543 U.S. 157, 166, 125
> S.Ct. 577, 160 L.Ed.2d 548 (2004) (courts are "loathe" to render part of a statute
> superfluous).

*Id.* at 1293. (emphasis added).

Another crucial point made by the *Marks* court is that Congress never authorized the

FCC to modify its statutory definition of an ATDS. See *Marks, supra,* 55 F.Supp.3d at 1255.

The *Satterfield* and *Marks* decisions are consistent with the principals of *Chevron*

deference. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–

43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). Pursuant to *Chevron* deference, the judiciary

is the final authority on issues of statutory construction and must reject administrative

constructions that are contrary to clear congressional intent. *Id.* at 843, n. 9. Where the statute is

clear on its face, the Court, as well as the agency, must apply the statute as Congress wrote it.

*See Nat'l Cable & Telecomms. Ass'n v. Gulf Power Co.*, 534 U.S. 327, 333 (U.S. 2002) ("This is

our own, best reading of the statute, which we find unambiguous. If the statute were thought

ambiguous, however, the FCC's reading must be accepted nonetheless, provided it is a

reasonable interpretation."). A statute that is unambiguous "means that there is 'no gap for the

agency to fill' and thus 'no room for agency discretion.'" *United States v. Home Concrete &*

*Supply, LLC*, 132 S. Ct. 1836, 1843-1844, 182 L. Ed. 2d 746 (2012). This is the first step of the

two-step *Chevron* analysis.

Under the second step of *Chevron* analysis, "[I]f the statute is silent or ambiguous with

respect to the specific issue, the question for the court is whether the agency's answer is based on

a permissible construction of the statute." *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. As in this

case, this step is not always necessary. *See, e.g., Neang Chea Taing v. Napolitano*, 567 F.3d 19,

23 (1st Cir. 2009) (holding that plain language of Immigration and Nationality Act was clear and

stopping at first set of *Chevron* analysis without reaching interpretation of United States

Citizenship and Immigration Service). The definition of an ATDS is clear and unambiguous

(*See Satterfield*, *supra*), and there is no need to refer to FCC rulings to interpret the definition of an ATDS.  *See, e.g., Marks, supra; Ibey*, 2012 WL 2401972, at *3 ("Further, Plaintiff's allegation that there "was no human intervention on the part of the Defendant" does not satisfy or allege the requirements of the statute.");  *Flores v. Adir Int'l, LLC*, No. CV1500076ABPLAX, 2015 WL 4340020, at *5 (C.D. Cal. July 15, 2015) (following *Marks* and holding that the definition of an ATDS requires a random or sequential number generator); *Dominguez v. Yahoo!, Inc.*, 8 F.Supp.3d 637, 643–44 (E.D.Pa. 2014) (granting motion for summary judgment whereby plaintiff did not establish defendant used ATDS under statutory definition and characterizing reference to FCC definition as "misleading"); *Petitt v. U.S. Bank Nat. Ass'n*, No. 8:14-CV-961-T-33TGW, 2014 WL 3053240, at *2 (M.D. Fla. July 7, 2014)(granting motion to dismiss TCPA claim where plaintiff's allegations did not satisfy statutory definition of an ATDS).

On this record, the FCC's ATDS-Rules that imply that predictive dialers are ATDS's is an unreasonable and impermissible construction of the TCPA.  The Declaration of Ellis K. Cave shows that predictive dialers were widely used when the TCPA was enacted in 1991.  (SOF ¶¶ 58-70.)  Plaintiffs' own expert Randall Snyder agreed with that.  (SOF ¶¶ 57-58.)  But Congress clearly specified that an ATDS must include a number generator, see 47 U.S.C. section 227(a), and in doing so, implicitly approved (or at least did not make unlawful) the use of predictive dialers that did not use number generators.

Relying on the FCC's ATDS-Rules  would contradict the U.S. Supreme Court's recent pronouncement in *Utility Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2446, 189 L. Ed. 2d 372 (2014) which "reaffirm[ed] the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate."  As noted

by Judge Bashant in *Marks*, reliance on the FCC rulings reads the phrase "random or sequential" number generator" out of the statute. *Marks*, 55 F. Supp. 3d at 1291-92.

