**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| In re Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation | Master No. 1:14-md-2513-RGS<br>Individual Case No. 1:14-cv-10478-RGS<br><br>This Document Relates To:<br>    All Member Actions |

## PLAINTIFFS' OPPOSITION TO DEFENDANT
## COLLECTO'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs John Lofton, Robert Pegg, and Richard and Ralph Davenport (collectively,

"Plaintiffs") submit this opposition and incorporated memorandum of law to Defendant Collecto,

Inc.'s ("Collecto") motion for summary judgment ("Motion")

# TABLE OF CONTENTS

I.     Introduction ....................................................................................................................1

II.    Collecto's Dialers Are Predictive Dialers, and the FCC Has Consistently Ruled
       that Predictive Dialers Constitute ATDSs ..........................................................................2

       A.     The Evidence Is Clear That Collecto's Dialers Constitute ATDSs Under
              FCC Orders ................................................................................................... 3

       B.     "Human Intervention" Is Only Relevant When Dialing Telephone
              Numbers ...................................................................................................... 7

III.   The FCC Had Authority Under Section 201(b) Under the Federal Communication
       Act to Interpret the Definition of an ATDS .....................................................................11

IV.    This Court Does Not Have Jurisdiction to Reverse the FCC's Orders in Any
       Event ..............................................................................................................................15

       A.     The Hobbes Act Requires the Court to Follow the FCC's Orders
              Interpreting the Definition of an ATDS ............................................................. 15

       B.     *Maquina Musical* Does Not Support Dismissing this Case for Lack of
              Subject Matter Jurisdiction ............................................................................. 18

V.     Even if the Court Disregarded the FCC's Orders and Only Considered the
       TCPA's Bare Statutory Language, There Is (At Least) a Genuine Issue of
       Material Fact ...................................................................................................................21

VI.    The Davenport's Claims After July 23, 2009 are Actionable ............................................22

VII.   Conclusion .....................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adamcik v. Credit Control Servs., Inc.*,
    832 F. Supp. 2d 744 (W.D. Tex. 2011)............................................................17

*AT&T Corp. v. Iowa Utilities Bd.*,
    525 U.S. 366 (1999)........................................................................................12

*B'hood of Locomotive Eng'rs v. Boston & Maine Corp.*,
    788 F.2d 794 (1st Cir. 1986)..........................................................................15

*Bob Jones University v. Simon*,
    416 U.S. 725 (1974) argued.......................................................................19, 20

*Brown v. NRA Group, LLC*,
    No. 14-610, 2015 WL 3562740 (M.D. Fla. June 5, 2015).................................9

*CE Design, Ltd. v. Prism Business Media, Inc.*,
    606 F.3d 443 (7th Cir. 2010) ............................................................... *passim*

*Chavez v. Advantage Grp.*,
    959 F. Supp. 2d 1279 (D. Colo. 2013)..........................................................17

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*,
    467 U.S. 837 (1984)........................................................................12, 13, 14, 15

*City of Arlington, Tex. v. FCC*,
    133 S. Ct. 1863 (2013)...................................................................................12

*Davis v. Diversified Consultants, Inc.*,
    36 F. Supp. 3d 217, 226 (D. Mass. 2014) .....................................................12

*Dominguez v. Yahoo!, Inc.*,
    8 F. Supp. 3d 637 (E.D. Pa. 2014) *argued*, No. 14-1751 (3d Cir. Nov. 21, 2014)......14, 15, 18

*Echevvaria v. Diversified Consultants, Inc.*,
    No. 13-4980, 2014 WL 929275 (S.D.N.Y. Feb. 28, 2014).............................5

*FCC v. ITT World Commc'ns, Inc.*,
    466 U.S. 463 (1984)......................................................................................16

*Flores v. Adir Int'l, LLC*,
    No. 15-0076, 2015 WL 4340020 (C.D. Cal. July 15, 2015)...........................14

*Glauser v. GroupMe, Inc.*,
  No. 11-2584, 2015 WL 475111 (N.D. Cal. Feb. 4, 2015) ........................................................5

*Global Crossing Telecommc'ns, Inc. v. Metrophones Telecommc'ns, Inc.*,
  550 U.S. 45 (2007) ...........................................................................................................11

*Gragg v. Orange Cab Co.*,
  995 F. Supp. 2d 1189 (W.D. Wash. 2014) .................................................................9, 10, 11

*Griffith v. Consumer Portfolio Serv., Inc.*,
  838 F. Supp. 2d 723 (N.D. Ill. 2011) ...................................................................... *passim*

*Ibey v. Taco Bell Corp.*,
  No. 12-0583, 2012 WL 2401972 (S.D. Cal. June 18, 2012) .................................................14

*Jamison v. First Credit Servs., Inc.*,
  290 F.R.D. 92 (N.D. Ill. 2013)) ...........................................................................................17

*Johnson v. Yahoo!, Inc.*,
  No. 14-2028, 2014 WL 7005102 (N.D. Ill. Dec. 11, 2014) ...........................................7, 10, 18

*Lambert v. Buth-Na-Bodhaige, Inc.*,
  No. 14-00514, 2014 WL 4187250 (E.D. Cal. Aug. 21, 2014) ...............................................13

*Lardner v. Diversified Consultants Inc.*,
  17 F. Supp. 3d 1215, 1222 (S.D. Fla. 2014) .............................................................4, 6, 13, 14

*Leckler v. Cashcall, Inc.*,
  No. 07-04002, 2008 WL 5000528 (N.D. Cal. Nov. 21, 2008) ........................................17, 21

*Legg v. Voice Media Grp., Inc.*,
  20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014) ..........................................................................5

*Leyse v. Clear Channel Broadcasting, Inc.*,
  545 Fed. App'x. 444 (6th Cir. 2013) .......................................................................12, 16, 19

*Luna v. Shac, LLC*,
  No. 14-00607, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) ........................................10, 17

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ..............................................................................1, 12, 16

*Marks v. Crunch San Diego, LLC*,
  55 F. Supp. 3d 1288 (S.D. Cal. 2014) *appeal docketed*, No. 14-56834 (9th Cir.
  Nov. 20, 2014) ................................................................................................ *passim*

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .............................................................................................................19

*Meyer v. Portfolio Recovery Assocs., LLC*,
    707 F.3d 1036 (9th Cir. 2012) ........................................................................2, 5

*Modica v. Green Tree Servicing, LLC*,
    No. 14 C 3308, 2015 WL 1943222 (N.D. Ill. Apr. 29, 2015)................................10

*Moore v. Dish Network LLC*,
    57 F. Supp. 3d 639, 655 (N.D.W. Va. 2014) .................................................. *passim*

*Morse v. Allied Interstate, LLC*,
    65 F. Supp. 3d 407, 410 (M.D. Pa. 2014) ...................................................... *passim*

*Nack v. Walburg*,
    715 F.3d 680 (8th Cir. 2013) ..............................................................................16

*Nelson v. Santander Consumer USA, Inc*.,
    931 F. Supp. 2d 919 (W.D. Wis. 2013), *vacated per stipulation*, No. 11–307, 2013
    WL 5377280 (W.D. Wis. June 7, 2013) ..............................................................17

*NLRB v. Sheraton Puerto Rico Corp.*,
    651 F.2d 49 (1st Cir. 1981)..................................................................................18

*Nunes v. Twitter, Inc.*,
    No. 14-02843, 2014 WL 6708465 (N.D. Cal. Nov. 26, 2014) ...........................5, 14

*Osorio v. State Farm Bank, F.S.B.*,
    746 F.3d 1242 (11th Cir. 2014) .............................................................................2

*Petitt v. US Bank Nat'l Ass'n*,
    No. 14-961, 2014 WL 3053240 (M.D. Fla. July 7, 2014) ....................................14

*Radar Solutions, Ltd. v. FCC*,
    628 F. Supp. 2d 714 (W.D. Tex. 2009)................................................................19

*Recovery Grp., Inc. v. Comm'r*,
    652 F.3d 122 (1st Cir. 2011)................................................................................13

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)...............................................................................................6

