**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**IN RE: COLLECTO, INC., TELEPHONE CONSUMER PROTECTION ACT (TCPA) LITIGATION**

**This Document Relates To:**

**ALL ACTIONS**

**MDL No. 14-md-2513-RGS**

## DECLARATION OF RANDALL A. SNYDER

I, Randall A. Snyder, hereby declare as follows:

1. My name is Randall A. Snyder. I am an adult over the age of 18 and a resident of the state of Nevada. I have personal knowledge of each of the matters stated herein, and if called to testify I could and would testify competently about them.

2. I am an independent telecommunications technology consultant and reside at 8113 Bay Pines Avenue, Las Vegas, Nevada, 89128. I have been retained by Parisi and Havens LLP and Morgan & Morgan, PA in the matter *In re: Collecto, Inc., Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 1:14-md-2513-RGS (D. Mass.) to provide my expert opinions relating to technology described within the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and the claims by Plaintiffs that defendant Collecto, Inc. ("Collecto" or "Defendant") maintains an Automatic Telephone Dialing System ("ATDS") as defined within the TCPA and used such equipment when telephoning Plaintiffs. In particular, I have been asked to determine the technology and methodology used by Defendant, and their agents, to make automatic telephone calls to cellular telephone numbers. In addition, I have been asked to determine whether the Defendant, and their agents, employed equipment which has the

capacity to store or produce telephone numbers to be called, using a random or sequential number generator and whether the Defendant employed equipment which has the capacity to dial telephone numbers without human intervention. Moreover, I have been asked to provide my expert opinions regarding the ability to ascertain the identity of a particular individual based solely upon a cellular telephone number.

3. My opinions in this declaration are based on my education, knowledge, experience, expertise, training and my review of the following documents listed in Table 1 below.

**Table 1 – Documents Reviewed**

| DOCUMENT | BATES No. |
|---|---|
| Defendant's Email (April 19, 2012) | COL00001 - COL00002 |
| Keith B[redacted] Non-delimited Account Record (text file) | COL00004 |
| Audio Recording (June 2, 2012) | COL00005 |
| Audio Recording (June 4, 2012) | COL00006 |
| Audio Recording (June 7, 2012) | COL00007 |
| Torus National Insurance Company Policy | COL00008 - COL00092 |
| EOS CCA TCPA Presentation | COL00093 - COL00106 |
| Agreement for Collection Agency Services between Verizon Services Corp. and Collection Company of America | COL00107 - COL00179 |
| Master Code Sheet (Collecto, Inc.) | COL00180 |
| Accurately Updating a Wrong Number (EOS CCA) | COL00181 - COL00185 |
| What is to be Audited (ED) Behaviors and Techniques to be Measured | COL00186 - COL00214 |
| Section 2, Systems (EOS CCA) | COL00215-COL00240 |
| How to Create a Campaign Template (SoundBite) | COL000241 |
| SoundBite Pricing Agreement | COL000242 - COL000246 |

| DOCUMENT | BATES No. |
|---|---|
| Miscellaneous Debtor Account Records | COL000247 - COL000250 |
| Miscellaneous Communications with Defendant's Insurer | COL00251 - COL000283 |
| Miscellaneous Email dated June 24, 2013 – through August 13, 2013 | COL000284 - COL000298 |
| *Sessions v. Collecto, Inc.*, CV-11-247-RMP (E.D. Wash.), Plaintiff's Complaint for Injunctive Relief for Violations of the Consumer Protection Act and the Fair Debt Practices Act, Inter Alia | COL000299 - COL000319 |
| *Kalish v. EOS CCA*, 1:11-cv-11433-NMG (D. Mass.), Complaint | COL000320 - COL000350 |
| *Bath v. EOS CCA*, County Court, Arapahoe County, Colorado, Complaint | COL000351 - COL000366 |
| *De Cohen v. EOS CCA*, 2:12-cv-01300 (D. N.J.), Complaint | COL000367 - COL000373 |
| *Graham vs. Collecto, Inc.*, State of Minnesota, Rice County, 3rd Judicial District, Summons | COL000492 - COL000522 |
| *Norman v. EOS CCA*, 1:13-cv-03440 (N.D. Ill.), Complaint | COL000523 - COL000531 |
| *O'Toole v. EOS CCA*, 1:13-cv-10824-FDS (D. Mass.), Complaint | COL000532 - COL000545 |
| *Miller v. EOS CCA*, 4:13-cv-00665 (W.D. Mo.), Complaint | COL000546 - COL000550 |
| *Hopkins and Hopkins v. Collecto Inc.*, 0:13-cv-01207-JRT-TNL (D. Minn.), Complaint | COL000551 - COL000566 |
| *Martin v. EOS CCA*, 1:13-cv-01661-JEJ-MCC (M.D. Pa.), Complaint | COL000567 - COL000574 |
| *Lambeck v. EOS CCA*, 5:14-cv-00168 (W.D. Tex.), Complaint and Demand for Jury Trial | COL000575 - COL000586 |
| *Iverson v. EOS CCA*, (D. Ariz.), Complaint, Jury Trial Demanded | COL000587 - COL000599 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Complaint, Class Action | COL000601 - COL000606 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Plaintiff's Motion for Class Certification | COL000607 - COL000612 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Declaration of Alexander H. Burke | COL00613 - COL000615 |

| DOCUMENT | BATES No. |
|---|---|
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Defendant's Answer to Complaint and Affirmative Defenses | COL000617 - COL000627 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Parties' Initial Status Report | COL000630 - COL000635 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Plaintiff's Revised Motion and Incorporated Memorandum in Support of Class Certification | COL000636 - COL000688 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Plaintiff's Motion to Compel | COL000689 - COL000734 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Defendant's Answers and Objections to Plaintiff's Interrogatories | COL000735 - COL000790 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Stipulation of Dismissal with Prejudice | COL000791 - COL000798 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Defendant's Rule 26(a)(1) Disclosure | COL000799 - COL000801 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Parties' Initial Status Report | COL000802 - COL000804 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Plaintiff's First Discovery Requests | COL000813 - COL000829 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Defendant's Answers and Objections to Plaintiff's Interrogatories | COL000830 - COL000842 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Defendant's Answers to Plaintiff's Requests to Admit | COL000843 - COL000853 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Defendant's Response and Objections to Plaintiff's Requests for Documents | COL000854 - COL000862 |
| Sharmaine Hunter Non-delimited Account Record Printout (pdf) | COL000863 - COL000866 |
| Call Search Report for June 14, 2010 | COL000867 - COL000874 |
| EOS CCA Collector Training | COL000875 - COL000904 |
| EOS CCA IT Procedure | COL000905 - COL000906 |
| EOS CCA Document Retention and Destruction Policies | COL000907 - COL000909 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Stipulation of Dismissal with Prejudice; Miscellaneous related letters and email | COL000910 - COL000927 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous settlement agreement related letters and email | COL000928 - COL000974 |

| DOCUMENT | BATES No. |
|---|---|
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous case documents, letters and email | COL000975 - COL001225 |
| SoundBite Pacing Models | COL001226 - COL001234 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous case letters and email | COL001236 - COL001325 |
| EOS CCA Section 7 – Skiptracing manual | COL001326 - COL001339 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous case documents, letters and email | COL001348 - COL001436 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous case documents, letters and email | COL001507 - COL001512 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous case documents, letters and email | COL001527 - COL001535 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous case documents, letters and email | COL001539 - COL001558 |
| *Powell v. Collecto, Inc.*, 1:10-cv-03709 (N.D. Ill.), Miscellaneous case documents, letters and email | COL001576 - COL001584 |
| James [redacted] Non-delimited Account Record Printout (pdf) | COL001585 - COL001588 |
| Julie [redacted] Non-delimited Account Record Printout (pdf) | COL001589 - COL001592 |
| Julie [redacted] Non-delimited Account Record Printout (pdf) | COL001593 - COL001595 |
| Miscellaneous Non-delimited Account Record Printout (pdf) | COL001596 - COL001608 |
| Exemplary Noble Systems Automatic Dialer Call History Report | COL001609 - COL001611 |
| Exemplary LiveVox Automatic Dialer Call History Report | COL001612 |
| Exemplary SoundBite Automatic Dialer Call History Report | COL001613 |
| Keith [redacted] Non-delimited Account Record Printout (pdf) | EOS000001 - EOS000003 |
| *Lofton v. Verizon Wireless (VAW) LLC.*, No. RG12634618 (Superior Court for the State of California, County of Alameda), First Supplemental Response to Subpoena with call records | EOS000004 - EOS000005 |
| Ontario Systems – FACS Workstation manual (2006) | EOS000011 - EOS000170 |

| DOCUMENT | BATES No. |
|---|---|
| Ontario Systems – Guaranteed Contacts Hardware manual (April, 1998) | EOS000171 - EOS000254 |
| Ontario Systems – FACS Collections Using Guaranteed Contacts manual (February, 1998) | EOS000255 - EOS000475 |
| CNA Insurance Policy Declarations | EOS000482 - EOS000483 |
| EOS CCA Nationwide Policies and Procedures, Accurately Updating a Wrong Number | EOS000484 |
| Miscellaneous Debtor Account Records | EOS000491 - EOS000495 |
| CNA Insurance Policy | EOS000496 - EOS000527 |
| Miscellaneous Debtor Account Records | EOS000531 - EOS000540 |
| EOS CCA Complaint and Lawsuit Summary | EOS000541 - EOS000542 |
| Miscellaneous Debtor Account Records | EOS000547 - EOS000562 |
| Noble Systems Result Codes | EOS000574 - EOS000581 |
| FACS Noble Systems Result Codes for (415) 786-2086 | EOS000582 |
| Collecto Non-delimited Account Record Production (GC Dialer Logs) | EOS000595 - EOS000597 |
| Collecto Non-delimited Account Record Production (GC Dialer Records) | EOS000598 - EOS000604 |
| Guaranteed Contact (GC) System Result Codes | EOS000605 |
| SoundBite System Result Codes | EOS000607 - EOS000608 |
| Collecto Non-delimited Account Record Production (Noble Dialer) | EOS000608 - EOS000619 |
| Collecto Non-delimited Account Record Production Screen | EOS000620 - EOS000627 |
| Collecto Non-delimited Account Record Production (SoundBite Dialer) | EOS000628 - EOS000661 |
| Example of Noble Systems Automatic Dialer Campaign in FACS | EOS000662 |
| Example of Noble Systems Automatic Dialer Campaign in Manifest | EOS000663 |
| Example of SoundBite Automatic Dialer Files for Verizon | EOS000664 |

| DOCUMENT | BATES No. |
|---|---|
| Example of SoundBite Automatic Dialer File Content | EOS000665 |
| Example of SoundBite Automatic Dialer Campaign in Manifest | EOS000666 |
| Example of SoundBite Automatic Dialer Record Fields in Manifest | EOS000667 - EOS000668 |
| Example List of SoundBite Automatic Dialer Files | EOS000669 |
| Example List of Noble Systems Automatic Dialer Files | EOS000670 |
| TelSwitch, Inc. Miscellaneous Invoices and Notes (July 7, 2014 – June 3, 2015) | EOS007918 - EOS008241 |
| Agreement for Collection Agency Services between Verizon Services Corp. and Collection Company of America | VER000001 - VER000094 |
| Introduction to VZW Information Systems (Late Stage Collections) – All-in-One Leader Guide | VER000095 - VER000167 |
| Introduction to VZW Information Systems (Late Stage Collections) – Participant Guide | VER000168 - VER000215 |
| Late Stage Vendor Collections – Training Agenda | VER000216 - VER000218 |
| Late Stage Collections Vendor Foundations – Leader Guide | VER000219 - VER000250 |
| Late Stage Collections Vendor Foundations – Participant Guide | VER000251 - VER000269 |
| VZW Basics (Late Stage Collections) – All-in-One Leader Guide | VER000270 - VER000307 |
| VZW Basics (Late Stage Collections) – Participant Guide | VER000308 - VER000331 |
| Intro to ACSS (Automated Customer Support System) – Leader Guide | VER000332 - VER000381 |
| Intro to ACSS – Participant Guide | VER000382 - VER000413 |
| ACSS, Collections Practice – Leader Guide | VER000414 - VER000436 |
| ACSS, Collections Practice – Participant Guide | VER000437 - VER000449 |
| Billing Review, Collections – Leader Guide | VER000450 - VER000480 |
| Billing Review, Collections – Participant Guide | VER000481 - VER000498 |
| CACS (Computer Assisted Collection System) – All-in-One Leader Guide | VER000499 - VER000550 |

| DOCUMENT | BATES No. |
|---|---|
| CACS – Participant Guide | VER000551 - VER000589 |
| TOPS (Treasury Operations Performance System) Training – All-in-One Leader Guide | VER000590 - VER000650 |
| TOPS Training – Participant Guide | VER000651 - VER000692 |
| Risk Management, Collections – Leader Guide | VER000693 - VER000745 |
| Risk Management, Collections – Participant Guide | VER000746 - VER000771 |
| Payment Options (Late Stage Collections) – All-in-One Leader Guide | VER000772 - VER000797 |
| Payment Options (Late Stage Collections) – Participant Guide | VER000798 - VER000815 |
| Extended Payment Arrangements (Late Stage Vendor Collections) – All-in-One Leader Guide | VER000816 - VER000833 |
| Extended Payment Arrangements (Late Stage Vendor Collections) – Participant Guide | VER000834 - VER000846 |
| Settlement (Late Stage Vendor Collections) – All-in-One Leader Guide | VER000849 - VER000864 |
| Settlement (Late Stage Vendor Collections) – Participant Guide | VER000865 - VER000876 |
| CFS (Customer Financial Services) Monitoring Disclosure | VER000877 - VER000912 |
| Verizon Wireless – National Recovery Operations, Client Services – Agency Procedures Guide | VER000913 - VER000931 |
| Inventory File Format | VER000932 |
| Maintenance File Format | VER000933 |
| Financial File Format | VER000934 - VER000937 |
| Mandatory Document Retention Notice (June 29, 2012) | VER000939 - VER000940 |
| CFS Call Recording Disclosure Script | VER000941 |
| Email regarding Verizon Wireless CFS Call Recording Disclosure | VER002963 - VER002964 |
| The CBE Group Complaint Report | VER002965 - VER002970 |

| DOCUMENT | BATES No. |
|---|---|
| EOS CCA Complaint Report | VER002971 - VER002974 |
| Convergent Outsourcing, Inc. Complaint Report | VER002975 |
| Miscellaneous Collection Vendor Account Records | VER002981 |
| Miscellaneous Collection Vendor Account Records | VER002989 |
| CFS Collections: Updating CBR (Can Be Reached) Numbers and Emails | VER002990 - VER002991 |
| CFS Outbound Monitoring Disclosure Reminder | VER003002 - VER003011 |
| OCA Names for Vendor Reports | VER0003012 |
| Verint – Aspect Integration with Impact 360 Recorder Guide | VER0003067 - VER0003120 |
| Verint – Cisco Integration with Impact 360 Recorder Guide | VER0003121 - VER0003189 |
| Verint – Impact 360 Advanced Reporting Course Guide | VER0003190 - VER0003476 |
| Verint – Desktop Applications, Deployment Reference and Installation Guide | VER003477 - VER0003620 |
| Verint – Enterprise Suite, Configuration Guide | VER0003621 - VER0003913 |
| Verint – Enterprise Suite, Maintenance Guide | VER0003914 - VER0004033 |
| Verint – Interactions Data Import-Export Manager, Installation and Configuration Guide | VER0004152 - VER0004380 |
| Verint – Interactions Data Import-Export Manager, Deployment Reference Guide | VER0004381 - VER0004431 |
| Verint – Server Readiness Validator, User Guide | VER0004332 - VER0004451 |
| Verint – Impact 360, Technical Overview | VER0004452 - VER0004608 |
| Verint – Technologies, Security, and Network Integration, Deployment Reference Guide | VER0004609 - VER0004759 |
| Verint – Interaction for Supervisors, User Guide | VER0004760 - VER0005009 |
| Verint – Impact 360, Unified User Management | VER0005010 - VER0005194 |
| Verint – Advanced Speech Analytics, End User Course Guide | VER0005195 - VER0005333 |

| DOCUMENT | BATES No. |
|---|---|
| Verint – Phonetics Boosting, User Guide | VER0005334 - VER0005389 |
| Verint – Recorder, TDM Station-Side Deployment Reference Guide | VER0005390 - VER0005424 |
| Verint – Recorder, VoIP Delivery Deployment Reference Guide | VER0005425 - VER0005453 |
| Verint – Recorder, VoIP Interception without Top Layer Deployment Reference Guide | VER0005454 - VER0005487 |
| Verint – Workforce Optimization for Verizon Wireless | VER0005627 - VER0005654 |
| Verint – Technical Notes, VZW Recording | VER0005656 - VER0005737 |
| Completing Verification Requirements | VER0005819 - VER0005821 |
| Verizon Wireless – Customer Agreement | VER0005822 - VER0005829 |
| Verizon Wireless – Account Analysis | VER0005830 - VER0005831 |
| Master Agreement for Call Center Services between Cellco Partnership, d/b/a Verizon Wireless and Vantage Sourcing, LLC | VER0005866 - VER0005959 |
| Global Crossing Invoice including Call Detail Records (CDRs) for Collecto, Inc. (December 21, 2010 – January 20, 2011) | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Exhibit 1, Schedule of Actions | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Exhibit 3, Schedule of Actions | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Plaintiffs' First Request for Production to Defendant | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Responses to Plaintiff's First Set of Requests for Admission | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Responses to Plaintiff's Amended First Request for Production to Defendant | N/A |

| DOCUMENT | BATES No. |
|---|---|
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Defendant Collecto, Inc.'s Responses to Plaintiff's Interrogatories Set One Related to All Actions | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Responses to Plaintiff's Second Set of Requests for Production | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Responses to Plaintiff's Third Set of Requests for Admission | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Responses to Plaintiff's Fourth Set of Requests for Admission | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, MDL No. 14-md-2513-RGS (D. Mass.), Responses to Plaintiff's Fifth Set of Requests for Admissions | N/A |
| *In re: Collecto, Inc. Telephone Consumer Protection Act (TCPA) Litigation*, Master No. 14-md-2513-RGS, Individual Case No. 1:14-cv-10478-RGS (D. Mass.), Declaration of Rod Vizcaina | N/A |
| *Davenport v. Collecto, Inc.*, 4:13-cv-13156 (E.D. Mich.), Class Action Complaint | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Class Action Complaint for Violation of the Telephone Consumer Protection Act | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Defendant Collecto, Inc.'s Supplemental Responses to Plaintiff's First Set of Interrogatories | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Defendant Collecto, Inc.'s Supplemental Responses to Plaintiff's First Set of Requests for Admission | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Defendant Collecto, Inc.'s Second Set of Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Defendant's Responses to Plaintiff's Second Set of Requests for Admissions | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Defendant's Supplemental Responses to Plaintiff's Second Set of Requests for Admissions | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Defendant's Responses to Plaintiff's Third Set of Requests for Admissions | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293 (N.D. Cal.), Supplemental Responses to Interrogatory Nos. 1–4 | N/A |

| DOCUMENT | BATES No. |
|---|---|
| *Pegg v. Collecto, Inc.*, 1:13-cv-11944 (D. Mass.), Class Action Complaint | N/A |
| *Lofton v. Collecto, Inc.*, 4:13-cv-03293-YGR (N.D. Cal.), Defendant's Supplemental Responses to Plaintiff's Second Set of Requests for Production of Documents | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, No. RG12634618 (Superior Court for the State of California, County of Alameda), Third Amended Class Action Complaint for (1) Violation of the Invasion of Privacy Act; (2) Violation of the Unfair Competition Law; and (3) Violation of the TCPA | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, No. RG12634618 (Superior Court for the State of California, County of Alameda), Responses to Sixth Set of Requests for Production | N/A |
| Letter from David C. Parisi to Judge Jacqueline Scott Corley re: *Lofton v. Verizon Wireless (VAW) LLC et al.*, No. 4:13-cv-05665-YGR | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), Declaration of Ethan Preston in Support of November 2014 Letter to Magistrate Judge Jacqueline Scott Corley for Sanctions | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), Order Following November 20, 2014 Discovery Conference | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), Order: (1) Granting in Part Defendant's Motion for Partial Judgment on the Pleadings with Leave to Amend and (2) Denying Defendant's Motion to Strike Class Allegations Pursuant to Rule 23 | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), Declaration of Charles R. Messer in Opposition to Motion for Sanctions | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), January 14, 2015 Declaration of Ethan Preston | N/A |
| Letter from Charles R. Messer to Judge Jacqueline Scott Corley re: *Lofton v. Verizon Wireless (VAW) LLC et al.*, No. 4:13-cv-05665-YGR (January 14, 2015) | N/A |
| Letter from Ethan Preston to Charles R. Messer re: *Lofton v. Verizon Wireless (VAW) LLC et al.*, No. 4:13-cv-05665-YGR (January 21, 2015) | N/A |
| Letter from Ethan Preston to Judge Jacqueline Scott Corley re: *Lofton v. Verizon Wireless (VAW) LLC et al.*, No. 4:13-cv-05665-YGR (January 22, 2015) | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), Declaration of Aaron Woolfson re: Motion for Sanctions | N/A |
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), Declaration of Aaron Woolfson re: November 21, 2014 Order Following Discovery Conference | N/A |

| **DOCUMENT** | **BATES No.** |
|---|---|
| *Lofton v. Verizon Wireless (VAW) LLC.*, 4:13-cv-05665-YGR (N.D. Cal.), Supplemental Rule 26 Disclosures | N/A |
| Conference Call Recording Transcript, (Preston, Messer, Woolfson) (150226) | N/A |
| Noble Systems – Maestro 2010.4.1 Manual, Volume 1 | CBE-LOFTON 000001 - CBE-LOFTON 000486 |
| Noble Systems – Maestro 2010.4.1 Manual, Volume 2 | CBE-LOFTON 000487 - CBE-LOFTON 000908 |
| Noble Systems – Maestro 2010.4.1 Manual, Volume 4 | CBE-LOFTON 001035 - CBE-LOFTON 001354 |
| CBE Group – Manual Clicker Application User Manual | CBE-LOFTON 001355 - CBE-LOFTON 001373 |
| Declaration of John Ocampo | SUN0001 |
| LiveVox User Guide | VAN000021 |
| LiveVox Compliance Suite | VKI00024 - VKI00026 |
| LiveVox Training Presentation | VKI00027 - VKI00071 |
| The SunDial Windows Predictive Dialer User Manual | VAN000196 |
| Noble Systems – Composer Agent Manual | N/A |
| Noble Systems – Composer User Manual | N/A |
| Noble Systems – DCB (Dynamic Campaign Builder) Agent Manual | N/A |
| Noble Systems – DCB Quality Assurance Manual | N/A |
| Noble Systems – DCB User Manual | N/A |
| Noble Systems – DCM (Dynamic Center Manager) User Manual | N/A |
| Noble Systems – DCR (Dynamic Center Reporter) User Manual | N/A |
| Noble Systems – DRS (Digital Recording System) User Manual | N/A |
| Noble Systems – IVR (Interactive Voice Response) Builder User Manual | N/A |
| Noble Systems – Reports Guide User Manual | N/A |

| DOCUMENT | BATES No. |
|---|---|
| Noble Systems – Table Builder User Manual | N/A |
| Plaintiff Lofton's Cellular Telephone Bill (May 18, 2012 – June 17, 2012) | N/A |
| Deposition of Peter Cappola (September 24, 2014) | N/A |
| Deposition of Steven F. Madden (October 15, 2004) | N/A |
| Deposition of Peter Cappola (June 24, 2014) | N/A |
| Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") | N/A |
| Federal Communications Commission ("FCC") Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated October 16, 1992 | N/A |
| FCC Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated July 3, 2003 | N/A |
| FCC Declaratory Ruling in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 Request of ACA International for Clarification and Declaratory Ruling dated January 4, 2008 | N/A |
| Appeal from the United States District Court for the Northern District of California, No. 07-16356, D.C. No. CV-06-02893-CW Opinion, filed June 19, 2009 | N/A |
| FCC Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 dated February 15, 2012 | N/A |
| FCC Notice of Proposed Rulemaking in the Matter of the Middle Class Tax Relief and Job Creation Act of 2012, Establishment of a Public Safety Answering Point Do-Not-Call Registry dated May 22, 2012 | N/A |
| FCC Declaratory Ruling in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, SoundBite Communications, Inc. Petition for Expedited Declaratory Ruling dated November 29, 2012 | N/A |

4.      I have over 30 years of experience in telecommunications network and system architecture, engineering, design and technology. I am an expert in the fields of both landline and wireless telecommunications networking technology. A copy of my *curriculum vitae* is attached to this Declaration. I have been retained as a testifying or consulting expert in over 100 cases regarding cellular telecommunications technology, including 70 cases regarding the TCPA and

associated regulations. In addition, I have been retained as an expert by both plaintiffs and defendants in cases regarding the TCPA.

5.       I have taught many classes and seminars on both landline and wireless telecommunication network technologies and have been a panelist and speaker at numerous conferences at the Institute of Electrical and Electronics Engineers ("IEEE"), the Personal Communication Society ("PCS"), and the Cellular Telecommunications and Internet Association ("CTIA") as an expert in telecommunication networks. I spent seven years developing standards within the American National Standards Institute's subsidiary organization, the Telecommunications Industry Association ("TIA"), providing technical contributions and authoring and editing telecommunications proposed standards documents. Most notably, I authored and oversaw the standardization of Interim Standard 93, providing interconnection technology between landline and wireless networks, which is a fully accredited national standard of the American National Standards Institute ("ANSI"). I am the co-author of the McGraw-Hill books "Mobile Telecommunications Networking with IS-41," and "Wireless Telecommunications Networking with ANSI-41, 2nd edition" published in 1997 and 2001, respectively. I have been issued 26 patents myself on telecommunications networking technology and currently have five additional published patents pending. I have also authored several articles on telecommunications technology and have been quoted numerous times in industry trade publications. I have been hired as a consultant by the CTIA, as well as by many landline and wireless telecommunications companies, including Bell Laboratories, McCaw Cellular, AirTouch, AirTouch International, AT&T Wireless, AT&T Mobility, Lucent, Nokia, Ericsson, Motorola, Samsung, Siemens, Nextwave, MCI, Daewoo, Globalstar, T-Mobile, Sprint, U.S. Cellular, Teleglobe Canada, Teledesic and other telecommunications technology vendors

and service providers. I was also nominated in 2006 for a National Television Arts Emmy Award for Outstanding Achievement in Advanced Media Technology for unique wireless content distribution technology I designed while employed at Entriq, Inc. Still more detail, as well as details of publications that I have authored or co-authored within at least the past 10 years, are provided in my attached *curriculum vitae* (a true and correct copy of which is attached hereto as Exhibit 1) along with a list of cases where I served as a testifying or consulting expert and my standard rate sheet. I am being compensated at the rate of $450 per hour for my study, analysis and testimony in this case.

6. I understand that fact discovery in this case is ongoing and I also understand that there are documents and/or evidence that have yet to be produced. To the extent that I cannot currently opine on certain technical issues in this case, I hereby reserve the right to supplement this Declaration with both my conclusions and opinions in a detailed and additional supplementary declaration in the future.

**INTRODUCTION**

7. The TCPA prohibits unsolicited voice and text calls to cellular telephone numbers using an "automatic telephone dialing system" ("ATDS"), which the statute defines as "equipment which has the capacity – (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers." Additionally, it is my understanding that the Federal Communications Commission ("FCC") has issued further regulations that also define an ATDS as including the capacity to dial telephone numbers from a provided list or database of telephone numbers without human intervention.

8. Based on my review of the relevant documents and the facts described above, it is my expert opinion that that calls made by Collecto to the Plaintiffs' cellular telephones were

made using an ATDS as defined within the TCPA and additional regulations promulgated thereunder. I base this opinion on my knowledge, education, experience, expertise, training and on the evidence I have reviewed.

9. Additionally, and based on my knowledge, education, experience, expertise and training, it is my expert opinion that identifiable contact information about individuals can be definitively and clearly obtained based solely on their cellular telephone numbers and the process to perform this activity is a straightforward administrative process.

**COLLECTO'S USE OF DIALING SYSTEMS**

10. Collecto is a debt collection agency that provides debt collection services on behalf of other companies to which consumer debts are owed. A primary method by which Collecto provides these services is by making telephone calls to consumers owing a debt.

11. It is my understanding that Collecto employs both their own dialing systems and third-party dialing systems to make calls to consumers that may owe a debt. Collecto's own systems, known as "on-premise" systems, are systems owned and operated by Collecto and physically reside within Collecto's facilities. Third-party systems are those systems owned and operated by a separate business and provide automatic dialing services on behalf of Collecto. Collecto uses two on-premise dialing systems: (1) the Guaranteed Contacts® ("GC System") automatic dialing system provided by Ontario Systems;[1] and (2) the Noble Systems ("Noble") automatic dialing system.[2] Collecto also uses two third-party dialing systems: (1) the LiveVox, Inc.[3] ("LiveVox") system; and (2) the SoundBite® Communications ("SoundBite") system.[4] SoundBite was acquired by Genesys in 2013.

---

[1] *See* http://www.ontariosystems.com/create-media-archive-76.
[2] *See* http://www.noblesys.com/company.aspx.
[3] *See* http://www.livevox.com.
[4] *See* http://www.genesys.com/soundbite.

