# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: COLLECTO, INC. TELEPHONE CONSUMER PROTECTION ACT (TCPA) LITIGATION<br><br>This document relates to all Member Actions | ) MDL No. 14-md-2513-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

DATED: November 10, 2015

CARLSON & MESSER LLP

By: /s/ Charles R. Messer
Calif. Bar No. 101094
David J. Kaminski, Esq.
Calif. Bar No. 128509
Stephen Watkins, Esq.
Calif. Bar No. 205175
CARLSON & MESSER LLP
5959 W. Century Boulevard, Suite 1214
Los Angeles, CA 90045
Telephone: (310) 242-2200
Facsimile: (310) 242-2222
Email: kaminskid@cmtlaw.com
Email: MesserC@cmtlaw.com
Email: WatkinsS@cmtlaw.com
Lead Counsel for Defendant Collecto, Inc.

## TABLE OF CONTENTS

I.      Introduction...............................................................................................1

II.     Plaintiffs Have Set Forth No Facts Establishing That Collecto's Dialers.................... 2

III.    Plaintiffs Fail to Establish That the FCC Rulings Were Not Based on a
        False and Insufficient Record......................................................................... 4

IV.     Plaintiffs Fail to Demonstrate Any Legal Basis for the FCC's Alleged Authority to
        Promulgate its ATDS Definitions.................................................................... 7

V.      The Third Circuit's Recent Ruling in *Dominquez* Conforms That Collecto's Defense
        Does Not Trigger the Hobbs Act..................................................................... 9

VI.     Plaintiffs Fail to Demonstrate Why This Court Has Subject Matter Jurisdiction Over
        Plaintiff's Complaint. If Only a Court of Appeal Has Jurisdiction to Consider This
        Motion, Then the District Court Should Dismiss This Case Pursuant to Rule 12(h)(3), or
        Transfer the Motion to the First Circuit Court of
        Appeals...................................................................................................... 14

VII.    Collecto's Calls to Lofton and Pegg Were Made with Human
        Intervention................................................................................................ 18

VIII.   Plaintiffs Concede Summary Judgment for Pre-July 23, 2009 Claims of the
        Davenports.................................................................................................. 19

TABLE OF AUTHORITIES

Cases

1.  *See Alison & Associates, Inc. v. Dartek Corp.*, No. CV 104-181, 2005 WL 2453089, at *3 (S.D. Ga. Sept. 30, 2005)…………………………………………………........…….............18

2.  *AT&T Corp., supra,* 525 U.S. at 388, 119 S.Ct. 721………………………………………….7

3.  *Bhd. of Locomotive Engineers v. Boston & Maine Corp.*, 788 F.2d 794, 796 (1st Cir. 1986)………………………………………………………………………...………...17

4.  *Bob Evans Farms, Inc. v. NLRB*, 163 F.3d 1012, 1017 (7th Cir. 1998)……………….....15

5.  *Bob Jones University v. Simon*, 416 U.S. 725 (1974)……………………………….15,16

6.  *CE Design, Ltd. v. Prism Business Media, 448 Inc.*, 606 F.3d 443, 446 n. 3 (7th Cir. 2010)……………………………………………………………...……………14,16,18

7.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)……………………………………….2

8.  *Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230 (9th Cir. 2012)……………….....10,18

9.  *Diplomat Lakewood Inc. v. Harris*, 613 F.2d 1009, 1022 (D.C. Cir. 1979)……………..6

10. *Dominguez v. Yahoo, Inc.,* No. 14-1751, 2015 WL 6405811 (3d Cir. Oct. 23, 2015), at *3 n.3 (3d Cir. Oct. 23, 2015)……………...........................................2,3,4,9,10,11,12,16

11. *Echevvaria v. Diversified Consultants, Inc.*, No. 13-4980, 2014 WL 929275, at *6 (S.D.N.Y. Feb. 28, 2014)………………………………………….………………11

12. *See Emily's List v. Fed. Election Comm'n*, 581 F.3d 1, 26 (D.C. Cir. 2009)………………………………………………………………………….5

13. *Evans v. Holder*, 618 F.Supp.2d 1, 13 (D.D.C.2009)…………………….…………….6

14. *Glauser v. GroupMe, Inc.*, No. 11-2584, 2015 WL 475111, *5 (N.D. Cal. Feb. 4, 2015………………………………………………….…………………...11

15. *Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45, 58 (2007)................................................................................8

16. *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192 (W.D. Wash. 2014), *reconsideration denied* (Feb. 28, 2014)...................................................18,19

17. *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011)................................................................................11

18. *Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD, 2015 WL 1064442, at *4 (N.D. Cal. Mar. 11, 2015)................................................................................3

19. *In Re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, 17503 n. 37 (2002)................................................................4

20. *See Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 100 S. Ct. 2844, 65 L. Ed. 2d 1010 (1980)................................................................6

21. *Lardner v. Diversified Consultants Inc.,* 17 F. Supp. 3d 1215, 1222-23 (S.D. Fla. 2014)................................................................................8,11

22. *Legg v. Voice Media Grp., Inc.,* 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014)................................................................................11

23. *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 447-48 (6th Cir. 2013) *cert. denied*, 135 S. Ct. 57, 190 L. Ed. 2d 31 (2014)..............................14,15,16,18

24. *Luna v. Shac, LLC*, No. 14-CV-00607-HRL, 2015 WL 4941781, at *4 (N.D. Cal. Aug. 19, 2015)................................................................................18