The calls placed to Plaintiffs were not randomly placed, nor were they placed sequentially. (SOF ¶¶ 50-55.) Plaintiffs offer no evidence that the equipment used to call them had the capacity to make calls randomly or sequentially. (SOF ¶ 56.) The calls were placed via the Noble Dialer (Lofton/Davenports) and GC Dialer (Pegg) in an effort to collect upon accounts for debtors K.B., J.N. and J.E respectively. (SOF ¶¶ 1-10.) Lofton and Peggs's phone numbers were neither randomly nor sequentially generated by the Noble or GC Dialer, nor could they have been given that those dialers only can make calls to numbers linked to collection accounts. (SOF ¶¶ 17-24, 41-43.)

Plaintiff's expert has testified that he had "no opinion" as to whether or not Collecto's Noble and GC dialers "ha[ve] the capacity, one, to store or produce telephone numbers to be called using a random or sequential number generator." (SOF ¶ 56.) This does not meet the standard under *Anderson* of showing evidence beyond "merely colorable" or "significantly probative" whereby summary judgment should not be granted. *Anderson, supra*, at 249-250. This is in line with the Eastern District of Pennsylvania's decision in *Dominguez*, 8 F.Supp.3d at 643-4, whereby the plaintiffs' expert in that case (Randall Synder, same as in this case) provided an expert opinion similar to that in this case. In granting summary judgment for the defendant, the Eastern District of Pennsylvania held that Mr. Synder's opinion was insufficient to establish that the defendant used an ATDS:

> "Mr. Snyder's conclusion that the equipment used by the Defendant has the capacity to store or produce cellular telephone numbers to be called, using a random or sequential number generator, or from a list of telephone numbers cannot be relied on to dispute Mr. Gopalkrishna's Declaration. *Mr. Snyder conveniently added the addition disjunctive phrase "or from a list of telephone numbers" to his declaration—a phrase that appears nowhere in the statutory*

***definition of an ATDS. Snyder Decl. ¶ 64 (emphasis added). The inclusion of
this additional phrase is misleading***. Moreover, including this additional
language renders Mr. Snyder's Declaration entirely unreliable on this point, since
it does not address the necessary inquiry here: whether Yahoo's system constitutes
an ATDS as defined by the statute.

*Id.* (emphasis added).

Therefore Lofton and Pegg have no evidence that Collecto used an ATDS, and therefore

summary judgment should be granted as their TCPA claims. *See Dominguez, supra. See also*

*Marks,* 55 F. Supp. 3d at 1292 (granting summary judgment and holding "Thus, because the

Textmunication platform lacks a random or sequential number generator, it is not currently an

ATDS."); *Hilgenberg v. Elggren & Peterson*, No. 2:13-CV-1086, 2015 WL 4077765, at *7 (D.

Utah July 6, 2015) (granting summary judgment on TCPA claim due to plaintiff's "failure to

provide evidence that the law firm's phone system has autodialer capacity").

V.   **IF THIS COURT ADDRESSES THE FCC'S RULINGS, COLLECTO REQUESTS
      THAT THIS CASE BE DISMISSED FOR LACK OF SUBJECT MATTER
      JURISDICTION**

A.     **The FCC's Rulings Should Not Receive Deference by the Court**

1.     **Congress Did Not Intend to Impose TCPA Liability for Telephone Numbers
        Linked to Collection Accounts**

If Congressional intent cannot be ascertained under traditional methods of construction,

then the interpretation provided by the agency responsible for administering the statute is entitled

to deference "as long as its interpretation is rational and consistent with the statute." *City of

Boston v. U.S. Dep't of Hous. & Urban Dev.*, 898 F.2d 828, 831 (1st Cir. 1990) [Hereafter

"*HUD*"]. "'The traditional deference courts pay to agency interpretation is not to be applied to

alter the clearly expressed intent of Congress.' " *Dole v. Steelworkers*, 494 U.S. 26, 43, 110

S.Ct. 929, 938, 108 L.Ed.2d 23 (1990) (*quoting Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986)).