*Rocky Mountain Radar, Inc. v. FCC*,
    158 F.3d 1118 (10th Cir. 1998) ...........................................................................19

*Sable Commc'ns of Cal., Inc. v. FCC*,
    827 F.2d 640 (9th Cir. 1987) ...............................................................................20

*Satterfield v. Simon & Schuster, Inc.*,
    569 F.3d 946 (9th Cir. 2009) ...............................................................6, 13, 14, 21

*Schumacher v. Credit Prot. Ass'n*,
No. 13-00164, 2015 WL 5786139 (S.D. Ind. Sept. 30, 2015)..........................................4, 8, 9

*Sherman v. Yahoo! Inc.*,
997 F. Supp. 2d 129 (S.D. Cal. 2014) ....................................................................................14

*Smith v. Markone Fin., LLC*,
No. 13-933, 2015 WL 419005 (M.D. Fla. Feb. 2, 2015) ..........................................................4

*Sparkle Hill, Inc. v. Interstate Mat Corp.*,
No. CIV.A. 11-10271-RWZ, 2014 WL 2215756 (D. Mass. May 23, 2014), *aff'd*,
788 F.3d 25 (1st Cir. 2015) ...................................................................................................22

*Sterk v. Path, Inc.*,
46 F. Supp. 3d 813, 819-20 (N.D. Ill. 2014) ..................................................................4, 9, 10

*United States v. Any and All Radio Station Transmission Equipment*,
204 F.3d 658 (6th Cir. 2000) ...........................................................................................18, 19

*United States v. Baxter*,
No. 10-00435, 2011 WL 1988437 (D. Me. May 23, 2011) ....................................................19

*United States v. Woods*,
134 S. Ct. 557 (2013).............................................................................................................6

*W. Radio Servs. Co. v. Qwest Corp.*,
678 F.3d 970 (9th Cir. 2012) ...............................................................................................21

*Walker v. Transworld Sys., Inc.*,
No. 14-588, 2015 WL 631390 (M.D. Fla. Feb. 13, 2015) ......................................................2

*Weinberger v. Salfi*,
422 U.S. 749 (1975)..............................................................................................................20

**Statutes**

28 U.S.C. § 2342.................................................................................................12, 15, 17, 21

28 U.S.C. § 2342(1).............................................................................................................17

47 U.S.C. § 201(b) ..................................................................................................... *passim*

47 U.S.C. § 227(a) .................................................................................................1, 5, 11, 17

47 U.S.C. § 227(a)(1)................................................................................................. *passim*

47 U.S.C. § 227(b) .................................................................................................11, 12, 17

47 U.S.C. § 227(b)(1)(A)(iii)..................................................................................................2

47 U.S.C. § 227(b)(2) ........................................................................................................12

47 U.S.C. § 402(a) ............................................................................................................19

47 U.S.C. § 504(a) ............................................................................................................19

Federal Communications Act of 1934 ......................................................................1, 11, 12

Hobbes Act.........................................................................................................................15

**Other Authorities**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991, 2003 Report and Order,*
    18 FCC Rcd. 14014 (July 3, 2003) ............................................................... *passim*

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991, 2015 Report and Order,*
    30 FCC Rcd. 7961 (July 10, 2015) ............................................................... *passim*

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991, Request of ACA International for Clarification and
    Declaratory Ruling,* 23 FCC Rcd. 559 (Jan. 4, 2008) ....................................3, 7, 12

Fed. R. Civ. P. 5.1 .............................................................................................................19

Fed. R. Civ. P. 5.1(a)(2).....................................................................................................19

Fed. R. Civ. P. 36(b) ..........................................................................................................3

## I.  Introduction

Collecto seeks summary judgment on Plaintiffs' claims under the Telephone Consumer Privacy Act (47 U.S.C. § 227) ("TCPA"). Collecto would prefer the Court forgot that, fourteen months ago, it tried to stay this case in anticipation of the FCC's then-pending order on the definition of an "automatic telephone dialing system" under 47 U.S.C. § 227(a)(1). (ECF No. 18.) On July 10, 2015, the FCC issued that order. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2015 Report and Order*, 30 FCC Rcd. 7961 (July 10, 2015) ("*2015 Order*"). Collecto now seeks to discredit the *2015 Order* and the FCC's other orders concerning the TCPA, because they completely undercut its Motion.[1] The FCC's orders and the cases construing those orders all support the conclusion that Collecto's dialers all constitute ATDSs.

Contrary to Collecto, the Federal Communications Act absolutely and clearly authorized the FCC to construe 47 U.S.C. § 227(a) and its definition of an ATDS. *See* 47 U.S.C. § 201(b); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1117 (11th Cir. 2014). Collecto relies very heavily on two district court cases which hold to the contrary, but these cases were remarkably ill-advised about the FCC's authority. They contradict not only to the plain language of the Federal Communications Act—they violated the Hobbs Act, which restricts jurisdiction over "set[ting] aside" or "determin[ing] the validity of" the FCC's orders to original proceedings before a Court of Appeal. 47 U.S.C. § 201(b).

But even if the Court disregarded the FCC's bright-line rule that predictive dialers constitute ATDSs, Collecto has not presented grounds for summary judgment. The dispute before the Court is not whether Collecto's dialers are random number generators, but whether

---

[1]    In its motion to stay, Collecto vociferously argued that "Congress placed the issues of capacity, and liability for 'wrong number' calls within the FCC's jurisdiction pursuant to its regulatory authority." (ECF No. 19 at 8.) Collecto also argued that "neither the TCPA nor the FCC has defined what capacity means—whether it includes . . . calls placed from equipment that lacks the current 'capacity' to store or produce randomly or sequentially generated numbers." (*Id*. at 11.) Its present arguments that (1) the FCC has no authority to interpret the definition of an ATDS and that (2) that statutory definition "clear and unambiguous" and leaves no room for FCC interpretation is disingenuous.

they can store and dial arbitrary numbers (whether or not they are actually *used* that way). It is clear that there is more than sufficient evidence to give rise to a genuine issue of fact on that point.

Some themes run through Collecto's brief which suggests potential arguments but are so vaguely articulated that Plaintiffs are hard-pressed to rebut them. Based on prior experience, however, Plaintiffs are wary that these themes may coalesce into pointed arguments in Collecto's reply, after Plaintiffs have lost the ability to respond. Hence, Plaintiffs feel compelled to note that, e.g., 47 U.S.C. § 227(b)(1)(A)(iii) applies to debt collection calls.[2] If Collecto articulates these themes in its reply brief as coherent legal arguments, Plaintiffs will seek leave to file a sur-reply.

## II. Collecto's Dialers Are Predictive Dialers, and the FCC Has Consistently Ruled that Predictive Dialers Constitute ATDSs

The FCC has explicitly ruled that predictive dialers constitute ATDSs no less than three times. "Simply put, the FCC has repeatedly found that a predictive dialer is an ATDS." *Walker v. Transworld Sys., Inc.*, No. 14-588, 2015 WL 631390, *3 (M.D. Fla. Feb. 13, 2015) (citing, e.g., *2003 Order*). *See also Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012) (holding "predictive dialers fall squarely within the FCC's definition of 'automatic telephone dialing system'"; following, quoting *2003 Order*). In 2003, the FCC ruled "the purpose of the [TCPA's definition of an ATDS] is to ensure that the prohibition on autodialed calls not be circumvented. [The FCC] finds that a predictive dialer falls within the meaning and statutory definition of "automatic telephone dialing equipment" and the intent of Congress." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, 18 FCC Rcd. 14014, 14092-93, ¶133 (July 3, 2003) ("*2003*

---

[2] "Certain TCPA provisions apply only to "telephone solicitations," and consequently those provisions do not apply to debt-collection calls. . . . But § 227(b)(1)(A)(iii) . . . 'applies regardless of the content of the call, and is not limited only to calls that constitute 'telephone solicitations.'" *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727-28 (N.D. Ill. 2011) (rejecting "argument that the TCPA only applies to telemarketing, not debt collection"). See also *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1254 (11th Cir. 2014) ("debt-collection calls are not exempt from 47 U.S.C. § 227(b)(1)(A)(iii); they are exempt only from 'the TCPA's separate restrictions on 'telephone solicitations''"; citation omitted).