12.     According to Mr. Peter Cappola, Director of Telephony Services at Collecto, in his deposition, "We use the Noble dialer. We've used the — what we refer to as the GC dialer, which is Guaranteed Contacts, that's the Ontario dialer. We use a hosted platform from SoundBite. And we use a hosted platform from LiveVox." (Exhibit 2, Cappola 2015 Dep., 16:19-23.)

13.     The primary mechanism by which both LiveVox and SoundBite implement debt collection services on behalf of their call center customers is via automatic telephone dialing hardware and software. Both companies provide their automatic telephone dialing services as a "hosted" solution, also known as a Software as a Service ("SaaS") solution. LiveVox and SoundBite provide various telecommunications services to its client customers, such as Collecto, enabling them to realize a "virtual" call center facility to communicate with consumers without the need to invest in the purchase, operation and management of the necessary facilities, hardware, software and personnel required to operate additional systems. They provide automated and sophisticated software services to companies desiring to communicate with consumers via the telephone. These automated services include managing calling campaigns, managing call agents, managing consumer accounts and telephone lists, call monitoring, technical support, etc. A hosted/SaaS system is a software delivery model whereby software and associated data are centrally hosted in the "cloud," meaning a large, centralized computer equipment system serving multiple remote users in real-time, via internet connections. These systems are typically accessed by customer users using a web-based application through a web browser. The web-based application enables call center customers to input lists of telephone numbers to be subsequently dialed by the hosted automatic telephone dialing system. Hosted/SaaS solutions have become a common delivery model for many business applications

because the centralized computer equipment can serve hundreds or thousands of remote customer users from the single hosted platform. In this case, both LiveVox and SoundBite manage and operate the respective centralized hosted computerized software and equipment that provides automatic telephone dialing services to multiple remote call center customers using real-time internet connections.

**AUTOMATIC TELEPHONE DIALING FUNCTIONS**

14. Automatic telephone dialing systems used by debt collection, telemarketing and other companies typically fall into three fundamental categories of computerized telephone number dialing: preview dialing, predictive dialing and basic automatic dialing. Note that telephone numbers to be dialed using these automatic dialing functions are organized as "campaigns." A campaign is simply a list of telephone numbers obtained from debtor accounts organized by some defined criteria that are to be called for a specific purpose. Campaigns are sometimes known as "pools," which is the terminology used by the Ontario Systems GC dialing system. Campaigns and pools of electronic account records are typically created and built on either a regular basis, such as daily or weekly, or as the account records are created as the consumer contact information is obtained. Each distinct campaign calls the telephone numbers in the list using the same dialing method, which is defined within the campaign setup parameters.

15. Preview dialing is a method for dialing individual telephone numbers by call center agents. When preview dialing is used, each individual call center agent can "preview" a computerized call record and has the ability to originate a call in various ways. For example, the call center agent can dial the full 10-digit telephone number displayed in the call record; the call center agent can dial a different 10-digit telephone number that may be listed as an alternate number; or the call center agent can "invoke" dialing of the 10-digit telephone number displayed

in the call record by clicking a key on the keyboard or using the cursor on the screen to click a

"dial" button. In addition, sometimes preview dialing can be automated. This automation is

sometimes known as "timed preview dialing." Timed preview dialing automatically dials the

next telephone number in the list once the agent has concluded a call. The next telephone number

to be called is dialed at some predefined time limit for example, 90 seconds. If the agent does not

dial the next number within 90 seconds, the preview dialing system automatically dials the next

telephone number in the list without human intervention. This mechanism is typically used to

maximize the number of calls dialed and to ensure call center agents are moving quickly through

their call record list.

16.     Predictive dialing is a computerized method for automatically dialing lists of

telephone numbers commonly used in call center operations. Predictive dialing is a type of

automatic telephone dialing as defined by the FCC to make outbound telephone calls without

human intervention for sales, telemarketing, collections or other purposes. Predictive dialing

provides the capability to "predict" the availability of call center agents that can respond to the

outbound calls that have been dialed by the predictive dialing system and answered by the called

party. Prerecorded voice technology may also be used to announce to the called party to wait for

a call center agent to respond. Called parties that answer a predictively dialed outbound call

typically experience a distinctive and recognizable pause due to the time interval during which

the call is redirected back and connected to an available call center agent. In addition, predictive

dialing methods enable a variety of programmatic ways to treat calls that have not been answered

by the called party. As examples, calls that may be answered by voice-mail, calls that receive a

busy signal and calls that are not answered, may all be treated and managed differently by the

automated system. "Predictive" dialing necessarily requires certain algorithmic and

computerized functionality to operate properly. For example, predictive dialing requires the equipment to perform call progress analysis for each automated call made in order to detect ring-back tones, busy tones and the difference of whether a person, answering machine or voice-mail system has answered a call. Additionally, automatic predictive dialing requires a "pacing" algorithmic function. Pacing algorithms are the statistical models that perform as the primary function enabling the automatic dialing system to predict the availability of call agents and increase the efficiency of the call agents. These complex algorithms are based on various factors such as average call time, number of agents available, number of expected abandoned calls, average number of answering machines detected, time of day, day of week and many, many other factors. Predictive dialing can make use of an interactive voice response ("IVR") system, whereby an artificial or prerecorded voice message is used to communicate with the called party and computerized prompts may be used to enable the called party to provide automated responses.

17.     Basic automatic dialing (sometimes termed "power" dialing) is a computerized method for automatically dialing lists of telephone numbers commonly used in call center operations. Basic automatic dialing is a type of automatic telephone dialing as defined by the FCC to make outbound telephone calls without human intervention for sales, telemarketing, collections or other purposes. Using this very basic type of automatic dialing, the computerized system dynamically regulates the number of calls to be automatically dialed by maintaining a simple balance between the number of call center agents available, the number of calls currently in progress and the "dial ratio." The dial ratio is simply the ratio of telephone lines configured per call center agent involved in a particular calling campaign. Using this basic mechanism, the number of automatic outbound telephone calls to be dialed by the computer system can be

dynamically regulated (*i.e.*, increased or decreased) over time simply based on the number of calls in progress, the number of agents and the number of telephone lines available per agent. Basic automatic dialing can make use of an IVR system, whereby an artificial or prerecorded voice message is used to communicate with the called party and computerized prompts may be used to enable the called party to provide automated responses.

18. In addition, basic or power automatic dialing can sometimes be configured to perform a function known as "unattended message dialing." Unattended message dialing is a computerized method for automatically dialing lists of telephone numbers with the intent to only transmit a prerecorded voice-message to the called parties once the call is answered. If an answering machine or voice-mail system answers the call, the prerecorded message can be left as a recording for the called party to listen to later.

19. Both predictive and basic automatic dialing requires the equipment to perform call progress analysis for each automatic call made in order to detect ring-back tones, busy tones, fast busy tones, the difference of whether a person, answering machine or voice-mail system has answered a call, etc. Prerecorded voice technology may be used to leave a message on an answering machine or a voice-mail system. Prerecorded voice technology may also be used particularly for predictive automatic dialing to announce to the called party to wait for a call center agent to respond. Furthermore, both predictive and basic automatic dialing methods enable a variety of programmatic ways to treat calls that have not been answered by the actual called party. As examples, calls that may be answered by voice-mail, calls that receive a busy signal and calls that are not answered, may all be treated and managed differently by the automatic dialing system.

20. Each of these three fundamental types of computerized dialing: preview,

predictive and basic automatic dialing requires the automatic dialing system to store telephone numbers to be dialed. These numbers are stored in a list or database within the system. The individual telephone numbers to be called for sales, telemarketing, collections or other purposes are stored within computerized customer account records. These account records can contain one or more telephone numbers to be dialed, for example, home, business, cellular or other telephone numbers that are used to call the customer.

21. The GC dialing system provides predictive automatic telephone dialing functions and power automatic telephone dialing functions to automatically dial telephone numbers from a list as defined above. (Exhibit 3, EOS000271.) In addition, when Mr. Cappola was asked if the GC dialer has the predictive dialing function, he answered, “Yes.” (Exhibit 4, Cappola 2014 Dep., 61:17-19.)

22. The Noble dialing system provides predictive automatic telephone dialing functions to automatically dial telephone numbers from a list as defined above. (Exhibit 5.) In addition, Mr. Cappola stated, “A predictive dialer will dial a list of numbers using a specific algorithm to minimize the agent wait time, as well as minimize the potential of connecting to a dead or in our case not having an available agent available. An agent available.” When asked if the Noble dialing system has this capability, Mr. Cappola answered, “Yes.” When asked if this capability is used by Collecto, Mr. Cappola answered, “Yes.” (Exhibit 4, 59:9-18.)

23. The hosted LiveVox system provides predictive automatic telephone dialing functions to automatically dial telephone numbers from a list as defined above. (Exhibit 6.) In addition, Mr. Cappola stated, “…you can dial… predictively to SoundBite and to LiveVox.” (Exhibit 4, 77:14-16.)

24. The hosted SoundBite dialing system provides predictive automatic telephone

dialing functions to automatically dial telephone numbers from a list as defined above. (Exhibit 7.) In addition, when Mr. Cappola was asked if predictive dialing is a function in the SoundBite dialing system, he answered, "Yes." (Exhibit 4, 62:13-15.) The SoundBite dialing system was also used for unattended message "blasting campaigns" and for its predictive dialing IVR capabilities. (Exhibit 2, 21:21-22-9.)

25. Based on my knowledge, education, experience, expertise, training and the facts described above, it is my expert opinion that the GC, Noble, LiveVox and SoundBite dialing systems are automatic dialing systems that provide multiple types of automatic dialing functions, including predictive dialing. These automatic dialing functions dial telephone numbers that are provided to the dialing system as files stored with a particular automatic dialing campaign. The telephone numbers stored in the file lists are automatically dialed by the dialing system equipment without human intervention.

**CALL DETAIL RECORD ANALYSIS**

26. In every case for which I have been retained as an expert regarding the TCPA, the most important data that is used to determine if a potential TCPA violation has occurred are call detail records ("CDRs"). CDRs can provide the most objective evidence of whether a TCPA violation has occurred or not. Each individual record includes information about an individual telephone call to a consumer. CDRs are primarily obtained from the automatic telephone dialing systems used by the telemarketers and debt collectors. The information about automatic calls placed by dialing systems are recorded as a standard function within those systems and are also stored for some configurable period of time. CDRs can also be obtained from the telecommunications carrier serving the business making the automatic calls to consumers.

27. Each line-item CDR represents an individual call and includes the telephone

number of the *calling party* (*i.e.*, the telephone number of the party originating the call), the telephone number of the *called party* (*i.e.*, the telephone number of the party receiving the call), the date the call was made (*i.e.*, month, day, year), the time the call was made (*i.e.*, hour, minute and sometimes second) and the duration of the call (*i.e.*, hours, minutes and sometimes seconds).

28.     CDRs obtained by automatic telephone dialing systems include additional data such as the disposition of the call (*e.g.*, answered, not answered, busy signal, voice-mail answered, etc.), identification of the call center agent involved in the call, identification of the campaign under which the call was made and sometimes the dialing method used to make the call. If the dialing method (*e.g.*, predictive, preview, manual, etc.) is not included in the CDR, the campaign identifier can be used to query the campaign definition. The campaign definition includes the dialing configuration that was used for the campaign and reveals the method used for dialing the list of telephone numbers within that campaign.

29.     In addition, and especially in TCPA cases involving cellular telephone calls, the CDRs for the plaintiff's cellular telephone number are typically required to plainly show all calls received by their cellular telephone as the *called party* in the case. These CDRs would clearly show if a call was made to them by the defendant in the case and the dialing method by which the calls were made.

30.     Similarly, the defendant's CDRs are typically required to plainly show all calls made from their telephone numbers to cellular telephone subscribers, especially to the plaintiff. These CDRs can reveal that automatic calls were not made to the plaintiff potentially exonerating the defendant. Furthermore, the CDRs for calls made from the defendant's telephone number(s) can reveal patterns and timing of calls made from those calling party numbers to objectively reveal if an ATDS was used to place those calls.

**CALL DETAIL RECORD REPORTING**

31. In my experience, the prominent and well-known automatic dialing systems used by large telemarketers and debt collection companies have the built-in capability to generate reports on CDRs stored within them. The GC, Noble, LiveVox and SoundBite dialing systems used by Collecto all have this capability. Mr. Cappola confirmed this by describing the reporting capabilities that can be performed by the dialing systems. (Exhibit 2, 121:5-122:5, 122:13-18.)

32. The GC dialing system provides a very sophisticated reporting capability which works in conjunction with the Ontario Systems Flexible Automated Collection System ("FACS"). The FACS system provides the debtor account database functionality to manage collection accounts that is separate from the actual telephone dialing functionality. The FACS system is the common debtor account database used by Collecto regardless of which particular dialing system was used to call telephone numbers. The GC and FACS systems are designed to work together and can provide detailed campaign and CDR reports. (Exhibit 3, EOS000424, EOS000427-EOS000429.) According to Mr. Cappola, "You would have to look through the [FACS campaign account] notes. That would be the only place where there would be any results from those calls." (Exhibit 2, 129:13-22.) Furthermore, Mr. Cappola confirmed that the dialing campaign data would be in the FACS system because it was a product integrated with the GC dialing system. (Exhibit 2, 52:23-25.)

33. Exhibit 8 shows an example FACS report for three consumers that were called by Collecto (*i.e.*, James E[redacted], Julie N[redacted] and Keith B[redacted]). The FACS report for James E[redacted] shows that he was called using the GC dialing system ("gc"). The FACS report for Keith B[redacted] shows that he was called using the Noble dialing system ("DIN"). According to Mr. Cappola, the "Notes" section for each report contains the call detail information for calls

made to those consumers. (Exhibit 2, 61:16-62:16.) These report examples were provided in portable document format ("pdf") format; however they can be provided in a sortable format for ease of analysis. (Exhibit 3.)

34.     The Noble dialing system provides comprehensive campaign and call detail reports as well. (Exhibit 9.) Mr. Cappola also confirmed that the Noble call history and campaign reports provide call detail records that can be exported in an easily sortable format, such as a comma-separated-value ("csv") delimited format (*i.e.*, the format commonly used by the Microsoft® Excel® spreadsheet program). (Exhibit 2, 123:8-124:15.) In fact, Collecto provided an exemplary call history report from the Noble dialing system with one day's notice that clearly shows the CDR and calling campaign information required for analysis. (Exhibit 10.)

35.     Both the LiveVox (Exhibits 11, 12) and SoundBite (Exhibit 13) hosted dialing systems provide comprehensive campaign and call detail reports. Both Exhibits 12 and 13 are exemplary reports provided by Collecto with one day's notice. When asked what specific software was required to generate call detail reports from the LiveVox and SoundBite dialing systems, Mr. Cappola stated, "No specific software. You know, with LiveVox and SoundBite, you would have to log onto their sites and pull the reporting up." (Exhibit 2, 123:21-25.) Moreover, Mr. Cappola confirmed that with both LiveVox and SoundBite, "…you tell it what report you want, give it the parameters, and zoom, it's spit out." (Exhibit 2, 124:4-7.)

36.     Mr. Cappola testified that, if given a specific telephone number he could run a call history report from any of Collecto's dialing systems. And, when asked how time consuming the task would take, he responded, "Not too overly time consuming." "…you know, within an hour." (Exhibit 2, 189:18-190:10.)

37.     Mr. Cappola testified that call detail and campaign data from the Noble dialing

system is available back to October, 2012 and prior to that time, the data was only preserved for the preceding two years with the data purged on a monthly basis. (Exhibit 2, 135:2-22.)

38.     Mr. Cappola testified that call detail and campaign data from the GC dialing system (stored within the FACS system) is available back to 2009. (Exhibit 2, 137:5-19.)

39.     Mr. Cappola testified that call detail and campaign data from the SoundBite dialing system is available only back 16 months from the present time. (Exhibit 2, 137:23-138:5.)

40.     Mr. Cappola testified that call detail and campaign data from the LiveVox dialing system is available only back 18 months. (Exhibit 2, 138:11-12.)

41.     For this case, I have not been provided CDR or calling campaign evidence derived from call history reports, call detail reports or campaign reports from any of the dialing systems regarding calls to the Plaintiff class. Again, these reports would be easily sortable and would plainly show the details of all calls made to the Plaintiff class and the dialing method used to call them.

42.     On the contrary, I have been provided with dozens of gigabytes, much of which was non-delimited, raw superfluous account record data. This data was produced in hundreds of files with no clear representation of call detail, campaign or dialing method information. Furthermore, this data did not contain the call detail, campaign or dialing method information for the particular cellular telephone numbers of the Plaintiffs.

43.     The obscure and dubious data provided prevents a clear mechanism to sort and filter any meaningful data within and between dialing systems, account records and call detail records. Based on this data, it is nearly impossible to discern individual call details for the individual Plaintiffs and the dialing methods for calling campaigns under which those calls were

dialed.

44. Based on my knowledge, education, experience, expertise, training and the facts described above, it is my expert opinion that detailed CDR data and campaign data, including the dialing method used by each dialing system, could have been easily produced in a genuine unequivocal manner and in a timely fashion over the progression of this case. Each of Collecto's automatic dialing systems provide the built-in means for both recording and reporting this data in a comprehensive and straightforward manner and generating the appropriate reports could be performed in less than an hour.

**FACTS REGARDING THE PLAINTIFFS**

45. It is my understanding that on June 4, 2012 and June 7, 2012, Plaintiff Lofton alleges that Collecto called his cellular telephone and dialed his cellular telephone number, (415) 786-[redacted] using a predictive dialer and without his consent. Mr. Lofton explained to Collecto's debt collection agents that he was not the person Collecto sought and asked them to stop calling his cellular telephone.

46. It is my understanding that on at least September 9, 2008, August 26 and 27, 2009, Plaintiff Ralph Davenport alleges that Collecto called his cellular telephone and dialed his cellular telephone number, (248) 431-____ using a predictive dialer and without his consent. Plaintiff Ralph Davenport is the usual and customary user of this cellular telephone number, although the cellular telephone bill is in his son's (Richard) name.

47. It is my understanding that on at least June 11, 14, 19 and 20, 2013, Plaintiff Pegg alleges that Collecto called his cellular telephone and dialed his cellular telephone number, (832) 228-____ using a predictive dialer and without his consent.

**SKIPTRACING**

48. Skiptracing is a method or process for locating individuals for the purpose of contacting them. There are many companies that are employed to provide skiptracing services to locate individuals for many purposes, debt collections being one of them. Skiptracing is performed via data analysis of personal information obtained from various and multiple public and private databases. Collection agencies typically need to use skiptracing methods to attempt to obtain the most current address and telephone number information about debtors whose accounts they are servicing. Skiptracing methods are used when the debtor address and telephone number information stored in the account records are incorrect or non-existent. When skiptracing methods are required to obtain debtor location information, that information has typically not been provided by the debtor to the collection agency or the company who has employed the collection agency to collect debts on its behalf; otherwise, these companies would already be in possession of that information. Thus, when telephone numbers are obtained via skiptracing, it is highly probable that these companies do not already have that data. Therefore, it is highly probable that these companies cannot provide evidence that the debtors consented to receive calls on those newly obtained and skiptraced telephone numbers.

49. Mr. Cappola testified that debtor account records stored within the FACS system contain information as to whether telephone numbers within the account record were obtained via skiptracing or not. (Exhibit 4, 37:16-38:16.) Therefore, Collecto has the ability to demonstrate which cellular telephone numbers dialed were obtained via skiptracing.

50. Based on my knowledge, education, experience, expertise, training and the facts described above, it is my expert opinion that Collecto probably does not have evidence of consent to make automatic calls to call cellular telephone numbers that were obtained via

skiptracing methods, and based on the allegations of the named plaintiffs, did not have consent to call the named plaintiffs.

**TELEPHONE NUMBERING AND NUMBER ANALYSIS**

51. In November, 2003, the FCC mandated the implementation of a service known as "number portability" to be offered by both landline and cellular common carriers to all landline and cellular subscribers. Specifically, the service is characterized by two features: Local Number Portability ("LNP") and Wireless Local Number Portability ("WLNP"). LNP enables cellular subscribers to "port," or transfer, their cellular telephone numbers from a cellular carrier to a landline carrier within a defined geographic local area to essentially become home landline telephone numbers and vice versa. WLNP enables cellular subscribers to "port," or transfer, their cellular telephone numbers from one cellular carrier to another, allowing them to essentially own their telephone number regardless of which cellular carrier they wish to subscribe.

52. Because of number portability, there is no distinguishing characteristic within the telephone number format and the value of the digits themselves to determine which carrier services a particular telephone number and whether the number is even a landline or cellular number. The standard numbering plan in the United States for both landline and cellular telephone numbers is the ten-digit number of the format "NPA-NXX-XXXX." "NPA" refers to the Numbering Plan Area, more commonly known as the three-digit "area code." The NPA is also of the format "NXX." The entire format of the number, "NXX-NXX-XXXX" refers to a numbering plan where the digit "N" can be any number from 2 through 9 and the digit "X" can be any number from 0 through 9.

53. If a subscriber wishes to port his or her landline telephone number to a cellular telephone number, vice versa, or their telephone number to another competing landline or

cellular carrier, the carrier is required to do so within a few hours or less. To do this, all of the

landline and cellular carriers are connected to a nationwide real-time number portability

database. The primary number portability database is owned, operated and maintained by an

independent company known as Neustar, Inc.[5] Other number portability database service

companies do exist; however, Neustar maintains and operates by far the most authoritative and

popular database serving the carriers. Because of the FCC mandate for number portability among

all common carriers, a centralized real-time telephone number portability database needs to be

employed for any and all telephone calls to be completed to the appropriate carrier network.

54.     The number portability database essentially associates each and every telephone

number with a landline or cellular carrier network identifier, enabling calls to be made to the

proper landline or cellular carrier network. During the course of establishing each and every

telephone call and to deliver those calls to the proper network servicing the called party numbers,

the number portability database is queried in real-time so that calls can terminate in the proper

carrier network and properly delivered to the called party. Due to the critical nature of this

service, reliability of Neustar's database is among the highest in the telecommunications

industry.

55.     Prior to November, 2003 and the implementation of number portability as

mandated by the FCC, the North American Numbering Plan Administrator ("NANPA") provided

blocks of numbers to each individual telephone carrier (either landline or cellular) to provide to

their subscriber customers. The NANPA is the North American authority that reliably operates,

manages and maintains all aspects of the use of telephone numbers in the United States and its

territories, Canada, Bermuda and 17 Caribbean nations. Since number portability had yet to

---

[5] *See* https://www.neustar.biz/services/number-portability.

become realized, the values of telephone numbers of the format "NXX-NXX-XXXX" easily revealed whether an individual telephone number was served by a landline or cellular telecommunications carrier. This is because blocks of numbers provided by the NANPA to the individual telecommunications carrier companies were based upon the NPA values (the first three digits of the telephone number of the format "NXX") or the exchange code values (the second three digits of the telephone number of the format "NXX"). Currently and prior to November, 2003, and beside providing the number portability database, Neustar, Inc. has reliably maintained and operated the North American Numbering Plan and maintains the authoritative role of the NANPA.

**TELEPHONE INFORMATION SERVICES AND ASCERTAINABILITY**

56. Based on my knowledge, education, experience, expertise and training, it is my expert opinion that individuals' identities can be definitively and clearly ascertained based solely on their cellular telephone numbers. Furthermore, the ability to do so is a straightforward administrative process.

57. There exist several commercially available third-party information service companies that collect and maintain telephone number data either on behalf of the telecommunications carriers or for various other commercial information purposes.

58. These information service companies are commonly employed to provide notice to class members in class action lawsuits. They are also employed by debt collection and telemarketing companies to analyze databases or lists of telephone numbers prior to calling them using an automatic telephone dialing system. Telephone numbers included in debt collection account records are "scrubbed" by these companies to determine which ones are cellular telephone numbers prior to being added to a campaign or pool of numbers to be called by an

automatic telephone dialing system. "Scrubbing" is a term used to describe a process by which a list of telephone numbers is compared against another list of telephone numbers having additional parameters associated with those numbers. If a telephone number is determined to be a cellular telephone number by this "scrubbing" process, it can be treated appropriately and in accordance with all local, state and federal statutes and regulations. For example, telemarketers need to recognize which telephone numbers they are calling are landline numbers and which are cellular and treat them appropriately so that they do not place marketing calls in potential violation of the TCPA. These companies lease and maintain access to Neustar's number portability database.

59. Mr. Cappola testified that SoundBite provides this additional cellular telephone scrubbing service to Collecto to help them avoid automatically dialing cellular telephone numbers. (Exhibit 2, 65:22-66:5.) However, additional testimony demonstrates that there are obvious flaws in the telephone number scrubbing process.

60. During his deposition testimony, Mr. Cappola was shown the example FACS debtor account for "James E[REDACTED]." (Exhibit 8, COL001585-COL001588.) As described previously by Mr. Cappola, the "Notes" section for each report of this type contains the call detail information for calls made to those consumers.

61. Mr. Cappola described in great detail the meaning of particular fields and codes related to telephone calls shown in James E[REDACTED]'s FACS account record. (Exhibit 2, pp.58-73.)

62. At the top right hand corner of COL001585 is the following highlighted entry:

**Ph:832-238-[REDACTED]B**

63. This entry represents James E[REDACTED]'s telephone number that was called multiple

times as defined in the "Notes" section of the record further down in the record (COL001586-COL001588). The "B" represents that this number is a "bad" number meaning that the number may no longer be in service or at some point someone may have answered a call and told the collections agent that the person is no longer associated with that number.

64. In the "Notes" section of COL001586 is the following highlighted entry:

**DEB 08/22/12 10:43P Debtor phone flag changed from to C**

65. This entry represents that "DEB" was the agent managing this account. The date and time represents when "DEB" changed the status of the account. The "Debtor phone flag" changed from a blank "C" means that the telephone number 832-238-[REDACTED] was identified as a cellular telephone number.

66. In the "Notes" section of COL001587 is the following highlighted entry:

**DEB 08/22/12 10:43P Call Dtls: 832-238-[REDACTED] (UA-WIRELESS) – 247**

67. This entry represents that that a call to the cellular telephone number 832-238-3232 was flagged as a wireless number for an automatic unattended message dialing campaign (UA).

68. The next entry in the record related to call details is the following highlighted entry:

**gc 01/29/13 6:51P udw 832-238-[REDACTED] MESSAGE INCOMPLETE**

69. This entry represents that that an automatic call to the cellular telephone number 832-238-[REDACTED] was made by the GC dialing system on January 29, 2013 at 6:51pm and the call was connected but a prerecorded message was not left. This is due to the called party or a voice-mail system hanging up before a prerecorded message could be left.

70. The next entry in the record related to call details is the following highlighted

entry:

**gc 01/29/13 6:51P 3000 BEGIN REG COLLECT gc unatt. msg.**

71. This entry represents that the status of the account was "regular collection activity" and the cellular telephone number 832-238-[REDACTED] was called by the GC dialing system on January 29, 2013 at 6:51pm within an automatic unattended message dialing campaign.

72. The next 13 highlighted entries represent an additional 13 automatic calls made by the GC dialing system to the cellular telephone number 832-238-[REDACTED] All these calls took place within a 10-month period after the number 832-238-[REDACTED] was determined to be a cellular number. Thus, at least 15 automatic calls were made from the GC automatic telephone dialing system to Plaintiff Pegg's cellular telephone number over 10 months, though Collecto identified this as the cellular telephone number of James Es[REDACTED].

73. Similarly, call detail information related to telephone calls to Keith B[REDACTED] are shown in his FACS account record. (Exhibit 8, EOS000001- EOS000003.)

74. In the "Notes" section of EOS000001 is the following highlighted entry:

**DIN 06/01/12 6:36 Call Dtls: 415-786-[REDACTED] (-ANS DETECTED NO MSG LEFT) – VP9**

75. This entry represents that an automatic call to the cellular telephone number 415-786-[REDACTED] was made by the Noble dialing system on June 1, 2012 at 6:36 and the call was connected but a voice-mail system was detected and no prerecorded message was left.

76. The next six highlighted entries represent an additional 6 automatic calls made by the Noble dialing system to the cellular telephone number 415-786-[REDACTED] All these calls took place within a one-week period in June, 2012. Thus, at least seven automatic calls were made from the Noble automatic telephone dialing system to Plaintiff Lofton's cellular telephone number, though Collecto identified this as the cellular telephone number of Keith B[REDACTED]

77.     Based on my knowledge, education, experience, expertise, training and the facts described above, it is my expert opinion that Collecto used an automatic dialing system to make calls to the cellular telephone number represented in the exemplary FACS debtor account record. And, these automatic calls were dialed even after the telephone number was clearly determined to be a cellular number.

78.     Access to Neustar's database provides an information service company the ability to obtain the current telecommunications carrier associated with any telephone number, whether the telephone number is served by a landline carrier or a cellular carrier and the porting history of the telephone number. However, Neustar does not typically maintain a complete database of current or former subscriber data that may be associated with a particular telephone number. It is for this reason that several information service companies have emerged that specialize in telephone number subscription data.

79.     I have a great deal of personal and technical experience with Neustar, as well as third-party information service companies such as A.B. Data, Ltd.[6] ("A.B. Data"), CompliancePoint[7] (a subsidiary of PossibleNOW, Inc.) and Contact Center Compliance Corporation,[8] which are all well-known organizations that either maintain or have access to extensive demographic databases containing landline and cellular telephone number data and telephone subscription data. The telephone number databases accessed are updated on a daily basis from Neustar and previous database information prior to the daily update is saved and maintained to ensure that both past and present telephone number data is always reliable and preserved.

---

[6] *See* http://www.ABDataClassAction.com/services/notice-administration.
[7] *See* http://www.CompliancePoint.com.
[8] *See* http://www.DNC.com.