25. *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014)................................................................................8,15

26. *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)................................15

27. *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) *reconsideration denied*, No. 14-CV-348 BAS BLM, 2014 WL 6632810 (S.D. Cal. Nov. 20, 2014)...............................................................................................................2

28. *See McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 46 (D. Mass. 2012) *amended in part*, 969 F. Supp. 2d 74 n. 89 (D. Mass. 2013) *aff'd in part, rev'd in part and remanded*, 775 F.3d 109 (1st Cir. 2014).............................................................................................................2

29. *Miranda v. Michigan*, 168 F. Supp. 2d 685, 692 (E.D. Mich. 2001)...........................7

30. *Moore v. Dish Network LLC*, 57 F. Supp. 3d 639, 655 (N.D.W. Va. 2014)...........................................................................................................11

31. *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013)..........................................14

32. *Nunes v. Twitter, Inc.,* No. 14-CV-02843-VC, 2014 WL 6708465, at *2 (N.D. Cal. Nov. 26, 2014).............................................................................................3,11

33. *Satterfield v. Simon & Schuster*, 569 F.3d 946, 951 (9th Cir. 2009)..........................2,3,8

34. *Schumacher v. Credit Prot. Ass'n*, No. 13-00164, 2015 WL 5786139, *8 (S.D. Ind. Sept. 30, 2015).................................................................................................11

35. *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1140 (S.D. Cal. 2014)........................3

36. *Smith v. Markone Fin., LLC*, No. 13-933, 2015 WL 419005, *3 (M.D. Fla. Feb. 2, 2015)..................................................................................................11

37. *See also State of Mich. v. United States*, 994 F.2d 1197, 1204 (6th Cir. 1993)..................................................................................................17

38. *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819-20 (N.D. Ill. 2014)..............................11

39. *Tutor Perini Corp. v. Banc of Am. Sec. LLC*, No. CV 11-10895-NMG, 2015 WL 4762765, at *4 (D. Mass. Aug. 12, 2015)...........................................................6

40. *United States v. Andrews*, 600 F.3d 1167, 1173 (9th Cir. 2010)............................13

41. *United States v. Menasche*, 348 U.S. 528, 538-539 (U.S. 1955)............................13

42. *Utility Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2446, 189 L. Ed. 2d 372 (2014)...............................................................................................14,15

43. *Voicestream PCS II Corp. v. BPS Tel. Co.*, No. 05-04037-CV-C-NKL, 2005 WL 2065249, at *5 (W.D. Mo. Aug. 24, 2005)........................................................17

44. *Williams v. Taylor,* 529 U.S. 362, 378–79 (2000)............................................15

Statutes

45. 47 CFR section 0.31.................................................................................1

46. *See* 47 U.S.C. § 153(1)...........................................................................7

47. 47 U.S.C. § 201(b)................................................................................7

48. 47 U.S.C. section 227(a)........................................................................16

49. 47 U.S.C. § 227(a)(1).............................................................................2

50. 47 U.S.C. § 251....................................................................................7

Other

51. S. Rep. 102-178 at 2 (1991), reprinted in U.S.C.C.A.N. 1968, 1969..........................19

52. See Also Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243...............19

# I.  Introduction

The factual record in this case differs from the record in every other reported TCPA case in three important ways:

1. Ellis Cave's declaration, and autodialer patents that were issued in the 1980's establish, without contradiction, that predictive dialers that automatically dialed telephone numbers from databases *were widely used in the 1980's,* before the TCPA was enacted in 1991. (SOF 57-71)

2. The technical branch of the Federal Communications Commission is its Office of Engineering & Technology ("OET").  47 CFR section 0.31.  But the FCC's OET has never in 25 years, since 1990, generated a single document that studied, or even mentioned, predictive dialers, automatic dialers, automated dialers, or automatic telephone dialing systems ("ATDS's").  Not even one.  (Please see the FCC's October 16, 2015 response to a FOIA request, attached.)  The FCC's astonishing lack of technical knowledge about predictive dialers and automatic telephone dialing systemsdemonstrates that the FCC's claimed basis for its ATDS rules, "changes in technology," is nothing but false hearsay.

3. Adam Sorini, Ph.D.'s declaration proves that the defendant's Noble and GC dialers lack the capacity to dial telephone numbers that are randomly or sequentially generated.  (SOF 50-55)  -Dr. Sorini is a qualified forensic software investigator who personally conducted a forensic examination and investigation of the defendant's Noble dialer, and who also conducted a detailed investigation of the defendant's GC dialer.  Dr. Sorini's report is qualitatively superior to reports that courts have found insufficient in other cases (and which were often written by defendants' employees).

As set forth below, Plaintiffs' Opposition does not contradict the foregoing and therefore there is no triable issue of material fact.  Summary judgment should be granted in favor of Collecto.

## II.    Plaintiffs have set forth no facts establishing that Collecto's dialers contain a random or sequential generator

On summary judgment, for factual issues on which the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden of production in two ways: present affirmative evidence that negates an essential element of the nonmoving party's claim or demonstrate that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That Collecto used an ATDS to call Lofton and Pegg is an essential element of their TCPA claims, and Plaintiffs have not submitted sufficient evidence to establish their TCPA claims.

The Ninth Circuit Court of Appeals has held that the TCPA is unambiguous. *Satterfield v. Simon & Schuster*, 569 F.3d 946, 951 (9th Cir. 2009). The TCPA defines an ATDS as "equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential number generator [and] to dial such numbers." 47 U.S.C. § 227(a)(1).