Congress' intent not to impose TCPA liability for calls from telephone numbers linked to accounts is implied by the legislative history of the TCPA.  This Congressional intent can be inferred from Congress' selection of a definition from a choice of options.  *See, e.g., Trustees of Amalgamated Ins. Fund v. Danin*, 648 F. Supp. 1142, 1146 (D. Mass. 1986).  In that case, the District of Massachusetts held the legislative history of ERISA did not directly address the definition of "employer" used in the ERISA statute.  The Court held that "relevant legislative intent" could be inferred from Congress' selection of a definition of 'employer' that had been the subject of judicial interpretation.  It held that because Congress chose the FLSA definition of "employer" rather than the more limited Taft-Hartley language, "this court finds that Congress intended that the ERISA definition of 'employer' be interpreted in a manner consistent with the interpretation of the FLSA definition of 'employer.'"  *Id.* at 1146-47.  *See also HUD*, 898 F.2d at 829 (holding that HUD's interpretation of 42 U.S.C. § 5311(a) of the Housing and Community Development Act was inconsistent with intent of Congress).

Congress made a similar choice in defining an ATDS from several possible options, including automated calls linked to accounts.  Plaintiff's expert, Randall Synder concedes that automated calling systems that were linked to lists or accounts were used as early as 1989 (SOF ¶¶ 57-58.), and that these systems were used by banks and other creditors for debt collection.  *Id.* At the time the TCPA was enacted, Congress was clearly aware of autodialers that used number generators:

--"Having an unlisted number does not prevent those telemarketers that call numbers randomly or sequentially"

--"some automatic dialers will dial numbers in sequence, thereby tying up all the lines of a business and preventing any outgoing calls"

S. Rep. 102-178 at 2.

Moreover, Congress was aware of autodialers that called from accounts when during the consideration of the bill that eventually became the TCPA:

--"We include in this bill an exemption for businesses that have an established business relationship with their customers. For example, if Citibank's credit card operation needed to inform customers about new services it intended to provide to their credit card customer, clearly this contact would be allowed." 137 Cong. Rec. S18317-01, 1991 WL 250460.

--"The purpose of this legislation is to prohibit cold calls by any telemarketer to the telephone of a consumer who has no connection or affiliation with that business." 137 Cong. Rec. S16809-02, 137 Cong. Rec. S16809-02, 1991 WL 238355

If automated dialers that called from lists did not exist in 1991, it would not make sense to exempt calls for businesses such as banks.  It would also not make sense to permit prior express consent as a defense for automated calls if there was no effective way to limit automated calls to those persons for which there was consent.  (*See also* SOF ¶¶ 57-70. )  The FCC was also aware of automatic dialing from lists prior to 2003. *See, e.g., In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, ¶ 19 (1995) ("Household correctly points out that debt collection calls "are not directed to randomly or sequentially generated telephone numbers, but instead are directed to the specifically programmed contact numbers for debtors.")

By singling out autodialers that used number generators, Congress implicitly approved banks' use of auto-dialers that called from a database.  This choice of a definition of an ATDS

{00036824;1}

tied to use of random or sequential generator from a variety of ATDS definition options represents legislative intent. *See Trustees*, 648 F. Supp. at 1147. Imposing TCPA liability based on FCC ATDS-Rules that are contradicted by the legislative intent of the statute should be denied.

**2.      The evidence is undisputed that the FCC's ATDS-Rules are based on a false premise.**

The FCC's 2003 Ruling based its expansive ATDS definition in part on the grounds that "Congress anticipated that the FCC, under its TCPA rulemaking authority, may need to consider changes in technologies." 2003 Ruling, 18 F.C.C.R. 14014 ¶¶ 131-2. However, both Plaintiffs (SOF ¶¶ 57-58) and Collecto (SOF ¶¶ 58-70) agree that the technology to call telephone numbers from databases existed long before 2003, and was widely used by banks and creditors before the TCPA was enacted in 1991. *See also* 137 Cong. Rec. S16809-02, 1991 WL 238355137 Cong. Rec. S18317-01, 1991 WL 250460)

Therefore the assertion that telephone equipment other than that statutorily defined as an ATDS should be considered to be an ATDS is improper as it is based on false statements regarding "changes in technologies." *See, e.g., Frisby v. HUD*, 755 F.2d 1052, 1055 (3d Cir. 1985) (holding "[i]n deciding whether the agency action is rational, a reviewing court must determine whether the agency considered the relevant data and whether the agency relied on factors Congress intended it to consider.") Clearly the FCC did not consider the relevant data, and the FCC's rulings based on "changes in technologies" cannot apply to predictive dialers that were widely used for a decade before the TCPA was enacted.