*Order*"). In 2008, the FCC reaffirmed that "a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Request of ACA International for Clarification and Declaratory Ruling*, 23 FCC Rcd. 559, 566, ¶12 (Jan. 4, 2008) ("*2008 Order*"). In the *2015 Order*, the FCC "reiterate[d] that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of 'autodialer' . . ." *2015 Order*, 30 FCC Rcd. at 7972, ¶10. Likewise, the *2015 Order* expanded this bright-line test, finding

> dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") *even if it is not presently used for that purpose, including when the caller is calling a set list of consumers*.

*Id.*, 30 FCC Rcd. at 7971-72, ¶10. Each of Collecto's dialers at issue in this case and in the Motion fall under the FCC's bright-line definitions of an ATDS.

A.     **The Evidence Is Clear That Collecto's Dialers Constitute ATDSs Under FCC Orders**

Collecto's dialers fall into the FCC's definition of a predictive dialer, and therefore an ATDS. The *2003 Order* defines a predictive dialer as

> equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers.

*2003 Order*, 18 FCC Rcd. at 14091, ¶131 (quoted, reaffirmed by *2015 Order*, 30 FCC Rcd. at 7973, ¶13). The record established that each of Collecto's dialers meets this definition.

Both the Noble and GC dialers have the capacity to store lists of telephone numbers (Plaintiffs' Statement of Facts ("Pl.s' SOF", ¶¶1-2), both dialers can dial a list of telephone numbers (Pl.s' SOF ¶¶3-4), and both dialers can predictively dial telephone numbers from the stored list of telephone numbers (*id.* ¶¶5-6). Collecto's Director of Telephony Services, who testified on Collecto's behalf pursuant to Fed. R. Civ. P. 36(b), agrees with these statements. Ex. 2 to Parisi Decl., Cappola Sept. 24, 2014 Depo., 11:20-21; 59:7-18; 61:17-19; Ex. 3 to Parisi

Decl., Cappola June 24, 2015 Depo., 36:17-37:6; 48:15-24. Collecto's own expert (Dr. Adam Sorini) had never heard of a predictive dialer before reading Plaintiffs' expert's report and has no opinion whether these dialers are predictive dialers. Ex. 1 to Parisi Decl., Sorini Depo., 78:12-21; 79:12-16; 111:1-5.

Further, both the Noble and GC dialers are capable of making over two thousand call an hour (Pl.s' SOF ¶¶13 and 14), both can simultaneously dial over 275 calls at the same time (Pl.s' SOF ¶¶9, 10, 11-12), and both can automatically dial telephones in an "unattended" manner (Pl.s' SOF ¶¶7-8). These facts also meet the *2015 Order*'s broader definition of an ATDS: "the basic functions of an autodialer are to 'dial numbers without human intervention' and to 'dial thousands of numbers in a short period of time.'" *2015 Order*, 30 FCC Rcd. at 7975, ¶17 (quoting *2003 Order*, 18 FCC Rcd. at 14092, ¶133).

Courts have found equipment with these functionalities falls within the FCC and the TCPA's definitions of an ATDS. *See Schumacher v. Credit Prot. Ass'n*, No. 13-00164, 2015 WL 5786139, *8 (S.D. Ind. Sept. 30, 2015) ("[a]s has been well-established in caselaw and FCC interpretation, [a dialer] is an ATDS under the TCPA [if] it automatically dials telephone numbers from a preprogrammed list"); *Moore v. Dish Network LLC*, 57 F. Supp. 3d 639, 655 (N.D.W. Va. 2014) (equipment "is a predictive dialer under the FCC's orders if it makes calls from a stored list of phone numbers without human intervention"); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819-20 (N.D. Ill. 2014) (equipment which "calls from a stored list without human intervention is comparable to the predictive dialers that have been found by the FCC to constitute an ATDS"; "[i]t is the ultimate calling from the list by the automated equipment that is the violation of the TCPA"); *Smith v. Markone Fin., LLC*, No. 13-933, 2015 WL 419005, *3 (M.D. Fla. Feb. 2, 2015) (system which "automatically dials numbers from a downloaded list and predicts when a collection agent will be available to pick up the call, it is a predictive dialer and an ATDS"); *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1222 (S.D. Fla. 2014) (recognizing "[m]any other courts . . . have followed the FCC's interpretation that automated dialing systems that automatically dial cell phone numbers from a preprogrammed list"

constitute ATDSs; citing, e.g., *Meyer*, 707 F.3d at 1043); *Nunes v. Twitter, Inc.*, No. 14-02843, 2014 WL 6708465, *1 (N.D. Cal. Nov. 26, 2014) (definition of ATDS "encompass[es] any equipment that stores telephone numbers in a database and dials them without human intervention"); *Echevvaria v. Diversified Consultants, Inc.*, No. 13-4980, 2014 WL 929275, at *6 (S.D.N.Y. Feb. 28, 2014) (dialer which "dials numbers drawn 'from a database of numbers' [and] places the calls 'without human intervention'" constituted ATDS); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011) (FCC interpreted ATDS "to include equipment that utilizes lists or databases of known, nonrandom telephone numbers"; where defendant's equipment "automatically dials numbers stored in the Logical View File and routes answered calls to available collectors," it was an ATDS).

The crux of Collecto's argument is that "Congress clearly specified that an ATDS must include a number generator[.]" (Def.'s Mot. at 8 (citing 47 U.S.C. § 227(a)). *See also id.* at 9, 10, 12-13, 18.) Collecto's argument requires the Court to ignore or distinguish the foregoing authority. Even if the Court ignored the FCC's orders (which it may not do, as explained in Sections III and IV), imposing a requirement of the actual presence of a number generator into the definition of an ATDS is contrary to the TCPA's plain statutory language:

> The term "automatic telephone dialing system" means equipment which has the ***capacity***—
>
> (A)  ***to store or*** produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B)  to dial such numbers.

47 U.S.C. § 227(a)(1) (emphasis added). Courts have specifically rejected the actual presence of a number generator as a requirement for an ATDS. *See Glauser v. GroupMe, Inc.*, No. 11-2584, 2015 WL 475111, *5 (N.D. Cal. Feb. 4, 2015) (FCC orders include equipment "which may dial numbers from preprogrammed lists, and which need not necessarily generate numbers randomly or sequentially" in definition of ATDS); *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014) ("courts have found equipment to qualify as an ATDS if it can dial numbers automatically, for example by calling or sending text messages to numbers in a

preprogrammed list, *irrespective of the presence of a random or sequential number generator*"; italics added); *Lardner*, 17 F. Supp. 3d at 1222-23 ("it does not matter that the [equipment at issue] is not used to store or produce telephone numbers using a random or sequential number generator"). Indeed, Collecto's insistence that an ATDS requires the presence of an actual number generator would write the term "capacity" out of 47 U.S.C. § 227(a)(1)'s statutory text. This is contrary to the key teaching in *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009):

> When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." Accordingly, a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it.

*Id*. at 951 (emphasis added).[3] Collecto's putative requirement that an ATDS include an actual number generator ignores not only the term "capacity," but the other key phrase emphasized above: "***store or*** produce." In 47 U.S.C. § 227(a)(1), "the operative terms ["store" and "produce"] are connected by the conjunction 'or'[;] ordinary use [of the word "or"] is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" *United States v. Woods*, 134 S. Ct. 557, 567 (2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)). "The statutory definition contemplates autodialing equipment that either stores or produces numbers." *2003 Order*, 18 FCC Rcd. at 14091-92, ¶132. Hence, equipment can qualify as an ATDS if it can generate and dial arbitrary telephone numbers ***or*** *if it can **store** and dial such arbitrary numbers*. Qualifying as an ATDS does not depend on the actual presence of a random number generator.