80.     I have personally been involved with contracting these organizations to obtain telephone number data as well as telephone subscriber data in many TCPA cases.

81.     A.B. Data, in particular, is a well-known information service organization that provides a full range of class action and complex litigation support services. I have personally been involved with A.B. Data and their extensive information service capabilities. A.B. Data is at least one organization that clearly has the ability identify and provide current contact information for an individual that has had a telephone subscription for any period of time dating back about ten years.

82.     A.B. Data has access to a complete and accurate database, updated daily, of all telephone numbers and related information used in the United States. The telephone number database accessed is provided by Neustar and provides information about each and every telephone number in use in the United States. A.B. Data has access to all previous database information prior to the daily update to ensure that both past and present telephone number data is always maintained, accurate and reliable. For each telephone number in the United States, A.B. Data accesses the associated telecommunications carrier, whether the number is a landline number or cellular number, and the porting history of the telephone number. In fact, A.B. Data can access this information for any given date or timeframe in the past, regardless of whether the number was ever ported before or after that date. I have been personally involved in contracting with A.B. Data, as well as CompliancePoint and Contact Center Compliance Corporation, to provide telephone number data analysis in several TCPA class action lawsuits.

83.     Additionally, A.B. Data partners with reputable data processors and vendors such as LexisNexis, Experian Information Solutions, Inc., Nexxa Group Inc., as well as many others. Using additional information from these data processors, A.B. Data has the ability to obtain the

owner's name of the telephone subscription associated with the telephone number and the owner's address during the timeframe the subscription was in service. Furthermore, A.B. Data can obtain the latest contact information for the owner of the telephone subscription at some time in the past by using databases provided by the United States Postal Service ("USPS"). The USPS maintains the National Change of Address database ("NCOALink"), which is updated daily and contains approximately 160 million change of address records for the past four years.[9] Additionally, A.B. Data has access to change of address data going back up to eight years. If current address information is unavailable via the USPS, A.B. Data can access credit reporting agencies' information to obtain the address information.

84. Due to these data processor partnerships, A.B. Data has access to detailed past and present contact data about individuals associated with a telephone number for any timeframe in the past, up to potentially ten years. Hence, A.B. Data has the ability to cross-reference individual telephone number data from various data resources with telephone subscriber data obtained from their partners, thus revealing names, addresses and current contact information for individuals who used a particular telephone number during a particular timeframe in the past.

85. Furthermore, because of A.B. Data's extensive data analysis capabilities, purported issues concerning number portability, the recycling of telephone numbers, family plans, business plans and pre-paid telephone plans are unlikely to affect the ability of companies of this sort to identify the subscriber of a telephone number within the last ten years.

86. I understand that fact discovery in this case is ongoing and I also understand that there are documents and/or evidence that have yet to be produced. To the extent that I cannot currently opine on additional technical issues that may impact class certification in this case, I

[9] *See* http://www.peachtreedata.com/ncoa/.

hereby reserve the right to supplement my conclusions and opinions in a detailed and additional supplementary declaration in the future.

**THE TCPA AND AUTOMATIC TELEPHONE DIALING SYSTEMS**

87. The TCPA allows autodialed calls… …if the called party expressly consents to their use.” (see *FCC’s Report and Order in the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, October 16th, 1992*).

88. The TCPA prohibits unsolicited calls to cellular telephone numbers using an “automatic telephone dialing system” (“ATDS”), which the statute defines as “equipment which has the capacity— (i) to store or produce telephone numbers to be called, using a random or sequential number generator; and (ii) to dial such numbers.” (See *Telephone Consumer Protection – Restrictions on use of telephone equipment 47 U.S.C. § 227(a)(1)*).

89. In addition, the TCPA prohibits any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged for the call.

90. In the FCC’s Report and Order of July 3, 2003, the Commission stated:

> “The record demonstrates that a predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call. (See ¶ 131).

In addition, the Commission noted:

> "The statutory definition contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an "automatic telephone dialing system," the equipment need only have the '*capacity* to store or produce telephone numbers (emphasis added)...' It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone numbers arbitrarily. As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the capacity to dial numbers without human intervention. We fully expect automated dialing technology to continue to develop." (*See* ¶ 132).

Furthermore:

> "[T]o exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result. Calls to emergency numbers, health care facilities, and wireless numbers would be permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists and software packages. We believe the purpose of the requirement that equipment have the "capacity to store or produce telephone numbers to be called" is to ensure that the prohibition on autodialed calls not be circumvented. Therefore, the Commission finds that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress." (*See* ¶ 133).

91. Moreover, the FCC has held that prohibitions under the TCPA apply to calls automatically dialed from stored lists of telephone numbers or a database of numbers, as well as random or sequentially generated numbers, without human intervention.

92. In the FCC's Report and Order of January 4, 2008, the Commission noted:

> "…that the evolution of the teleservices industry had progressed to the point where dialing lists of numbers was far more cost effective, but that the basic function of such dialing equipment, had not changed—the capacity to dial numbers without human intervention. The Commission noted that it expected such automated dialing technology

> to continue to develop and that Congress had clearly anticipated that the FCC might need to consider changes in technology." (*See* ¶13).

Furthermore, the Commission found that:

> "…calls to emergency numbers, health care facilities, and wireless numbers are permissible when the dialing equipment is paired with predictive dialing software and a database of numbers, but prohibited when the equipment operates independently of such lists, would be inconsistent with the avowed purpose of the TCPA and the intent of Congress in protecting consumers from such calls." (*See* ¶14).

93. In the FCC's Notice of Proposed Rulemaking of May 22, 2012, the Commission stated:

> "Under the TCPA, the term "automatic telephone dialing system" is defined as 'equipment which has the capacity– (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers.' Id. at § 227(a)(1). The Commission has emphasized that this definition covers any equipment that has the specified capacity to generate numbers and dial them without human intervention whether or not the numbers called are randomly or sequentially generated or come from calling lists." (*See* page 4, footnote 12).

**CONCLUSIONS**

94. Collecto uses two on-premise dialing systems: the GC dialing system and the Noble dialing system. Collecto also uses two third-party hosted dialing systems: the LiveVox dialing system and the SoundBite dialing system. These dialing systems are used for the purpose of making automatic debt collection calls to consumers.

95. All of these dialing systems enable predictive dialing functions as well as unattended message dialing functions to leave prerecorded messages to the called parties.

96. Both the GC and Noble systems enable users to create and manage automatic calling campaigns. Both the GC and Noble systems deploy automatic telephone dialing hardware and software that is used to automate debt collection functions. Both the GC and Noble systems

provide automatic telephone dialing functionality to users that have the ability to input lists of telephone numbers to be subsequently dialed without human intervention.

97.     Both LiveVox and SoundBite provide hosted call center facilities to their customers that remotely use those facilities to create and manage automatic calling campaigns. Both LiveVox and SoundBite are able to offer these call center services by deploying automatic telephone dialing hardware and software that is used to automate debt collection functions. Both LiveVox and SoundBite provide automatic telephone dialing services to their customers that have the ability to input lists of telephone numbers to be subsequently dialed without human intervention.

98.     In addition to the capacity to dial telephone numbers using a random or sequential number generator, the FCC has determined that computer equipment capable of dialing lists of telephone numbers is also subject to the TCPA's restrictions on the use of autodialers.

99.     The dialing system equipment employed by Collecto has the capacity to automatically dial cellular telephone numbers from a list of numbers without human intervention.

100.     The dialing system equipment employed by Collecto did, in fact, dial cellular telephone numbers from a list of numbers without human intervention, including the cellular telephone numbers of Plaintiffs Lofton and Pegg.

101.     Therefore, I conclude that the on-premise equipment (the GC and Noble dialing systems) and the hosted dialing services (the LiveVox and SoundBite dialing systems) employed by Collecto each qualify as an ATDS as defined within the TCPA and associated regulations.

102.     I further conclude that Plaintiff Pegg was called at least 15 times with the GC dialing system. (Exhibit 8, COL001585-COL001588.) Plaintiff Lofton was called at least 7 times

with the Noble dialing system. (Exhibit 8, EOS000001-EOS000003.) The results of my analysis of automatic calls made by Collecto to Plaintiff Davenport's cellular telephone number are currently inconclusive, though Collecto identified this as the cellular telephone number of Julie N[redacted] As fact discovery in this case is ongoing, I hereby reserve the right to supplement this Declaration with both my conclusions and opinions related to additional information required for the CDR analysis of Plaintiff Davenport's cellular telephone number.

103. In addition, each of the dialing systems employed by Collecto has the capability to generate clear and unequivocal reports on call detail records and campaigns for calls made to particular telephone numbers from those dialing systems. Generating these reports is a straightforward process that can be performed in a relatively short period of time, depending on the criteria given for the reports. These reports can plainly reveal any calls made to cellular telephone numbers using automatic telephone dialing functions.

104. Based on my knowledge and previous personal experience working with information service companies such as A.B. Data and its vendors and data processors, identification and contact information for individuals can be obtained based solely on a telephone number. The process and methodology for obtaining identifying data is a straightforward and highly effective, reliable and accurate administrative process.

105. Moreover, it is apparent that although Collecto may have the ability to distinguish cellular telephone numbers, they are not necessarily using that information to avoid making automatic calls to cellular telephone numbers.

106. Collecto can easily avoid making automatic calls to cellular telephone numbers by simply making telephone number queries to one of the available number portability database service providers. If these queries are made each time just prior to automatically dialing

telephone numbers, the numbers that are determined to be cellular telephone numbers can be programmatically excluded from the automatic dialing campaign.

**SUMMARY OF OPINIONS**

107. It is my expert opinion, based on my knowledge, education, experience, expertise, training, my review of the relevant documents and the facts described above, that Collecto employed equipment which has the capacity to automatically dial telephone numbers from a list or database of numbers and automatically dials those telephone numbers without human intervention.

108. It is my expert opinion, based on my knowledge, education, experience, expertise, training and the facts described above, that Collecto employed multiple ATDS's as defined within the TCPA to make automatic calls to cellular telephone numbers, including to the cellular telephone numbers used by Plaintiffs Lofton and Pegg.

109. It is my expert opinion, based on my knowledge, education, experience, expertise, training and the facts described above that detailed CDR data and campaign data, including the dialing method used by each dialing system, could have been easily produced in a genuine unequivocal manner and in a timely fashion over the progression of this case.

110. It is my expert opinion, based on my knowledge, education, experience, expertise, training and the facts described above that individuals' identities can be definitively and clearly ascertained based solely on their cellular telephone numbers. Furthermore, the ability to do so is a straightforward administrative process.

111. My opinions in this Declaration are based upon extensive experience in the telecommunications industry and a detailed understanding of telecommunications systems within the telecommunications industry. I also understand that there are new and additional TCPA

regulations that are soon to be promulgated by the FCC. I hereby reserve the right to supplement or modify my opinions detailed in this report to the extent that new information and/or FCC regulations are made available through discovery or other means.

I declare that the foregoing is true and correct subject to the laws of perjury of the United States of America.

Executed in Las Vegas, Nevada, on this 10th day of July, 2015.

Randall A. Snyder

Randall A. Snyder

# EXHIBIT 1

# Randall A. Snyder
# Curriculum Vitae

## Professional Summary

Randall Snyder is a recognized expert in wireless and cellular telecommunications technology, executive manager and leader, designing, developing, marketing and managing mobile telecommunication system and software products. He has over 30 years of experience specializing in wireless telecommunications technology, network architecture, design, system engineering, marketing and product management. He is a reputable leader and strategic developer with a successful background building startups. He is skilled presenter, communicator, and educator with success impacting organizational performance, corporate reputation and increasing sales. Mr. Snyder is results-oriented, highly organized and creatively focused on adhering to organizational missions and philosophy while designing best-of-breed mobile technology solutions. He has extensive travel experience to Asia-Pac, Latin America and Europe supporting engineering, sales and marketing and has familiarity with wireless network operators and manufacturers worldwide. Mr. Snyder has several years of wireless technology standards development experience and has been issued 26 patents related to wireless telecommunications technology. Mr. Snyder has also been retained as an expert witness in over 100 legal cases involving wireless telecommunications technology.

## Expertise

- Business Relations: Seminars, Sales Presentations and Sales Engineering
- Legal: Provisional and Patent Applications, Subject Matter Expert Consultant, Expert Witness and Testimony, Litigation Support, Sales and Vendor Contract Negotiations and Review, Qualified as an Expert in Federal District Court
- Management: Strategic/Tactical Planning, Product Management, Marketing Management, Operations Management, Competitive Analysis, Problem Resolution, Project Planning, Risk Management
- Organizational: P&L Management, Budget Planning, Expense Reduction and Cost Control
- Technology: Wireless Network Engineering, Design and Architecture, Multimedia Systems, Mobile Internet, Mobile Video, Mobile Marketing, mCommerce and Mobile Payments, Mobile Telecommunications Standards, 3G, UMTS, LTE, LBS, SMS, MMS, WAP, GSM, and ANSI-41 (CDMA) Networking, Signaling System No. 7 (SS7), Communications Protocols, Telephone Consumer Protection Act (TCPA), Automatic Telephone Dialing Systems (ATDS)

## Education

| Year | College or University | Degree |
|---|---|---|
| 1984 | Franklin and Marshall College | B.A., Mathematics (minor in Astronomy) |

**Randall A. Snyder**
**Curriculum Vitae**

## Professional Experience

From: January 2007
To: Present
Organization: Wireless Research Services, LLC; Las Vegas, NV
Title: President and Founder
Summary: Responsible for consulting business, and revenue as well as being the principal consultant. Areas of subject matter expertise include mobile and cellular networking, 3G, LTE, UMTS, GSM, ANSI-41, LBS, SMS, MMS, WAP, SS7, Diameter Signaling, Automatic Telephone Dialing Systems (ATDS) and mobile multimedia systems. With this expertise, primary consulting is in the area of system and product architecture, design, development, management and marketing as well as patent preparation and development, expert reports, expert testimony and litigation support. Expert witness and technology consultant for over 100 legal cases; authored over 85 expert reports for intellectual property cases, Telephone Consumer Protection Act (TCPA) cases and wireless technology litigation cases.

Notable Case:

- Personally cited by United States Court of Appeals for the Ninth Circuit. Satterfield v. Simon & Schuster, Inc. No. 07-16356, D.C. No. CV-06-02893-CW Opinion. Appeal from the United States District Court for the Northern District of California. Opinion by N.R. Smith, Circuit Judge. Filed June 19, 2009.

  Result of expert opinion greatly expanded the TCPA and was followed by formal FCC Declaratory Rulings citing this case that text messages are calls as defined by the TCPA and dialing numbers from a stored electronic list of telephone numbers falls within the definition of an Automatic Telephone Dialing System (ATDS).

From: September 2007
To: August 2010
Organization: Finsphere Corporation; Bellevue, WA
Title: Vice President Product Management & Wireless Engineering
Summary: Was among the first handful of employees at Finsphere prior to Series A funding. As vice president of product management and wireless engineering and a member of the executive management team, was responsible for product management activities and wireless technology solutions for Finsphere’s products. These products encompassed mobile location based software-as-a-service (SaaS) products offered primarily to financial institutions and banks. Responsibilities included product requirements and system functionality, strategic planning, R&D of new technologies, wireless network interconnectivity as well as wireless technology for Finsphere’s products. Was also responsible for market strategies, white papers and development and management of intellectual property and patent applications.

From: May 2004
To: April 2007
Organization: Entriq, Inc.; Carlsbad, CA
Title: Vice President Product Management
Summary: Was responsible for the entire product management team and system architecture for Entriq's products and services. Products encompassed mobile and broadband pay media applications (specializing in video), digital rights management (DRM) and security solutions, e-commerce and m-commerce systems as well as ad management and delivery solutions for both broadband and mobile media services. Responsibilities also included network and protocol analysis, market analysis, evaluation of third-party software and services, all vendor contract negotiations, RFP responses and overall administrative responsibility for the entire product line. Was responsible for directing and managing the technical writing department producing all user documentation associated with the products. Was nominated for a National Television Arts and Sciences Emmy Award for Outstanding Achievement in Advanced Media Technology for unique mobile technology designed, developed and commercially deployed as part of Entriq's solution.

From: February 2002
To: November 2003
Organization: m-Qube, Inc. (acquired by Verisign); Boston, MA
Title: Vice President Product Management and Carrier Marketing and Founder
Summary: Was responsible for the entire product management and carrier marketing teams, member of the executive management team and one of the founders. Was responsible for all product management, system engineering and product strategy for all business conducted with the wireless industry and carriers. Was in charge of the market strategy and wireless network architecture for m-Qube's mobile marketing service, a value-added service offering mobile marketing solutions to wireless carriers using short message services (SMS) for GSM and CDMA networks. The service architecture enabled branded companies to deploy promotional marketing and messaging campaign dialogs with mobile subscribers via SMS. The network architecture required definition and design of all aspects of the overall network including SMS technology, interconnectivity to the wireless carriers, signaling, traffic management, market requirements for features and services, network equipment specifications and OA&M.

From: April 2001
To: February 2002
Organization: Bitfone Corporation; Mountain View, CA
Title: Vice President Product Management and Marketing
Summary: Was responsible for the entire product management team and all of the company's product definitions, strategies and positioning. Had direct responsibility for market and product requirements, market research, competitive analysis, product strategy and sales strategy. Bitfone's products included the iBroker, a mobile Internet technology infrastructure platform to enhance WAP, MMS, mobile e-mail and wireless

messaging. Was also responsible for the mProve product (obtained via merger with Digital Transit, Inc.) providing over-the-air firmware and software update technology to mobile devices.

From: November 2000
To: April 2001
Organization: Openwave Systems (via merger of Phone.com and Software.com); Redwood City, CA
Title: Executive Director Emerging Technologies
Summary: Was responsible for new 3G technologies and providing market and product plans for those technologies for the entire product line. Primary responsibility for the 3GPP Multimedia Messaging Service (MMS), collecting market requirements from customers, developing corporate strategy for MMS and preparing the organization for additional development of the product. In addition, taught wireless technology classes to the different departments at Openwave and educated them on wireless service provider strategies and network technologies.

From: March 2000
To: November 2000
Organization: @Mobile and Software.com (via acquisition); Santa Barbara, CA
Title: Director Wireless Product Management
Summary: Was responsible for the product managers and for all of the wireless internet infrastructure products. Responsibilities included the overall market and product strategy for Software.com's wireless e-mail, short message service, instant messaging and unified messaging products. Was responsible for the overall revenues generated from these products based on detailed product plans and internal organizational planning. Much of his time was spent working with the executive management team and the sales directors on corporate market strategy.

From: December 1999
To: March 2000
Organization: FreeSpace Communications, Inc.; Palo Alto, CA
Title: Consulting Network Systems Engineer
Summary: Was responsible for the complete design of the backbone network architecture for a new broadband fixed wireless data network. This new architecture incorporated DSL as the backbone network technology. The network architecture required definition and design of all aspects of the overall network plan including DSL technology, IP technology, ATM technology, interconnectivity to the PSTN, operations signaling, traffic engineering, market requirements for network features and services, network equipment specifications and OA&M.

From: April 1992
To: December 1999
Organization: Synacom Technology, Inc.; San Jose, CA

**Randall A. Snyder**
**Curriculum Vitae**

Title: Executive Director Product Marketing and Management
Summary:

1998 – 1999 Executive Director Product Marketing and Management

- Responsible for managing the entire product management and marketing department of Synacom Technology, including market research and planning, product management and market communications. Lead the entire design, definition and product direction of all aspects of Synacom's products.

1997 – 1998 Director Systems Engineering

- Responsible for coordinating and managing the overall functional and requirements specifications for all Synacom's products as well as the detailed test plans used for alpha system testing of those products. Also responsible for directing and managing the technical writing department producing all of the user documentation associated with all of the products. Provided the primary sales engineering support for sales and marketing and was involved in nearly every aspect of the product lifecycle.

1996 – 1997 Director Consulting Services and Principal Engineer

- Responsible for obtaining, coordinating and managing all technical consulting projects performed by the company. These projects included wireless network architecture and design for both IS-41 and GSM networks for dozens of client companies (carriers and equipment manufacturers). In this role, continued as a member of both the ANSI/TIA TR45.2 Subcommittee for cellular radio intersystem operations standards and the ANSI/TIA TR46 Committee for 1900 MHz GSM PCS standards. Major contributor to TR46 in the area of GSM-to-IS-41 network interworking. Also authored, edited and published TIA standard specification IS-93 for cellular network interconnections to the PSTN and ISDN.

1992 – 1996 Principal Engineer

- Consulted for McCaw Cellular, AT&T Wireless, AirTouch Cellular, AirTouch Satellite Services, Globalstar, Nokia, MCI, Sprint PCS, XYPoint, NextWave, NewNet American Personal Communications, CTIA and several other national and international wireless telecommunications companies.
- Wrote wireless network design and analysis papers including HLR specifications, Authentication Center specifications, PCS network design, short message service (SMS) design, intelligent network applications of wireless technology and in-house expert in signaling protocols. Extensive experience with Signaling System No. 7, including both protocol implementation and design. Authored the Standard Requirements Document for the SS7-based A-interface between the base station and MSC used throughout the TIA. Also involved in the design of the Bellcore WACS/PACS technology, digital cellular network service and feature descriptions, SCPs and HLRs. Extensive experience developing the architecture and design of distributed intelligent networks including, SS7, cellular, PCS, AIN and WIN networks. Key member of the original Cellular Digital Packet Data (CDPD) architecture and design team. Designed the CDPD air interface protocol emulator

developed and marketed by AirLink Communications, Inc.

From: December 1990
To: April 1992
Organization: AT&T Bell Laboratories; Whippany, NJ
Title: Consulting Member of the Technical Staff
Summary: Evaluated wireless technology services for the Wireless Systems Architecture group. Also participated as a system engineer on the design of the Global System for Mobile (GSM) communication architecture and a software engineer developing the base station controller (BSC) for GSM. Also responsible for planning, coordinating, designing and testing the SS7 protocol software for the GSM A-interface between the BSC, MSC and operations and maintenance center (OMC). High-level and detailed design specifications were developed to coordinate the protocol testing between two remote laboratories. Provided the traffic analysis and traffic engineering of call traffic for the BSC. Specifically designed and developed the dynamic traffic overload control subsystem for the BSC. Presentations were given to technical staffs at multiple Bell Laboratories facilities supporting this work.

From: May 1987
To: December 1990
Organization: DGM&S, Inc.; Mt. Laurel, NJ
Title: Senior Staff Consultant
Summary: Responsible for the design, development and test coordination of an advanced intelligent network applications platform for a service control point (SCP). Also spent several years as a consulting software engineer for Siemens AG, developing and testing SS7 and call control software for the EWSD digital switching system for international as well as U.S. national network implementations. This work involved extensive travel to both Frankfurt and Munich, Germany for software system design and testing. Also involved in the concept, design and technical marketing of proprietary enabling technology software products for SS7 and ISDN.

From: May 1986
To: May 1987
Organization: ADP, Inc.; Mt. Laurel, NJ
Title: Senior Software Engineer and Analyst
Summary: Responsible for the design and development of data communications and real time database application software for a host data center that provided real time financial information to large brokerage houses. Data communication protocol expertise in HDLC, RS-232 and IBM BiSync.

From: June 1984
To: May 1986
Organization: C3, Inc.; Cape May, NJ
Title: Consulting Systems Analyst and Software Engineer
Summary: Civilian consulting systems analyst and engineer to the U.S. Coast Guard Electronics Engineering Center (EECEN) for C3, Inc. Developed sophisticated database software for shipboard use including inventory and law enforcement applications. The work included the follow-through of the entire project lifecycle including writing of requirements, functional, design and program specifications, coding, debugging, alpha and beta testing, release, shipboard installation and continuing technical support of the product. Received a personal commendation from Admiral W.F. Merlin, Chief, Office of Command, Control and Communications, for successful efforts on these projects.

## Professional Affiliations, Achievements & Awards

- Personal commendation from Admiral W.F. Merlin, Chief, Office of Command, Control and Communications, USCG (1986)
- Nominated, Technology and Engineering Emmy Award for Outstanding Achievement in Advanced Media Technology, 2006

## Patents, Publications & Citations

### Issued Patents

| Patent | Date | Description |
|---|---|---|
| US 8,954,102 | 2/10/2015 | System and Method for Determining and Delivering Appropriate Multimedia Content to Data Communication Devices |
| US 8,938,215 | 1/20/2015 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,923,902 | 12/30/2014 | Mobile Messaging Short Code Translation and Routing System and Method |
| US 8,839,394 | 9/16/2014 | Systems and Methods for Authenticating a User of a Computer Application, Network, or Device Using a Wireless Device |
| US 8,831,564 | 9/9/2014 | System and Method for Mobile Identity Protection Using Mobile Device Signaling Network Derived Location Pattern Recognition |
| US 8,819,141 | 8/26/2014 | Centralized Mobile and Wireless Messaging Opt-out Registry System and Method |
| US 8,761,732 | 6/24/2014 | System and Method to Initiate a Mobile Data Communication |

| | | |
|---|---|---|
| | | Utilizing a Trigger System |
| US 8,670,753 | 3/11/2014 | System and Method for Determining and Delivering Appropriate Multimedia Content to Data Communication Devices |
| Israel 200949 | 1/10/2014 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| Mexico 308720 B | 12/4/2013 | Sistema y Metodo para el Analisis Automatizado que Compara una Ubicacion del Dispositivo Inalambrico con Otra Ubicacion Geografica |
| US 8,588,748 | 11/19/2013 | System and Method for Mobile Identity Protection of a User of Multiple Computer Applications, Networks or Devices |
| US 8,437,784 | 5/7/2013 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,374,634 | 2/12/2013 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 8,280,348 | 10/2/2012 | System and Method for Mobile Identity Protection Using Mobile Device Signaling Network Derived Location Pattern Recognition |
| US 8,155,677 | 4/10/2012 | Mobile Messaging Short Code Translation and Routing System and Method |
| New Zealand 580499 | 8/31/2012 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 8,131,262 | 3/6/2010 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 8,116,731 | 2/14/2012 | System and Method for Mobile Identity Protection of a User of Multiple Computer Applications, Networks or Devices |
| Australia 2008/115299 | 2/9/2012 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| S. Africa 2009/06947 | 1/26/2011 | System and Method for Automated Analysis Comparing a Wireless Device Location with Another Geographic Location |
| US 7,792,518 | 9/7/2010 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 7,403,788 | 7/22/2008 | System and Method to Initiate a Mobile Data Communication Utilizing a Trigger System |
| US 6,128,389 | 10/3/2000 | Authentication Key Management System and Method |
| US 5,970,144 | 10/19/1999 | Secure Authentication-Key Management System and Method for Mobile Communications |
| US 5,850,445 | 12/15/1998 | Authentication Key Management System and Method |
| US 5,799,084 | 8/25/1998 | System and Method for Authenticating Cellular Telephonic Communication |

## Publications

1. What Workers Want from Wireless by Randall A. Snyder; April 15, 2004. America's Network, Advanstar Communications, Santa Ana, California USA.
2. Snyder, Randall A. and Gallagher, Michael D. Wireless Telecommunications Networking with ANSI-41 Second Edition; McGraw-Hill, New York, NY USA; © Copyright 2001 Randall A. Snyder and

Michael D. Gallagher. *Foreword by Tom Wheeler, current Chairman, Federal Communications Commission*.

3. Forecasting SS7 Traffic by Randall A. Snyder; November 1, 2000. Wireless Review, Volume 17, Number 21, Intertec Publishing, Overland Park, KS USA.
4. Gallagher, Michael D. and Snyder, Randall A. Mobile Telecommunications Networking with IS-41; McGraw-Hill, New York, NY USA; © Copyright 1997 Michael D. Gallagher and Randall A. Snyder.
5. IS-41/GSM Interoperability by Randy Snyder; December, 1995, Cellular Networking Perspectives, Cellular Networking Perspectives, LTD, Calgary, Alberta, Canada.

## Citations

1. Commendation from Admiral W.F. Merlin, Chief, Office of Command, Control and Communications, USCG (1986)
2. Method and Apparatus for Routing Short Messages, US Patent #6308075, Issued October 23, 2001.
3. Mediation Software for Delivery of Interactive Mobile Messaging and Personalized Content to Mobile Devices. Patent Application # 20020120779, August 29, 2002.
4. Automatic In-Line Messaging System, US Patent #6718178, Issued April 6, 2004.
5. Method and System for Wireless Instant Messaging, US Patent #7058036, Issued June 6, 2006.
6. United States Court of Appeals for the Ninth Circuit. Satterfield v. Simon & Schuster, Inc. No. 07-16356, D.C. No. CV-06-02893-CW Opinion. Appeal from the United States District Court for the Northern District of California. Opinion by N.R. Smith, Circuit Judge. Filed June 19, 2009.