As set forth in *Marks v. Crunch San Diego, LLC*, 55 F. Supp. 3d 1288, 1292 (S.D. Cal. 2014) *reconsideration denied*, No. 14-CV-348 BAS BLM, 2014 WL 6632810 (S.D. Cal. Nov. 20, 2014), the term "random or sequential number generator" cannot be divorced from the statute. The Third Circuit in *Dominguez v. Yahoo, Inc.,* No. 14-1751, 2015 WL 6405811 (3d Cir. Oct. 23, 2015), at *3 n.3 (3d Cir. Oct. 23, 2015)[1] held that the Hobbs Act did not apply

---

[1] Designated not precedent. *See* Third Circuit LAR, App. I, IOP 5.7. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing. *See McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 46 (D. Mass. 2012) *amended in part*, 969 F. Supp. 2d 74 n. 89 (D. Mass. 2013) *aff'd in part, rev'd in part and remanded*, 775 F.3d 109 (1st Cir. 2014) ("The applicable Third Circuit local rule provides that unpublished opinions are not binding precedent. Accordingly, although this court cites a number of unpublished decisions for their persuasive authority, they do not provide precedent and are not binding.")

{00040302;1}

because the FCC's rulings did not read out the "random or sequential number generator" requirement of the statute.

Seeking to circumvent the holding of Ninth Circuit in *Satterfield* and Third Circuit in *Dominquez*, Plaintiffs cherry pick decisions to assert that the definition of an ATDS does nto require a "random or sequential number generator" by asserting *Satterfield* should be limited to the proposition that the definition of "capacity" under the TCPA is unambiguous—not the definition of an ATDS or the entire TCPA. However, *Compare Dominguez, supra; Harnish v. Frankly Co.*, No. 5:14-CV-02321-EJD, 2015 WL 1064442, at *4 (N.D. Cal. Mar. 11, 2015) ("Moreover, the definition of an ATDS does not involve a technical or policy consideration within the FCC's particular field of expertise since the Ninth Circuit has already stated that the statutory language is clear and unambiguous."); *Marks, supra*, (same) with *Nunes v. Twitter, Inc.*, No. 14-CV-02843-VC, 2014 WL 6708465, at *2 (N.D. Cal. Nov. 26, 2014) (Satterfield limited to holding the word "capacity" was unambiguous); *Sherman v. Yahoo! Inc.*, 997 F. Supp. 2d 1129, 1140 (S.D. Cal. 2014) (same).

Collecto asserts that given that the definition of an ATDS is unambiguous, that means it must contain a random or sequential number generator that is used to store or produce numbers to be called. This is in line with the calling devices that existed at the time the TCPA was enacted—dialing devices that contained random or sequential number generators. (SOF Nos. 58-63.)

Plaintiffs argue that "even under [this] narrowest reading of an ATDS" that Collecto's Noble and GC Dialers have the capacity to generate random numbers. (Opposition at 22) (citing Pl.s' SOF 22-23) (citing the untimely Supplemental October 23, 2015 Synder Decl., ¶¶ 12, 29, 27, 34, 38, 45) As set forth in more detail in Collecto's Motion to Strike the Supplemental

October 23, 2015 Declaration of Randall Synder, these new opinions were not timely disclosed and lack foundation. Plaintiffs, therefore, have no evidence that the Noble and GC Dialers used to call Plaintiffs contain a random or sequential number generator, and therefore Lofton and Pegg's TCPA claims fail as a matter of law. Summary judgment should be granted as to their Complaints. Plaintiffs attempt to save their claims by referring to invalid FCC regulations, but fail to demonstrate why this Court should defer to the FCC's ATDS-rules that were based on false hearsay. No court has ruled that district courts must enforce regulations that are based on false hearsay.

**III.     Plaintiffs fail to establish that the FCC rulings were not based on a false and insufficient record**

Plaintiffs urge that "The FCC has explicitly ruled that predictive dialers constitute ATDSs no less than three times" (Opposition, pg. 2) Plaintiffs claim that because the telephone equipment used to call Plaintiffs John Lofton and Robert Pegg were predictive dialers, Collecto used an ATDS.

A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that "predicts" the time when a consumer will answer the phone and a telemarketer will be available to take the call. *In Re Rules & Regulations Implementing Tel. Consumer Prot. Act of 1991*, 17 F.C.C. Rcd. 17459, 17503 n. 37 (2002).

If this Court, contrary to *Dominguez*, 2015 WL 6405811, at *3 n.3 holds that (1) random or sequential number generation is not required by the FCC definition, and (2) predictive dialers that do not have the capacity to store or produce randomly or sequentially generated numbers fall within the FCC's definition of an ATDS, these FCC rulings cannot be the basis for the Court's

decision. These FCC's rulings ignore the fact that predictive dialers that called from databases were widely used when the TCPA was enacted, and that Congress did not outlaw such dialers.

The plaintiffs and the FCC rely on "changes in technologies" to justify the FCC's ATDS Rules. For example, Plaintiffs and their expert Randall Snyder cite the FCC's Report and Order of July 3, 2003, section 132:

> It is clear from the statutory language and the legislative history that Congress anticipated that the FCC, under its TCPA rulemaking authority, might need to consider changes in technologies. In the past, telemarketers may have used dialing equipment to create and dial 10-digit telephone number arbitrarily. As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed—the capacity to dial numbers without human intervention. We fully expect automated dialing technology to continue to develop.