### 3.     The FCC's ATDS-Rules Were Not Authorized by Congress.

"[W]here statutes are ambiguous, courts will defer to rules and regulations promulgated by the agency charged with administering the statute, so long as that agency does not act arbitrarily or capriciously or ***exceed the bounds of authority delegated to it in the statute***." *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1246 (11th Cir. 2006) (citing *Chevron*, 467 U.S. 837, 842–43) (emphasis added).  Collecto asserts that the FCC's rulings as to the definition of an ATDS lack any authority[1].  It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988).  "The starting point for [inquiring if Congress authorized the regulation] is, of course, the language of the delegation provision itself." *Gonzales v. Or.*, 546 U.S. 243, 258, 126 S.Ct. 904, 163 L.Ed.2d 748 (2006). The definition of an ATDS is set forth in 47 U.S.C. 227(a).  Congress has charged the FCC with rule-making authority under the TCPA (§ 227(b)(2)), but not with respect to subsection 47 U.S.C. § 227(a).  *See, e.g., Merch. & Gould, PC v. Premiere Global Servs., Inc.*, 749 F. Supp. 2d 923, 935 (D. Minn. 2010) ("The TCPA authorizes the FCC to issue regulations to implement subsection (b) of the statute.").  The FCC has no authority to modify or definitively interpret any language in § 227(a) of the TCPA. *Marks*, 55 F. Supp. 3d at 1293.  Therefore, this Court is not bound to refer to the FCC's definition of a dialer. *See, e.g., Trejo v. Ryman Hospitality Properties, Inc.*, No. 14-1485, 2015 WL 4548259, at *1 (4th Cir. July 29, 2015) (affirming district court granting of motion to dismiss and noting district court held certain Department of

---

[1] On July 13, 2015, ACA International, a trade organization for collection agencies, filed an appeal of FCC's July 10, 2015 Order to the D.C. Circuit of Appeals. *ACA International, v. FCC*, Case No. 15-1211 (D.C.Cir. filed July 13, 2015).  The appeal asserts that the FCC lacked authority to redefine the statutory definition of an ATDS.

{00036824;1}

Labor regulations "exceeded [the Department of Labor's] authority and ... don't get past step 1 of the Chevron analysis in terms of deference.")

**B.     Collecto Requests Summary Judgment for Lack of Subject-Matter Jurisdiction**

Collecto asserts that *Chevron* deference to the FCC's ATDS-Rules is unnecessary, inappropriate, and unjust. *Chevron* deference is particularly inappropriate where the Rules were not authorized by Congress and are based on a false idea that predictive dialers are a change in technology.

However, if this Court holds that *Chevron* deference with respect to the FCC's rulings triggers the Hobbs Act (and this will likely be a focus of the plaintiffs' opposition), Collecto respectfully requests that summary judgment be granted as to Lofton and Pegg's Complaints for lack of subject matter jurisdiction.  Summary judgment, as opposed to a Rule 12 motion, is the proper remedy because so many facts are needed to illustrate the jurisdictional issue.  *See, e.g., Gonzalez v. United States*, 284 F.3d 281, 287 (1st Cir. 2002), *as corrected* (May 8, 2002) (holding "[a] Rule 12(b)(1) motion is sometimes transformed into a Rule 56 motion where jurisdictional issues cannot be separated from the merits of the case").

For this Court to hold that it has jurisdiction to decide Collecto's motion for summary judgment, but hold that it does not have jurisdiction to address the validity of the FCC's ATDS-Rules would be fundamentally unfair and violate Collecto's right to due process.  The Sixth Circuit in *United States v. Any and All Radio Station Transmission Equipment*, 204 F.3d 658 (6th Cir. 2000) ("*Maquina Musical* ") supports Collecto's contention that dismissal is the proper remedy.  *Maquina Musical* involved a government action in district court that sought the forfeiture of broadcasting equipment used by the unlicensed microbroadcaster.  *Id.* at 663, 666–

68.  Under applicable law, the government could seize broadcasting equipment that was knowingly used to broadcast without a license. *Id.* at 666.  Maquina Musical argued in defense that 47 C.F.R. § 73.512(c)—a FCC regulation that effectively barred new microbroadcasting licenses from being issued—"was an unconstitutional prior restraint on speech." *Id.* at 662, 666–67.