The Noble dialing system as well as the GC dialing system are capable of both storing arbitrary telephone numbers and dialing random numbers. (Pl.s' SOF ¶¶18-21.) And, while not necessary to qualify as an ATDS, both of these dialing systems are capable of generating random

---

[3] Autodialers which "cannot generate and dial random or sequential numbers" are still automatic telephone dialing system[s]." See *Griffith*, 838 F. Supp. 2d at 727 (interprets the FCC's 2003 and 2008 Orders to mean that an autodialer governed by the TCPA includes "equipment that utilizes lists or databases of known, nonrandom telephone numbers.")

numbers. (Pl.s' SOF ¶¶22-23.) In fact, Collecto, plaintiffs' expert and defendant's expert agree that these dialers can store numbers, and whether the numbers are random, sequential, or from a list is of no matter.

### B. "Human Intervention" Is Only Relevant When Dialing Telephone Numbers

Collecto contends its predictive dialers require "human intervention," so its dialers are not ATDSs even under the FCC's definition. (Def.'s Mot. at 17-19.) Collecto fails to account for the FCC's bright-line rule that predictive dialers are ATDSs, or the basis for that rule: the critical relevant test is whether *the equipment at issue requires human intervention **to dial telephone numbers***.

> [T]he evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed–the ***capacity* to dial numbers without human intervention**. . . . [Excluding] equipment that use[s] predictive dialing software from the definition of "automated telephone dialing equipment" simply because it relies on a given set of numbers would lead to an unintended result.

*2003 Order*, 18 FCC Rcd. at 14092, ¶¶132-33 (italics in original; bold added). The FCC reaffirmed this holding in the *2008 Order*, and expanded it in the *2015 Order. See 2008 Order*, 23 FCC Rcd. at 566, ¶13; *2015 Order*, 30 FCC Rcd. at 7971-75, ¶¶10-17. As the cases cited throughout section II.A indicate, the relevant question for predictive dialers is whether "human intervention [is necessary] *at the time the calls were placed*." *Morse v. Allied Interstate, LLC*, 65 F. Supp. 3d 407, 410 (M.D. Pa. 2014) (italics added). It is only makes sense that the FCC's concern about human intervention is limited to dialing telephone numbers. The "human intervention" test does not mean that any degree of human intervention, at any point, disqualifies equipment as an ATDS. If it did, no equipment could ever qualify as an ATDS. "Every ATDS requires some initial act of human agency—be it turning on the machine or pressing 'Go.' It does not follow, however, that every subsequent call the machine dials—or message it sends—is a product of that human intervention." *Johnson v. Yahoo!, Inc.*, No. 14-2028, 2014 WL 7005102, *5 (N.D. Ill. Dec. 11, 2014). *Cf. 2015 Order*, 30 FCC Rcd. at 7976, ¶20 (rejecting test for ATDS that "could render the TCPA's protections largely meaningless by ensuring that little or no

modern dialing equipment would fit the statutory definition of an autodialer").[4]

To support its argument that human intervention is required to operate its dialers, Collecto notes that human intervention is required to upload numbers to its dialers, to assemble call lists, and for collectors to log on to its dialers. (Def.'s Mot. at 18-19 citing Def.'s SOF ¶¶11-16, 19, 25-40, 42-46.) But courts consistently reject human intervention at those points (as opposed to actually dialing telephone numbers) as disqualifying equipment for being an ATDS. Hence, *Morse* held "the human intervention test of the 2003 FCC Order does not inquire as to whether there is human intervention at the entering of a 'given set of numbers' or programming of the computer system, but rather if there is human intervention at the time a call is made/placed or when a number is actually dialed." *Morse*, 65 F. Supp. 3d at 410.[5] *Schumacher* found "[i]t is irrelevant that humans are involved in the process of creating the list of numbers to be called," and rejected the argument that defendant's "software requires human intervention because the numbers to be called are submitted in a predetermined list and order." *Schumacher*, 2015 WL 5786139, at *7, *8. In *Moore*, the defendant submitted evidence of "extensive human involvement in the processing and dialing of numbers" in order to prove that it did not call the plaintiff with a predictive dialer. *Moore*, 57 F. Supp. 3d at 654. Indeed, at points, Collecto's statement of facts matches the record in *Moore* virtually word-for-word.[6] Nonetheless, *Moore* found that the defendant there "focuse[d] on evidence of human involvement in the list-creation

---

[4] Indeed, the absence of human intervention in dialing numbers is not necessarily the *sin qua non* of an ATDS. *See 2015 Order*, 30 FCC Rcd. at 7976, ¶20 (rejecting "argument that the Commission should adopt a 'human intervention' test by clarifying that a dialer is not an autodialer unless it has the capacity to dial numbers without human intervention").

[5] *But see Morse*, 65 F. Supp. 3d at 410 ("technology is precisely that contemplated by the FCC in the 2003 and 2008 Orders" where "calls were made without a human contemporaneously dialing the number as Defendant's dialing software is automated with no manual intervention needed").

[6] The defendant in *Moore* submitted a declaration that the dialer could not "function without a human generated list of telephone numbers provided by an external software source," human decision makers created the criteria for each campaign, and the dialer "require[d] a human operation analyst to process the human-generated list of telephone numbers by finding the appropriate list for each campaign and loading the campaign into the various lists." *Moore*, 57 F. Supp. 3d at 653-54.

process to avoid the clear implication of the FCC's decision as applied to this case—that [its equipment was] a predictive dialer." *Id.*

> The FCC did reference the lack of human involvement typical of a predictive dialer, but only to explain why it found a predictive dialer qualified as an ATDS. . . . [I]t is *irrelevant under the FCC's definition of a predictive dialer that humans are involved in the process of creating the lists that are entered into the Campaign Manager software.*

*Id.* (emphasis added). Likewise, in *Brown v. NRA Group, LLC*, No. 14-610, 2015 WL 3562740 (M.D. Fla. June 5, 2015), the fact that a dialer required human intervention to log in and to upload telephone numbers did not disqualify it as a predictive dialer, because "when the [dialer was] operating in predictive mode[,] no human intervention occurs at the point where the call is dialed." *Id.* at *3-4. Notwithstanding "some human intervention prior to calls being made,"

> such calls are made automatically[.] . . . This minimal amount of human intervention is entirely consistent with the FCC's description of predictive dialers as devices that "store pre-preprogrammed numbers or receive numbers from a computer database and then dial those numbers in a manner that maximizes efficiencies for call centers."

*Id.* at *4 (quoting *2003 Order*, 18 FCC Rcd. at 14090, ¶130; denying summary judgment on ATDS issue). *See also Sterk*, 46 F. Supp. 3d at 819-20 (rejecting the argument that human intervention in "the collection of numbers for Path's database of numbers" disqualified the defendant's equipment as an ATDS; "evidence shows that the equipment used. . . made calls from the list without human intervention," TCPA does not regulate "collection of numbers for storage").

Collecto cites four cases which appear, at first blush, to be at odds with *Morse*, *Moore*, *Schumacher*, *Sterk*, and/or *Brown*: they found human intervention in uploading numbers or logging in disqualified equipment as ATDSs. (*See* Def.'s Mot. at 17-19.) But while these cases *considered* a variety of human intervention, their actual decisions all hinged on whether the equipment at issue required human intervention to *call* telephone numbers. *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1193 (W.D. Wash. 2014) found the equipment was not a predictive dialer because, e.g., "the dispatcher must have pressed 'enter' to transmit that information to both the TaxiMagic program and the nearest available driver, and the driver must have pressed

'accept' on his or her Mobile Data Terminal." *Gragg*, 995 F. Supp. 2d at 1193. *Luna v. Shac, LLC*, No. 14-00607, 2015 WL 4941781 (N.D. Cal. Aug. 19, 2015) distinguished *Moore* and *Sterk* because "human intervention was involved in several stages of the process prior to Plaintiff's receipt of the text message, and *was not limited to the act of uploading the* [plaintiff's] *telephone number* to the CallFire database [but included] *clicking 'send' on the website to transmit the message to Plaintiff*." *Id.* at *5 (italics added). These cases do not support Collecto's implicit argument that any human intervention (as opposed to human intervention in dialing) disqualifies its dialers as ATDSs. *Cf. 2015 Order*, 30 FCC Rcd. at 7976, ¶20; *Johnson*, 2014 WL 7005102, at *5 ("[e]very ATDS requires some initial act of human agency").