**Randall A. Snyder**
**Curriculum Vitae**

## Litigation Support Experience

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm: Bailey & Glasser LLP
Case Name: Stein v. Monterey Financial Services, Inc.
Services Provided: Testifying expert for plaintiff
Disposition: Ongoing
Date: 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm: Aronovitz Law
Case Name: McKee v. Navient Solutions, Inc.
Services Provided: Testifying expert for plaintiff
Disposition: Ongoing
Date: 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Butsch Roberts & Associates, LLC
Case Name: Moore v. Family Dollar Stores, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm: Phillips Law Group, LLC
Case Name: Jones v. FMS Corp., U.S. Department of Education
Services Provided: Testifying expert for plaintiff
Disposition: Settled
Date: 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Tycko & Zavareei LLP
Case Name: Reardon v. Uber Technologies, Inc.
Services Provided: Testifying expert for plaintiff
Disposition: Ongoing

Date: 2015

*Expert Engagement:*
Type of Matter: California Invasion of Privacy Act (Penal Code §§ 630) class action related to unlawful recording of telephone conversations
Law Firm: Keller Grover LLP and Law Offices of Scot D. Bernstein
Case Name: Roberts v. Wyndham International, Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Ongoing
Date: 2015

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to short message service (SMS) technology
Law Firm: Paul Hastings LLP
Case Name: Nova Transforma Technologies, LLC v. AT&T Mobility LLC
Services Provided: Consulting expert, USPTO affidavits for patent reexamination for defendant
Disposition: Settled
Date: 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Maney & Gordon, P.A.
Case Name: Drew v. Ocwen Loan Servicing, LLC
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Parisi & Havens LLP
Case Name: Kleja v. Transworld Systems, Inc.
Services Provided: Consulting expert for plaintiff
Disposition: Ongoing
Date: 2015

*Expert Engagement:*
Type of Matter: Material Breach of Contract
Law Firm: Hogan Lovells USA LLP
Case Name: IBM de México Comercialización y Servicios, S. de R.L. de C.V. adverse Iusacell, S.A. de C.V.
Services Provided: Testifying expert, expert reports for IBM México
Disposition: Ongoing
Date: 2014

*Expert Engagement:*

Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Butsch Roberts & Associates, LLC
Case Name: In re: Life Time Fitness, Inc.
Services Provided: Consulting expert for plaintiff
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Morgan & Morgan, P.A.
Case Name: Cauchon v. Whetstone Partners, LLC, d/b/a eTitleLoan
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to short message service (SMS) technology
Law Firm: McGuireWoods LLP
Case Name: Comcast Cable Communications, LLC v. Sprint Communications Company L.P.
Services Provided: Consulting expert for defendant
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Caddell & Chapman
Case Name: Hooker v. Sirius XM Radio, Inc.
Services Provided: Consulting expert for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 related to unlawful cellular telephone calls
Law Firm: Lemberg & Associates LLC
Case Name: Hamlett et al v. Santander Consumer USA Inc. et al
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Bock & Hatch, LLC

Case Name: Kozlow v. Hangtime, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Parisi & Havens LLP
Case Name: In re Collecto, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Parisi & Havens LLP
Case Name: Lofton v. Verizon Wireless LLC
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Edelson PC
Case Name: Birchmeier et al v. Caribbean Cruise Line, Inc. et al
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Keogh Law, Ltd.
Case Name: Johnson v. Yahoo! Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Jacobs Kolton, Chtd.
Case Name: Nunes v. Twitter, Inc.
Services Provided: Consulting expert for plaintiff

Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Manning Law, PLLC
Case Name: Manning v. Lendio, Inc.
Services Provided: Testifying expert for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: The Law Offices of Joseph R. Manning, Jr.
Case Name: Vargem v. Tax Defense Partners, LLC
Services Provided: Testifying expert for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Steptoe & Johnson PLLC
Case Name: Cain v. Monitronics, International, Inc.
Services Provided: Consulting expert for defendant
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful cellular telephone calls
Law Firm: Mantese Honigman Rossman and Williamson, P.C.
Case Name: Glassbrook v. Rose Acceptance, Inc. and First National Bank of America
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Kazerouni Law Group, APC
Case Name: Iniguez v. The CBE Group, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled

Date: 2014

*Expert Engagement:*
Type of Matter: California Invasion of Privacy Act (Penal Code §§ 630) class action related to unlawful recording of telephone conversations
Law Firm: Keller Grover LLP and Law Offices of Scot D. Bernstein
Case Name: McCabe v. Six Continents Hotels, Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Keogh, Cox & Wilson, Ltd.
Case Name: Hetherington v. Omaha Steaks, Inc. and Omaha Steaks International, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Potter Handy, LLP
Case Name: Potter v. Bank of America Corporation
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Lemberg & Associates LLC
Case Name: Shiyan v. Lucille Roberts Health Clubs, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Withdrawn
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Lemberg & Associates LLC
Case Name: Meyer v. Receivables Performance Management LLC
Services Provided: Testifying expert for plaintiff
Disposition: Settled
Date: 2014

**Randall A. Snyder**
**Curriculum Vitae**

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: McGuire Law, P.C.
Case Name: Murray v. Bill Me Later, Inc.
Services Provided: Consulting expert
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Lemberg & Associates LLC
Case Name: Creel v. GC Services, L.P.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to short message service (SMS) technology and communication protocols
Law Firm: White & Case LLP
Case Name: Nokia Corporation v. Google Inc.
Services Provided: Testifying expert for defendant
Disposition: Settled
Date: 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Lemberg & Associates LLC
Case Name: Horton v. Cavalry Portfolio Services LLC
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Ongoing
Date: 2013 – 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Law Office of Scott D. Owens, Esq. and Farmer, Jaffee, Weissing, Edwards, Fistos & Lehrman, P.L.
Case Name: Legg v. Voice Media Group, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Class certification denied
Date: 2013 – 2014

*Expert Engagement:*

Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Edelson LLC
Case Name: Sterk v. Path, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2013 – 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Francis & Mailman, P.C.
Case Name: Dominguez v. Yahoo! Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Ongoing
Date: 2013 – 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: McGuire Law, P.C.
Case Name: Smith v. Microsoft Corporation
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2013 – 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Heyrich Kalish McGuigan, PLLC
Case Name: Gragg v. Orange Cab Company, Inc. et al
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Ongoing
Date: 2013 – 2015

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Wooten, Kimbrough & Normand, PA
Case Name: Murphy v. DCI Biologicals, LLC
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2013 – 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology

Law Firm: Kazerouni Law Group, APC
Case Name: Sherman v. Yahoo! Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2013 – 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and Fair Debt Collection Practices Act (FDCPA) 15 U.S.C. 15 § 1692 related to unlawful cellular telephone calls
Law Firm: Collins & Story, PA
Case Name: Keen v. Delta Outsource Group, Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Ongoing
Date: 2013 – 2014

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to short message service (SMS) technology and mobile banking
Law Firm: Panovia Group LLP
Case Name: N5 Technologies, LLC v. Capital One, N.A. et al
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2013 – 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to short message service (SMS) technology
Law Firm: Hartmann and Kananen
Case Name: Baird v. Sabre, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Dismissed
Date: 2013 – 2014

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: Edelson LLC
Case Name: Lee v. Stonebridge Life Insurance Company
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2012 – 2014

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to short message service (SMS) technology

| | |
|---|---|
| | and multimedia message service (MMS) technology |
| Law Firm: | Baker Botts LLP |
| Case Name: | Intellectual Ventures LLC v. AT&T Mobility LLC, T-Mobile USA, Inc., Sprint Spectrum L.P., US Cellular Corporation |
| Services Provided: | Testifying expert, expert reports for defendants |
| Disposition: | Ongoing |
| Date: | 2012 – 2014 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | Keogh Law, Ltd. |
| Case Name: | Wanca v. LA Fitness International, LLC |
| Services Provided: | Testifying expert, expert reports, depositions for plaintiff |
| Disposition: | Settled |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Penn v. NRA Group, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Ongoing |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls |
| Law Firm: | Lemberg & Associates LLC |
| Case Name: | Reed v. GC Services LP |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology |
| Law Firm: | The Lavery Law Firm |
| Case Name: | Volpe v. Caribbean Cruise Line, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Dismissed |
| Date: | 2013 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Washington Consumer Protection Act, RCW 19.86 and RCW 80.36.400 related to unfair business practices and unlawful cellular telephone calls |

**Randall A. Snyder**
**Curriculum Vitae**

Law Firm: Williamson and Williams Law
Case Name: Kids Northwest v. First Data Corporation
Services Provided: Consulting expert for plaintiff
Disposition: Ongoing
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: George Rikos Law
Case Name: Van Patten v. Vertical Fitness
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and California Business and Professions Code § 17200 class action related to short message service (SMS) technology
Law Firm: Milberg LLP
Case Name: D'Agostino v. Jesta Digital, LLC (dba Jamster)
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 and Restrictions on Telemarketing, Telephone Solicitation, and Facsimile Advertising 47 C.F.R. § 64.1200(d)(3) class action related to unlawful cellular telephone calls
Law Firm: Burke Law Offices, LLC
Case Name: Benzion v. Vivint, Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Lemberg & Associates LLC
Case Name: Rutigliano v. Convergent Outsourcing, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Ongoing
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology

Law Firm: Kazerouni Law Group, APC
Case Name: Emanuel v. The Los Angeles Lakers, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Dismissed
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Kazerouni Law Group, APC
Case Name: Barani v. Wells Fargo Bank, N.A.
Services Provided: Consulting expert for plaintiff
Disposition: Settled
Date: 2013

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to wireless calling party identification technology
Law Firm: K&L Gates LLP
Case Name: Cequint Inc. v. Apple Inc.
Services Provided: Consulting expert for plaintiff
Disposition: Settled
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Donald A. Yarbrough, Esq.
Case Name: Mais v. Gulf Coast Collection Bureau, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Dismissed on appeal
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Donald A. Yarbrough, Esq.
Case Name: Manno v. Healthcare Revenue Recovery Group, LLC
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: Law Office of Scott D. Owens, Esq.

Case Name: Wojcik v. Buffalo Bills, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2012 – 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: Law Office of Scott D. Owens, Esq.
Case Name: Keim v. ADF Midatlantic, LLC (Pizza Hut)
Services Provided: Testifying expert for plaintiff
Disposition: Ongoing
Date: 2012 – 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful cellular telephone calls
Law Firm: Liner Grode Stein Yankelevitz Sunshine Regenstreif & Taylor LLP
Case Name: Connelly v. Hilton Grand Vacations Company, LLC
Services Provided: Testifying expert, expert reports, depositions for defendant
Disposition: Class certification denied
Date: 2012 – 2013

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Kirby Law Group
Case Name: Agne v. Papa John's International, Inc. et al
Services Provided: Consulting expert for plaintiff
Disposition: Settled
Date: 2012

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action and NY GBL 399-P class action related to unlawful calls
Law Firm: Bellin and Associates LLC
Case Name: Tipoo v. Enhanced Recovery Company, LLC
Services Provided: Testifying expert, consulting expert, discovery motions for plaintiff
Disposition: Undisclosed
Date: 2012

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful calls
Law Firm: Burke Law Offices, LLC
Case Name: Bailey v. Household Finance Corporation et al

Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Undisclosed
Date: 2011 – 2012

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Burke Law Offices, LLC
Case Name: Annoni v. FYISMS.com, LLC
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Undisclosed
Date: 2011 – 2012

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Schrock v. Wenner Media LLC
Services Provided: Consulting expert for plaintiff
Disposition: Undisclosed
Date: 2011

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: Summit Law Group
Case Name: Kramer v. Autobytel, Inc. and B2Mobile, LLC
Services Provided: Consulting expert for defendant
Disposition: Settled
Date: 2011

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to wireless location based services (LBS)
Law Firm: Mintz, Levin, Cohn, Ferris, Glovsky and Popeo PC
Case Name: Emsat Geolocation Technology, LLC v. CellCo Limited Partnership (dba Verizon Wireless) et al
Services Provided: Consulting expert, USPTO affidavits for patent reexamination for plaintiff
Disposition: Undisclosed
Date: 2010 – 2011

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful calls
Law Firm: Keogh Law, Ltd.
Case Name: Griffith v. Consumer Portfolio Services, Inc.

Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Undisclosed
Date: 2010 – 2011

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful calls
Law Firm: Keogh Law, Ltd.
Case Name: Dobbin v. Wells Fargo Auto Finance, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Dismissed
Date: 2010 – 2011

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to short message service (SMS) technology
Law Firm: Nelson Bumgardner Casto PC
Case Name: Celltrace LLC v. AT&T Inc. et al
Services Provided: Consulting expert for plaintiff
Disposition: Undisclosed
Date: 2010

*Expert Engagement:*
Type of Matter: California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: VanDyke v. Media Breakaway, LLC
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2009

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to unlawful calls
Law Firm: Gordon & Rees LLP
Case Name: Allen v. Rickenbacker Collection Services
Services Provided: Consulting expert for defendant
Disposition: Undisclosed
Date: 2009

*Expert Engagement:*
Type of Matter: Intellectual property (trademarks) related to short message service (SMS) technology
Law Firm: Fish & Richardson P.C.
Case Name: Cricket Communications, Inc. v. HipCricket, Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Undisclosed
Date: 2008 – 2009

*Expert Engagement:*
Type of Matter: California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Albrecht v. mBlox, Inc. et al
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2008 – 2009

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 class action related to short message service (SMS) technology
Law Firm: Blim & Edelson, LLC
Case Name: Satterfield v. Simon & Schuster, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2007 – 2009

*Expert Engagement:*
Type of Matter: Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Walker v. Motricity, Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Rynearson v. Motricity, Inc.
Services Provided: Testifying expert, expert reports, depositions for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Reed v. Sprint Nextel Corporation
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: Class action related to short message service (SMS) technology and unlawful

| | |
|---|---|
| | charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Paluzzi v. CellCo Limited Partnership (dba Verizon Wireless) and mBlox. Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Nava v. Predicto Mobile, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | McFerren v. AT&T Mobility, LLC |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Guerrero v. MobileFunster, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Computer Fraud and Abuse Act, 18 U.S.C. Article § 1030, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers |
| Law Firm: | KamberEdelson, LLC |
| Case Name: | Gray v. Mobile Messenger Americas, Inc. |
| Services Provided: | Consulting expert for plaintiff |
| Disposition: | Settled |
| Date: | 2008 |

*Expert Engagement:*

| | |
|---|---|
| Type of Matter: | Class action related to short message service (SMS) technology and unlawful |

charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Goddard v. Google, Inc.
Services Provided: Consulting expert for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Duffy v. Nevis Mobile, LLC
Services Provided: Consulting expert for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Criswell v. MySpace, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332, 1453 and 28 U.S.C. § 1367(a) class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Bradberry v. mBlox, Inc.
Services Provided: Consulting expert, damage estimates for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: California Constitution, Article VI, § 10, class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: KamberEdelson, LLC
Case Name: Ayers v. Media Breakaway, LLC
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2008

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to wireless location based services (LBS)
Law Firm: Hahn Loeser & Parks, LLC

Case Name: Emsat Geolocation Technology, LLC v. CellCo Limited Partnership (dba Verizon Wireless) et al
Services Provided: Consulting expert for plaintiff
Disposition: Undisclosed
Date: 2008

*Expert Engagement:*
Type of Matter: Class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: Blim & Edelson, LLC
Case Name: Valdez v. Sprint Nextel Corporation
Services Provided: Consulting expert, damages estimate for plaintiff
Disposition: Settled
Date: 2007

*Expert Engagement:*
Type of Matter: Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 201 class action related to short message service (SMS) technology and unlawful charging of cellular telephone customers
Law Firm: Blim & Edelson, LLC
Case Name: Bradberry v. T-Mobile USA, Inc.
Services Provided: Testifying expert, expert reports, numerosity for class certification for plaintiff
Disposition: Settled
Date: 2007

*Expert Engagement:*
Type of Matter: California Computer Crime Law, Cal. Pen. Code § 502 and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 class action related to short message service (SMS) technology
Law Firm: KamberEdelson, LLC
Case Name: Abrams v. Facebook, Inc.
Services Provided: Testifying expert, expert reports for plaintiff
Disposition: Settled
Date: 2007

*Expert Engagement:*
Type of Matter: Intellectual property (patents) related to short message service (SMS) technology
Law Firm: Paul Hastings LLP
Case Name: TeleCommunication Systems, Inc. v. Mobile365, Inc.
Services Provided: Testifying expert, expert reports, depositions, trial testimony for defendant
Disposition: Settled
Date: 2007

Wireless Research Services

# Wireless Research Services, LLC

## 2015 Rate Sheet

| ITEM | FEE |
|---|---|
| Non-refundable Retainer at Time of Engagement | $4,000 |
| Expert Witness Consulting, Expert Reports | $450 per hour |
| Depositions, In-court Testimony | $500 per hour |
| Required Travel, Lodging, Board and Administrative Expenses | $1,000 per airline travel day plus actual incurred expenses |
| Invoicing | Payment due upon receipt |
| Penalty for Late Payments | 10% of total invoice added after each 30 days late until full payment is received |

By signing below and returning an executed copy to Wireless Research Services, LLC along with payment of the non-refundable retainer, you agree to the payment terms contained on this rate sheet.

Agreed to by:_______________________________________________

Law firm/Company:_________________________________________

Case Name:_________________________________________________

Date:______________________________________________________

# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

In re Collecto, Inc. Telephone )
Consumer Protection Act (TCPA) )
Litigation )
) Master No.
) 1:14-md-2513-RGS
)
) Volume I
______________________________)

VIDEOTAPED DEPOSITION OF PETER CAPPOLA
Los Angeles, California
Wednesday, June 24, 2015

Reported by:
ELIZABETH BORRELLI, CSR No. 7844, CCRR, CLR
JOB NO. 94773

"dialing systems."

What kind of dialings --

So, first, another little housekeeping matter. In the MDL actions, the complaints purport to be br- -- brought on a class action basis. And they seek to represent individuals that were -- certain individuals that were called by Collecto back to the July of 2009 time frame. So when we're talking today and I'm asking you questions unless, from the context, it's clear I'm talking about some specific time frame, that's really how far back we're talking. And the time frame that I'd be referencing is from July 2009 forward.

So with that in mind, what kind of dialing systems has Collecto used or -- and may still be using to make telephone calls --

A. Okay.

Q. -- in that time frame?

A. Yeah. We use the Noble dialer. We've used the -- what we refer to as the GC dialer, which is Guaranteed Contacts, that's the Ontario dialer. We use a hosted platform from SoundBite. And we use a hosted platform from LiveVox.

Q. And when you say "hosted platform," what does that mean?

dialing -- a blended telephony solution. We felt Noble wasn't the correct product to expand on. At the time, we moved people towards SoundBite. And then, based on some stability purposes with SoundBite, we determined to stop using that after roughly a year and a half and we moved to LiveVox.

Q. What do you -- what do you mean when you say "a blended solution?"

A. A blended telephony solution takes both inbound and makes outbound calls and, you know, uses algorithms, you know, based on both inbound and outbound traffic to did determine pacing. It's a -- it's a fully, you know, blended system in regards to being able to identify inbound calls to adjust outbound pacing -- pacing.

Q. So, back in 2009, was there one of these dialers that the company used primarily?

A. In 2009, it was a -- it was probably a com- -- it was a combination of GC and Noble with -- with some SoundBite.

Q. Okay. And what kind of criteria would you use to determine which of those particular systems to use for any particular accounts?

A. Well, for SoundBite, back in 2009, we would do unattended messaging, called message

blasting campaigns. We might do some direct connect campaigns through -- through SoundBite.

Q. What's direct connect?

A. It's when an outbound call is made to a debtor. If they answer live, they're, then, prompted, you know, if they're the correct -- the correct person, press one. And it will, then, call back into our data center to connect them to an agent.

Q. Okay. And then moving forward in time, has the reliance on GC and Noble as the primary systems changed?

A. Yes.

Q. And -- and how so?

A. Noble is now pretty much our primary -- it's just a first party platform that we use. We have two first party clients that are on Noble. Everybody in the third party world is now in LiveVox.

Q. And that's effective as of when?

A. Late 2013.

Q. So let's talk about the 2009 to 2013 time frame. Was it -- would it still be accurate to say that Noble and GC were the primary dialers being used by the company during that period of time?

have sound -- does it have recording --

A. Yes.

Q. -- sound recording?

A. Yes.

Q. And how about the predictive mode for LiveVox; the same as the others?

A. Yes.

Q. And the -- and the manual or preview mode, similar, same?

A. Yep. Preview mode, same thing. The account gets -- the account gets displayed to a collector. They, then, have to click and stay on the line until the duration of the call, as well as the HCI manual process.

Q. Okay. Hold on one second.

Okay. If we could have the -- actually, let me show you this first, before I have her mark it.

Mr. Cappola, I've shown you a document that has Bates numbers COL001585 and it goes through COL001588. If you would please just take a look at that document.

Do you recognize that?

A. Yes.

Q. What -- what is that document?

A. It's a FACS account.

Q. It's a -- a printout of information contained in the FACS system?

A. The FACS account for James E[redacted].

Q. Okay. And is this a -- a record that's from the books and records of -- of Collecto that's been -- that's the question; is it?

A. Yes.

Q. Thank you.

MR. MEYER: Okay. Can we have the court reporter mark this as Exhibit 22, I believe?

(Whereupon Exhibit 22 was marked for identification.)

BY MR. MEYER:

Q. Okay. So, in general, what kind of information is contained in this document?

A. It's all the information we would have received from the client in regards to this account. As well as any action taken on the account, which is notated starting where the notes are indicated on page 2. Any information we would have received through our skip tracing vendor or -- as well.

(Discussion off the record.)

BY MR. MEYER:

Q. Is this all the information contained in

FACS with respect to this particular account?

A. It appears to be a complete account. I can't represent what might be in this blocked out area on the last page.

Q. Fair enough.

How -- how was this document created?

A. It would have been received from a client and then imported into FACS.

Q. I guess my question is a little more simplistic. How did we get, out of the computer system FACS, to this piece of paper?

A. It would have been exported out, I imagine using a report writer, but I'm not sure who would have done that.

Q. Okay. Do you know why this document was provided to the plaintiffs in this case?

A. I imagine it's because it's one of those numbers that were called that we're talking about today.

Q. Fair enough.

I'll represent to you that -- that at least one of the numbers that's in this account here belong to Mr. Robert Pegg. So I believe this is relevant to Mr. Pegg's -- yeah, Mr. Pegg's account.

A. Okay.

Q. Okay. So tell me what -- what portion of this document would have information, if there is any, regarding calls being made to the telephone numbers associated with this particular account?

A. Beginning on page 2 from the notes -- you know, beginning of the notes -- notes part of an account.

Q. Okay.

MR. MEYER: We are having -- one second, please. We are having a malfunction.

(Discussion off the record.)

THE REPORTER: Counsel, do you want to go off the video record or --

MR. MEYER: That's okay.

BY MR. MEYER:

Q. Okay. So tell me: What does this mean when you say -- and it's in the notes field. You're talking about where it begins -- the first line says "LAL" and it has a date; is that -- is that what you're talking about?

A. Yes.

Q. Okay. So how would -- what kind of information is in this area of the document that would relate to telephone calls being made to this account?

A. Do you want to go down each one of them; is that --

Q. Well, I don't know. I guess maybe you could --

A. Okay.

Q. -- help me understand what these acronyms or codes mean. I don't think we need to know, for purposes today, you know, if there's housekeeping type of information in here, I'm sure. But really focusing in on, you know, when telephone calls were made and what kind of information would be reflected in this notes field.

A. Okay. I mean, you've got ones that identify, you know, call details, which would be calls. You know, basically -- so starting on -- you know, we can start on page 2. You know, it looks like the debtor phone flag was changed from a --

[Reporter requests clarification.]

THE WITNESS: "Debtor phone flag was changed from an empty field to a C" on the 22nd.

BY MR. MEYER:

Q. And where does that state --

A. That's --

Q. "DEB 8/22/12 --"

A. Yes.

Q. -- at "10:43P"?

A. Yep.

Q. Okay. What does that DEB mean?

A. DEB was the person who would have run the -- the -- that would have loaded these accounts back into -- or this result back into FACS.

Q. Okay. And what does that "debtor phone flag changed from blank to C;" what does that mean?

A. It means it was identified as a cell phone.

Q. Okay. And how about the next entry?

A. You know, those -- I believe those are just more housekeeping items that really go along with changing the debtor phone flag.

Q. Okay.

A. And then --

Q. Does that continue onto the second page?

A. Yeah.

Q. It's a series -- more of -- it says at the top: "DEB 8/22/12 10:43P enDI MGR_REV" and then "changed" And then "DU77706 from, blank, to 1."

What does that mean?

A. It means the field that was DU77706 was blank and was changed to a 1.

Q. What is that field?

A. I'm not sure.
Q. Okay. Is there some kind of document somewhere that talks about what those fields mean or are?
A. I'm not sure.
Q. Okay. Fair enough.
Okay. How about -- well, what would be the next entry reflecting something related to a telephone call to this account?
A. The last item on 8/22.
Q. Okay. So it -- it looks like there's two there. It says: "DEB 8/22/12 10:43P, call date: 8/22/2012 13:56:57 CDT." Is that what you're reflect -- referring to? And then the next line below that, "call details" --
A. Yes.
Q. -- and a telephone number?
A. Yes.
Q. Okay. What is that reflecting?
A. That's saying that it was -- on an unattended campaign it was determined to be wireless. Thus, the reason it was moved from a blank to a C in the prior page.
Q. Okay. So how do you know it's an unattended campaign from this information?

A. UA.

Q. So that UA code designation would mean it was an unattended --

A. Yes.

Q. -- it was a part of an unattended campaign?

A. Yes.

Q. Can you determine, from that information, what -- which of the dialers was used to undertake that call?

A. I can't be 100 percent certain.

Q. What would lead you to lean one way versus another?

A. It -- it was more -- most likely SoundBite, mainly because I was thinking LiveVox may have been introduced at this time as well. But I looked at date, 8/22/12, this would have been part of the SoundBite scrub I believe.

Q. Based upon the date, that's what lead -- leads you to believe that?

A. And the fact that it picked up wireless.

Q. Why would the fact that it picked up wireless lead you to --

A. Well, SoundBite has a -- SoundBite does our wireless scrubs. So they have a -- a mechanism

on their dialer which can identify phone numbers as being a cell phone versus a landline.

Q. How does it do that?

A. It matches it up against an outside database of cell phone numbers.

Q. So it matched it up as a cell phone, but it called it anyway?

A. No, in this case, it didn't call it. It identified it as a cell phone --

Q. I see.

A. -- and it wouldn't have called.

Q. I see.

So this doesn't actually mean that a call was undertaken when it says, "call date: 8/22/12 13:56?"

A. That's when it was -- again, that's when it was identified as being loaded into the system. Back then, we didn't have a good way of -- you know, in hindsight, we should have said "not called -- wireless not called." That's basically how we do it today. Back then, we didn't.

Q. Okay. What would be the next entry here that relates to a telephone call?

A. On 4/20 -- 1/29, about three quarters of the way down the page. "GC" stands for Guaranteed

Contact, so that was the GC dialer making a call to this 3232 number. "Message incomplete" is the result that we got back from the dialer, saying that it -- it connected but a message was not left.

Q. So this is reflecting that -- that -- I'm sorry, what does that udw mean?

A. User defined window.

Q. And what is -- what is that?

A. It's a FACS terminology for, you know, different windows that get -- can get created, you know, outside of the standard windows that come along with a FACS account.

Q. Okay. I believe you testified about that to some extent -- to a good extent in the last deposition. There was a window, 571 maybe, if I'm remembering that.

A. That's a skip tracing window.

Q. Now, is that -- would that have any relationship to this entry, that window 571.

A. If you look at the account where the numbers are -- are listed, it will tell you where that -- where that number should be or where that number may have been pulled out of.

Q. Well, right. So let's -- let's look at the second page, and that's Bates No. 1586. It

says, "skip trace phone" in the middle of the page.

A. Uh-huh.

Q. What does that mean?

A. Those are numbers that we got back from a skip tracer.

Q. So it says, "LN EDA." What does that mean?

A. LexisNexis. I'm not sure what the EDA stands for.

Q. And what about the next line, "LN verified?"

A. Again, Lex- -- LexisNexis. You know, beyond that, I'm not sure what all the other acronyms mean.

Q. So this is information that you -- that you, Collecto, would have obtained from LexisNexis to suggest that this telephone number or these telephone numbers listed here had some relationship to the debtor?

A. That's what the skip tracing vendor reported back to us.

Q. Okay. How about, if you go back to the first page, Bates No. 1585. At the top it says: "Cbr:," and then -- well, actually, it's "Ph:"

What is that indicating?

A. That's a number that we would have gotten from the client or the original data feed.

Q. What's -- is there -- there's a B at the end. Does that have any significance?

A. That it's a bad number.

Q. Meaning what?

A. Well, it could mean a couple of things. It could mean that we've called the number, you know, maybe received a number out of service. Or a collector called the number and were told, you know, "that person doesn't live here," they could have marked it as a B.

Q. Okay. So going back to page 3. We were talking about the 1/29/13 entry. There at 6:51, is that indicating that that's when the GC dialer made that call?

A. Yes.

Q. And what time zone is that in, 6:51P?

A. This mostly would have been eastern time zone.

Q. Okay. What's the next line mean? "Gc 1/29/13 6:51P 3000 begin REG collect gc unatt. msg."

A. Well, 3000 is the disposition the account was in at the time, which is regular collection activity.

Q. And this is, again, reflecting that it was a part of a GC unattended message campaign, this call that was done at 1/29/13?

A. Yes.

Q. Okay. What's the next line, "resent to Banko-refresh," mean?

A. It's a tactic that was run against this account, for some reason, to identify it if a bankruptcy or deceased.

Q. Okay. And then what's the next line indicate?

A. Same as the previous of 6- -- at 6:51. An unattended message -- an unattended call where no message was left.

Q. And so we see that, again, that would have been -- would that mean -- does that mean that the call was made at -- at 9:58 p.m. on 4/23/13, based upon that line?

A. Yes.

Q. Okay. And then 4/25/13, same thing?

A. Yes.

Q. And so these -- these lines that we're talking about now, these are all indicating that -- that particular telephone number, which had been identified as a wireless number, was being called by

the GC system on an unattended message campaign, yes?