July 10, 2015 Declaration of Randall A. Snyner, para. 90, page 41.

Automated dialing technology has continued to develop, but the technology of dialing telephone numbers from lists was widely utilized when the TCPA was enacted in 1991. Congress did not make such dialers unlawful when it enacted the TCPA, and the Plaintiffs' reliance on the FCC's "changes in technologies" rationale relies on false and deceptive hearsay.

A regulation promulgated upon false assumptions is invalid. *See Emily's List v. Fed. Election Comm'n*, 581 F.3d 1, 26 (D.C. Cir. 2009) (holding that "[b]ecause that necessary assumption is false, these regulations remain invalid"). Similarly, regulations that were

promulgated on an insufficient administrative record are invalid. *See Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 100 S. Ct. 2844, 65 L. Ed. 2d 1010 (1980) (affirming denial of standard promulgated by Secretary of Labor pursuant to The Occupational Safety and Health Act of 1970 (Act) because it was based on findings unsupported by the administrative record); *Diplomat Lakewood Inc. v. Harris*, 613 F.2d 1009, 1022 (D.C. Cir. 1979) (holding regulation invalid where "[W]e are forced to conclude that [the Secretary of Health, Education and Welfare] either was not aware of the problem at all or he chose to ignore it. In either event, he has provided us with no findings or evidence in the record to support the distinction")

Database auto-dialers (i.e., auto-dialers that did not use number generators) were first marketed in the late 1970's, and they were commonly used by banks and creditors by 1985. (SOF 60) Plaintiff's expert, Randall Snyder has testified that automated calling systems that were linked to lists or accounts were used as early as 1989 and that these systems were used by banks and other creditors for debt collection. (SOF 57)

Plaintiffs' Opposition does not address Collecto's contention that the record supporting the FCC Rulings was false and insufficient. *See e.g.*, Plaintiff's Response [to Separate Statement] in Support of Motion for Summary Judgment, Opposing Party's Response and Supporting Evidence Nos. 57-70. They have thus waived any argument in this regard. "[W]here a non-moving party fails to oppose arguments set forth in a motion for summary judgment, courts may treat such arguments as conceded". *Tutor Perini Corp. v. Banc of Am. Sec. LLC*, No. CV 11-10895-NMG, 2015 WL 4762765, at *4 (D. Mass. Aug. 12, 2015) (citing *Evans v. Holder*, 618 F.Supp.2d 1, 13 (D.D.C.2009)). Although Plaintiffs argue that Collecto's assertions regarding the FCC's ATDS rules trigger the Hobbs Act, none of these decisions support their idea that district courts must enforce administrative rules that are based on false hearsay, or that

district courts must enforce rules that were never authorized by Congress. The FCC's ATDS-rules are irrelevant, and district courts are not obligated to defer to them.

## IV. Plaintiffs fail to demonstrate any legal basis for the FCC's alleged authority to promulgate its ATDS definitions.

Congress never authorized the FCC to modify its statutory definition of an automatic telephone dialing system (ATDS), section 227(a). *Marks*, 55 F. Supp. 3d at 1293. Instead, section 227(a) clearly states that ATDS's must utilize random or sequential number generators. Plaintiffs do not dispute that the FCC's ATDS-rules offer different definitions of ATDS's than do sections 227(a) or 227(b) of the TCPA, so in that context, the plaintiffs have conceded this argument. *See Tutor, supra.* Instead, the Plaintiffs cite a statute governing common carriers, 47 U.S.C. § 201(b), which generally authorizes the FCC to "prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this chapter." However, the actual text of 47 U.S.C § 201(b) is limited to "common carriers." *Miranda v. Michigan*, 168 F. Supp. 2d 685, 692 (E.D. Mich. 2001)

> The term "common carrier" or "carrier" means:
> [A] ny person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier.

*See* 47 U.S.C. § 153(1).

Collecto asserts that 201(b) is limited to regulation of common carriers. Plaintiffs assert that the Eleventh Circuit in *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) held that "Congress has conferred upon the FCC general authority to make rules and regulations necessary to carry out the provisions of the TCPA," via 201(b). But the Supreme Court has rejected the Commission's flexible construction of "necessary" in 47 U.S.C. § 251, holding that the term "requires the [Commission] to apply some limiting standard, rationally related to the goals of the Act." *AT&T Corp., supra,* 525 U.S. at 388, 119 S.Ct. 721. In the

same manner, given that FCC's ATDS definitions were based on false hearsay, those rules are not rationally related to the goals of the TCPA and therefore are without authority.

Plaintiffs assert that "Congress, in § 201(b), delegated to the agency authority to 'fill' a 'gap,' i.e., to apply § 201 through regulations and orders with the force of law. " *Global Crossing Telecommunications, Inc. v. Metrophones Telecommunications, Inc.*, 550 U.S. 45, 58 (2007) (Opposition, pg. 11). However, there are no gaps to fill because the statutory definition of an ATDS is unambiguous. *See Satterfield,* 569 F.3d 946 at 951.