The district court held "that it lacked jurisdiction to entertain Maquina Musical's constitutional defenses because 28 U.S.C. § 2342 provides that the courts of appeals have exclusive jurisdiction 'to enjoin, set aside, suspend ... or to determine the validity of ... all final orders of the [FCC].' " *Id.* at 667 (alterations in original).  The Sixth Circuit disagreed with that holding and expressed concern that such interpretation of the statutory scheme would allow the government to seize Maquina Musical's property while simultaneously denying Maquina Musical the ability to contest the "legal basis of the government's forfeiture case." *Id.*

These type of due process concerns in *Maquina Musical* are present in this case.  Collecto did not select the forum (the district courts), and Collecto has a constitutional due process right to a hearing on the merits of all of its available defenses, prior to judgment.  If the hearing must be in the Court of Appeals, then judgment for lack of the district court's jurisdiction as to the Lofton and Pegg complaints is the correct procedural remedy that allows the plaintiffs to choose whether to pursue their ATDS claims in a court that has jurisdiction.

Judgment for the defendant for lack of subject matter jurisdiction, and an appeal by the plaintiffs to the Court of Appeal, is a fair ruling that protects both parties' rights to a hearing on the merits.

## VI.    COLLECTO DID NOT USE AN ATDS EVEN UNDER THE FCC'S ATDS-RULES

Although Collecto maintains that the FCC's ATDS-Rules are irrelevant, Collecto also maintains that the FCC never stated that the statutory reference to a random or sequential number generator should be ignored.  While the FCC's 2003 Report and Order stated that a party could not circumvent TCPA liability by using a predictive dialer, and within that context added that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention," the FCC never ruled that such equipment need not meet the statutory definition of an ATDS.  *See* 2003 Ruling 18 FCC Rcd. 14014, ¶¶ 131-33 (finding that "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result").  The FCC stated that it sought to "ensure that the prohibition on autodialed calls not be circumvented."  *Id.* at ¶ 132 (citing to the statutory definition of an ATDS).

Accordingly, a predictive dialer that has the "random" and "sequential" features turned off (but nonetheless has the requisite capacity under the statute) should not be able to circumvent the TCPA just because it dials numbers from a database of numbers.  *See id.* at ¶ 133.  It does not, however, follow that a device that dials numbers from a list constitutes an ATDS even if it does not have the capacity to generate numbers randomly or sequentially, which is a misreading of the FCC documents and inconsistent with Ninth Circuit's decision in *Satterfield.  See Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192 (W.D. Wash. 2014), reconsideration denied (Feb. 28, 2014) (declining to adopt an interpretation of ATDS "that would lead to an absurd result," where plaintiff, on the basis of Randall Snyder's opinions, argued that the modem used by defendant's computer system had the ability to store multiple phone numbers and transmit a

mass text message to those numbers) (citing *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 584 (1982) (noting that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available").

Even if the FCC definition is held not to require a random or sequential number generator, the telephone equipment used to call Lofton and Pegg required human intervention. Human intervention includes "human curation." *Marks,* 55 F. Supp. 3d at 1292. In *Marks,* the Court held that the manually uploading of a phone number onto a third-party web-based platform to send promotional text messages constituted human intervention. Similarly, in *Luna v. Shac, LLC,* No. 14-CV-00607-HRL, 2015 WL 4941781, at *4 (N.D. Cal. Aug. 19, 2015), the Northern District of California granted summary judgment for defendant, holding that human intervention was involved in several stages of the process prior to the plaintiff's receipt of the alleged unlawful text message. That case involved the operator of a gentlemen's club that engaged CallFire, a third-party mobile marketing company, to provide a web-based platform for sending promotional text messages to its customers. *Id.* at *4.

The court in *Luna* held that transferring of the telephone number into the CallFire database, drafting the message, determining the timing of the message, and clicking "send" on the website to transmit the message to Plaintiff, all supported a finding of human intervention. *Id.* Similarly, Collecto can only make calls to telephone numbers linked to collection accounts only after several steps of human intervention (SOF ¶¶ 11-16, 19, 25-28-40, 42-46), including the selection of the accounts to import into its FACS database (SOF ¶¶ 15-16) and the determination of criteria for the mapping of FACS account information into call lists. (SOF ¶¶ 25-28.)