In *Modica v. Green Tree Servicing, LLC*, No. 14 C 3308, 2015 WL 1943222 (N.D. Ill. Apr. 29, 2015), it was "undisputed that Defendant's predictive dialing system, i.e. Dialer, [was] an ATDS"; the ultimate question was whether the other dialer (which "require[d] a human to click a 'dial' option" manually and was entirely separate from the defendant's predictive dialer) was "capable of dialing numbers without human intervention." *Id.* at *1, *3. *Modica* described logging into the predictive dialer an act of human intervention, but in response to the plaintiff's argument that the defendant's representative "had the *capacity* to auto-dial customer's numbers such that she was using an ATDS" by logging into and using the predictive dialer (rather than the other dialer). *Id.* at *3 (italics added). *Modica* found the other dialer was not an ATDS because it did not have the capacity for automated calls on its own *and* because there was no "connection to the Dialer" at the time of the call. *Id. Modica* concerned an inventive but unsuccessful argument to expand the equipment making a call to include a predictive dialer: it does not stand for the proposition that the requirement of logging into a predictive dialer disqualifies the predictive dialer as an ATDS. Again, it was "undisputed that Defendant's predictive dialing system [was] an ATDS." *Id.*

*Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288 (S.D. Cal. 2014) *appeal docketed*, No. 14-56834 (9th Cir. Nov. 20, 2014) stands apart from the foregoing, and relies on two mistaken premises. First, *Marks* depended on a distinction between present and potential

capacity of the equipment at issue. *Id.* at 1291-93. *See also Gragg*, 995 F. Supp. 2d at 1192-93, 1196. The FCC explicitly rejected that distinction in the *2015 Order*: "the capacity of an autodialer is not limited to its current configuration but also includes its potential functionalities." *2015 Order*, 30 FCC Rcd. at 7974, ¶16.

> [I]nterpreting "capacity" as limited to "current capacity" or "present ability" . . . could create problems for enforcing the TCPA's privacy protections with regard to proving how a system with multiple functions was actually used for multiple calls. As the Commission has previously recognized, the purpose of the requirement that equipment have the capacity to store or produce telephone numbers to be called is to ensure that the restriction on autodialed calls not be circumvented.

*Id.*, 30 FCC Rcd. at 7975-76, ¶19 (citations, punctuation omitted). Second, *Marks* found the FCC's interpretation of the TCPA's definition ATDS was unauthorized. As set forth in Section III below, *Marks* was deeply misinformed on that point.

## III.   The FCC Had Authority Under Section 201(b) Under the Federal Communication Act to Interpret the Definition of an ATDS

Collecto has built its Motion around the contention that "[t]he FCC has no authority to modify or definitively interpret any language in § 227(a) of the TCPA [so that] this Court is not bound to refer to the FCC's definition of [an ATDS.]" (Def.'s Mot. at 14 (citing *Marks*, 55 F. Supp. 3d at 1293.) Collecto built its argument on sand: the assertion that the FCC's authority to construe the TCPA is limited to 47 U.S.C. § 227(b) is wrong, and contrary to the plain language of the Federal Communications Act of 1934. Congress expressly authorized the FCC to interpret 47 U.S.C. § 227(a) under 47 U.S.C. § 201(b).

Section 201(b) generally authorizes the FCC to "prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter." 47 U.S.C. § 201(b). The TCPA falls within the same chapter (5) as section 201. "Congress, in § 201(b), delegated to the agency authority to 'fill' a 'gap,' i.e., to apply § 201 through regulations and orders with the force of law." *Global Crossing Telecommc'ns, Inc. v. Metrophones Telecommc'ns, Inc.*, 550 U.S. 45, 58 (2007). The TCPA fits into the general delegation of rule-making authority under section 201(b) because Congress "expressly directed that" the TCPA was

to "be inserted into the Communications Act of 1934." *AT&T Corp. v. Iowa Utilities Bd.*, 525

U.S. 366, 377 (1999). *See* Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243,

105 Stat. 2395, 2395 (1991) ("[a]n Act to amend the Communications Act of 1934"). The FCC's

"rulemaking authority [under section 201(b)] extends to the subsequently added portions of the

[Communications] Act." *City of Arlington, Tex. v. FCC*, 133 S. Ct. 1863, 1866 (2013).

Hence, the FCC had statutory authority to issue the *2003 Order*, the *2008 Order*, and the

*2015 Order*, and each of these orders is entitled to deference under *Chevron U.S.A., Inc. v.*

*Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). Indeed, this Court has already

found the FCC's orders are entitled to deference:

> The FCC rulings specifically account for the fact that technology has developed such that lists of numbers are more cost-effective than random or sequential numbers. The agency concluded that a "predictive dialer" that relies on lists of numbers qualifies as an ATDS under the TCPA. That ruling is entitled to deference.

*Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 226 (D. Mass. 2014) (citing *Leyse v.*

*Clear Channel Broadcasting, Inc.*, 545 Fed. App'x. 444, 452-53 (6th Cir. 2013) as "granting

*Chevron* deference to FCC regulations under the TCPA"). Likewise, in *Mais*, the Eleventh

Circuit confirmed that "Congress has conferred upon the FCC general authority to make rules

and regulations necessary to carry out the provisions of the TCPA," citing, e.g., section 201(b).

*Mais*, 768 F.3d at 1117 (quoting, e.g., 47 U.S.C. § 201(b) (FCC "may prescribe such rules and

regulations as may be necessary in the public interest to carry out the provisions of this

chapter")).[7] Conversely, the *Marks* decision was ill-advised: there is no evidence it even

considered 47 U.S.C. § 201(b) (or, as shown below, the limits on its jurisdiction under 28 U.S.C.

§ 2342).

---

[7] Further, the TCPA's specific delegation of regulatory authority under section 227(b) "is surely not enough to displace that explicit authority" in section 201(b). *AT&T Corp*., 525 U.S. at 385. Section 227(b) required that the FCC promulgate related regulations. 47 U.S.C. § 227(b)(2) (FCC "shall prescribe regulations to implement the requirements of this subsection"). The Supreme Court found it was "not peculiar that the *mandated* regulations should be specifically referenced, whereas regulations *permitted* pursuant to the Commission's § 201(b) authority are not." *AT&T Corp*., 525 U.S. at 385.

Where the TCPA "is silent or ambiguous with respect to the specific issue," the FCC's orders warrant *Chervon* deference because the FCC is authorized to "'to fill any gap left, implicitly or explicitly, by Congress.'" *Chevron*, 467 U.S. at 843 (citation omitted). Collecto urges that the Court should stop at the first step of the *Chevron* analysis because the TCPA's language is unambiguous. The TCPA "is ambiguous . . . if it admits of more than one reasonable interpretation." *Recovery Grp., Inc. v. Comm'r*, 652 F.3d 122, 125 (1st Cir. 2011) (citation, punctuation omitted). But *Chevron* deference also applies if the TCPA is "*silent . . . with respect to the specific issue*" in dispute here, i.e., whether predictive dialers or dialers use use a list or database of numbers constitute ATDSs. *Chevron*, 467 U.S. at 843 (italics added). At least one other court assessing whether a predictive dialer constituted an ATDS under the TCPA held it could not "stop at step one in the *Chevron* analysis because Congress has not directly addressed the precise question at issue and intended that the FCC be allowed to make rules to accommodate changes in technology." *Lardner*, 17 F. Supp. 3d at 1222 (applying FCC orders and holding predictive dialer constituted ATDS).[8]

This is common sense. "Capacity," in the context of 47 U.S.C. § 227(a)(1), is inherently a matter of degree: what steps must be taken before the equipment at issue will store and dial random or sequential telephone numbers? The TCPA "mandates that the focus must be on whether the equipment has the capacity" to store and call arbitrary telephone numbers, rather than how the equipment actually functioned at the time of the call, so the fact that equipment needs *some* modification to call arbitrary numbers cannot disqualify it as an ATDS. *Satterfield*, 569 F.3d at 951. But how much reconfiguration is too much before the equipment lacks capacity? The TCPA's statutory text does not answer this question, so Congress left gaps in the TCPA for the FCC to fill—and Congress authorized the FCC to fill those gaps under section 201(b) of the Communications Act. *See Chevron*, 467 U.S. at 843. The Court does not have to

---

[8]   *See also Satterfield*, 569 F.3d at 954 (applying FCC orders where TCPA "is silent as to whether a text message is a call" under TCPA); *Lambert v. Buth-Na-Bodhaige, Inc.*, No. 14-00514, 2014 WL 4187250, *2 (E.D. Cal. Aug. 21, 2014) (applying FCC order where TCPA was "silent on what form of express consent—oral, written, or some other kind—is required").

answer "how much modification?" here, because the FCC has already done so.