A. Yes.

Q. Okay. What does it mean when it says, "nj 5/18 transferred to collector L6 et," and there's more an of an acronym there?

A. It looks likes it was transferred to a -- to collector L6. Each collector has their own accounts that they work. It looks like this was transferred to collector L6. I don't know the reason why.

Q. Okay. Then it looks like on 6/11/13 there was another GC dialer initiated telephone call?

A. Yep.

Q. Can -- and, again, from the next entry, you can tell it was part of the unattended message campaign?

A. Correct.

Q. Okay. Same on 6/14 on the next page, page 4. Do you see that?

A. Yes.

Q. And then what about 6/19; what does that mean? It says: "udw" -- to the telephone number -- "message incomplete."

A. Same as all the others.

Q. Oh, right. Sorry. I'm -- I got confused. I meant to ask you about the 6/20/13 where it says: "Call did not connect."

A. For some reason it -- it didn't connect to anything. It could have been, you know, a telco reason. For some reason the dialer determined it didn't -- it didn't get a good connection.

Q. What -- so what does it mean when it's saying "message incomplete" in those -- in these prior entries that we have been looking at?

A. It means that it got answered, whether it be by an answering machine or a live person, and it just hung up.

Q. Okay. Then on 6/21/13 at 11:50, what is that indicating?

A. This was a collector N12 that indicated that it was a wrong number. I don't know what the acronym ICC stands for.

Q. And any -- are you able to discern, from these records, how that came about?

A. It looks like they made a call. And, at that point, the data phone -- since it was determined to be a wrong number, maybe through a conversation with -- with the person who answered the phone, the -- the next line is the debtor

changed it from a C to a B, thus marking that number as bad.

Q. But I'm not seeing an associated entry with -- regarding a dialing campaign for this 6/21/13 contact. Do you -- does that mean maybe the person called in or --

A. It's possible they could have called in or somehow they got information that that was a wrong number.

Q. Because if that have been -- if it had been a call out to that number on 6/21/13, it would have been reflected in these logs?

A. Correct.

Q. Yes?

A. Yes.

Q. Okay.

A. Incoming call, ICC.

Q. Oh, incoming call. Excellent.

Okay. So, then, do you see any other entries following that for any calls made out to that telephone number?

A. No.

Q. And I assume that you do not know what's in this redacted box, but do you know?

A. I do not.

(Recess.)

THE VIDEOGRAPHER: Back on the record. The time is 2:22.

BY MR. MEYER:

Q. Mr. Cappola, what does a call detail report or a call history report from the dialers look like?

A. It's going to have your -- your date, your time, your duration, sometimes linkage to a -- a recording if -- if it's a recorded call, the campaign it was run out of.

Q. So if -- if I'm looking at the computer screen, what am I seeing when you pull up one of those reports?

A. You're looking at the statistics of -- of whatever you put in for your parameter for that call history.

Q. And so I could pull up, say, from a particular dialer, all the calls that were made during a particular time frame?

A. You could do that.

Q. And then, so what kind of information would I be getting out of that?

A. You'd get the --

Q. I mean, how -- I'm sorry.

A. You'd get your -- you'd get your date. You'd get your time. You would get the number called. You might get the agent ID, if an agent interaction was taken place. Duration. Campaign or skill, depending on what dialer you're looking at.
Q. Or pool, right?
A. Or pool. Well, GC was very limited in -- in the information that you could get.
Q. Okay.
A. But speaking for the other dialers, you'd get all your -- you know, your key performance indicators.
Q. You would be able to determine the mode that the dialer was in when it made those particular calls, predictive versus manual or some other mode, yes?
MR. MESSER: Objection. Overly broad.
THE WITNESS: Yes, you should be able to.
BY MR. MEYER:
Q. And is that --
A. Some more obvious than others.
Q. Okay. What would be the obvious ones?
A. LiveVox and SoundBite would be very obvious in regards to the type of campaign.
Q. How --

A. Noble --

It would -- it would identify it as an unattended, as a direct connect. I mean, it's very easy to decipher through the report to determine.

Q. And -- and you -- I interrupted you. You were about to say on the GC and Noble systems that --

A. GC was very limited, when we used it. Noble, you'd have to depend on the campaign type.

Q. The campaign type?

A. Well, the campaign name.

Q. The campaign name.

But that would be in that -- that call history or --

A. Yes.

Q. -- call detail report?

And so is that something that could be printed out from your -- from this computer that's run the report?

A. Yes.

Q. What kind of software is needed to run those types of report -- reports?

A. No specific software. You know, with LiveVox and SoundBite, you would have to log onto their sites and pull the reporting up. With Noble

you would have to just log in via the manager to Maestro and -- and run the report.

Q. So it's a pretty simplistic process, right? I mean, you log, you tell it what report you want, give it the parameters, and zoom, it's spit out.

A. Yep. Yep.

Q. And you can have that exported to a file, yes -- or files?

A. Yeah, there are export functions.

Q. And I assume you can export them to an Excel file or a CV -- CSV file so that those things can be opened up and seen in a meaningful way and according to the columns of information that --

A. It may not line up exact, but yes.

Q. Well --

[Reporter requests clarification.]

MR. MEYER: It was really wise, whatever it was. But it's gone to the ether. I don't know.

THE REPORTER: Well, we tried.

MR. MEYER: We tried.

BY MR. MEYER:

Q. Okay. So I'll say that we don't -- plaintiffs in this case do not believe we have such reports for the three plaintiffs at issue here that

know, we wouldn't keep them around.

Q. Okay. Now -- but I believe you testified earlier that you could discern the -- the dialer mode from the call detail or call history reports?

A. With Noble, I believe I mentioned we could identify what campaign it was. And you would have to look at the campaign settings to determine what type of mode was dialed.

Q. But with SoundVox -- I'm sorry, SoundBite and LiveVox, you can? I believe your testimony was that it was readily available?

A. Yes, yes, yes.

Q. And the GC dialer, I think we know that's information that gets pushed into FACS and we would have to go through the FACS system, yes, in order to --

A. You would have to look through the notes. That would be the only place where there would be any results from those calls.

Q. Right. In the campaign -- I mean, in the account notes, yes?

A. Correct, correct.

Q. Okay. Yeah, let me just ask you a little bit more about, you know, logistically. I mean, how -- it just doesn't seem to me that it would be

for the SoundBite and LiveVox systems, those being cloud or hosted systems --

A. Uh-huh.

Q. -- are doing a cell phone check at the time that a campaign is being run?

A. Correct.

Q. But with respect to campaigns that have been run through Noble or GC, the only scrub is the one that you, Collecto, did the first time that account would come in?

A. Correct.

Q. So if a person had a landline and at some point, then, moved it to a cell phone, ported it over, they'd be dialed by the GC or Noble dialer, right?

A. They could have also gone to SoundBite.

Q. But if they didn't --

A. It --

Q. -- and they were dialed by GC or Noble, there's no way that Collecto would know that that happened, because they're not running those numbers through the scrubber again?

A. That's correct.

Q. Okay. So if we take a look at Exhibit 21, that was the deposition notice. Let's look at No. 7

real quick, the data retention policies.

How far back is there data on the Noble dialer for -- that it -- that it retained in its call history report purposes?

A. Call history should be able to go back to October 2012.

Q. Right. And what -- what happened to the data predating that time?

A. It was purged off on a -- a two-year retention, meaning we'd only keep the most current two years.

Q. So the 2011 data was purged in 2013?

A. Yes.

Q. And the 2010 was purged in 2012, or something like that?

A. Yeah.

Q. Is it on a rolling basis?

A. Yes.

Q. Does it happen monthly? Daily? How does it --

A. Month -- it's monthly. It's a monthly setting within Noble.

Q. Are there any kind of secondary backups, you know, tape -- old style tape backups or anything that would -- that would have that information, not

Q. -- information. So there's no backup or anything of that particular --

A. No.

Q. -- system?

A. The FACS itself -- FACS itself is the system. FACS gets backed up on a -- a nightly basis, sent offsite.

Q. And -- and how far back does FACS data go, before 2009?

A. I'm -- I'm not sure.

Q. Or to -- or to 2009?

A. The FACS backup?

Q. Yeah.

A. Where you have -- all -- all of the data is within the account notes within FACS.

Q. Yes.

A. And that goes back until, you know, the beginning of -- well, when FACS was first introduced to the company.

Q. Got it.

Okay. So I'll represent to you that the first of these cases was filed -- hold on.

How about the SoundBite system, how about its data, how -- and the information it would use for call history reports; how far back does that go?

A. 16 months. They kept the data on the system for 16 months.

Q. So how far back can we go with that information at the present time?

A. Back 16 months.

Q. Well, there's not been a litigation hold on that stuff?

A. We -- well, we don't really -- we don't use that platform. But, I mean, that's -- it's 16 months to do any type of call history reporting.

Q. Okay. How about on LiveVox?

A. That's 18 months.

Q. How about is there a litigation hold on that?

A. We haven't been on the platform for 18 months yet.

Q. I see. Fair enough.

So GC is in the FACS system. Noble goes back to 20 -- do you know when in 2012?

A. I believe it's October 2012.

Q. And was there a litigation hold in place to save that stuff on the -- on the Noble system?

A. I believe so.

Q. When -- when did -- was that put in place; do you know?

Q. -- a cost. That's not free.

A. Yeah.

Q. But it wouldn't be an out-of-pocket cost to pull those reports?

A. Unless we have to bring some -- someone in to do it.

Q. Okay. And -- oh, do you know if the information that Mr. Wolfson was given to create his reconstructed call-outs was -- was undelimited data?

A. I'm not sure.

Q. Do you know -- excuse me, do you know what the -- the nature of the file format that he was given?

A. Yeah, there was some text files. There was some CSV files. There was some, you know, zipped files. There were audio files of different -- different formats.

Q. How about if I gave you a -- if I gave you a telephone number -- a specific telephone number, could you run a call report from the dialer -- from any of the dialers for that telephone number?

MR. MESSER: Objection. Overbroad. Vague as to time.

THE WITNESS: I could.

BY MR. MEYER:

Q. And, I mean, obviously it would have to be covering a time frame for which there was data. But what -- do you have an idea of how difficult and time consuming that would be?

A. A single phone number?

Q. Yes.

A. Not too overly time consuming.

Q. Do you have an estimate?

A. Outside of -- again, outside of SoundBite, you know, within an hour.

Q. Okay.

MR. MEYER: Let's take a couple minutes. And we might be --

MR. MESSER: Sure.

MR. MEYER: -- getting close here.

MR. MESSER: Good.

THE VIDEOGRAPHER: Off the record. The time is 4:05.

(Recess.)

THE VIDEOGRAPHER: Back on the record. The time is 4:23.

BY MR. MEYER:

Q. Okay. Mr. Cappola, I'm going to show you a document that -- I guarantee you've never seen this specific document, but ask you if you recognize

# EXHIBIT 3

# FACS Collections Using Guaranteed Contacts

February, 1998

ONTARIO SYSTEMS CORPORATION
1150 West Kilgore Avenue • Muncie, IN 47305–1588 • 765•751•7000

EOS000255

Confidential - Subject to Protective Order

# Predictive vs. Power Dialing

With predictive dialing, GC monitors current values for the length of phone calls, the amount of time spent updating an account after it is worked, and the amount of time it takes to make a contact after dialing begins. With this information, GC "predicts" when it should begin dialing numbers to have an account for a collector as soon as the collector is ready to work it. As a part of the feature, when someone answers the phone, unless a collector is immediately available to take the call, they are put on hold.

To help with fine tuning the predictive feature in GC, a "pacing" factor allows you to adjust the prediction to begin dialing a little sooner or a little later. This helps you adjust how quickly accounts are delivered to the collectors and, therefore, how long an individual may be on hold.

When using the predictive dialing algorithm, at least ten collectors must be working in the pool for the average calculations to become effective. [The predictive algorithm can be enabled or disabled while collectors are working, without disturbing the pool or the collectors. The pacing factor may also be adjusted as needed. ]

With power dialing, one or many collectors may work together in a pool. When a collector initiates a call, several dials are started. When a connect occurs, the other dials are withdrawn if there is no one in the pool available to take the call. However, if the number of collectors is sufficiently large, the efficiencies of power dialing approach the efficiency of predictive dialing. (This is particularly true if the pool allows "dial ahead" so the collector can initiate calls while they are still updating an account.)

While enabling the predictive dialing algorithm may improve your number of contacts, it will put people that you have called on hold, greatly increasing the probability that they will hang up. The "trick" with predictive dialing is to either keep the time the individual is on hold to a fraction of a second, or to design hold messages that are interesting enough to keep them on hold until the collector can take the call. This can be quite a trick.

For this reason, many agencies find that power dialing works much more effectively for them, particularly when they work their pools with enough collectors.

Confidential - Subject to Protective Order

# GC System Size

The size of a GC system may be categorized by three numbers: jobs, phone lines, and workstations. You may hear OSC say that your system is, for example, "8 by 16 by 16" This means that you have eight jobs (or licenses), 16 phone lines, and 16 GC workstations. This means that you could have a maximum of eight collectors working at one time, with two dials per collector, if they were all dialing the same number of phone lines at the same time. The additional eight work stations could allow you to switch the collectors who were working on GC, without having to have them switch desks.

## GC Jobs

For each attendant working on the dialer in GC, you must have one GC job. This job allows a collector to work in a pool using the GC dialer. In addition, if you use the unattended messaging option, each unattended messenger will require a GC job, just as an individual collector.

## MUMPS Jobs

In addition to GC jobs, you must consider the impact on your MUMPS jobs. When the dialer is started, there are two MUMPS processes that are always running. In addition to these, each GC pool that is being built requires one MUMPS job. So, if you are running the dialer and building two pools, you will use four MUMPS jobs, plus one MUMPS job (and one GC job) for each collector working on the dialer.

Other tasks that will have an impact on your usage of MUMPS jobs are running command procedures, building reports, or any other FACS background job, as you might expect. However, when you are working with OSC to configure your system, we will help you determine the number of licenses you will need to support the work you want to do.

## "Phone Only" Jobs

If you want to support speed dialing through GC for your collectors who are not working in pools, you may also purchase a "Phone Only" job. This job will allow a collector to speed dial or preview dial through GC while they are working in menu option (1,1,1) or any other non-pool collect screen. This license will not allow any pool dialing from GC. However, if the non-dialing pool the collector selects enables inbound calls, the collector may receive an inbound call, if they are ... (See Chapter 10, *Inbound & Blended Calling.*)

EOS000271

## Sorting Records

If you are defining a dialer report, the report is automatically sorted by the time and pool. If you wish to sort based on other criteria, or you are defining a user report, you may define the sort criteria in the Sort Sequence dialog box. This dialog box is illustrated in Figure 15-9.

**Figure 15-9: The Sort Sequence Dialog Box.**

Enter the fields by which the records are to be sorted on the lines of the dialog box. You may sort in ascending order by entering an A in the ORDER column, or in descending order by entering a D.

The report can be sorted on any field, even if it has not been included in the report.

If a report is sorted on fields that contain pool data, the report must be defined as SHOW DETAIL if you wish to see the data on which the report was sorted.

Confidential - Subject to Protective Order

## General Menu

You can change the report title, and the number of blank lines between records from this menu. You may also display a history of the edit changes to the report layout. Figure 15-10 shows the Genera menu and its items.

**Figure 15-10: The General Menu**

```
File    Layout    Columns    Select    Sort    General
                                               Title
                                               Spacing
                                               History

04/09/97              ABC Collections              Page 1
 3:54 PM                                              CHC
```

### Report Title

Select the Title menu item to display the dialog box illustrated in Figure 15-11.

**Figure 15-11: Report Title Dialog**

```
------------------ Report Titles ------------------
Main Title:
Sub Title:
```

The entry in the title field will be displayed on the second line of the report heading. If you enter a subtitle, a third line will be created for the report header where it will be displayed.

Any field whose name begins with SY may be included in the title fields. For example, the date on which a report was run could be included as part of the title, as follows:

```
From <<SYSTDATE>> to <<SYENDATE>>
        For <<SYDATE>>
```

EOS000424

# Report Fields

Fields for use in statistical reports are shown below. If a combined report is being created, you may use either inbound or outbound variables.

## Agency Outbound Variables

| | |
|---|---|
| GCSTCON | Number of Connects |
| GCSTBUSY | Number of Busies |
| GCSTNOAN | Number of No Answers |
| GCSTWEAK | Number of Weak Calls |
| GCSTREOR | Number of Reorders |
| GCSTDISC | Number of Calls Withdrawn |
| GCSTFAIL | Number of Failed Calls |
| GCSTHOLD | Outbound Calls placed on Hold |
| GCSTANSM | Number of Answering Machines |
| GCST3TON | Number of Triple Tones |
| GCSTLHLD | Outbound Calls lost on Hold |
| GCSTTOTT | Total up time for the System |
| GCSTBLKT | Time Outbound Calls were Blocked |
| GCSTPROD | Number of Progressive Calls Placed |
| GCSTPRED | Number of Predictive Calls Placed |
| GCSTMAND | Number of Manual Calls Placed |
| GCSTPRVD | Number of Preview Calls Placed |
| GCSTHLDT | Number of Hold Timeouts |
| GCSTNVTO | Number of No Voice Timeouts |
| GCSTLLHO | Party Hungup in Hole from Operator |
| GCSTOMIN | Minimum Outbound Users Active |
| GCSTOMAX | Maximum Outbound Users Active |
| GCITEM | Detail Item (Pool or LCR) |
| GCITEMDS | Detail Item Description |
| GCSTNOOP | Number of No Operator Calls |

## Agency Inbound Variables

| | |
|---|---|
| GCSTTOTT | Total Up Time for the System |
| GCSTINBD | Inbound Calls Answered Immediately |
| GCSTINHD | Inbound Calls held |
| GCSTINLO | Inbound Calls lost while on Hold |
| GCSTINAN | Inbound Announcements played |
| GCSTINTR | Inbound Calls transferred out |
| GCSTIMIN | Minimum Inbound Lines Active |
| GCSTIMAX | Maximum Inbound Lines Active |
| GCSTIPHL | Inbound Primary Hold Pickups |
| GCSTISHL | Inbound Secondary Hold Pickups |

Confidential - Subject to Protective Order



| | |
|---|---|
| GCSTITHA | Inbound Thrown Accounts |
| GCSTIRHL | Inbound ACD Held Rollovers |
| GCSTILHO | Inbound Lost in Hole |
| GCSTIPMN | Routes min Primary ACD User Count |
| GCSTIPMX | Routes max Primary ACD User Count |
| GCITEM | Detail Item (Route) |
| GCITEMDS | Detail Item Description |
| GCSTBLKI | Time Inbound Calls were Blocked |

## System Variables

| | |
|---|---|
| SYDATE | Date |
| SYTIME | Time |
| SYSTDATE | Starting Date of Report |
| SYSTTIME | Starting Time of Report |
| SYENDATE | Ending Date of Report |
| SYENTIME | Ending Time of Report |
| SYPOOL | Pool for Report |
| SYPOOLD | Pool Description |
| SYLCR | LCR Route |
| SYLCRD | LCR Route Description |
| SYINRTE | Inbound Route for Report |
| SYINRTED | Inbound Route Description |
| SYINCR | Increment |
| SYUSER | Selected User |
| SYUSERD | Selected User Description |

## User Outbound Variables

| | |
|---|---|
| GCSTCTKT | Total Talk Time |
| GCSTCUPT | Total Update Time |
| GCSTCMNT | Total Manual Time |
| GCSTCWAT | Total Waiting Time |
| GCSTCOBH | Outbound Contacts |
| GCSTCMNC | Number of Manual Calls Placed |
| GCSTCPRC | Number of Preview Calls Placed |
| GCSTCSAL | Number of Promises |
| GCSTCRPC | Right Party Contacts |
| GCSTCREF | Number of Refusals |
| GCSTCWPC | Wrong Party Contacts |
| GCUSER | Detail line item User |
| GCITEM | Detail Item (Pool or LCR) |
| GCITEMDS | Detail Item Description |
| GCSTDLHD | Dial Ahead Calls Placed |
| GCSTNDBT | Total No Account Time |
| GCSTSAMT | Promises Amount |

EOS000427

### User Inbound Variables

| | |
|---|---|
| GCSTCIBH | Inbound Contacts |
| GCSTCIBP | Inbound Primary ACD Hit |
| GCSTCIBS | Inbound Secondary ACD Hit |
| GCUSER | Detail line item User |
| GCITEM | Detail Item (Route) |
| GCITEMDS | Detail Item Description |

# Procedure Overview

## Creating a New Report

This is an overview of the procedure to create a new report.

Step 1: Select menu (9,5,4,7,1).

Step 2. While the Create menu item is highlighted, press RETURN.

Step 3. Enter the name of the report in the REPORT NAME field.

Step 4. Enter a short description of the report in the DESCRIPTION field.

Step 5. Define the report type: dialer or user.

Step 6. Define the report width: 80 or 132 characters.

Step 7. Define the scope of the report: inbound, outbound, or combined.

Step 8. Define how the fields will be printed: horizontal or vertical.

Step 9. Press the SAVE key to save the definition and to activate the File menu. Select the Save menu option.

or

Continue with step 4 of Defining a Report Layout.

## Defining a Report Layout

This is an overview of the procedure to define a report layout.

Step 1. From menu (9,5,4,7,1) select the Open menu item.

Step 2. In the REPORT NAME field, enter the name of the report whose layout is to be defined or edited.

Step 3. Press the SAVE key to display the report template and activate the Layout menu.

Step 4. Press RETURN to move the cursor to the first line of the column headers of the report template.

Step 5. Use the arrow keys to position the cursor and enter the text of each of the needed column titles.

Step 6. Use the arrow keys to move the cursor onto the last line of the report template. Position the cursor at the leftmost column where you wish to insert a field.

Step 7. Press the INSERT REC key to display the CREATE FIELD dialog box.

Step 8. Press the FIND key to display a list of the fields that can be selected for the report and select the desired field. If you know the name of the field, you may enter it into the NAME field.

Step 9. Edit the display width, print format, and other fields as needed.

Step 10. Press the SAVE key to add the field to the report.

Step 11. Continue positioning the cursor and adding fields to the report field line until you have completed the report definition.

Step 12. With the cursor in the template, press the SAVE key to activate the Layout menu.

Step 13. Press the SAVE key again to activate the File menu. Select the Save menu option.

or

Continue with step 3 of Defining Report Selection Criteria.

## Defining Report Selection Criteria

This is an overview of the procedure to define the selection criteria for a statistical report.

Step 1. From menu (9,5,4,7,1) select the Open menu item.

Step 2. In the REPORT NAME field, enter the name of the report whose layout is to be defined or edited. Press the SAVE key to display the report template and activate the Layout menu.

Step 3. Activate the Select menu.

Step 4. Press RETURN to display the selection criteria dialog box.

Step 5. Specify the time increment, starting date and other fields as appropriate for the report type and scope.

Step 6. Press the SAVE key to save the selection criteria and activate the Select menu.

Step 7. Press the SAVE key again to activate the File menu. Select the Save menu option.

or

Continue with step 3 of Defining the Sort Order.

## Defining the Sort Order

This is an overview of the procedure to define the sort order for records on the report.

Step 1. From menu (9,5,4,7,1) select the Open menu item.

Step 2. In the REPORT NAME field, enter the name of the report whose layout is to be defined or edited. Press the SAVE key to display the report template and activate the Layout menu.

Step 3. Use the arrow keys to activate the Sort menu.

Step 4. Press RETURN to display the Sort Sequence dialog box.

Step 5. Press the FIND key to display a list of the fields that can be selected for the sort order. If you know the name of the field, you may enter it into the FIELD field.

Step 6. Press RETURN to accept the default ascending sort order or enter a D for descending sort order.

Step 7. Continue adding sort fields as needed, then press the SAVE key to save the sort order definition and reactivate the Sort menu.

Step 8. Press the SAVE key again to activate the File menu and select the Save menu option

or

continue with step 3 of Defining the Report Title.