Plaintiffs attempt to manufacture *Chevron* deference by asserting that the statute is silent regarding predictive dialers or dialers that use a list or database of numbers constitute ATDSs. (Opposition, pg. 13). But the reason that the TCPA is silent about predictive dialers that dial numbers from databases is that such dialers were widely used when the TCPA was enacted in 1991, and Congress never intended to make such dialers unlawful. The Plaintiffs rely on a single outlier opinion, *Lardner v. Diversified Consultants Inc.,* 17 F. Supp. 3d 1215, 1222-23 (S.D. Fla. 2014) ("it does not matter that the LiveVox software is not used to store or produce telephone numbers using a random or sequential number generator"), but the record in *Lardner,* like the record in all other cases upon which the Plaintiffs rely, omits evidence that predictive dialers were widely used when the TCPA was enacted in 1991 Also, *Lardner* conflicts with the Ninth Circuit's *Satterfield* opinion and the Third Circuit's decision in *Dominguez.* Plaintiffs have not cited a single Court of Appeals decision to the contrary. *Nunes,* 2014 WL 670865 at *2, *Sherman,* 997 F. Supp. 2d at 1140. The FCC's ATDS rules were not "necessary" under 201(b) and there was no "gap" to fill. Therefore, those rules lack authority and this Court is not required to defer to them.

**V.**     **The Third Circuit's recent ruling in *Dominquez* confirms that Collecto's defense does not trigger the Hobbs Act.**

Collecto maintains its defense in this case does not trigger application of the Hobbs Act. The Third Circuit recently reaffirmed Collecto's contention in *Dominguez*, 2015 WL 6405811 at *1. In that case, the Third Circuit vacated summary judgment in favor of the defendant on the grounds there was an insufficient record regarding the capacity of the equipment at issue to autodial. *Id.*

Importantly, the Third Circuit agreed with the district court's conclusion that an unlawful ATDS must include random or sequential number generation (i.e., the phrase refers to the numbers themselves rather than the manner in which they are dialed), and also affirmed the district court's holding that the statutory definition does in fact include such a requirement. *Id.*

The Court in *Dominquez* also characterized the FCC's rulings (including the July 2015 ruling) regarding the definition of an ATDS as "hardly a model of clarity," but held as follows:

> The FCC's orders (as we interpret them*) hold that an autodialer must be able to store or produce numbers that themselves are randomly or sequentially generated "even if [the autodialer is] not presently used for that purpose*." Id. at *5. But importantly, in the most recent ruling the FCC also clarified that neither "present ability" nor the use of a single piece of equipment is required. Thus, so long as the equipment is part of a "system" that has the latent "capacity" to place autodialed calls, the statutory definition is satisfied.

*Id.* at *3 (emphasis added). The FCC's ATDS Rules are unclear because the FCC has no technical understanding of autodialer technology. (See the FCC's October

Most importantly, The Court rejected the plaintiff's claim "that the FCC has interpreted the autodialer definition to read out the 'random or sequential number generator' requirement," and therefore held that there was no need to address whether the Hobbs Act applied. *Id.* at *3 n.3.

Plaintiffs erroneously assert that "[t]he dispute before the Court is not whether Collecto's dialers are random number generators, but whether they can store and dial arbitrary numbers (whether or not they are actually used that way)" (Opposition at 8-9) Moreover, Plaintiffs assert: "Likewise, the 2015 Order expanded this bright-line test, finding dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers." (Opposition at 10, citing 30 FCC Rcd. at 7971-72, ¶10.) This newest definition of an ATDS by the FCC was never authorized by Congress, and it is based either on false hearsay about "changes in technology," or on nothing at all. The FCC's Office of Engineering & Technology has never, in 25 years, ever studied automatic dialers, predictive dialers, or automatic telephone dialing systems. Not even once.

Next, the Plaintiffs falsely assert that Collecto's construction of the definition of an ATDS would "write the term capacity" out of the statute. (Opposition at 6) Collecto asserts that Plaintiffs' assertion that an ATDS includes equipment that merely can call a set list of consumers reads "random or sequential" out of the statute, contrary to the Third Circuit in *Dominquez*. The Ninth Circuit has expressed that there be a "common sense" approach to the TCPA. *Chesbro v. Best Buy Stores, L.P.*, 697 F.3d 1230 (9th Cir. 2012). The "common sense" way to reconcile Plaintiff's assertions with *Dominquez* is to note that the predictive dialers contemplated by the FCC that dials from a set list of consumers may have the "capacity" to store "to store or produce numbers that themselves are randomly or sequentially generated" if that set list of consumers ***can be replaced by a list of random or sequentially generated numbers.*** Also, the August 29, 2015 Declaration of Ellis Cave describes how auto-dialer manufacturers understood random or

sequential number generators before the TCPA was enacted in 1991. That common sense understanding supports Collecto's contentions, not the Plaintiff's twisted arguments.

**All** of the cases cited by the Plaintiffs for the proposition that dialing from a list establishes an ATDS (Opposition at 4, 5) addressed whether or not the telephone equipment at issue could dial a list of random or sequentially generated numbers. *Schumacher v. Credit Prot. Ass'n*, No. 13-00164, 2015 WL 5786139, *8 (S.D. Ind. Sept. 30, 2015); *Moore v. Dish Network LLC*, 57 F. Supp. 3d 639, 655 (N.D.W. Va. 2014); *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 819-20 (N.D. Ill. 2014); *Smith v. Markone Fin., LLC*, No. 13-933, 2015 WL 419005, *3 (M.D. Fla. Feb. 2, 2015); *Lardner v. Diversified Consultants Inc.*, 17 F. Supp. 3d 1215, 1222 (S.D. Fla. 2014); *Nunes v. Twitter, Inc.*, No. 14-02843, 2014 WL 6708465, *1 (N.D. Cal. Nov. 26, 2014): *Echevvaria v. Diversified Consultants, Inc.*, No. 13-4980, 2014 WL 929275, at *6 (S.D.N.Y. Feb. 28, 2014); *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 727 (N.D. Ill. 2011); *Glauser v. GroupMe, Inc.*, No. 11-2584, 2015 WL 475111, *5 (N.D. Cal. Feb. 4, 2015); *Legg v. Voice Media Grp., Inc.,* 20 F. Supp. 3d 1370, 1375 (S.D. Fla. 2014). And all of those cases omitted the evidence in this case, that predictive dialers that dialed from databases were widely used when the TCPA was enacted in 1991. Congress did not make predictive dialers unlawful in 1991, and Congress did not authorize the FCC to subsequently make predictive dialers unlawful.