Moreover, for the calls to be sent to Lofton/Davenports a live person needed to log-into both Collecto's network, then log into the Noble dialer, and select a Noble Dialer Group (SOF ¶ 36.) Similarly, for the calls to be made to Pegg, a live person needed to log into Collecto's network and then select a "pool" in the GC Dialer in order to send to initiate calls. (SOF ¶ 45.) Such logging and manual selection of options constitutes "human intervention" under the TCPA. *See Modica v. Green Tree Servicing, LLC.*, No. 14 C 3308, 2015 WL 1943222, at *3 (N.D. Ill. Apr. 29, 2015). In that case, the Northern District of Illinois held that the act of logging into a dialer via a computer could constitute "human intervention." The plaintiff in *Modica* argued that although defendant's representative was not logged into the Dialer when she placed calls to Plaintiffs, she had the capacity to log into the Dialer from her computer. In denying plaintiff's motion for summary judgment, the Court held defendant's representative would not have had the capacity to make auto-dialed calls unless at least one additional step was taken:

> "Ferguson would have to log into the Dialer. It is true that the additional step of logging into the Dialer is minimal–even smaller than in Dobbin. Nonetheless, Ferguson did not take that step and the equipment Ferguson used to call Plaintiffs was not capable of dialing numbers without human intervention."

*Id. See also Luna*, 2015 WL 4941781, at *4 ("Right. So the message couldn't go out unless you logged into the system? A: Correct. Q: And hit 'send'? A: Correct").

As the telephone equipment used to call Lofton and Pegg requires human intervention, summary judgment should be granted for Collecto.

## VII.   <u>DAVENPORTS' CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS</u>

The statute of limitations for a claim under the TCPA is four years. *Sparkle Hill, Inc. v. Interstate Mat Corp.*, No. CIV.A. 11-10271-RWZ, 2014 WL 2215756, at *3 (D. Mass. May 23, 2014) (citing 28 U.S.C. § 1658(a)).

Davenports' Complaint was filed on July 23, 2013. Therefore, timely claims must be based on telephone calls that were made on and after July 23, 2009. Collecto asserts that it made a call on September 9, 2008 to the number alleged to be Davenports' cell phone number. (SOF ¶ 47.) Collecto asserts that any claim for this call or any calls to Davenports prior to July 23, 2009 are time-barred. As the Davenports lack any actionable claims prior to July 23, 2009, their TCPA class claims prior to July 23, 2009 are barred as well.

## VIII.   CONCLUSION

Plaintiffs Lofton and Pegg have no evidence that the telephone equipment used to call them constitutes an ATDS under the statutory definition and their expert confirms this is the case. Imposition of TCPA liability for debt collection calls made with human intervention contravenes legislative intent and this Court lacks subject matter jurisdiction to do so. Summary judgment should be granted as to Lofton and Pegg's Complaints in their entirety. Summary Judgment should also be granted for any call by Collecto to Davenports prior to July 23, 2009 as they are time-barred by the four-year statute of limitations for TCPA claims.

### CERTIFICATE UNDER LOCAL RULE 7.1(A)(2)

Counsel for the Defendant certifies that he has conferred with Plaintiffs' counsel in advance of filing the underlying motion in a good faith attempt to resolve or narrow the issues presented herein, and Plaintiffs' counsel has stated it will not agree to the relief sought and it will oppose Defendant's Motion.

### REQUEST FOR ORAL ARGUMENT

Collecto believes that oral argument will assist the Court in the resolution of the issues presented by this motion. Therefore, Collecto requests oral argument after these issues have been fully briefed.

{00036824;1}

DATED: August 31, 2015        CARLSON & MESSER LLP

By: /s/ Charles R. Messer
Calif. Bar No. 101094
David J. Kaminski, Esq.
Calif. Bar No. 128509
Stephen Watkins, Esq.
Calif. Bar No. 205175
CARLSON & MESSER LLP
5959 W. Century Boulevard, Suite 1214
Los Angeles, CA 90045
Telephone: (310) 242-2200
Facsimile: (310) 242-2222
Email: kaminskid@cmtlaw.com
Email: MesserC@cmtlaw.com
Email: WatkinsS@cmtlaw.com
Lead Counsel for Defendant Collecto, Inc.

## CERTIFICATE OF SERVICE

I, Charles R. Messer, hereby certify that, this 31st day of August 2015, I filed the foregoing documents through the Electronic Case Filing (ECF) system and thus copies of the foregoing will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

DATED: August 31, 2015        CARLSON & MESSER LLP

By: /s/ Charles R. Messer
Charles R. Messer

{00036824;1}