Collecto also argues that the FCC cannot interpret 47 U.S.C. § 227(a)(1) because *Satterfield* held that language was clear and unambiguous. (Def.'s Mot. at 7-8.) This argument overlooks the other alternative under *Chevron*: that the TCPA is silent on the question of whether predictive dialers constitute ATDSs. *See Chevron*, 467 U.S. at 843; *Lardner*, 17 F. Supp. 3d at 1222. Moreover, Collecto's glib treatment of *Satterfield*'s holding takes it out of context. *Satterfield* stated that 47 U.S.C. § 227(a)(1) was "clear and unambiguous"—in context of holding that section 227(a)(1) unambiguously focuses the capacity of the equipment at issue (not how that equipment is actually functions at the time). 569 F.3d at 951. *Satterfield* did not broadly hold there was nothing ambiguous about section 227(a)(1). *See Nunes*, 2014 WL 6708465, at *2 (rejecting same argument Collecto makes here: "the *Satterfield* court merely held that the word 'capacity' in Section 227(a)(1) is unambiguous, not that the entire statutory definition is unambiguous"); *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 129, 1140 (S.D. Cal. 2014) ("[a]lthough [*Satterfield*] the court concluded that the statutory text 'is clear and unambiguous,' [it] did so in the context of finding that the statute clearly and unambiguously focuses on the equipment's requisite 'capacity' rather than present functionality").

As a final matter, Collecto cites a string of cases to support of its disregard of the FCC's orders. This ostensible support crumbles under closer examination. Except for *Marks*, none of these cases have anything to say about the FCC—and *Marks* clearly erred on the matter of the FCC's authorization. Moreover, most of these cases concern technology besides predictive dialers, where the FCC's orders are nowhere near as definitive or categorical as with predictive dialers.[9] Indeed, *Marks* and *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637 (E.D. Pa. 2014) *argued*, No. 14-1751 (3d Cir. Nov. 21, 2014) expressly distinguish themselves from the FCC

---

[9]     *See Ibey v. Taco Bell Corp.*, No. 12-0583, 2012 WL 2401972, *3 (S.D. Cal. June 18, 2012) (text message); *Flores v. Adir Int'l, LLC*, No. 15-0076, 2015 WL 4340020, *5 (C.D. Cal. July 15, 2015) (same). *But see Petitt v. US Bank Nat'l Ass'n*, No. 14-961, 2014 WL 3053240 (M.D. Fla. July 7, 2014) (predictive dialer; no discussion of the FCC). Collecto characterizes *Petitt* as "granting [a] motion to dismiss TCPA claim where plaintiff's allegations did not satisfy statutory definition of an ATDS." (Def.'s Mot. at 8.) This is false, that court "conclude[d] that Petitt has stated a claim under the TCPA." *Petitt*, 2014 WL 3053240, at *3.

orders on predictive dialers.[10]

## IV. This Court Does Not Have Jurisdiction to Reverse the FCC's Orders in Any Event

Collecto all but concedes that application of the FCC's orders precludes summary judgment, and relies heavily on *Marks* and *Dominguez* to argue that the Court should not apply the FCC's orders. (*See* Def.'s Mot. at 8, 13, 14, 15.) But *Marks* and *Dominguez* reflect another fundamental error that Collecto fails to circumnavigate. (*Id.* at 15-16.) The overwhelming weight of authority is that the Hobbs Act precludes Collecto's efforts to deviate from the FCC's interpretation of an ATDS. Under the Hobbs Act, "[t]he court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of" a variety of administrative agency actions, including "all final orders of the Federal Communication Commission[.]" 28 U.S.C. § 2342.

### A. The Hobbes Act Requires the Court to Follow the FCC's Orders Interpreting the Definition of an ATDS

The First Circuit has found that where a party seeks an order from the district court which "would have reversed [an] ICC order [or] would have overturned [an] ICC order" by imposing a contrary result, "the relief sought . . . was, in essence, a collateral attack upon the ICC's order [and] [t]he district court was without jurisdiction to entertain such a claim" under the Hobbs Act. *B'hood of Locomotive Eng'rs v. Boston & Maine Corp.*, 788 F.2d 794, 801 (1st Cir. 1986) (citing 28 U.S.C. § 2342; other citations omitted). As far as Plaintiffs know, the First Circuit has not specifically opined on the Hobbs Act's impact on FCC orders (or the FCC's TCPA orders, in particular). However, the four other Courts of Appeal have held the Hobbs Act requires district courts to follow the FCC's interpretation of the TCPA in the context of TCPA litigation by private parties, in a manner consistent with *Brotherhood of Locomotive Engineers*. In *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443 (7th Cir. 2010), the Seventh Circuit found that the Hobbs Act precluded a district court from deeming the FCC's orders invalid under *Chevron*:

---

[10] *See Marks*, 55 F. Supp. 3d at 1293 (S.D. Cal. 2014) ("the system present here is factually distinct from the system described in the FCC comment [i.e., predictive dialers]); *Dominguez*, 8 F. Supp. 3d at 643 n.6 (FCC order "pertains to the unique characteristics of predictive dialers, and there is no contention here that [defendant's technology] is a predictive dialer").

"deeming agency action valid or ineffective is precisely the sort of review that the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders," and as "the Supreme Court has made clear, a litigant can't avoid the Hobbs Act's jurisdictional bar simply by accusing an agency of acting outside its authority." *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 448 (7th Cir. 2010) (citing *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468-69 (1984)). *CE Design* also held that the fact that a litigant's "challenge to the FCC's [orders] arises in a dispute between private parties makes no difference—the Hobbs Act's jurisdictional limitations are equally applicable [when a party challenges the rule] indirectly, by suing someone who can be expected to set up the rule as a defense in the suit." *Id.* (citation, punctuation omitted). In *Leyse*, the Sixth Circuit followed *CE Design* and reached the same conclusion: "the Hobbs Act deprives the district court below—and this court on appeal—of jurisdiction over the argument that [FCC] exemption was invalid or should be set aside because of procedural concerns." *Leyse*, 545 Fed. App'x. at 452-53 (quoting passage from *CE Design*, 606 F.3d at 448 *supra*). In *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013), the Eighth Circuit also held that where a litigant defends

> a private enforcement action [on the grounds that an agency order is] . . . invalid[,] the statutory procedure for review provided by Congress remains applicable. . . . To hold otherwise merely because the issue has arisen in private litigation would permit an end-run around the administrative review mandated by the Hobbs Act.

*Id.* at 686 (citation, punctuation omitted). Again, the Eighth Circuit relied on the analysis in *CE Design*. *Id.* (quoting same passage from *CE Design*, 606 F.3d at 448 *supra*). Finally, the Eleventh Circuit in *Mais* followed *CE Design* and held that a "district court exceeded its power" when it "refus[ed] to enforce the FCC's interpretation" of the TCPA in a TCPA lawsuit:

> whether the challenge to an FCC order arises in a dispute between private parties makes no difference—the Hobbs Act's jurisdictional limitations are equally applicable whether a party wants to challenge the rule directly or indirectly, by suing someone who can be expected to set up the rule as a defense in the suit.