Confidential - Subject to Protective Order

EOS000429

# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
-------------------------------x
JOHN LOFTON, et al.,           )
                               )
              Plaintiffs,      )
                               )
           vs.                 ) No. 13-cv-05665-YGR
                               )
VERIZON WIRELESS (VAW) LLC,    )
                               )
              Defendants.      )
                               )
-------------------------------x
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
-------------------------------x
IN RE COLLECTO, INC. TELEPHONE ) Master No.:
CONSUMER PROTECTION ACT (TCPA) )
LITIGATION                     ) 1:14-md-2513-RGS
-------------------------------x
```

VIDEOTAPED DEPOSITION OF PETER CAPPOLA
Santa Monica, California
Wednesday, September 24, 2014

Reported By:
SUSAN A. SULLIVAN, CSR #3522, RPR, CRR
Job No. 83812

think I got this right, Verizon Wireless accounts for California that had a flag of B. Would that data be in any other database?

A No.

Q It wouldn't be in any dialers?

A No.

Q Which pieces of that information would not be in dialers? And let's take the Noble dialer for an example.

A If a phone was marked as a B that wouldn't be in the normal dialer.

Q Okay.

A Account information, you know, not all 219,000 accounts would have been in the Noble dialer.

Q When you say account information, what do you mean by that? It might be on Exhibit 3. I just want to make sure we're all on the same page of what we're talking about.

A A FAQ account consists of numerous windows that are shown in Exhibit 3. So you have Window 2 that has all your personal information, you've got different windows that show different information. There's the next one down is Window 571 which shows some of the skip tracing numbers and then further

down you see the actual account notes for each account and that's what really constitutes a FACS account.

MR. PARISI: Someone signed in or off, I believe. That's fine.

Just so you know, Charles, before you arrived both of your people on the phone said they may be signing in and off at times.

MR. MESSER: Okay.

Q BY MR. PARISI: So when you were asked to pull these documents you understood you were being asked to pull the entire account information such as the, some of the information we see in Exhibit 3, all notes input by debt collectors, all skip trace information, name and address of persons, correct?

A Yes.

Q I got out of my order of things here.

When did you first meet Aaron Wolfson?

A Maybe three months ago.

Q And who do you understand he is?

A He is a technical expert that our legal counsel has brought in.

Q And you didn't work with any technical experts that legal counsel brought in when you did the original production here?

move some stuff around here.

Believe it or not, I'm paperless. I know. I don't quite understand the concept. Okay.

Let us look at Exhibit 1 and Topic 4.

Let's start simply, one of the topics is the capability of Noble System's dialer with respect to the functioning as a predictive dialer. What is your understanding of what a predictive dialer is?

A A predictive dialer will dial a list of numbers using a specific algorithm to minimize the agent wait time, as well as minimize the potential of connecting to a dead or in our case not having an available agent available. An agent available.

Q Does the Noble dialer have this capability?

A Yes.

Q Is this capability in the Noble dialer utilized by Collecto?

A Yes.

Q Is it always utilized by Collecto when they use the Noble dialer?

A It is a functionality that we use. Are you asking if it is exclusively used?

Q When the Noble dialer is used is this predictive dialing function always used?

A No.

Do they use a mouse and a curser to hover over the number?

A Yes.

Q And they click?

A Yes.

Q And that's manual dialing?

A Yes.

Q And what is preview dialing?

A Preview and manual is one and the same. They preview the number before they dial it.

Q And both of these predictive and preview dialing can both be done on the Noble dialer?

A Correct.

Q And is preview dialing also a capability in the GC dialer?

A I'm not sure.

Q In the GC dialer is predictive dialing a function?

A Yes.

Q Is manual dialing a function?

A Yes. A collector can choose a number within the FACS screen and manually dial.

Q And that's with respect to the GC dialer?

A The GC dialer.

Q But with respect to the Noble dialer, the

collector cannot choose the number and manually dial?

A In some cases they could.

Q In what cases?

A In the case if they're given specific routes to work or specific accounts to work maybe in a time callback-type situation they would be able to go back and dial those numbers that were fed obviously from the list from FACS.

Q Okay. And is preview dialing a function that's available in the SoundBite dialer?

A Yes.

Q And is predictive dialing also a function available in the SoundBite dialer?

A Yes.

Q And does Collecto use one or both of these functions when they use the SoundBite dialer?

A We no longer use the SoundBite dialer in that capacity but when we did, yes, we would do both.

Q And with the GC dial they would do both also?

A I know we would do predictive, I'm not sure about manual on the GC dialer.

Q And this may -- in depositions it is always

that work under him.

Q Okay.

A And Steve does more than just FACS programming, he programs for the entire company.

Q Okay.

And a little off topic here. Everything might seem off topic to you when I'm done with these.

We talked about the Noble dialers and it has got a predictive function and a manual dialing function. Do each of the other dialers also have a predictive dialing and a manual dialing function?

MR. MESSER: Objection; compound.

THE WITNESS: SoundBite has a -- you can dial manually as well as predictively to SoundBite and to LiveVox.

Q BY MR. PARISI: And then what about the GC dialer?

A GC, as we mentioned before, we dial preview, has the capability of manual, I'm just not sure if we ever do that.

Q Okay. And do you also -- are campaigns also run on these, these other dialers, meaning the GC dialer, the SoundBite dialer and the LiveVox?

A GC being it as an integrated platform to

# EXHIBIT 5

# Outbound (Dialer Overview)

The **Noble PDS (predictive dialing solution)** automates, organizes, and manages your **outbound dialing** campaigns and resources, allowing you to build productivity, improve efficiency, and increase call volume. The **Noble Predictive Dialer** delivers call management, list control, workflow management, and an integrated database. Our **call management and predictive dialing solution** also provides complete local or remote monitoring and reporting, and supervision controls that help you manage your operations more effectively.

Noble's **outbound dialing solutions** will help you improve the productivity and efficiency of your outbound contacts. Our **outbound calling system** can be integrated with **automated messaging**, **IVR skills-based routing**, and other features to provide even greater functionality for your call center. Noble Systems clients can be assured that Noble can meet the challenging needs of their customer contact programs, whether your primary need is for growth, integration, or compliance.

Outbound
Inbound
Call Management
Agent Desktop
Management Desktop
Digital Recording
IVR
Messaging
IP & VoIP
Email & Web
WFM
Quality Management
Recording
Performance Mgmt
Best Time to Call
Speech Analytics
Quality Monitoring
TouchStar SMB

Learn More
Noble PDS •

---

### Features:

- **Full-Featured, Cost-Effective, Award-Winning System for Automated Dialing**
- **Configurable Pacing Algorithm –** Choose from up to 8 pacing methods and assign by campaign
- **Multiple Dialing Modes –** Predictive, preview, dial now, and messaging modes can be managed by agent group
- **Area Code Management –** Automatically begins and ends calling based on the time of day
- **Do Not Call List –** Applied to individual or multiple outbound campaigns for compliance
- **Busy, Disconnect, No Answer, and Answering Machine Screening –** Filters uncompleted calls and removes them from the agent queue so that your agents spend more time talking to live people
- **Speed of Call Transfer –** Noble's speed of delivering the call to an agent, or a procedure such as leaving a recorded message, is the fastest in the industry
- **CTI Screen Pops –** Push customer information to the agent desktop for reduced call handle times
- **Reporting –** Noble provides standard and custom reporting by agents, calls, and campaigns for use in center management and compliance reporting
- **Call-back Scheduling and Appointment Setting –** Agents can schedule agent-specific or general call-backs or manage appointment setting
- **List & Campaign Management –** Load, filter, and assign lists and campaigns in advance so that new programs or lists can begin dialing automatically, without supervisor intervention
- **Expanded Features for Call Management–** Conference calls, internal and external transfers, PBX integration for call blending, remote agents and more
- **A Total Solution –** Noble offers the ability to add-on even more functionality with digital recording, speech analytics, IVR, workforce management, payment processing, and more, for a complete customer communication platform

Connect

Noble Users Group

# EXHIBIT 6



LIVEVOX
an aspect software affiliate

Home | Applications Overview | Private VoIP Cloud | Services | Industries | Resource

VIDEO: Phone Lock
▼ Applications Overview
▶ Dialing Systems
ACD
IVR
Call Recording
CRM
Compliance Suite
Service
**Predictive Dialer**
Aspect WFM with LiveVox
PBX
▶ Private VoIP Cloud
▶ Services
▶ Industries
▶ Resource Center
▶ About LiveVox

**Product Brochures**

Compliance Application Overview
Private VoIP Cloud Overview
LiveVox Application Overview
+More

# Predictive Dialer

ATA
Technovation
Award

PRODUCT
CUSTOMER INTERACTION
2010
OF THE YEAR

LiveVox is the only carrier-class cloud contact center provider to offer integrated ACD, Predictive Dialer, IVR, call recording, real-time reporting and business analytics onto a fully burstable PCI compliant platform.

Cloud deployment ensures rapid implementation and deployment of contact tools, allowing you to drive campaign strategy. PCI compliant, fully redundant architecture protects your data and ensures uptime and reliability.

A Predictive Dialer that caters to your business strategy- not the other way around

### Contact Center Benefits:

- Eliminate Capital expenses. Reduce operating expenses.
- Fully burstable – Always have the right capacity, never too much or too little
- Cut deployment & upgrade timeframes 90%
- Improve campaigns through strategy tools and analytics
- Security, Reliability & Compliance simplified

### LiveVox's Predictive Dialer Advantage:

- On-demand capacity and WAN deployment.
- Global call routing and blending without license costs.
- Most mature multi-site/multi-source applications and integration tools.
- More carrier MPLS integration than any other cloud provider.
- Customizable inbound/outbound IVR configuration

Predictive Dialer | ACD | IVR | Call Recording | Business Analytics

- Highly Scalable, PCI Certified
- Simplifies Security & Improves Reliability
- Increases Contacts & Agent Talk Time
- Seat/Line Capacity On Demand
- Fully Blended, Global Routing Simplified
- Reduce CapEX & Operational Expenses
- No Support or Maintenance Costs

Read Our Whitepapers
Request A Demo
Schedule Appointment

**White Papers**

LiveVox Case Study Bursting
LiveVox Case Study Self Service
Unlocking Multi-Site Synergies
Solving Historic Capacity Challenges
Solve the Contact Center Integration Dilemma
Take the Migraine out of VoIP Migration
The Cost Efficiency of Cloud
Gone With a Whisper
Are You Tracking the Right KPIs
Leveraging Call Blending Made Easy
+ More White Papers

**Latest News**

Aspect Software and LiveVox...
LiveVox and Adreima Discuss...
LiveVox Hosts Panel on Increasing...
LiveVox Discusses How Cloud can...
LiveVox Showcases the Latest Cloud...
+ More News

**Follow LiveVox**

   

Leave a me

# EXHIBIT 7




# SoundBite Cloud Predictive Dialer

## Modernize Customer Outreach with a Cloud-Based Dialer

More and more organizations are migrating to the cloud and away from on-premise deployments. This shift is largely due to increased flexibility, quick deployment, cost-effectiveness, and a smaller technology footprint. Frost & Sullivan's recent "Total Cost of Ownership" study states that contact centers reduce costs up to 58% by utilizing cloud-based offerings. SoundBite helps clients evolve their contact centers from traditional on-premise models to a modern and scalable cloud-based hosted dialing architecture.

## Improve Agent Efficiency and Boost Productivity

SoundBite's cloud predictive dialer allows agents to spend their time talking with live people by filtering out unproductive calls including voice mail systems, busy signals, and disconnected numbers resulting in agents only being connected to calls that are answered by live people. SoundBite's unique predictive pacing algorithms optimize the balance between wait times and call abandonment by accurately predicting when agents will become available, enabling contact centers to maximize agent utilization while increasing profitability.

**Key Benefits**

- Increase customer contacts
- Maximize agent productivity
- Improve contact center performance
- Reduce costs
- Enhance campaign monitoring
- Integrate with business systems
- Maintain compliance

Not only does the SoundBite Engage™ platform identify and convert more contacts in less time, but it also enables powerful cross-channel contact strategies throughout a customer's lifecycle by combining a voice conversation with a text, web or email follow-up. The Agent Voice Portal interface is designed to improve the user experience by providing contact center managers and agents with tools that maximize efficiency. SoundBite's cloud-based predictive dialer is part of the SoundBite Engage platform which also includes preview dialing, manual dialing, and automated voice messaging.

## Improve Reliability, Scalability and Affordability

The SoundBite cloud dialer offers the reliability of an on-premise solution with the scalability and affordability associated with hosted business solutions. Contact centers will realize an immediate return on investment by reducing capital expenditures, increasing time to market, and alleviating peak capacity concerns. Users benefit from the latest innovation including immediate access to new features and functionality while meeting compliance requirements and avoiding costly on-premise technology investments.

## Seamless Contact Center Integration

SoundBite's cloud-based dialer replaces or integrates with many of the components within the traditional contact center infrastructure, allowing organizations to take full advantage of a cloud solution.





# Benefits of SoundBite's Cloud Dialer

### Increase Customer Contacts:

- Cross channels – Voice, text, email, web
- Call blending and escalation (inbound & outbound)
- Effective right party connect scripts
- Two-way text chat via Agent Text Portal
- Capture and honor opt-in and channel preferences
- Customer recovery contact strategy
- Local-to-end-user Caller ID
- Global support

### Maximize Agent Productivity:

- Predictive, preview and progressive dialing
- Custom agent scripting via agent portal
- System-of-record integration
- Session transfer capabilities
- Predictive dialing
- Predictive and abandon rate pacing
- Unproductive call filtering
- Inbound IVR
- Automated payment systems
- Custom call-based disposition codes
- Web callback

### Improve Contact Center Performance and Reduce Costs:

- Customizable user interface
- Multiple pacing algorithms
- Flexible report formatting
- Monitor campaigns and agents via one screen
- API for real-time statistics
- Softphone over VPN or MPLS
- Inbound ACD
- Call blending
- Real-time suppression by account or phone number
- Support for at-home agents
- Robust report suite

### Enhance Campaign Monitoring:

- Real-time agent monitoring
- Monitor-Coach-Barge into agent conversations
- Campaign progress monitors
- Historical transaction searching
- Session Recording
- Real-time pacing controls
- Agent group management

### Integrate with Business Systems via API and CTI Modules:

- Web services API (SOAP/XML/REST)
- Fully documented API, including sample code
- Secure access to the SoundBite platform
- Language neutral (Support for C#, C++, Java, etc)
- Multi-channel support
- List and event based interactions
- CTI modules for integration pacing and call routing
- Intelligent call routing, microsite integration and dynamic call pacing

### Mitigate Risk and Enable Compliance:

- Prevent contacting prohibited numbers
- Ensure agents adhere to requirements
- Keep up with consumer mobility and phone portability
- Control contact frequency
- Manage consumer consent and profile data
- Leverage the cloud to mitigate risk
- Certified PCI Level 1 Service Provider
- Enables compliance with requirements such as FDCPA, TCPA, FCRA, UK Data Protection Act, GLBA and HIPAA

## About SoundBite Communications

SoundBite Communications is a customer experience management company with deep expertise in delivering cloud-based mobile marketing, proactive customer care, and collections/payments solutions. More than 450 global end-clients, including nearly 50 Fortune 500 companies, leverage SoundBite's proactive multi-channel communications and preference management platforms to power 2.5 billion personalized and compliant customer interactions annually across the full consumer lifecycle. Visit SoundBite.com and follow us @SoundBiteComm for more information.

DS0213

22 Crosby Drive, Bedford, MA 01730 USA ◆ Tel: 877-SoundBite | +44 (0) 800 051 8975 ◆ Fax: +1 781 897 2502 ◆ Sales@SoundBite.com

SoundBite.com

©2013 SoundBite Communications, Inc.





## BENEFITS

- Increase customer contacts
- Maximize agent productivity
- Improve contact center performance
- Maintain compliance
- Reduce costs
- Enhance campaign monitoring
- Integrates with business systems and CRMs such as SFDC

# Genesys Cloud Dialer

## MAXIMIZE AGENT PRODUCTIVITY WITH A CLOUD-BASED OUTBOUND DIALER

More and more organizations are migrating their contact centers to the cloud. This shift is largely due to the quick deployment, cost-effectiveness, and smaller technology footprint provided by cloud-based business solutions.

Genesys helps evolve your contact center from traditional on-premises dialing architectures to the cloud completely or a in hybrid deployment model to maximize profitability, meet compliance requirements, and easily scale capacity. Our cloud-based dialer enables you to develop sophisticated outbound contact strategies that leverage predictive, preview, and manual dialing as well as outbound IVR and alert messaging.

## Improve Agent Efficiency and Boost Productivity

The Genesys Cloud Dialer identifies and converts more contacts in less time. It also enables cross-channel contact strategies throughout a customer's interaction by combining a voice conversation with an outbound IVR, text message, mobile webpage, or email follow-up. Our Agent Voice Portal interface is designed to improve the user experience by providing contact center managers and agents with tools that maximize efficiency.

Genesys Cloud Dialer features predictive dialing which allows agents to spend time on productive calls with live parties by filtering out unproductive calls including voice mails, busy signals, and disconnected numbers. Our unique predictive pacing algorithms optimize the balance between wait times and call abandonment by accurately predicting when agents will become available, enabling contact centers to maximize agent utilization while increasing profitability.

## Improve Reliability, Scalability and Affordability

The Genesys Cloud Dialer offers the reliability of an on-premises solution with the scalability and affordability associated with cloud-based business solutions. Your contact center will realize an immediate return on investment by reducing capital expenditures, increasing time to market, and alleviating peak capacity concerns. Your users benefit from the latest innovation including immediate access to new features and functionality while meeting compliance requirements.

## Integrated Analytics

Take your outbound campaigns to the next level with integrated analytics. Detailed reporting and monitoring provides deep insight into a campaign's effectiveness. Additionally, speech analytics provides a cost-effective and systematic way to evaluate agents, improve compliance, identify trends and ultimately provide a better customer experience.

## Seamless Contact Center Integration

The Genesys Cloud Dialer replaces or integrates with contact center infrastructure and allows organizations to take full advantage of a cloud or hybrid solution. API connectivity lets organizations integrate the Genesys Cloud Dialer into business applications to automate contact management and trigger outbound calls. CTI enables on-prem systems to supplement their limited capacity with outbound IVR messages sent from the Genesys Cloud Dialer and utilize the on-prem call pacing, routing, and screen pops.

Genesys easily integrates with Salesforce to provide contact centers with the tools needed to seamlessly communicate with their customers. For example, organizations can quickly export campaign calling lists from Salesforce into the Genesys Cloud Dialer enabling them to implement multi-channel outbound campaigns. Additionally after an outreach attempt is completed, results can be written immediately back into the activity log of the appropriate customer record for historical purposes.

## Increase Customer Contacts:

- Cross channels – outbound IVR, text (SMS and MMS), email, mobile webpages
- Call blending and escalation (inbound & outbound)
- Dynamic list management
- Built outbound campaigns from SFDC contacts
- Effective right party connect scripts
- Capture and honor opt-in and channel preferences
- Customer recovery contact strategy
- Local-to-end-user Caller ID
- Global support

## Maximize Agent Productivity:

- Predictive, preview and manual dialing
- Outbound IVR and alert messaging
- Seamless blending of inbound and outbound calls
- Pacing options including fixed line, predictive and compliance
- Custom agent scripting
- Session transfer capabilities
- Unproductive call filtering
- Automated payment systems
- Custom call-based disposition codes
- Add outreach results to SDFC record
- Scheduled callback

## Improve Contact Center Performance and Reduce Costs:

- Customizable user interface
- Multiple pacing algorithms
- Inbound and skills-based routing (ACD)
- Robust and flexible report suite
- Support for at-home agents
- Real-time campaign and agent monitors
- Softphone over VPN or MPLS

## Enhance Campaign Monitoring:

- Real-time agent monitoring
- Monitor-Coach-Barge
- Campaign progress monitors
- Historical transaction searching
- Session recording
- Real-time pacing controls
- Agent group management
- Speech, text, and email analytics

## Integrate with Business Systems via API and CTI Modules:

- Automate campaign management
- Trigger outbound campaigns
- Documented API and sample code
- Intelligent call routing and pacing
- SOAP/REST interfaces
- Secure multi-channel support
- List and event based interactions
- Desktop integrations to CRM/SFDC
- Trickle SFDC feed to dial web leads

## Mitigate Risk and Enable Compliance:

- Prevent contacting ineligible numbers
- Track consumer mobility and phone portability
- Compliance rules builder to control contact frequency
- Manage consumer consent and profile data
- Certified PCI Level 1 provider
- Enables compliance with requirements such as TCPA, FDCPA, CFPB, FCRA, CRTC, CASL, OFT, Ofcom, GLBA, HIPAA

### KEY FEATURES

- Predictive, preview and manual dialing
- Outbound IVR and proactive alert messaging
- Minimize customer hold time and routing delays
- Custom agent scripting
- Real-time agent monitoring
- Built-in compliance tools
- Customer opt-in solution
- Speech and campaign analytics
- Integrates with business systems and CRMs such as SFDC
- Timely, relevant, and personalized communications

**About Genesys**

Genesys is the market leader in multi-channel customer experience (CX) and contact center solutions in the cloud and on-premises. We help brands of all sizes make great CX great business. The Genesys Customer Experience Platform powers optimal customer journeys consistently across all touch points, channels and interactions to turn customers into brand advocates. Genesys is trusted by over 4,500 customers in 80 countries to orchestrate more than 100 million digital and voice interactions each day.

Visit us at www.genesys.com or call us at +1.888.436.3797.

Genesys

Corporate Headquarters 2001 Junipero Serra Blvd., Daly City, CA 94014 USA
Tel: +1 650 466 1100 | Fax: +1 650 466 1260 | www.genesys.com

Genesys and the Genesys logo are registered trademarks of Genesys. All other company names and logos may be trademarks or registered trademarks of their respective holders. © 2014 Genesys. All rights reserved.

# EXHIBIT 8

**#20-4597878**                                                      **CLOSED 08/21/13 - LAW**

```
DEBTOR        Name:█████ JAMES              Ssn:****███   Cbr: Ph:832-228-████
              Adr1 ████████████       POE:           Lgl:  POE Ph:
              Cit█████████             Cty:           Canc:LAW  Born:█
              St: TX  Zip:█████        St:   Zip:     COF:   Sal:
              Clnt████████ ████ ███████ ███████████7  Org:   527.99
              List:08/13/12 Srv:11/20/09 P195:████:36 Calls:10 Con:0  Bal:  623.03

PREVIOUS ADDRESS    LAL 08/23/12  8:11P
                                   █████ ███ ██████

MULTIPLE ACCOUNTS
RM# Acct       Name / Client    Chk# / Lst   Srv      Lpy  Col Disp     Bal     Check Reason        Drivers
License #
      PRN      INT      LI3      LI4    AIN      CC    ATY      MS1    PJI
1  4597878*  █████,JAMES
█████████████████████       08/13/12 11/20/09         0 9000    623.03
    527.99    0.00     0.00    0.00    0.00    0.00   0.00   95.04    0.00

PAYMENTS No payments.
```

```
CING ORBIT NEW FIE   LOC CODE        :401020        ACCT OPEN DATE  :08/27/2009
                     TXN CODE DESCR  :              MARKET SEGMENT  :HCL
                     TXN DATE        :08/13/2012     LAST PAY DATE   :
                     TXN AMT         :527.99         DISP ADD RMV DT :
                     PREV LOC CODE   :              DISP AMT        :0.00
                     PREV ACCT NUM   :              WRITEOFF AMT    :527.99
                     FUNCTION STATE  :OC87           WRITEOFF DATE   :11/20/2009
                     ACCT STATUS     :WRITEOFF       LEGACY ACCT NUM :
                     ACCT STATUS DAT :11/20/2009     LEGACY STATUS   :O
                     ACCT TYPE       :C              GL CO CODE CGSA :HC
                     CREDIT CLASS    :C              CRED BUR FLAG   :Y
                     INACTV SUBSCR 1 :713-560-████   BANKRUPTCY IND  :N
                     INACTV SUBSCR 2 :              PROBATE IND     :N
                     INACTV SUBSCR 3 :              OCA PLACEMT DAT :08/13/2012
                     INACTV SUBSCR 4 :              SUBMKT SITE     :HTH
                     INACTV SUBSCR 5 :              RECALL RSN CODE :
                     AUTHD USER 1    :              DRV LIC NUM     :11454777
                     AUTHD USER 2    :              LANGUAGE PREF   :E
                     AUTHD USER 3    :              CRAN STATUS     :
                     LAST NSF DATE   :              COUNTRY         :US
                     LAST NSF AMT    :0.00           PHONE TYPE 1    :
                     STATE CODE      :TX             PHONE TYPE 2    :B
```

Confidential Subject to Protective Order - COL001585

# #20-4597878

# CLOSED 08/21/13 - LAW

```
Compliance/Acct Li  Dbtr Name       :E[redacted] JAMES            Rp Name          :E[redacted] JAMES
                    Dbtr SSN        :[redacted]                   Rp SSN           :[redacted]
                    Addr 1          :5[redacted]                  Co Borr Name     :
                    Addr 2          :                             Co SSN           :
                    City            :[redacted]                   Spouse Name      :
                    State Zip       :[redacted] [redacted]        Spouse SSN       :
                                                                  Acc Listed       :08/13/2012
                                                                  Reference        :4[redacted]
                                                                  Refr Date        :

SKIP TRACE PHONE F  LN EDA          :832-896-[redacted]           LN EDA PH FL     :
                    LN VERIFIED     :979-418-[redacted]           LN VERIF PH FL   :
                    LN REVERSE      :                             LN REV PH FL     :
                    LN PH PLUS 1    :979-824-[redacted]           LN PH PLUS FL 1  :
                    LN PH PLUS 2    :                             LN PH PLUS FL 2  :
                    LN REL PH 1     :                             REL PH FL 1      :
                    LN REL PH 2     :                             REL PH FL 2      :
                    LN ASSOC PH 1   :713-910-[redacted]           ASSOC PH FL 1    :
                    LN ASSOC PH 2   :                             ASSOC PH FL 2    :
                    CELL PH FRM CLT :                             CELL PH FL       :
                    LN PAW          :                             LN PAW FL        :
                    CBC POSS PH 1   :                             CBC PH FL 1      :
                    CBC POSS PH 2   :                             CBC PH FL 2      :
                    CBC POSS PH 3   :                             CBC PH FL 3      :
                    CBC POSS PH 4   :                             CBC PH FL 4      :
                    FILE ONE PH     :                             FILE ONE PH FL   :
                    FSH PH1         :                             FSH PH1 PF       :
                    METRONET PH     :                             METRONET PH FL   :
                    EXP CONS STMT   :                             EXP PH FL 2      :
                    CLNT POSS PH 1  :                             CLNT PH FL 1     :
                    CLNT POSS PH 2  :                             CLNT PH FL 2     :
                    CLNT POSS PH 3  :                             CLNT PH FL 3     :

NOTES                   LAL 08/16/12 12:31  Add-on charge of $95.04 added in sub-bal MS1
                        LAL 08/16/12 12:31  Set disputed flag on account et NBDISPUTED index 474388260
                        LAL 08/16/12 12:31  (R-4597878)
                        LAL 08/16/12 12:31  Updated udw 725,1 with 08/16/2012 et 497STAMPB index
                        LAL 08/16/12 12:31  47438[redacted](A-4597878)
                        DEB 08/21/12  2:18P Updated udw 665,5 with 08/21/2012 et CPSSTAMP index
                        DEB 08/21/12  2:18P 4850[redacted] (A-4597878)
                        DEB 08/22/12 10:43P Debtor phone flag changed from  to C
                        DEB 08/22/12 10:43P enDI MGR_REV changed DBPF from  to C
                        DEB 08/22/12 10:43P enDI MGR_REV changed DSCALLS from 0 to 1
                        DEB 08/22/12 10:43P enDI MGR_REV changed DU66516 from  to 08222012
```

Confidential Subject to Protective Order - COL001586

#20-4597878 CLOSED 08/21/13 - LAW

```
DEB 08/22/12 10:43P enDI MGR_REV changed DU77706 from  to 1
DEB 08/22/12 10:43P enDI MGR_REV changed DU77708 from  to 08222012
DEB 08/22/12 10:43P enDI MGR_REV changed DU77702 from  to WIRELESS
DEB 08/22/12 10:43P enDI MGR_REV changed DU77701 from  to 08222012
DEB 08/22/12 10:43P enDI MGR_REV changed DU77705 from  to 08/22/2012 13:56:57
DEB 08/22/12 10:43P CDT
DEB 08/22/12 10:43P enDI MGR_REV changed DU77720 from  to 1
DEB 08/22/12 10:43P Call Date: 08/22/2012 13:56:57 CDT
DEB 08/22/12 10:43P Call Dtls: 832-228-[redacted] (UA-WIRELESS) - 247
CB  08/23/12 12:10P Transferred to collector 25F et MOVETO25F index 488021218
CB  08/23/12 12:10P (R-4597878)
CB  08/29/12  2:16P 3000 BEGIN REG COLLECT et NBMOVE1 index 495533588
CB  08/29/12  2:16P Transferred to collector 75F et NBMOVE1 index 495533589
CB  08/29/12  2:16P (R-4597878)
CB  09/19/12  8:49  Transferred to collector 85F et CBF index 533233588
CB  09/19/12  8:49  (R-4597878)
BCM 09/27/12  2:51P Cleared disputed flag on account et RMVCREB2 index
BCM 09/27/12  2:51P 538767424 (A-4597878)
BCM 10/04/12  1:15P Set disputed flag on account et DISPUTE index 544582737
BCM 10/04/12  1:15P (A-4597878)
BCM 10/29/12  7:28P Cleared disputed flag on account et RMVCREB index 572776895
BCM 10/29/12  7:28P (A-4597878)
CB  10/31/12  4:48P Transferred to collector 75F et NBTRANS index 576596050
CB  10/31/12  4:48P (R-4597878)
CB  10/31/12  4:48P Updated udw 999,7 with lb ORICOL et NBTRANS index 576596051
CB  10/31/12  4:48P (A-4597878)
nj  11/27/12  4:32P Transferred to collector L12 et SOLTOL12 index 587700597
nj  11/27/12  4:32P (R-4597878)
CB  11/28/12  7:29  Transferred to collector 75F et CBTACT index 588211839
CB  11/28/12  7:29  (R-4597878)
nj  12/08/12  4:59  Transferred to collector L12 et SOLTOL12 index 640963395
nj  12/08/12  4:59  (R-4597878)
gc  01/29/13  6:51P udw 832-228-[redacted] MESSAGE INCOMPLETE
gc  01/29/13  6:51P 3000 BEGIN REG COLLECT gc unatt. msg.
LAL 04/10/13  8:04  RESENT TO BANKO-REFRESH
gc  04/23/13  9:58P udw 832-228-[redacted] MESSAGE INCOMPLETE
gc  04/23/13  9:58P 3000 BEGIN REG COLLECT  gc unatt. msg.
gc  04/25/13  9:46P udw 832-228-[redacted] MESSAGE INCOMPLETE
gc  04/25/13  9:46P 3000 BEGIN REG COLLECT  gc unatt. msg.
gc  04/26/13  9:46P udw 832-228-[redacted] MESSAGE INCOMPLETE
gc  04/26/13  9:46P 3000 BEGIN REG COLLECT  gc unatt. msg.
nj  05/18/13 12:33  Transferred to collector L6 et SOLTOL6 index 761043203
nj  05/18/13 12:33  (R-4597878)
gc  06/11/13  8:18P udw 832-228-[redacted] MESSAGE INCOMPLETE
gc  06/11/13  8:18P 3000 BEGIN REG COLLECT  gc unatt. msg.
```

Confidential Subject to Protective Order - COL001587

#20-4597878 CLOSED 08/21/13 - LAW

| | | | |
|---|---|---|---|
| gc | 06/14/13 | 6:16P | udw 832-228-[redacted] MESSAGE INCOMPLETE |
| gc | 06/14/13 | 6:16P | 3000 BEGIN REG COLLECT gc unatt. msg. |
| gc | 06/19/13 | 9:17P | udw 832-228-[redacted] MESSAGE INCOMPLETE |
| gc | 06/19/13 | 9:17P | 3000 BEGIN REG COLLECT gc unatt. msg. |
| gc | 06/20/13 | 8:24P | udw 832-228-[redacted] Call did not connect |
| N12 | 06/21/13 | 11:50 | ICC 832 228 [redacted] WRONG NUMBER |
| N12 | 06/21/13 | 11:51 | Debtor phone flag changed from C to B |
| N12 | 06/21/13 | 11:51 | DBPF NOT changed. et SETBADFLAG index 803759661 (A-4597878) |
| N12 | 06/21/13 | 11:51 | 3GPH GOOD PHONE |
| nj | 07/18/13 | 4:29P | Transferred to collector L4 et SOLTOL4 index 878352599 |
| nj | 07/18/13 | 4:29P | (R-4597878) |
| nj | 08/17/13 | 4:25P | Transferred to collector L3 et SOLTOL3 index 910733994 |
| nj | 08/17/13 | 4:25P | (R-4597878) |
| MDO | 08/21/13 | 4:27P | CLASS ACTION LAW SUIT FROM PLAINTIFF'S ATTY / |

[redacted]

** END OF REPORT **

Confidential Subject to Protective Order - COL001588

# Account Notes: CHI #15-10425048 AT&T (Closed 03/09/09)

```
--------------------------------------------------------------------------------------------------------
STATUS              Acct: [redacted]      Disposition: 9999 INACTIVE                    Wait: 04/15/10

DEBTOR              Name: N[redacted] JULIE                     Ssn:            Cbr:  Ph: 810-591-[redacted]B
                      Rp: ,                                     Ssn:             Rp Ph: 248-431-[redacted]B
                    Adr1: [redacted]          POE:                          Lgl:   POE Ph: 989-876-[redacted]B
                    City: [redacted]          Cty:                         Canc: RCL  Born:
                      St: MI  Zip: [redacted] St:      Zip:                 COF:       Sal:

                    Clnt: [redacted]                                                  Org:     37.06
                    List: 09/09/08 Srv:05/01/08 Pl95:    Time:30   Calls:4   Con:1   Bal:      0.00

MULTIPLE ACCOUNTS
RM# Acct      Name / Client     Chk# / Lst   Srv      Lpy   Col Disp        Bal       Check Reason          Drivers
License #
  PHONE    INT       BAD CHK  DIR ADV     AIN      CC      ATY       MS1      PJI
1   10425048* N[redacted],JULIE
7448101[redacted]/MWCMCH/at&t        09/09/08 05/01/08         Returned       0.00
     0.00     0.00      0.00     0.00     0.00     0.00     0.00      0.00     0.00
2   11884461* N[redacted],JULIE
744810170[redacted]/MWTMCH/at&t        08/26/09 05/01/08         Returned       0.00
     0.00     0.00      0.00     0.00     0.00     0.00     0.00      0.00     0.00

DEBTOR'S ATTORNEY   Name:AN[redacted]                                                 [redacted]

LETTER HISTORY
No Letter History

PAYMENTS No payments.