The dialers used by Collecto may have the capacity to predictively dial. However, unlike the predictive dialers contemplated by the FCC Rulings, and unlike the defendant in *Dominquez*, Collecto has set forth a detailed factual record that clearly indicates that its dialers lack present or potential capacity to dial lists of numbers that are randomly or sequentially generated. Collecto's telephone equipment may be able to dial numbers linked to collection accounts, but there is no

capacity to substitute random or sequential generated numbers to be called by the Noble or GC Dialers. The Noble Dialer is interfaced with FACS, whereas the GC Dialer is "integrated" with FACS. (SOF 11). The "source" of the telephone numbers of the equipment used to call Plaintiffs was the database in FACS.

Collecto's FACS system lacks the capacity to store telephone numbers that are not linked to collection accounts (SOF 17) and it lacks the capacity to randomly or sequentially generate numbers (SOF 18). Therefore, even if the Court construes FACS as a part of a "system," with the Noble or GC Dialers, per *Dominguez*, FACS does not store, and it does not produce, randomly or sequentially generated numbers. Dr. Sorini's forensic investigation and his declaration establish that Collecto's dialers lack the capacity to generate random or sequential telephone numbers. Therefore, Collecto did not use an ATDS for the calls to K.B. that were answered by John Lofton , or for the calls to J.E. that were answered by Robert Pegg. Plaintiffs' only assertion in this regard is that Collecto can disable the filter that prevents the Noble dialer from dialing arbitrary telephone numbers that are not linked to collection account data. (Pl.s' SOF 18) and the unsupported assertion of Randall Snyder that the Noble and GC Dialers are capable of storing, generating, and dialing random or sequential numbers. (Pl.s' SOF 20-23) (citing Supp. Snyder Decl., ¶¶ 12, 29, 27, 38, 45)

As set forth in more detail in Collecto's Motion to Strike the Supplemental October 23, 2015 Declaration of Randall Snyder, these opinions were not timely disclosed and lack foundation. As far as Collecto being able to disable the filter that prevents the Noble dialer from dialing arbitrary telephone numbers that are not linked to collection account data, this argument ignores the statutory term, "system." "It is longstanding canon of statutory construction that terms in a statute should not be construed so as to render any provision of that statute

meaningless or superfluous." *United States v. Andrews*, 600 F.3d 1167, 1173 (9th Cir. 2010). "The cardinal principle of statutory construction is to save and not to destroy" and to "to give effect, if possible, to every clause and word of a statute." *United States v. Menasche*, 348 U.S. 528, 538-539 (U.S. 1955). And many computerized telephones, including smart phones like iPhones, can be re-programmed to dial numbers automatically. Plaintiffs' idea that Congress intended to outlaw such phones when it passed the TCPA in 1991 is not plausible.

Further, the use of the term "system" must have meaning. The term "system" means "regularly interacting or interdependent group of items forming a unified whole." (Merriam Webster Online (visited November 10, 2015) <http://www.merriam-webster.com/dictionary/system>

The Noble and GC Dialers themselves interface with FACS, so they are not receiving randomly or sequentially generated numbers to dial, so per *Dominguez* they do not have the capacity to "store numbers that are randomly or sequentially generated." Plaintiffs have not identified how random or sequential generated phone numbers could be introduced into the FACS-Noble/GC Dialer call flow. The Noble and GC Dialers do not have the capacity to independently produce randomly or sequentially generate such numbers. (SOF 50-55). Moreover, Plaintiff's expert testified that he had "no opinion," in this regard. (SOF 56) Plaintiffs have not identified any "system" used by Collecto to call Plaintiffs that had the capacity to call random or sequentially generated numbers.

Therefore, under the Third Circuit's construction of the FCC's definition of an ATDS, Collecto did not use an ATDS to call Lofton and Pegg, and therefore their TCPA claims fail as a matter of law.

**VI.    Plaintiffs fail to demonstrate why this Court has subject matter jurisdiction over Plaintiffs' Complaint.  If only a court of appeal has jurisdiction to consider this motion, then the district court should dismiss this case pursuant to Rule 12(h)(3), or transfer the motion to the First Circuit Court of Appeals.**

Plaintiffs argue pursuant to *CE Design, Ltd. v. Prism Business Media, 448 Inc.*, 606 F.3d 443, 446 n. 3 (7th Cir. 2010) and *Leyse v. Clear Channel Broad., Inc.*, 545 F. App'x 444, 447-48 (6th Cir. 2013) *cert. denied*, 135 S. Ct. 57, 190 L. Ed. 2d 31 (2014), that applying *Chevron* deference such that reference to FCC Rulings is unnecessary triggers the Hobbs Act. (Opposition at 15, 16)  However, both *CE Design* and *Leyse* involved ***a plaintiff*** challenging an FCC-created exemption.