*Mais*, 768 F.3d at 1120 (quoting same passage from *CE Design*, 606 F.3d at 448 *supra*; punctuation omitted).

As set forth above, the vast majority of *district* courts have also followed *CE Design*'s logic and/or its result.[11] Courts have rejected the specific attack Collecto makes (the FCC can interpret TCPA section 227(b), but not section 227(a))—not because of the FCC's authority under FCA section 201(b)—but because that inquiry would violate the Hobbs Act. *See Morse*, 65 F. Supp. 3d at 412.

> The Hobbs Act is clear and in no way indicates that a district court can disregard final orders of the FCC simply because Congress did not specifically grant the FCC express authority to regulate a specific subsection of the TCPA. Moreover, a decision as to whether the FCC exceeded its authority is to be made by the courts of appeals. See 28 U.S.C. § 2342.

*Id*. (citing multiple cases in support). The argument that "the text of the TCPA sufficiently defines an ATDS . . . is not persuasive because district courts must defer to FCC rulings." *Moore*, 57 F. Supp. 3d at (citing 28 U.S.C. § 2342(1); collecting cases; "the FCC's ruling that a predictive dialer is an ATDS applies in cases involving debt collection calls, not just telemarketing calls"); *Luna*, 2015 WL 4941781, at *2 (because "the Hobbs Act jurisdictionally divests district courts from ignoring FCC rulings interpreting the TCPA," the court "must look not only to the statutory language in applying the definition of an ATDS, but also to FCC rulings addressing the same"). Likewise, the argument that the "court should disregard the FCC's interpretation [of ATDS definition covering predictive dialers] because Congress did not give the agency authority to implement § 227(a) and because the interpretation is inconsistent with the language of the statute . . . comes perilously close to violating [Rule] 11." *Nelson v. Santander*

---

[11]    *See Chavez v. Advantage Grp.*, 959 F. Supp. 2d 1279, 1281-82 (D. Colo. 2013) ("practical effect of accepting plaintiff's argument here would be to 'set aside, annul, or suspend' the 2008 FCC Ruling[;] [court was] without jurisdiction to effectuate that outcome"; collecting cases); *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 97 (N.D. Ill. 2013) ("predictive dialer constitutes an automatic telephone dialing system" under *2003 Order*; under "the Hobbs Act, the Court of Appeals is vested with exclusive jurisdiction to determine the validity of all final orders of the FCC"; citing *CE Design*, 606 F.3d at 446); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726-27 (N.D. Ill. 2011) (rejecting arguments "that the FCC cannot have meant what it said because it is inconsistent with the TCPA," district court was "not the appropriate forum to challenge the validity of the FCC's orders"; citing *CE Design*, 606 F.3d at 450); *Adamcik v. Credit Control Servs., Inc.*, 832 F. Supp. 2d 744, 748 (W.D. Tex. 2011) (even where FCC's "interpretation does violence to the clear language of § 227 . . . under the Hobbs Act, [district court] has no jurisdiction to review the FCC's rule"); *Leckler v. Cashcall, Inc.*, No. 07-04002, 2008 WL 5000528, *2 (N.D. Cal. Nov. 21, 2008) (under Hobbs Act, court "did not have jurisdiction to review the FCC's declaratory ruling" interpreting TCPA).

*Consumer USA, Inc.*, 931 F. Supp. 2d 919, 928-930 (W.D. Wis. 2013), *vacated per stipulation*, No. 11–307, 2013 WL 5377280 (W.D. Wis. June 7, 2013) (following *CE Design*, 606 F.3d at 446, 449 n.5). Conversely, *Marks* and *Dominguez* are outliers which did not even consider the Hobbs Act's application. Courts have expressly disagreed with *Marks*, finding its conclusion that the FCC did not have authority to define ATDSs was "exactly the kind of attack on an FCC order that the Hobbs Act precludes me from entertaining." *Johnson*, 2014 WL 7005102, at *3 n.8. Courts have also rejected Collecto's implication that the FCC's orders lead to "absurd results." (*Cf.* Def.'s Mot. at 17-18 *with Griffith*, 838 F. Supp. 2d at 727 (Hobbs Act precludes argument that "the FCC cannot have meant what it said because it is inconsistent with the TCPA"). Indeed, in every case which considers the Hobbs Act that Plaintiffs have found, the court has found it must accept the FCC's interpretation of the TCPA. The Court should not follow *Marks* and *Dominguez*.[12]

### B. *Maquina Musical* Does Not Support Dismissing this Case for Lack of Subject Matter Jurisdiction

Confronted with the Hobbs Act, Collecto can only offer the legal equivalent of a "Hail Mary" pass. It argues that *United States v. Any and All Radio Station Transmission Equipment*, 204 F.3d 658 (6th Cir. 2000) ("*Maquina Musical*") supports dismissing the case for lack of subject matter jurisdiction. (Def.'s Mot. at 15-16.) This is wrong. At the outset, nothing in *Maquina Musical* supports the *remedy* Collecto seeks: it did not dismiss any case or approve of dismissing any case for lack of subject matter jurisdiction. *Maquina Musical* reversed a district court's decision that a microbroadcaster could not present constitutional defenses in an FCC

---

[12]    Collecto cites *Dominguez* for its unkind characterization of testimony by Plaintiff's expert, Randall Snyder. (Def.'s Mot. 9-10.) This characterization is both misguided and unfair because Mr. Snyder's testimony (concerning whether particular equipment constituted an ATDS) plainly relied on relevant FCC regulations. *See Dominguez*, 8 F. Supp. 3d at 643. By disregarding the FCC's interpretation, *Dominguez* both violated the Hobbs Act and moved the goal posts on Mr. Snyder. *Id.* at 643 n.6 (court decided it was "not bound by the FCC's interpretation"). *Cf. Morse*, 65 F. Supp. 3d at 412 (holding that Hobbs Act prohibits district court from "disregard[ing] final orders of the FCC"; distinguishing *Dominguez*). The *Dominguez*'s error in discounting the FCC orders and the Hobbs Act is "like the thirteenth chime of the clock, casts doubt on that which went before." *NLRB v. Sheraton Puerto Rico Corp.*, 651 F.2d 49, 54 (1st Cir. 1981). The Court cannot trust *Dominguez*'s statutory interpretation; it should not trust its characterization of Mr. Snyder's testimony.

forfeiture proceeding. *Maquina Musical*, 204 F.3d at 667.

Second, *Maquina Musical* does not offer Collecto any loophole in the Hobbs Act for its statutory interpretation arguments. The exception to the Hobbs Act recognized in *Maquina Musical* is very narrow, and does not apply here. "The statutory scheme for the FCC generally vests the courts of appeals with jurisdiction over appeals from final orders. . . . The district courts, however, have 'a sliver of the jurisdictional pie' for enforcement of FCC orders imposing a monetary forfeiture penalty." *Rocky Mountain Radar, Inc. v. FCC*, 158 F.3d 1118, 1121 (10th Cir. 1998) (citing 47 U.S.C. § 402(a), which requires compliance with the Hobbs Act to "enjoin, set aside, annul, or suspend any [FCC] order"; quoted by *Radar Solutions, Ltd. v. FCC*, 628 F. Supp. 2d 714, 728-29 (W.D. Tex. 2009); citations and punctuation omitted). *See also United States v. Baxter*, No. 10-00435, 2011 WL 1988437, at *5 (D. Me. May 23, 2011) ("only one statutory exception [to the Hobbs Act]: 47 U.S.C. § 504(a)'s grant of jurisdiction to district courts to hear Commission forfeiture cases"; citations omitted). Hence, even the Sixth Circuit has found a "collateral attack on the procedural validity of the FCC's decision [in a TCPA case] does not fall within *Maquina Musical's* exception to the Hobbs Act." *Leyse*, 545 Fed. App'x at 458 ("Leyse's TCPA claim is a far cry from *Maquina Musical*").