APPLIED PAYMENTS No payments.

SPECIAL NOTES       CASE # 08-31645-D0F

NOTES                      WGR 09/09/08  7:55  [redacted]
                           WGR 09/09/08  7:55  N NA
                           WGR 09/09/08  7:55  248 431-[redacted]
                           WGR 09/09/08  7:55  989 876-[redacted]
                           WGR 09/09/08  7:58  Stopped 0 letters et ATTL1SCR index 283677075
```

```
WGR 09/09/08  7:58  lr #1 et ATTL1SCR index 283677076 1
WGR 09/09/08  7:58  NCOA HAS BEEN PERFORMED et ATTL1SCR index 283677077
WGR 09/09/08  7:58  2SCR SEND FOR EXP SCORE et ATTL1SCR index 283677078
WGR 09/09/08  7:58  Scheduled a disposition change on 09/10/08 et ATTL1SCR
P1  09/09/08  8:54  TPOE WRONG#
P1  09/09/08  8:54  Udw 101-10 phone# changed from 989-876-████ to
P1  09/09/08  8:54  Udw 102-5 phone# changed from 989-876-████ to
P1  09/09/08  8:54  2SCR SEND FOR EXP SCORE
P1  09/09/08  8:54  Telephone contact attempted today.
A1  09/09/08  9:20  IC TT MN AT RP NMBR SD HE WILL HVE THE DBTR TO CB
A1  09/09/08  9:20  2SCR SEND FOR EXP SCORE
A1  09/09/08  9:20  Telephone contact attempted today.
PR6 09/09/08  9:21  TLINE HNG UO
PR6 09/09/08  9:21  2SCR SEND FOR EXP SCORE
PR6 09/09/08  9:21  Telephone contact attempted today.
sys 09/09/08 10:36  Scheduled disp changes were removed.
WGR 09/09/08 10:36  3BEG BEGIN COLLECTION et SCRPR6 index 283692006
WGR 09/09/08 10:36  Transferred to collector 0 et SCRPR6 index 283692007
WGR 09/09/08 10:36  (R-10425048)
WGR 09/09/08 10:36  Set assignment parameters to ,,346,0 et SCRPR6 index
WGR 09/09/08 10:36  283692008 (A-10425048)
WGR 09/09/08 10:36  SCORE RETURNED et SCRPR6 index 283692009
WGR 09/09/08 10:36  FILE RETURNED FROM EXPERIAN
AP1 09/09/08 12:03P CI TT DBTR RD MM VERFI ADDRS SD WILL HVE ATY AKE CARE OF
AP1 09/09/08 12:03P IT
P1  09/09/08 12:30P SPOKE TO DEBTOR-NO PROMISE (conts)
P1  09/09/08 12:30P Stopped 0 letters et sm3PBK index 283696077
P1  09/09/08 12:30P 3PBK PENDING BANKRUPTCY
P1  09/09/08 12:30P Window 571 field 42 changed from  to B.
MGR 09/09/08 12:39P enDI MGREXP changed DU77706 from  to 1
MGR 09/09/08 12:39P enDI MGREXP changed DU77708 from  to 09092008
MGR 09/09/08 12:39P enDI MGREXP changed DU77707 from  to 1
MGR 09/09/08 12:39P enDI MGREXP changed DU77702 from  to LM W 3RD PARTY AT
MGR 09/09/08 12:39P enDI MGREXP changed DU77701 from  to 09092008
MGR 09/09/08 12:39P enDI MGREXP changed DU77712 from  to 989-876-████
MGR 09/09/08 12:39P enDI MGREXP changed DU77705 from  to 09/09/2008 08:49:05
MGR 09/09/08 12:39P CDT
MGR 09/09/08 12:39P 0 - LM W 3RD PARTY AT 989-876-████
MGR 09/09/08 12:39P enDI MGREXP changed DU77706 from 1 to 2
MGR 09/09/08 12:39P enDI MGREXP changed DU77702 from LM W 3RD PARTY AT to LM ON
MGR 09/09/08 12:39P MACH AT
MGR 09/09/08 12:39P enDI MGREXP changed DU77712 from 989-876-████ to
MGR 09/09/08 12:39P 248-431-████
MGR 09/09/08 12:39P enDI MGREXP changed DU77705 from 09/09/2008 08:49:05 CDT to
MGR 09/09/08 12:39P 09/09/2008 09:01:14 CDT
```

```
MGR 09/09/08 12:39P 0 - LM ON MACH AT 248-431-7847
MGR 09/09/08 12:39P enDI MGREXP changed DU77706 from 2 to 3
MGR 09/09/08 12:39P enDI MGREXP changed DU77707 from 1 to 2
MGR 09/09/08 12:39P enDI MGREXP changed DU77702 from LM ON MACH AT to LM W 3RD
MGR 09/09/08 12:39P PARTY AT
MGR 09/09/08 12:39P enDI MGREXP changed DU77712 from 248-431-[redacted] to
MGR 09/09/08 12:39P 810-591-[redacted]
MGR 09/09/08 12:39P enDI MGREXP changed DU77705 from 09/09/2008 09:01:14 CDT to
MGR 09/09/08 12:39P 09/09/2008 10:49:06 CDT
MGR 09/09/08 12:39P 0 - LM W 3RD PARTY AT 810-591-0816
MGR 09/09/08 12:40P enDI MGREXP changed DU77706 from 3 to 4
MGR 09/09/08 12:40P enDI MGREXP changed DU77702 from LM W 3RD PARTY AT to
MGR 09/09/08 12:40P enDI MGREXP changed DU77704 from  to ATTEMPTED POSS DISC AT
MGR 09/09/08 12:40P enDI MGREXP changed DU77712 from 810-591-0816 to
MGR 09/09/08 12:40P 810-744-1705
MGR 09/09/08 12:40P enDI MGREXP changed DU77705 from 09/09/2008 10:49:06 CDT to
MGR 09/09/08 12:40P 09/09/2008 12:19:09 CDT
MGR 09/09/08 12:40P 0 - ATTEMPTED POSS DISC AT 810-744-1705
nj  09/10/08  5:05  ld #1 hold ltrs (i)
KOB 09/18/08  8:32  RCVD ATY LOD - STD THAT D FILED CHAPTER 7 BANKRUPCY - CASE
KOB 09/18/08  8:32  #08-31645
nj  11/01/08  2:30  Transferred to collector PMS et attROLL index 287629739
nj  11/01/08  2:30  (R-10425048)
nj  11/04/08  6:19  Transferred to collector PM3 et ATTMWCPM3 index 287740853
nj  11/04/08  6:19  (R-10425048)
BCM 11/17/08  2:06P Transferred to collector ML3 et BMTRANS index 288722043
BCM 11/17/08  2:06P (R-10425048)
BCM 11/17/08  2:06P Set assignment parameters to ,,324,0 et BMTRANS index
BCM 11/17/08  2:06P 288722044 (A-10425048)
BCM 11/17/08  2:12P Transferred to collector PM3 et BMTRANS index 288725133
BCM 11/17/08  2:12P (R-10425048)
BCM 11/17/08  2:12P Set assignment parameters to ,,324,0 et BMTRANS index
BCM 11/17/08  2:12P 288725134 (A-10425048)
nj  01/04/09  7:04  Transferred to collector PMS et ATTMWCPMS index 289722067
nj  01/04/09  7:04  (R-10425048)
WGR 03/09/09 10:26  Credit report flag changed from Y to N
WGR 03/09/09 10:26  Marked account for credit bureau removal et ATTRCL index
WGR 03/09/09 10:26  292935576 (A-10425048)
WGR 03/09/09 10:26  enDI FFSBCMID changed DU10120 from  to 03092009
WGR 03/09/09 10:26  enDI FFSBCMID changed DU10106 from F to C
WGR 03/09/09 10:26  Untied account from route 10425048 enDI RFSBCDI1
WGR 03/09/09 10:26  Stopped 0 letters et sm9000 index 292935577
WGR 03/09/09 10:26  9000 CANCEL enDI RFSBCDI1
nj  03/15/09  7:02P Stopped 0 letters et sm9999 index 294544077
nj  03/15/09  7:02P 9999 INACTIVE sys
```

```
nj  03/15/09  7:02P Cancel back principal 37.06
nj  01/14/10  1:20  enDI RFOARCN3 changed DU41532 from  to 01132010
nj  01/14/10  1:20  enDI RFOARCN3 changed DU41533 from  to 01132010
nj  01/14/10  1:20  enDI RFOARCN3 changed DU41543 from  to 01132010
WGR 02/08/10  9:02  enDI FFSBCMID changed DU10120 from 03092009 to 02082010
WGR 02/08/10  9:02  Untied account from route 10425048 enDI RFSBCDI1
WGR 02/08/10  9:02  Re-instated returned account.
WGR 02/08/10  9:02  Stopped 0 letters et sm9000 index 335170016
WGR 02/08/10  9:02  9000 CANCEL enDI RFSBCDI1
nj  02/14/10  7:03P Stopped 0 letters et sm9999 index 336739957
nj  02/14/10  7:03P 9999 INACTIVE sys
nj  02/14/10  7:03P Cancel back principal 37.06
SRM 11/25/11 11:16P Client Reference# changed from 8107441███ to
SRM 11/25/11 11:16P 744810170██
SRM 11/30/11  2:20P Client Reference# changed from 744810█ to
SRM 11/30/11  2:20P 8107441705483
SRM 12/12/11  1:23  Client Reference# changed from 810744█ to
SRM 12/12/11  1:23  744810█
sys 07/21/13 10:11P Incorre██te format, UDW: 777 FLD: 12 Old value:
sys 07/21/13 10:11P 810-744-█
BCM 11/05/13  6:39P No open tradeline at credit bureau et RMVCREB index
BCM 11/05/13  6:39P 824240410 (A-10425048)
```

        ** END OF REPORT **

Confidential Subject to Protective Order - COL001592

07/03/12
PAGE 1
6:22 AM MDB

EOS CCA

SELECTED

STATUS Acct ███06 Disposition:9999 INACTIVE Wait: 08/23/12

DEBTOR Name:B███ KEITH Ssn: Cbr: Ph:510-392-███9
Adr1:908 LONGSPUR DR POE: Lgl: POE Ph:
City:SUISUN CITY Cty: Canc:RCL Born:
St: CA Zip:94585 St: Zip: COF: Sal:

Clnt:███ - RPC, ███M ███ ███01 Org: 638.85
List:05/29/12 Srv: P195: Time:80 Calls:20 Con:0 Bal: 0.00

APPLIED PAYMENTS No payments.

SKIP PHONES CBC 1 :415-786-███ CBC PF1 :B
CBC 2 : CBC PF2 :
CBC 3 : CBC PF3 :
Test :

NOTES
BEM 05/29/12 3:14 Stopped 0 letters et VERPRESCR index 391234693
BEM 05/29/12 3:14 2LEX LEXNEX REQ et VERPRESCR index 391234694
BEM 05/29/12 3:39 enDI FFVZWDI changed DU51240 from 05292012 to 05282012
WGR 05/29/12 5:00 3SD5 SEND TO SOUNDBITE et D1777GPLX index 391313454
BEM 05/29/12 6:15 enDI FFVZWDI changed DU51240 from 05282012 to 05292012
BEM 05/30/12 5:14 enDI FFVZWDI changed DU51241 from to 3SD5
BEM 05/30/12 5:14 enDI FFVZWDI changed DU51212 from to 05302012
BEM 05/30/12 5:14 Acct closed. Fell-off daily file.
BEM 05/30/12 5:14 Untied account from route 16216606 enDI RFVZWDI1
BEM 05/30/12 5:14 Stopped 0 letters et sm9000 index 391860724
BEM 05/30/12 5:14 9000 CANCEL enDI RFVZWDI1
BEM 05/31/12 5:37 enDI FFVZWDI changed DU51202 from to 05312012
BEM 05/31/12 5:37 enDI FFVZWDI changed DU51240 from 05292012 to 05312012
BEM 05/31/12 5:37 3SD5 SEND TO SOUNDBITE enDI RFVZWDI2
BEM 06/01/12 5:10 enDI FFVZWDI changed DU51240 from 05312012 to 06012012
D1N 06/01/12 6:36 3BEG BEGIN COLLECTIONS et D1777GPSD index 392643216
D1N 06/01/12 6:36 Call Date: 05/31/12 5:19 PM EST
D1N 06/01/12 6:36 Call Dtls: 510-392-███9 (-ATTEMPTED NO ANSWER AT) - VP9
D1N 06/01/12 6:36 Call Date: 05/31/12 5:20 PM EST
D1N 06/01/12 6:36 Call Dtls: 415-786███5 (-ANS DETECTED NO MSG LEFT) - VP9
D1N 06/01/12 6:36 Call Date: 05/31/12 10:33 PM EST
D1N 06/01/12 6:36 Call Dtls: 510-392███29 (-ATTEMPTED NO ANSWER AT) - VP9

EOS000001

| | | | |
|---|---|---|---|
| D1N | 06/01/12 | 6:36 | Call Date: 05/31/12 10:35 PM EST |
| D1N | 06/01/12 | 6:36 | Call Dtls: 415-786-█5 (-ATTEMPTED NO ANSWER AT) - VP9 |
| BEM | 06/04/12 | 6:17 | enDI FFVZWDI changed DU51240 from 06012012 to 06042012 |
| D1N | 06/04/12 | 7:00 | Call Date: 06/01/12 11:28 AM EST |
| D1N | 06/04/12 | 7:00 | Call Dtls: 510-392-█9 (-ATTEMPTED NO ANSWER AT) - VP9 |
| D1N | 06/04/12 | 7:00 | Call Date: 06/01/12 11:30 AM EST |
| D1N | 06/04/12 | 7:00 | Call Dtls: 415-786█5 (-ATTEMPTED NO ANSWER AT) - VP9 |
| D1N | 06/04/12 | 7:00 | Call Date: 06/01/12 4:15 PM EST |
| D1N | 06/04/12 | 7:00 | Call Dtls: 510-392-3829 (-ATTEMPTED NO ANSWER AT) - VP9 |
| D1N | 06/04/12 | 7:00 | Call Date: 06/01/12 4:17 PM EST |
| D1N | 06/04/12 | 7:00 | Call Dtls: 415█86 (-ANS DETECTED NO MSG LEFT) - VP9 |
| D1N | 06/04/12 | 7:00 | Call Date: 06/02/12 11:33 AM EST |
| D1N | 06/04/12 | 7:00 | Call Dtls: 510-392-3829 (-ANS DETECTED NO MSG LEFT) - VP9 |
| D1N | 06/04/12 | 7:00 | Call Date: 06/02/12 11:34 AM EST |
| D1N | 06/04/12 | 7:00 | Call Dtls: 415-786-█6 (-ANS DETECTED NO MSG LEFT) - VP9 |
| VP9 | 06/04/12 | 8:00P | Made "Noble" call to (415) 7862086 using campaign VOWP |
| BEM | 06/05/12 | 5:16 | enDI FFVZWDI changed DU51241 from 3SD5 to 3BEG |
| BEM | 06/05/12 | 5:16 | enDI FFVZWDI changed DU51213 from to 06052012 |
| BEM | 06/05/12 | 5:16 | Acct closed. Fell-off daily file. |
| BEM | 06/05/12 | 5:16 | Untied account from route 16216606 enDI RFVZWDI1 |
| BEM | 06/05/12 | 5:16 | Stopped 0 letters et sm9000 index 393582422 |
| BEM | 06/05/12 | 5:16 | 9000 CANCEL enDI RFVZWDI1 |
| BEM | 06/06/12 | 5:03 | enDI FFVZWDI changed DU51203 from to 06062012 |
| BEM | 06/06/12 | 5:03 | enDI FFVZWDI changed DU51240 from 06042012 to 06062012 |
| BEM | 06/06/12 | 5:03 | 3BEG BEGIN COLLECTIONS enDI RFVZWDI2 |
| BEM | 06/07/12 | 5:29 | enDI FFVZWDI changed DU51240 from 06062012 to 06072012 |
| D1N | 06/07/12 | 6:21 | Call Date: 06/06/12 6:11 PM EST |
| D1N | 06/07/12 | 6:21 | Call Dtls: 510█829 (-ATTEMPTED NO ANSWER AT) - VP9 |
| D1N | 06/07/12 | 6:21 | Call Date: 06/06/12 6:13 PM EST |
| D1N | 06/07/12 | 6:21 | Call Dtls: 415-786█36 (-ANS DETECTED NO MSG LEFT) - VP9 |
| VP8 | 06/07/12 | 10:29 | Made "Noble" call to █) 7862086 using campaign VOWP |
| BEM | 06/08/12 | 5:07 | enDI FFVZWDI changed DU51240 from 06072012 to 06082012 |
| D1N | 06/08/12 | 7:25 | Call Date: 06/07/12 12:29 PM EST |
| D1N | 06/08/12 | 7:25 | Call Dtls: 510-392-█9 (-ATTEMPTED NO ANSWER AT) - VP9 |
| D1N | 06/08/12 | 7:25 | Changed wait date to 06/12/12 et NOBLEWAIT index 394422569 |
| D1N | 06/08/12 | 7:25 | (R-16216606) |
| D1N | 06/08/12 | 7:25 | Call Date: 06/07/12 12:31 PM EST |
| D1N | 06/08/12 | 7:25 | Call Dtls: 415-786█36 (-LM ON MACH AT) - VP9 |
| BEM | 06/11/12 | 6:00 | enDI FFVZWDI changed DU51240 from 06082012 to 06112012 |
| D1N | 06/11/12 | 8:56 | Call Date: 06/08/12 2:33 PM EST |
| D1N | 06/11/12 | 8:56 | Call Dtls: 510-39█) (-ANS DETECTED NO MSG LEFT) - VP9 |
| BEM | 06/12/12 | 4:54 | enDI FFVZWDI changed DU51214 from to 06122012 |
| BEM | 06/12/12 | 4:54 | Acct closed. Fell-off daily file. |
| BEM | 06/12/12 | 4:54 | Untied account from route 16216606 enDI RFVZWDI1 |
| BEM | 06/12/12 | 4:54 | Stopped 0 letters et sm9000 index 395192309 |

EOS000002