In contrast, Collecto at best is a ***defendant*** challenging the FCC's interpretation of the ATDS definition in response to a lawsuit.  As Collecto did not choose the forum, those cases are distinguishable.  Relying on the FCC's ATDS-Rules  would contradict the U.S. Supreme Court's recent pronouncement in *Utility Air Regulatory Grp. v. E.P.*A., 134 S. Ct. 2427, 2446, 189 L. Ed. 2d 372 (2014) which "reaffirm[ed] the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *CE Design*, and *Leyse* were both decided prior to *Utility Air*, as was *Nack v. Walburg*, 715 F.3d 680, 686 (8th Cir. 2013).

The Hobbs Act imposes significant unfair burdens on private litigants, and creates a difficult procedural obstacle to the assertion of constitutional rights.  Plaintiffs' unreasonable view of the Hobbs Act can result in the imposition of crippling money damages on defendants in civil litigation, even where those defendants had  little reason to know or participate in the agency's proceedings  and where defendants are time-barred from Hobbs Act review.  The more

reasonable view of the Hobbs Act taken by the Sixth Circuit, *Maquina Musical* under which a court would have jurisdiction to consider constitutional or *Chevron* challenges to FCC regulations in civil actions between private parties. *CE Design*, *Leyse*, *Nack*, nor the post-*Utility Air* decisions *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014) involved a false administrative record as the basis for the promulgated regulation.

Plaintiffs' argument would permit an administrative agency to usurp the power of Congress, and remain unchecked by the District Courts entirely. The province and duty to "say what the law is" is an inherent power of Article III judges that flows directly from the Constitution:

> "When federal judges exercise their federal-question jurisdiction under the 'judicial Power'" of Article III of the Constitution, it is "emphatically the province and duty" of those judges to 'say what the law is.' At the core of this power is the federal courts' independent responsibility—independent from its coequal branches in the Federal Government, and independent from the separate authority of the several States—to interpret federal law."

*Williams v. Taylor,* 529 U.S. 362, 378–79 (2000), *citing Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803).

"In the case of agency conclusions of law, the justification [for deference] is less obvious since resolving legal questions lies at the heart of the judicial function. The final word on the law—including statutory interpretation—rests with the courts." *Bob Evans Farms, Inc. v. NLRB*, 163 F.3d 1012, 1017 (7th Cir. 1998).

District courts are not rubber stamps for unauthorized administrative rules based on false hearsay. And none of the Plaintiffs' cases support their argument that under these circumstances, district courts are mere clerks which lack authority to interpret federal law.

Plaintiffs assert that Collecto failed to take advantage of the Hobbs Act to challenge the FCC's interpretation of the TCPA (Opposition at 20). Plaintiffs cite *Bob Jones University v.*

*Simon*, 416 U.S. 725 (1974) for the proposition that there is sufficient opportunity for judicial review via the Circuit Court of Appeals, but that decision is irrelevant. In *Bob Jones*, the petitioner claimed that the IRS's revocation of its 501(c)(3) status violated its due process rights. The Supreme Court held there was not a denial of due process provided that the taxpayer had access to judicial review in a subsequent refund action. *Id.* at 746. In contrast, Collecto does not have access to *subsequent* judicial review. Plaintiffs assert that Collecto should have taken *prospective* action with respect to the Hobbs Act. However, Collecto, as a defendant, cannot be expected to anticipate the spectrum of arguments by a potential plaintiff based upon FCC regulations that are "hardly a model of clarity," as admitted by the Third Circuit (*Dominguez, supra*, at *3) The statement of the Seventh Circuit that "The Hobbs Act's jurisdictional bar thus does not leave private parties without a mechanism for judicial review of agency action; it merely requires litigants to seek review through its specific procedural path," (*CE Design*, 606 F.3d at 450) was issued in the context of a *plaintiff* who challenged the FCC's rulings, not a defendant. A plaintiff is the master of his or her claim and the venue where he or she seeks to bring a challenge to an agency order, not a defendant such as Collecto.

Moreover, *Leyse* held "For example, it is not clear that the Hobbs Act's sixty-day limit on court-of-appeals jurisdiction applies to all as-applied arguments." 545 F. App'x 444, 457. As set forth in Collecto's Motion, "47 U.S.C. section 227(a), and in doing so, implicitly approved (or at least did not make unlawful) the use of predictive dialers that did not use number generators." (Motion at 8) Therefore, the TCPA regulations, as-applied to devices that do not use number generators or have the capacity to store or dial lists of randomly or sequentially-generated numbers , should not be subject to the Hobbs Act.

Plaintiffs assert "nothing in *Maquina Musical* supports the remedy Collecto seeks: it did not dismiss any case or approve of dismissing any case for lack of subject matter jurisdiction." (Opposition at 18). Collecto asserts that *Maquina Musical* provides that Collecto's arguments regarding the FCC's ATDS definitions should be decided by the Court. Collecto asserts that if the Court is inclined to hold that it lacks jurisdiction over arguments regarding the FCC's ATDS definitions, it would be fundamentally unfair to not have all of Collecto's arguments heard in the same forum. Therefore, Collecto asserts the proper remedy is to dismiss Plaintiffs' entire action for lack of subject matter jurisdiction such that Plaintiffs must refile in the First Circuit. Plaintiffs cited authority, *Bhd. of Locomotive Engineers v. Boston & Maine Corp.*, 788 F.2d 794, 796 (1st Cir. 1986), supports Collecto's position. In that case the First Circuit affirmed the dismissal of the plaintiff's complaint for lack of subject matter jurisdiction where plaintiff challenged a regulation of the Interstate Commerce Commission. *See also State of Mich. v. United States,* 994 F.2d 1197, 1204 (6th Cir. 1993) (affirming dismissal of complaint for lack of subject matter jurisdiction where plaintiff's action challenged agency regulation); *Voicestream PCS II Corp. v. BPS Tel. Co.*, No. 05-04037-CV-C-NKL, 2005 WL 2065249, at *5 (W.D. Mo. Aug. 24, 2005) (granting motion to dismiss where ruling in favor of Plaintiff's claims raised in its complaint would be in conflict with the FCC's order.)