Finally, Collecto's argument that it "has a constitutional due process right to a hearing on the merits of all of its available defenses" before this Court lacks merit.[13] (Def.'s Mot. at 16.) The Hobbs Act is Constitutional. Due process ensures that Collecto has some forum to make it statutory interpretation arguments, but due process *does not require that **this** Court have jurisdiction to hear those arguments*. Certainly, the "fundamental requirement of due process is the opportunity to be heard," but the "judicial model of an evidentiary hearing is neither a required, nor even the most effective, method of decision making in all circumstances." *Mathews v. Eldridge*, 424 U.S. 319, 333, 348 (1976). Hence, the petitioner in *Bob Jones University v. Simon*, 416 U.S. 725 (1974) argued that tax statutes violated its due process rights because they

---

[13]   Procedurally, Collecto failed to comply with Federal Rule 5.1 by failing to file a notice of constitutional challenge and serving it on Attorney General. *See* Fed. R. Civ. P. 5.1(a)(2).

prohibited it from directly challenging the IRS's revocation of its 501(c)(3) status in district court. The Supreme Court rejected that argument because those tax statutes provided "alternative procedures for review," even if those procedures "was certain" to cause the petitioner to lose "contributions from those donors whose gifts are contingent on entitlement to charitable deductions[.]" *Id*. at 731, 746.

> This is not a case in which an aggrieved party has no access at all to judicial review. . . . [The alternative] review procedures offer petitioner a full, albeit delayed, opportunity to litigate the legality of the [IRS] revocation of tax-exempt status and withdrawal of advance assurance of deductibility. . . . [A]lthough the congressional restriction to postenforcement review may place an organization claiming tax-exempt status in a precarious financial position, the problems presented do not rise to the level of constitutional infirmities . . .

*Id*. at 746. Likewise, section 405 of the Social Security Act restricted district courts' jurisdiction to hear challenges to rulings by the Secretary of Health and Human Services under the Social Security Act. Section 405 is constitutional and comports with due process:

> [T]he Social Security Act itself provides jurisdiction for constitutional challenges to its provisions. Thus the plain words of the third sentence of s 405(h) do not preclude constitutional challenges. They simply require that they be brought under jurisdictional grants contained in the Act, and thus in conformity with the same standards which are applicable to nonconstitutional claims . . .

*Weinberger v. Salfi*, 422 U.S. 749, 762 (1975). It follows that the Hobbs Act's requirement that Collecto raise its arguments against the FCC's interpretation of the TCPA in the Courts of Appeal affords Collecto sufficient due process. "The Hobbs Act's jurisdictional bar thus does not leave private parties without a mechanism for judicial review of agency action; it merely requires litigants to seek review through its specific procedural path." *CE Design*, 606 F.3d at 450.

Collecto's argument that "[j]udgment for the defendant for lack of subject matter jurisdiction, and an appeal by the plaintiffs to the Court of Appeal, is a fair ruling that protects both parties' rights to a hearing on the merits" is more than a little disingenuous. (Def.'s Mot. at 16.) Plaintiffs brought their TCPA claims in the correct forum, while Collecto evidently failed to take advantage of the opportunity afforded by the Hobbs Act to challenge to the FCC's interpretation of the TCPA. Collecto's failure should not deprive Plaintiffs of a forum for their TCPA claims. *Cf. Sable Commc'ns of Cal., Inc. v. FCC*, 827 F.2d 640, 643 (9th Cir. 1987)

(rejecting due process challenge; rejecting argument that "regulation should not be immunized from constitutional review by limiting challenges to parties with standing to challenge it within sixty days of enactment. . . . Taken to its logical conclusion, [the plaintiff's] argument would effectively obliterate the exclusive jurisdiction provision of section 2342").[14] ***Even if the Court dismissed the case and Plaintiffs appealed this case to the First Circuit, the First Circuit would not <u>still</u> not have jurisdiction over the arguments Collecto makes here***. The Hobbs Act "requir[es] [an] original petition challenging FCC final orders to be brought in court of appeals." *W. Radio Servs. Co. v. Qwest Corp.*, 678 F.3d 970, 976 (9th Cir. 2012) (multiple supporting citations omitted). It is telling that Collecto cannot offer a single case which supports either its due process arguments or its proffered "remedy" of dismissal for lack of jurisdiction.

## V. Even if the Court Disregarded the FCC's Orders and Only Considered the TCPA's Bare Statutory Language, There Is (At Least) a Genuine Issue of Material Fact

Even if the Courts looks only to the bare language of the TCPA (i.e., without the benefit of the FCC's interpretive orders), there is ample record evidence establishing that the GC and Noble dialers fit within the statutory language defining an ATDS: "equipment which has the *capacity*—(A) to store *or* produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added). The record establishes that the GC and Noble dialers each store telephone numbers which they dial and have the *capacity* to store and dial arbitrary telephone numbers (which means they must also have the capacity to store and dial random or sequential telephone numbers). (Pl.s' SOF ¶¶19-21). As recognized in *Satterfield*, "the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* "to store or produce telephone numbers to be called, using a random or sequential number generator." 569 F.3d at 951. Thus, the record evidence of

---

[14]     *See also Leckler*, 2008 WL 5000528, at *3-4 (denying defendant's motion to dismiss TCPA claim for lack of subject matter jurisdiction, finding that the plaintiffs could still amend their complaint to state justiciable claim after the plaintiffs ceded their challenge to the FCC order).

the two dialers' capacity is sufficient to establish that they meet the statutory definition of an ATDS.

There is evidence that these dialers fall within even the narrowest reading of an ATDS offered—Collecto's interpretation. As discussed in section II.A above, the statutory text of section 227(a)(1)—and especially the term "capacity" and an ATDS's alternate qualification that it have the capacity to store numbers—undercuts Collecto's position that an ATDS requires the actual presence of a random number generator. (Def.'s Mot. at 8.) Even assuming *arguendo* that Collecto's position was correct, however, the record evidence establishes that the GC and Noble dialers must be capable of generating random numbers. (Pl.s' SOF ¶¶22-23). This is true because both dialers have extensive encryption features—and encryption necessarily requires the generation of randomized numbers. At an absolute minimum, there is a genuine issue of fact concerning the capabilities of the GC and Noble dialers which precludes summary judgment if one accepts Collecto's selective reading of section 227(a)(1) and the unjustifiable rejection of the FCC's orders.

## VI. The Davenport's Claims After July 23, 2009 are Actionable

The record is clear that Collecto made calls to the Davenports on August 26 and 27, 2009. Def's SOF No. 8. These calls were made with the Noble dialer (Def's SOF No. 9) and are within the four year statute of limitations. *Sparkle Hill, Inc. v. Interstate Mat Corp.*, No. CIV.A. 11-10271-RWZ, 2014 WL 2215756, at *1 (D. Mass. May 23, 2014), *aff'd*, 788 F.3d 25 (1st Cir. 2015). Hence, summary judgment as to those calls may not be granted. Plaintiffs do not contend that calls made more than four years prior to the filing of the Davenport's complaint on July 23, 2013 are at issue in this lawsuit. Plaintiffs make no relation back argument as to these claim in this case.

## VII. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Collecto's motion for summary judgment.

Dated: October 23, 2015            _____/s/David C. Parisi_____
                                   David C. Parisi (California Bar No. 162248)
                                   Parisi & Havens LLP
                                   212 Marine Street, Suite 100
                                   Santa Monica, California 90405
                                   (818) 990-1299 (telephone)
                                   (818) 501-7852 (facsimile)
                                   dcparisi@parisihavens.com

                                   J. Andrew Meyer (Florida Bar No. 056766)
                                   Morgan & Morgan, Complex Litigation Group
                                   One Tampa City Center
                                   201 North Franklin Street, 7th Floor
                                   Tampa, Florida 33602
                                   (813) 223-5505 (telephone)
                                   (813) 222-4787 (facsimile)
                                   ameyer@forthepeople.com

                                   *Co-Lead Counsel for Plaintiffs*


## CERTIFICATE OF SERVICE

I, David C. Parisi, hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing

(NEF).


Dated: October 23, 2015            _____/s/David C. Parisi_____
                                   David C. Parisi