```
BEM 06/12/12  4:54  9000 CANCEL enDI RFVZWDI1
BEM 06/13/12  5:12  enDI FFVZWDI changed DU51204 from  to 06132012
BEM 06/13/12  5:12  enDI FFVZWDI changed DU51240 from 06112012 to 06132012
BEM 06/13/12  5:12  3BEG BEGIN COLLECTIONS enDI RFVZWDI2
BEM 06/14/12  5:01  enDI FFVZWDI changed DU51240 from 06132012 to 06142012
D1N 06/14/12  6:54  Call Date: 06/13/12 7:52 PM EST
D1N 06/14/12  6:54  Call Dtls: 510-392[redacted]29 (-ANS DETECTED NO MSG LEFT) - VP9
BEM 06/15/12  5:27  enDI FFVZWDI changed DU[redacted]1119 from H85 to H26
BEM 06/15/12  5:27  enDI FFVZWDI changed DU51240 from 06142012 to 06152012
D1N 06/15/12  6:31  Call Date: 06/14/12 2:25 PM EST
D1N 06/15/12  6:31  Call Dtls: 510-392-[redacted]29 (-ATTEMPTED NO ANSWER AT) - VP9
BEM 06/18/12  6:36  enDI FFVZWDI changed DU51240 from 06152012 to 06182012
D1N 06/18/12  7:41  Call Date: 06/15/12 2:49 PM EST
D1N 06/18/12  7:41  Call Dtls: 510-392-[redacted]29 (-ANS DETECTED NO MSG LEFT) - VP9
D1N 06/18/12  7:41  Call Date: 06/16/12 12:10 PM EST
D1N 06/18/12  7:41  Call Dtls: 510-392-[redacted]29 (-ATTEMPTED NO ANSWER AT) - VP9
BEM 06/19/12  5:19  enDI FFVZWDI changed DU51215 from  to 06192012
BEM 06/19/12  5:19  Acct closed. Fell-off daily file.
BEM 06/19/12  5:19  Untied account from route 16216606 enDI RFVZWDI1
BEM 06/19/12  5:19  Stopped 0 letters et sm9000 index 396786083
BEM 06/19/12  5:19  9000 CANCEL enDI RFVZWDI1
BEM 06/20/12  5:32  enDI FFVZWDI changed DU51205 from  to 06202012
BEM 06/20/12  5:32  enDI FFVZWDI changed DU51240 from 06182012 to 06202012
BEM 06/20/12  5:32  3BEG BEGIN COLLECTIONS enDI RFVZWDI2
BEM 06/21/12  5:49  enDI FFVZWDI changed DU51240 from 06202012 to 06212012
D1N 06/21/12  7:25  Changed wait date to 06/24/12 et NOBLEWAIT index 397271689
D1N 06/21/12  7:25  (R-16216606)
D1N 06/21/12  7:25  Call Date: 06/20/12 4:26 PM EST
D1N 06/21/12  7:25  Call Dtls: 510-392-[redacted]29 (-LM ON MACH AT) - VP9
BEM 06/22/12  5:19  enDI FFVZWDI changed DU51216 from  to 06222012
BEM 06/22/12  5:19  Acct closed. Fell-off daily file.
BEM 06/22/12  5:19  Untied account from route 16216606 enDI RFVZWDI1
BEM 06/22/12  5:19  Stopped 0 letters et sm9000 index 397668351
BEM 06/22/12  5:19  9000 CANCEL enDI RFVZWDI1
nj  06/24/12  8:26P Stopped 0 letters et sm9999 index 398126666
nj  06/24/12  8:26P 9999 INACTIVE sys
nj  06/24/12  8:26P Cancel back principal 638.85
```

** END OF REPORT **

# EXHIBIT 9

# Dynamic Center Reporter

CUSTOMER CONTACT TECHNOLOGIES



User Manual
Version 4.2

NOBLE SYSTEMS

# DCR 4.2

## User Manual

### Last Revised June 4, 2007

This document is an unpublished work protected by the United States copyright laws and is proprietary to Noble Systems, Inc. Disclosure, copying, reproduction, merger, translation, modification, enhancement, or use by anyone other than authorized employees, clients or licensees of Noble Systems and its affiliate companies, without the prior written consent of Noble Systems, Inc., is prohibited. This document has not been reviewed by legal as of 6/4/07.

**Copyright © 2007 Noble Systems, Inc. All rights reserved.**

All company, product, and service names may be trademarks or registered trademarks of their respective owners.

*For Internal and Client Use*



Notes

# Reports

## Introduction

### Overview

DCR provides several different reports on call center operations. The following reports are currently available:

- ADN List Status
- Agent Disposition Codes
- Agent Hours
- Agent Pause
- Agent
- Call History
- Callback
- Campaign
- Campaign-Specific Monitoring
- Custom Agent
- Daily Agent Statistics
- Daily Hours Statistics
- DRS QA Results
- Inbound Abandon Subdivision
- Inbound
- IVR DTMF
- IVR Statistics
- List Status
- Outbound Calls
- Penetration
- Preview Dial Agent
- Trunk Utilization

***Note:*** *If you need a report not currently available in DCR, contact your Noble Sales Representative.*

### Requisites

DCR's reporting features use Microsoft Excel to generate and run the report. The following are requisites for DCR's reporting features:

- Microsoft Excel 2000 or later must be installed on your computer.
- Macros must be enabled in Microsoft Excel.
- The Excel Reporting option must be enabled in the DCR Setup dialog.

### Enable Excel Reporting

Before you can run any reports in DCR, you must enable Excel reporting in the Setup dialog. To enable Excel reporting, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Click *Setup* on the menu bar of the main DCR screen. DCR displays the Setup dialog. |
| 2. | Click the *Filters* tab. |
| 3. | Check the *Excel* box. |
| 4. | Click *OK.* |

***Caution:*** *If you do not enable Excel reporting, DCR reporting will produce unpredictable results.*

*Continued on next page*

**Notes**

# Introduction, Continued

## Reports Screen

DCR's reports are accessed from the *Reports* screen, shown below.

## Display the Reports Screen

To display the *Reports* screen, double-click the *Reports* icon ( ) on the main DCR screen.

***Tip:*** *You can run any report by clicking* File *then choosing* Reports *from the menu bar of the DCR main screen.*

## Exit the Reports Screen

To exit the *Reports* screen, double-click the *Main* icon ( ).

## Print a Report

To print a report, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Run the report. |
| 2. | Choose *Print* from the *File* menu. |

## Save a Report

To save a report, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Run the report. |
| 2. | Choose *Save As* from the *File* menu and name the report. |

## Close a Report

To close a report and return to the *Reports* screen, choose *Exit* from the *File* menu.

Notes

# Campaign Report

## Overview

The Campaign report provides a detailed accounting for each campaign that is active on the system and includes the following information:

- Dial state times and percentages.
- Accounting of agent-coded calls.
- Accounting of system-coded calls.

This report contains three report worksheets:

- Productivity report.
- Disposition report.
- Outbound Statistics report.

## Productivity Report

The Campaign Productivity report provides a detailed accounting of disposition categories and dial state utilization for each campaign that is active on the system. It includes the following information:

- Campaign code.
- Number of completes.
- Number of contacts.
- Completes per hour.
- Contacts per hour.
- Percentage of contacts that resulted in a completion.
- Total time worked on the campaign.
- Total calls taken for the campaign.
- Total time, percentage of time, and average amount of time spent in the following dial states:
  - Connected.
  - Waiting.
  - After-call work.
  - Paused.
  - Deassigned.

*Continued on next page*

**Notes**

# Campaign Report, *Continued*

## Campaign Productivity Report Worksheet

The Campaign Productivity Report is run using the following Excel worksheet.

Runs the report with the specified parameters.
Check to automatically refresh the report.
Check to display a chart of the report results.
Specifies which campaign report to display.
If the Auto Refresh box is checked, specify the refresh interval.
Whether the report uses current or historical data.
Lets you specify certain call statuses to be treated as contacts or completes on the report.
Report parameters.
01/04/2007 15:47
Ver. 2.01
Campaign Report
Current
History
Productivity Report
Dispositioning Report
Outbound Statistics Report
Campaign
Clear Selection
0011 - share3402_0011
0014 - SHARE Test Too
329 - Wilshire Script
6.0 - 6.0 Testing
6TST - 6.0 Testing
Listid Range
Call Date Range
Status Set Up
Graph
Auto Refresh
Refresh
ENTP
15.00
10.00
5.00
0.00
Completes
Contacts
Compl / Hour
Contacts / Hour
Compl / Contacts %
Total Time (hh:mm)
Total Calls
Time Connected (hh:mm)
Connect %
Avg Call Length (mm:ss)
Time Waiting (hh:mm)
Waiting %
Avg Waiting Between Calls(mm:ss)
Chart of report results for the selected column on the report.
Statistics being reported for each campaign.
Campaigns being reported.

| Campaign | ENTP | NOBD | NOBE | NOBS | Totals |
|---|---|---|---|---|---|
| Completes | 14 | 13 | 11 | 64 | |
| Contacts | 14 | 4 | 11 | 64 | |
| Compl / Hour | 2.46 | 2.24 | 4.50 | 2.11 | |
| Contacts / Hour | 2.46 | 0.69 | 4.50 | 2.11 | |
| Compl / Contacts % | 100.00% | 325.00% | 100.00% | 100.00% | |
| Total Time (hh:mm) | 05:40 | 05:48 | 02:26 | 30:21 | **44:18** |
| Total Calls | 14 | 19 | 11 | 64 | **108** |
| Time Connected (hh:mm) | 48:00 | 0:00 | 0:00 | 360:00 | **20:05** |
| Connect % | 48.44% | 08.41% | 40.62% | 52.25% | **45.37%** |
| Avg Call Length (mm:ss) | 264:00 | 24:00 | 120:00 | 336:00 | **11:10** |
| Time Waiting (hh:mm) | 0:00 | 0:00 | 0:00 | 0:00 | **0:04** |
| Waiting % | 00.00% | 01.14% | 00.06% | 00.01% | **00.16%** |
| Avg Waiting Between Calls(mm:ss) | 0:00 | 0:00 | 0:00 | 0:00 | **0:02** |
| Time ACW (hh:mm) | 48:00 | 48:00 | 0:00 | 240:00 | **15:54** |
| ACW % | 50.38% | 50.22% | 00.00% | 33.37% | **35.92%** |
| Avg ACW Length (mm:ss) | 288:00 | 216:00 | 0:00 | 216:00 | **8:50** |
| Time Paused (hh:mm) | 0:00 | 48:00 | 24:00 | 96:00 | **7:52** |
| Pause % | 00.98% | 39.98% | 52.68% | 13.88% | **17.79%** |
| Avg Pause Length (mm:ss) | 0:00 | 168:00 | 168:00 | 72:00 | **4:23** |
| Time Deassign (hh:mm) | 0:00 | 0:00 | 0:00 | 0:00 | **0:20** |
| Deassign % | 00.19% | 00.25% | 06.65% | 00.49% | **00.76%** |
| Avg Deassign Length (mm:ss) | 0:00 | 0:00 | 0:00 | 0:00 | **0:11** |

*Continued on next page*

DCR User Manual 155

**Notes**

# Campaign Report, *Continued*

## Run the Campaign Productivity Report

To run the Campaign report, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Double-click the *Campaign Report* icon on the *Reports* screen. DCR launches the Campaign Productivity Report worksheet. |
| 2. | Choose the *Productivity Report* option. |
| 3. | Choose the *Current* option to report on current data, or choose the *History* option to report on historical data. |
| 4. | Check the *Graph* box to chart report results. Click the desired column to graph the column data. |
| 5. | If you want to have the report automatically refresh after a set interval, check the *Auto Refresh* box and select the desired refresh interval. |
| 6. | Click *Status Setup* if you want to set up status codes to be treated as contacts or completes. For more information, see page 203. |
| 7. | Set the report parameters as follows:<br>**Campaign** – Select the campaigns to report from this list. To select multiple campaigns, simply click each campaign. To clear your selections, click the *Clear Selection* button. Leave all campaigns unselected to report all campaigns.<br>**Listid Range** – Specify the range of listids to report in these two fields. Leave these fields blank to report all listids.<br>**Call Date Range** – If reporting on historical data, specify the date range to report from these two drop-down lists. |
| 8. | Click *Refresh*. DCR runs the report. |

## Campaign Disposition Report

The Campaign Disposition Report provides a detailed accounting of active campaigns by status code.

*Continued on next page*

**Notes**

# Campaign Report, *Continued*

## Campaign Disposition Report Worksheet

The Campaign Disposition Report is run using the following worksheet.

Runs the report with the specified parameters.
Check to automatically refresh the report.
Check to display a chart of the report results.
Specifies which campaign report to run.
If the Auto Refresh box is checked, specify the refresh interval.
Whether the report uses current or historical data.
Report parameters.
Lets you specify certain call statuses to be treated as contacts or completes on the report.
Campaign Report
Current
History
Productivity Report
Dispositioning Report
Outbound Statistics Report
Campaign
Clear Selection
0001 - CBV TEST CAMPAIGN
0002 - TELE1
0120 - REFINANCE
0121 - COLLECTIONS
Listid Range
Call Date Range
Status Set Up
Graph
Auto Refresh
Refresh
HELP
Statistics being reported for each custom added status code.
Campaigns being reported.
Chart of report results for the selected column on the report.

***Tip:*** *Hold the pointer over a red triangle in the custom status code data to display a tool tip containing the name of the custom status code for the associated campaign.*

*Continued on next page*

Notes

# Campaign Report, *Continued*

## Run the Campaign Disposition Report

To run the Campaign Disposition report, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Double-click the *Campaign Report* icon on the *Reports* screen. DCR launches the Campaign Productivity Report worksheet. |
| 2. | Choose the *Dispositioning Report* option. |
| 3. | Choose the *Current* option to report on current data, or choose the *History* option to report on historical data. |
| 4. | Check the *Graph* box to chart the report results. Click the desired column to graph the column data. |
| 5. | If you want to have the report automatically refresh after a set interval, check the *Auto Refresh* box and select the desired refresh interval. |
| 6. | Click *Status Setup* if you want to specify certain call statuses to be treated as contacts or completes on the report. See page 203 for more information. |
| 7. | Set the report parameters as follows:<br>**Campaign** – Select the campaigns to report from this list. To select multiple campaigns, simply click each campaign. To clear your selections, click the *Clear Selection* button. Leave all campaigns unselected to report all campaigns.<br>**Listid Range** – Specify the range of listids to report in these two fields. Leave these fields blank to report all listids.<br>**Call Date Range** – If reporting on historical data, specify the date range to report from these two drop-down lists. |
| 8. | Click *Refresh*. DCR runs the report. |

## Campaign Outbound Statistics Report

The Outbound Statistics report provides outbound call statistics for one or more campaigns across a range of listids. The report gives the following information:

- Drop totals and percentages.
- Delay connects totals and percentages.
- Busy totals and percentages.
- No answer totals and percentages.
- Disconnected totals and percentages.
- Answering machine totals and percentages.
- Successful agent connect totals and percentages.
- Fax machine totals and percentages.
- Total calls made.
- FTC abandon rates.

*Continued on next page*

**Notes**

# Campaign Report, *Continued*

## Campaign Outbound Statistics Report Worksheet

The Outbound Statistics report is run using the following worksheet.

***Note:*** *The graph of report results may not be wide enough to display all rows for the selected column. Click a row near the top of the desired column to graph the top rows. Click a row near the bottom of the column to graph the bottom rows.*

*Continued on next page*

Notes

# Campaign Report, Continued

## Run the Outbound Statistics Report

To run the Outbound Statistics report, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Double-click the *Campaign Report* icon on the *Reports* screen. DCR launches the Campaign Productivity Report worksheet. |
| 2. | Choose the *Outbound Statistics Report* option. |
| 3. | Choose the *Current* option to report on current data, or choose the *History* option to report on historical data. |
| 4. | Check the *Graph* box to chart the report results. Click the desired column to graph the column data. |
| 5. | If you want to have the report automatically refresh after a set interval, check the *Auto Refresh* box and select the desired refresh interval. |
| 6. | Click *Status Setup* if you want to specify certain call statuses to be treated as contacts or completes on the report. See page 203 for more information. |
| 7. | Set the report parameters as follows:<br>**Campaign** – Select the campaigns to report from this list. To select multiple campaigns, simply click each campaign. To clear your selections, click the *Clear Selection* button. Leave all campaigns unselected to report all campaigns.<br>**Listid Range** – Specify the range of listids to report in these two fields. Leave these fields blank to report all listids.<br>**Call Date Range** – If reporting on historical data, specify the date range to report from these two drop-down lists. |
| 8. | Click *Refresh*. DCR runs the report. |

## Alerts

Campaign reports allow you to configure alerts for the report results. When the results are outside of a specified range, those cells of the report will highlight with the alert color.

Additionally, you can have DCR email you when a “red” alert occurs.

*Continued on next page*

**Notes**

# Campaign Report, *Continued*

## Configure Alerts

To configure alerts, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Right-click any cell in the row for which you want to configure alerts. A context menu appears. |
| 2. | Choose *Configure Alerts* from the context menu. DCR displays the *Configure Alerts* dialog, shown below. |
| 3. | Set the desired range for each alert level in the corresponding *Min.* and *Max.* fields. When the row value falls within this range, the cell highlights with the specified alert level color. |
| 4. | If desired, click the colored boxes and specify the color you want to display for each alert level. |
| 5. | If you want to send an email when the *Alert* alert level is reached, check the *Send Alert Email* box and enter the desired email address in the field. |
| 6. | Specify how frequently you want the report checked for alert levels by selecting the corresponding option. |
| 7. | Click *OK*. DCR saves your settings for the row and closes the dialog. |
| 8. | Repeat steps 1 through 7 for any additional report rows you want to set up alerts for. |

**Notes**

# Call History Report

## Overview

The Call History report provides details on every dial attempt made for a specific phone number and includes the following information:

- Telephone number dialed.
- Listid from which the number was dialed.
- Call status.
- Campaign code.
- Agent code.
- Call date.
- Call time.
- Connect time on the call.

## Call History Worksheet

When the Call History report runs, it displays the following Excel worksheet.

| Telephone | Listid | Status | Campaign | Agent | Call Date | Call Time | Connected |
|---|---|---|---|---|---|---|---|
| (905) 5558181 | 23031 | DL | BDWS | JG11 | 10/26/2006 | 12:28:20 | 00:00:26 |
| (910) 5551888 | 23031 | A | BDWS | JG11 | 10/26/2006 | 14:36:40 | 00:00:16 |
| (913) 5556063 | 19276432 | TU | NOBD | WK2 | 10/26/2006 | 16:29:51 | 00:02:35 |
| (914) 5553300 | 23031 | DL | BDWS | JG11 | 10/26/2006 | 14:48:22 | 00:00:13 |
| (914) 5551208 | 23031 | DL | BDWS | JG11 | 10/26/2006 | 09:54:52 | 00:00:07 |
| (916) 5551900 | 10101 | DL | HELP | JG11 | 10/26/2006 | 15:58:40 | 00:00:35 |
| (916) 5552901 | 10101 | A | HELP | JG11 | 10/26/2006 | 16:01:48 | 00:00:27 |
| (919) 5558451 | 8777 | A | NOBD | NC2 | 10/26/2006 | 16:24:13 | 00:01:37 |
| (920) 5559925 | 23031 | A | BDWS | JG11 | 10/26/2006 | 12:26:21 | 00:01:32 |
| (920) 5557777 | 23031 | DL | BDWS | JG11 | 10/26/2006 | 11:58:42 | 00:00:25 |
| (941) 5553636 | 8777 | TR | NOBD | HP | 10/26/2006 | 11:42:16 | 00:00:51 |
| (949) 5550680 | 10101 | A | HELP | JG11 | 10/26/2006 | 16:47:24 | 00:00:53 |
| (949) 5554166 | 10101 | A | HELP | JG11 | 10/26/2006 | 15:36:35 | 00:00:39 |
| (949) 5555544 | 10101 | A | HELP | JG11 | 10/26/2006 | 15:37:40 | 00:00:26 |
| (949) 5550383 | 10101 | DD | HELP | JG11 | 10/26/2006 | 16:22:22 | 00:00:12 |
| (949) 5555555 | 10101 | A | HELP | JG11 | 10/26/2006 | 16:02:33 | 00:00:08 |
| (951) 5550356 | 10101 | DL | HELP | JG11 | 10/26/2006 | 15:56:19 | 00:00:10 |
| (952) 5551100 | 23031 | DL | BDWS | JG11 | 10/26/2006 | 12:45:46 | 00:00:04 |
| (954) 5558818 | 10101 | DL | HELP | JG11 | 10/26/2006 | 16:51:29 | 00:01:10 |
| (954) 5550330 | 8777 | TR | NOBD | RDG | 10/26/2006 | 16:06:06 | 00:12:09 |
| (973) 5559100 | 23031 | A | BDWS | JG11 | 10/26/2006 | 12:03:13 | 00:01:03 |
| (973) 5558112 | 23031 | A | BDWS | JG11 | 10/26/2006 | 14:35:54 | 00:00:09 |
| (978) 5550225 | 23031 | A | BDWS | JG11 | 10/26/2006 | 10:09:36 | 00:00:09 |
| | | | | TOTAL - | 201 | End report. | |

***Tip:*** *Hold the pointer over the red triangle next to an agent code to display a tool tip containing the agent name.*

*Continued on next page*

Notes

# Call History Report, *Continued*

## Report Columns

The columns on the Call History report have the following meanings:

**Telephone** – The number dialed.

**Listid** – The Listid from which the number was dialed.

**Status** – The status of the call.

**Campaign** – The code for the campaign from which the number was called.

**Agent** – The code for the agent making the call. Hold the pointer over the red triangle beside the agent code to display a tool tip containing the agent name.

**Call Date** – The date the call was made.

**Call Time** – The time the call was made.

**Connected** – The amount of time the call was connected.

## Run the Call History Report

To run the Call History report, follow the steps outlined below.

| Step | Action |
|---|---|
| 1. | Double-click the *Call History Report* icon on the *Reports* screen. DCR launches the Call History Report worksheet. |
| 2. | Choose the *Current* option to report on current data, or choose the *History* option to report on historical data. |
| 3. | Set the report parameters as follows:<br>**Campaign** – Select which campaigns to report from this list. To select multiple campaigns, simply click the desired campaigns. To clear your selections, click the *Clear Selection* button. If no campaigns are selected, all campaigns are reported.<br>**Call Date Range** – If reporting on historical data, specify the date range to report from these two drop-down lists.<br>**Area Code** – Enter the area code to report in this field. Leave the field blank to report all area codes.<br>**Call Time Range** – Specify the time range to report from these two drop-down lists.<br>**Phone** – Enter the phone number to report in this field. Leave the field blank to report all area codes.<br>**List ID Range** – Specify the range of listids to report in these two fields. Leave the fields blank to report all listids.<br>**Agent Code** – Enter the code for the agent you want to report in this field. Leave blank to report all agents.<br>**Show System Coded Calls** – Check to include system-coded calls in the report. |
| 4. | Click *Refresh*. DCR runs the report. |
| 5. | To sort the report results, click the desired column header. DCR sorts the report by the selected column. |

# EXHIBIT 10

NOBLE SYSTEMS

# Call History

6/25/2015
9:37:23

From: 23 Jun 2015 To 23 Jun 2015
Time Range: 00:00 To 23:59
Campaigns:
Agents: All Agents
List ID Range: All List IDs
Area Code: n/a
Phone: n/a
Inbound/Outbound: Outbound
System Coded Calls: Yes

| Telephone | Call Type | Listid | Camp. | Agent Name | Agent Code | Status | Addi Status | Call Date | Call Time (hh:mm) | Time Connect | Time ACW | Time Hold | Filler1 | Filler2 | Filler3 | Filler4 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Outb.Norm.Term. | 1887 | | | | A | | 6/23/2015 | 11:22 | 00:00:54 | 00:00:00 | 00:00:14 | 28316338 | | 7251 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 12:54 | 00:00:00 | 00:00:00 | 00:00:58 | 28337616 | | 11602 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 09:49 | 00:00:00 | 00:00:00 | 00:01:02 | 28312402 | | 6617 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 09:12 | 00:00:00 | 00:00:00 | 00:01:10 | 28309801 | | 6183 | |
| | Outb.Norm.Term. | 1887 | | | | A | | 6/23/2015 | 09:21 | 00:00:11 | 00:01:11 | 00:00:00 | 28310520 | | 6297 | |
| | Outb.Norm.Term. | 1887 | | | | PR | | 6/23/2015 | 09:04 | 00:01:28 | 00:01:53 | 00:00:20 | 28308721 | | 5999 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | N | | 6/23/2015 | 11:40 | 00:00:00 | 00:00:00 | 00:00:00 | 28317281 | | 7408 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 10:11 | 00:00:00 | 00:00:00 | 00:00:45 | 28313454 | | 6799 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 12:31 | 00:00:00 | 00:00:00 | 00:00:28 | 28329759 | | 10089 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 11:06 | 00:00:00 | 00:00:00 | 00:01:08 | 28315740 | | 7149 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | N | | 6/23/2015 | 11:22 | 00:00:00 | 00:00:00 | 00:00:00 | 28316499 | | 7269 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 11:14 | 00:00:00 | 00:00:00 | 00:00:50 | 28316124 | | 7211 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | N | | 6/23/2015 | 10:34 | 00:00:00 | 00:00:00 | 00:00:00 | 28314398 | | 6930 | |
| | Outb.Norm.Term. | 1887 | | | | A | | 6/23/2015 | 08:49 | 00:00:10 | 00:01:23 | 00:03:02 | 28307435 | | 5782 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 09:46 | 00:00:00 | 00:00:00 | 00:01:00 | 28312234 | | 6588 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | N | | 6/23/2015 | 11:34 | 00:00:00 | 00:00:00 | 00:00:00 | 28316975 | | 7353 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | N | | 6/23/2015 | 09:26 | 00:00:00 | 00:00:00 | 00:00:00 | 28310991 | | 6392 | |
| | Outb.Norm.Term. | 1887 | | | | ML | AM | 6/23/2015 | 11:44 | 00:00:55 | 00:00:14 | 00:02:27 | 28317346 | | 7422 | |
| | Outb.Norm.Term. | 1887 | | | | ML | AM | 6/23/2015 | 09:02 | 00:01:00 | 00:00:00 | 00:01:15 | 28308590 | | 5977 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 11:53 | 00:00:00 | 00:00:00 | 00:00:57 | 28317948 | | 7571 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 09:29 | 00:00:00 | 00:00:00 | 00:00:39 | 28311222 | | 6441 | |
| | Outb.Norm.Term. | 1887 | | | | PR | | 6/23/2015 | 09:22 | 00:01:39 | 00:00:42 | 00:00:22 | 28310537 | | 6302 | |
| | Outb.Norm.Term. | 1887 | | | | A | | 6/23/2015 | 09:04 | 00:00:17 | 00:00:38 | 00:00:03 | 28308844 | | 6018 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 09:08 | 00:00:00 | 00:00:00 | 00:00:48 | 28309680 | | 6156 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | N | | 6/23/2015 | 09:00 | 00:00:00 | 00:00:00 | 00:00:00 | 28308570 | | 5972 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 12:57 | 00:00:00 | 00:00:00 | 00:00:45 | 28338756 | | 11853 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | N | | 6/23/2015 | 12:53 | 00:00:00 | 00:00:00 | 00:00:00 | 28337567 | | 11591 | |
| | Outb.Norm.Term. | 1887 | | | | ML | AM | 6/23/2015 | 08:49 | 00:00:59 | 00:00:12 | 00:03:31 | 28307398 | | 5775 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | MC | AM | 6/23/2015 | 09:12 | 00:00:00 | 00:00:00 | 00:01:04 | 28309989 | | 6209 | |
| | Outb.Norm.Term. | 1887 | | | | ML | AM | 6/23/2015 | 09:04 | 00:02:08 | 00:00:53 | 00:01:18 | 28308602 | | 5981 | |
| | Outb.Norm.Term. | 1887 | | | | PR | | 6/23/2015 | 08:59 | 00:01:01 | 00:01:18 | 00:00:00 | 28308382 | | 5946 | |
| | Outb.Norm.Fail | 1887 | | SYST | SYST | D | 01 | 6/23/2015 | 09:44 | 00:00:00 | 00:00:00 | 00:00:00 | 28312170 | | 6579 | |
| | Outb.Norm.Term. | 1887 | | | | N | | 6/23/2015 | 12:02 | 00:00:15 | 00:00:40 | 00:01:39 | 28318289 | | 7673 | |

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER - COL001609

# EXHIBIT 11

- Select Position and type in the numerical location of your specific field within the transformed DB location with the first position labeled 0 and going up numerically
  - For example, in the transformed group:

CUSTOM_1,CUSTOM_2,CUSTOM_3,CUSTOM_4,CUSTOM_5,CUSTOM_7,CUSTOM_8; the CUSTOM_1 is position 0; CUSTOM_2 is position 1; CUSTOM_3 is position 2; CUSTOM_4 is position 3 and so on

- Select 'Save Screenpop'

## 13.7 REPORTING

Config manager allows you to customize reports from the LiveVox Voice Portal as well as map result codes to call outcomes.

### 13.7.1 CREATE A CUSTOM CALL DETAIL REPORT WITH REPORT WRITER

You can view and edit existing CDR (Call Detail Report) formats from the Report Writer tool. Generally, CDRs are used to display customized columns of information on all calls and do not perform any analysis. A CDR format defines the information which will be displayed and allows the filtering of data based on certain criteria.

- Go to the Report Writer from the 'Input/Output' header menu link.

View your existing formats by selecting their name from the "Report Format" dropdown.

LiveVox, Inc., 2013. All rights reserved.



- Create new custom CDRs by selecting the 'Add New Format' or 'Copy Format' button from the bottom menu.
    - The following settings can be customized for this format:
        - The **Name** (used to refer to the format throughout the Configuration Manager) and the **Description** (provides additional information).
    - Choose the desired field **Delimiter** and if the field description Header will be included in the output file or not.
    - **Sort By Field** option defines how the results should be arranged, and **Sort Order** sets whether this sort is Ascending or Descending.
    - **Add Quotes To** option allows you to specify if no fields, all fields, or only those containing the delimiter should be placed in quotes.
    - Select the **Line Break** style

You may add mappings (CDR data columns) to the format by selecting the 'Add Mapping' button from the bottom menu.

In the Add Mapping UI select a data field from the available tables and indicate a header name for the column.

- The **Table** and **Field** values are required for each mapping.
    - For assistance regarding table/field definitions, please contact LiveVox Client Services.
- If a date or time DB field is mapped, a **Date Format** is required. Selecting a **Timezone** is optional – by default all times will be EST.
- If a phone DB field is mapped, the **Number Format** must be set.

*LiveVox, Inc., 2013. All rights reserved.*

- If the report format is fixed width instead of delimited the following fields are required:
    - **Fixed Width Size**
    - **Padding Chars**
    - **Alignment**

- Select 'OK' to add mapping

Edit an existing mapping by double clicking the row to open the Edit Mapping UI.

- Once all required mappings have been added or edited, select the 'Save Format' button to save the new report format.
- The format will now be available for use with your data.
    - Test the format by selecting Reports->Report View
    - Open the Call Detail Reports (CDR) report, and choose your format from the 'Report Format' dropdown using the 'Filter' tab you can exclude or include certain outcomes, groups of outcomes, or results from certain campaign types.
- Create or edit the Detailed Result Filter to only display wanted results on your CDR. Selecting the 'Create New' filter option opens the Detailed Result Filter UI.

*LiveVox, Inc., 2013. All rights reserved.*



- Add a filter name, select a filter type, and choose the specific TFH result codes to include or exclude.
  - Selected TFH results are blue. Select multiple codes by holding the CTRL key when clicking. To deselect a TFH result CTRL-click on the selected row.
  - To view a list of Termination Codes mapped to TFH results consult the "Termination Code" section of Skill Editor.

*LiveVox, Inc., 2013. All rights reserved.*



- Click 'OK' to save updates.

Additional outcome filtering options are available from the Filters tab that works in conjunction with the Detailed Result Filter.

To select a specific type, click on the option (select multiple by holding down CTRL). To deselect the type, CTRL- click on the selected option.

- Exclude Not Connected removes the not connected system outcomes
- Exclude Not Made removes the not made system outcomes
- Exclude result type removes System, Agent, or Neither outcomes
- Skill type includes only outcomes from an inbound, outbound, or blended Skill
- Campaign type includes only outcomes that came from an outbound, callback, inbound, scheduled callback, or manual campaign.
    - Call type includes only outcomes that were handled with Preview or a Manual Skill
- Transaction type includes only phone calls that were outbound, callback, or an SMS. Once all required types have been selected, click 'Save Format' button to save the new filter for the report format.

## 13.7.2 Reporting Outcomes Mapper

The Reporting Outcomes Mapper allows you to map, manage, and modify the desired result code associated with dialing outcomes formatted to their specific reporting.

- To access the Reporting Outcomes Mapper go the 'Input/Output' header dropdown menu

.

*LiveVox, Inc., 2013. All rights reserved.*



- Search for all reporting outcomes within a client or filter by a Skill using the 'Skill' dropdown menu. Config Manager will display the list of results, current result codes, and outcomes.

| Result | Result Code | Custom Outcome 1 | Custom Outcome 2 | Custom Outcome 3 |
|---|---|---|---|---|
| AGENT - Attorney Handling (723) | 602 | AC | | |
| AGENT - Bankrupt (724) | 603 | CC | | |
| AGENT - CUST RPC 1 (757) | 635 | PC | | |
| AGENT - Call Back (739) | 662 | KC | | |
| AGENT - Dead Air (740) | 663 | DC | | |
| AGENT - Debtor Dispute (722) | 601 | JC | | |
| AGENT - Deceased (725) | 604 | MC | | |
| AGENT - Does Not Speak English (763) | 667 | BC | | |
| AGENT - Fax (741) | 664 | LC | | |
| AGENT - Left Message Person (734) | 640 | EC | | |
| AGENT - No Message Left (738) | 661 | FC | | |
| AGENT - PTP Arranged (731) | 624 | GC | | |
| AGENT - Refused to Pay (732) | 625 | NC | | |
| AGENT - Unresolved (756) | 628 | OC | | |
| AGENT - Wrong Number (735) | 641 | HC | | |
| Busy (323) | 42 | IC | | |
| Operator Transfer (476) | 20 | | | op xfer |

- Select 'Add' button to add a new result code

- Double click on a result code to open the Reporting Outcomes Mapping editor. You may update call outcomes using this UI.

*LiveVox, Inc., 2013. All rights reserved.*

VAN000171



*Config Manager offers three different call outcome results (client results). More than one outcome may be required in the case where different outcomes are needed to be displayed for a call result in different CDR's:*

- *Custom outcome 1 is used to define what is displayed in a CDR when a particular result is obtained through either the call flow or the agent selecting a term code.*
- *Custom Outcome 2 and 3 are used when the desired call outcome for a single result is different than call outcome 1 by selecting 2 or 3 from the Report Writer for the CDR format.*

- Select 'Ok' to update any changes.



## 13.8   INBOUND ROUTING

Inbound Routing allows delivering inbound calls into a LiveVox inbound Skill.  Inbound blending functions to get those inbound (IB) calls to agents logged in to specific outbound (OB) Skills.  This increases agent efficiency by letting them work OB campaigns and handle the generated IB traffic simultaneously.

### 13.8.1 CONTROL INBOUND BLENDING

Two components are important for controlling inbound blending.

- **Associated Inbound Skill field**: OB Skill setting that defines the IB Skill where LiveVox controlled numbers will flow and tells IB Skill which OB Skill databases to search for ANI matching.  This allows multiple LCID packages or other LiveVox numbers to blend into the Associated Inbound Skill.
- **Resource Group**:  A virtual grouping of Skills used for call routing or reporting.

*LiveVox, Inc., 2013.  All rights reserved.*

VAN000172

# EXHIBIT 12



**Summary**

| | |
|---|---|
| **Client** | EOS CCA |
| **Call Center** | 4520, 3796, 2793, 3847, 3838, 3800, 4515, 3950, 4654, 3886, 3893, 4133, 3884, 4483, 4519, 4518, 4404, 4266, 4292, 3854, 4335, 4336, 4334, 4516, 3974, 3888, 4640, 4553, 4517, 4319, 4421, 4453, 4132, 3931, 3916, 3795, 4536, 3892, 3887, 4465, 3797, 3901, 3815, 3889 |
| **Phone Number** | |
| **Start Date** | 06/22/2015 |
| **End Date** | 06/26/2015 |

**Results**

| CallCenter | Skill | Name | Account | Agent | Date | Start | End | Campaign | Caller ID# | Outcome |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Mon Jun 22 2015 | 1:30:04 PM | 1:30:41 PM | | | Answering Machine (Hung Up) |
| | | | | | Wed Jun 24 2015 | 1:34:34 PM | 1:35:08 PM | | | Answering Machine (Hung Up) |
| | | | | | Fri Jun 26 2015 | 10:58:58 AM | 11:06:23 AM | | | AGENT - PTP Arranged |

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER - COL001612

# EXHIBIT 13



File Edit View History Bookmarks Tools Help
Enterprise Manager
https://service4.soundbite.com/internal/servlet/enterprisemenu?locale=en_US#ContactTrace;url=https:
Search
6/25/15 10:21 AM America/New_York (GMT-4)
deb.corwin@cca-us.com
Genesys Enterprise Manager
Accounts
Campaigns
Devices
Enterprise
Contact Trace
Attempts made in the past 16 months will be displayed. Use International format when searching for non-US numbers (e.g. +44 79 731 00620).
Search Criteria
Phone Number/Email Address
Value
America/New_York
On the DNC list
Data Warehouse
Find Attempts
6 attempts found

| Date | Account | Client ID | Campaign / Sub-Campaign | Result | Duration / Carrier | Node | Recording / SourceAddress |
|---|---|---|---|---|---|---|---|
| 6/24/15 3:03 PM | | | | VEREDMACHINE | 17 | tmssipbos4-11_3000861984 | N/A |
| 6/24/15 2:13 PM | | | | UNDELIVEREDMACHINE | 17 | tmssipbos4-06_3000861914 | N/A |
| 3/24/15 3:01 PM | | | | UNDELIVEREDMACHINE | 17 | tmssipbos4-03_3000848414 | N/A |
| 3/24/15 12:41 PM | | | | UNDELIVEREDMACHINE | 17 | tmssipbos4-04_3000848554 | N/A |
| 10/20/14 3:01 PM | | | | UNDELIVEREDMACHINE | 18 | tmssipbos4-10_3000829934 | N/A |
| 10/20/14 12:40 PM | | | | UNDELIVEREDMACHINE | 18 | tmssipbos4-05_3000830114 | N/A |

CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER - COL001613

**CERTIFICATE OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 212 Marine Street, Suite 100, Santa Monica, California 90405.

On July 10, 2015, I served the foregoing document described as:

**DECLARATION OF RANDALL A. SNYDER**

on interested parties in this action by placing ( ) the original (x) a true copy thereof enclosed in a sealed envelope addressed as follows:

| | | |
|---|---|---|
| Charles Robert Messer<br>David J. Kaminski<br>Stephen Albert Watkins<br>Carlson & Messer LLP<br>5959 West Century Boulevard, Suite 1214<br>Los Angeles, California 90045 | Attorneys for Defendant Collecto, Inc. | Via Next Day Delivery |
| Ian B. Lyngklip<br>Julie A. Petrik<br>Lyngklip Assoc Consumer Law Center, PLC<br>24500 Northwestern Highway, Suite 206<br>Southfield, Michigan 48075 | Attorneys for Plaintiffs Ralph Davenport and Richard Davenport | Via Next Day Delivery |
| Rex C. Anderson<br>9459 Lapeer Road, Suite 101<br>Davison, Michigan 48423 | Attorneys for Plaintiffs Ralph Davenport and Richard Davenport | Via Next Day Delivery |
| Sergei Lemberg<br>Lemberg & Associates<br>1100 Summer Street, Floor 3<br>Stamford, Connecticut 06905 | Attorneys for Plaintiff Robert Pegg | Via Next Day Delivery |
| J. Andrew Meyer<br>Morgan & Morgan<br>201 N. Franklin Street, 7th Floor<br>Tampa, Florida 33602 | Attorneys for Plaintiff Robert Pegg and Co-Lead Counsel for Plaintiffs | Via Next Day Delivery |

In the manner described next to the recipient's name, as follows:

[ ]    **(BY MAIL)**  I am "readily familiar" with the firm's practice of collection and processing correspondences for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Scottsdale, Arizona in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[x]    **VIA NEXT DAY DELIVERY** I delivered the above described document(s) in the above described envelopes to Federal Express for delivery via FedEx next business afternoon.


     I declare under penalty of perjury under the laws of the United States that the above is true and correct.   Executed on July 10, 2015 at Venice, California.

David C. Parisi