Per *Engineers*, given that the Third Circuit states that "random or sequential number generator" is not read out of the FCC's definition of an ATDS (2015 WL 6405811, at *3 n.3), Plaintiffs' assertion that only human intervention in necessary to establish that Collecto used an ATDS conflicts with the FCC's Rulings and therefore, this Court lacks subject matter jurisdiction over Plaintiffs' Complaint. Even if Collecto's defenses are considered to trigger the Hobbs Act, so do Plaintiffs' claims regarding human intervention and construction of the FCC's

ATDS definition to include equipment that does not have the capacity to dial lists of random or sequentially generated numbers or contain random or sequential number generators. These possible competing conflicts with the FCC Rulings by both parties distinguish this case from *CE Design*, *Nack*, *Leyse* and *Mais*.

Plaintiffs claim that "Even if the Court dismissed the case and Plaintiffs appealed this case to the First Circuit, the First Circuit would not still not have jurisdiction over the arguments Collecto makes here." (Opposition at 21) However, the court also has the option of transferring this Motion to the First Circuit. *See Alison & Associates, Inc. v. Dartek Corp.*, No. CV 104-181, 2005 WL 2453089, at *3 (S.D. Ga. Sept. 30, 2005) (plaintiff challenged FCC's existing business relationship requirement in opposition to motion for summary judgment--court held pleadings were equivalent of petition for review)

**VII.  Collecto's calls to Lofton and Pegg were made with human intervention.**

Plaintiff s concedes *Gragg v. Orange Cab Co.*, 995 F. Supp. 2d 1189, 1192 (W.D. Wash. 2014), *reconsideration denied* (Feb. 28, 2014) and *Luna v. Shac, LLC*, No. 14-CV-00607-HRL, 2015 WL 4941781, at *4 (N.D. Cal. Aug. 19, 2015) found human intervention in uploading numbers or logging in disqualified equipment as ATDSs. (Opposition at 9). Plaintiffs attempts to distinguish these authorities by stating the actual decisions all hinged on whether the equipment at issue required human intervention to call telephone numbers." *Id.* However, the Ninth Circuit has emphasized that courts should look to the circumstances surrounding calls to determine whether such calls "run afoul of the TCPA," and in so doing, should "approach the problem with a measure of common sense." *Chesbro* , 697 F.3d 1230 (9th Cir. 2012). The TCPA's legislative history illustrates that the statute was enacted to address Congress' concern regarding "the increasing number of telemarketing firms in the business of placing telephone

calls, and the advance of technology which makes automated phone calls more cost-effective." S. Rep. 102-178 at 2 (1991), reprinted in U.S.C.C.A.N. 1968, 1969; see also Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 (recognizing the intrusive nature of unrestricted telemarketing).

Given that Plaintiffs do not dispute the calls at issue were not the stray telemarketing calls the TCPA was intended to prevent, Collecto asserts that the human intervention involved prior to the actual dialing of the phone numbers allegedly associated with Lofton and Pegg satisfies the FCC definition. *See Gragg*, 995 F. Supp. 2d at 1192 (declining to adopt an interpretation of ATDS "that would lead to an absurd result.")

## VIII. Plaintiffs concede summary judgment for pre-July 23, 2009 claims of the Davenports.

Collecto is also entitled to summary judgment as to Plaintiffs Richard and Ralph Davenport's (collectively "Davenports") TCPA claims based on calls made by Collecto prior to July 23, 2009 based on the four-year statute of limitations for TCPA claims. Plaintiffs do not oppose Collecto's Motion on this issue (Opposition at 22) and have therefore waived this argument. *See Tutor*, *supra*.


DATED: November 13, 2015                           CARLSON & MESSER LLP


                                    By: /s/ Charles R. Messer
                                        Calif. Bar No. 101094
                                        David J. Kaminski, Esq.
                                        Calif. Bar No. 128509
                                        Stephen Watkins, Esq.
                                        Calif. Bar No. 205175
                                        CARLSON & MESSER LLP
                                        5959 W. Century Boulevard, Suite 1214
                                        Los Angeles, CA 90045
                                        Telephone: (310) 242-2200

Facsimile: (310) 242-2222
Email: kaminskid@cmtlaw.com
Email: MesserC@cmtlaw.com
Email: WatkinsS@cmtlaw.com
Lead Counsel for Defendant Collecto, Inc.

## CERTIFICATE OF SERVICE

I, Charles R. Messer, hereby certify that, this 13th day of November 2015, I filed the

foregoing documents through the Electronic Case Filing (ECF) system and thus copies of the

foregoing will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing (NEF).

DATED: November 13, 2015                                    CARLSON & MESSER LLP


                                        By: /s/ Charles R. Messer
                                            Charles R. Messer

{00040302;1}